**Docket No. 2025-1419**

*In the*

# United States Court of Appeals

*For the*

# Federal Circuit

PACT XPP SCHWEIZ AG,

*Plaintiff-Appellant,*

v.

INTEL CORPORATION,

*Defendant-Appellee.*

*Appeal from the United States District Court for the District of Delaware*
*Case No. 1:19-cv-01006-JDW · Judge Joshua D. Wolson*

# APPELLANT'S OPENING BRIEF
## [NON-CONFIDENTIAL]

Frederick Lorig
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
fredericklorig@quinnemanuel.com

Quincy Lu
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000
quincylu@quinnemanuel.com

Sanford I. Weisburst
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
(212) 849-7000
sandyweisburst@quinnemanuel.com

Mark Y. Tung
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
(650) 801-5000
marktung@quinnemanuel.com

*Attorneys for Plaintiff-Appellant PACT XPP Schweiz AG*

COUNSEL PRESS INC. · (213) 680-2300 PRINTED ON RECYCLED PAPER

## REPRESENTATIVE PATENT CLAIMS AT ISSUE

### U.S. PATENT NO. 8,312,301:

**8.** A processor device, comprising

a plurality of data processing elements adapted for programmably processing sequences and to which tasks are assigned, each of the data processing elements having at least one Arithmetic Logic Unit; and

at least one bus system at least one of (a) interconnecting at least some of the data processing elements and (b) connecting at least some of the data processing elements with at least one of peripherals and external memory;

wherein:

each of at least some of the data processing elements is capable of operating at a clock frequency different than at least one other of the data processing elements; and

the processor device is adapted for reducing clock frequencies of the data processing elements in response to a determination that a power reserve of a battery is below a predetermined threshold.

### U.S. PATENT NO. 8,471,593:

**1.** A data processor on a chip comprising:

a plurality of data processing cores, each of at least some of the processing cores including:

at least one arithmetic logic unit that supports at least division and multiplication of at least 32-bit wide data; and

at least 3 registers for storing at least 32-bit wide data;

a plurality of memory units to buffer at least 32-bit wide data;

at least one interface unit for providing at least one communication channel between the data processor and external memory; and

a bus system flexibly interconnecting the plurality of processing cores, the plurality of memory units, and the at least one interface;

wherein:

the bus system includes a first structure dedicated for data transfer in a first direction and a second structure dedicated for data transfer in a second direction; and

each of at least some of the data processing cores includes a physically dedicated connection to at least one physically assigned one of the plurality of memory units, the assigned one of the plurality of memory units being accessible by another of the data processing cores via a secondary bus path of the bus system.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 25-1419

**Short Case Caption** PACT XPP Schweiz AG v. Intel Corporation

**Filing Party/Entity** PACT XPP Schweiz AG

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/12/2025

Signature: /s/ Sanford Weisburst

Name: Sanford Weisburst

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☑ None/Not Applicable |
| PACT XPP Schweiz AG | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Brian E. Farnan | Danielle L. Gilmore | Marshall M. Searcy, III |
| Michael J. Farnan | Nima Hefazi | Pushkal Mishra |
| Ron Hagiz | Ziyong Li | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS


Page

REPRESENTATIVE PATENT CLAIMS AT ISSUE ............................................i
CERTIFICATE OF INTEREST ......................................................................... ii
TABLE OF CONTENTS.....................................................................................v
TABLE OF AUTHORITIES ........................................................................... viii
STATEMENT OF RELATED CASES ..................................................................xi
INTRODUCTION ................................................................................................1
JURISDICTION....................................................................................................6
ISSUES PRESENTED...........................................................................................7
STATEMENT OF THE CASE..............................................................................8
A. PACT's '301 And '593 Patents...........................................................8
B. Intel's Accused Products.....................................................................9
C. U.S. Patent And Trademark Office Proceedings ...............................11
1. Inter Partes Review Of The '301 Patent ...................................11
2. Inter Partes Review Of The '593 Patent ...................................12
3. Ex Parte Reexamination Of The '593 Patent............................12
D. District Court Proceedings ................................................................15
1. The '301 Patent ..........................................................................15
2. The '593 Patent ..........................................................................18
SUMMARY OF ARGUMENT ............................................................................21
STANDARD OF REVIEW ..................................................................................25
ARGUMENT .......................................................................................................27
I. PACT PRESENTED EVIDENCE FROM WHICH REASONABLE JURORS COULD FIND THAT INTEL'S PRODUCTS INFRINGE THE '301 PATENT ...........................................................................................27
A. For A Patent Such As The '301 Patent That Claims A Device, To Prove Infringement, A Plaintiff Need Show Only That The Accused Product Is Capable Of Performing The Claimed

Functionality, And Here PACT Adduced Evidence From Which Reasonable Jurors Could So Find..........................................28

B. The District Court Erroneously Refused To Apply The Rule That A Device Claim Is Infringed If The Accused Product Is Capable Of Performing The Claimed Functionality ...........................31

II. PACT PRESENTED EVIDENCE FROM WHICH REASONABLE JURORS COULD FIND THAT INTEL'S PRODUCTS INFRINGE THE '593 PATENT ..........................................................................37

A. "A Physically Dedicated Connection" Should Be Construed To Mean That Only At Least One Segment Of The Path Between A Processing Core And Its Paired Memory Unit Is Uniquely Devoted To Communications Between Those Elements, And PACT Did Not Disclaim Such A Construction ..................................38

B. PACT Did Not Disclaim A Construction Of "A Physically Dedicated Connection" To Mean That Only At Least One Segment Of The End-To-End Path Between A Processing Core And Its Paired Memory Unit Is Uniquely Devoted To That Pair .......42

C. Under The Correct Claim Construction That "A Physically Dedicated Connection" Means That Only At Least One Segment Of The End-To-End Path Between A Processing Core And Its Paired Memory Unit Is Uniquely Devoted To That Pair, Reasonable Jurors Could Find That Intel's Products Infringe............47

D. Even Under A Claim Construction That "A Physically Dedicated Connection" Is Absent If Any Segment Of The Path Is Shared, Reasonable Jurors Could Find That Intel's Products Infringe ..........................................................................................51

CONCLUSION ..........................................................................................52

**CONFIDENTIAL MATERIAL OMITTED**

Pursuant to Fed. Cir. R. 25.1(e)(1)(B), this public version of Plaintiff-Appellant's principal brief omits certain information that Intel has deemed confidential business information. Specifically, the material omitted on pages 6, 10, 19, 25, 49, 51, and 52 and the bottom half of page 50 describe technical design features of Intel's accused products; and the material omitted on page 11 and the top half of page 50 are technical schematics of Intel's accused products. The omitted information was

designated confidential by Intel under the terms of the Protective Order entered by the district court.

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*3M Innovative Props. Co. v. Avery Dennison Corp.*,
350 F.3d 1365 (Fed. Cir. 2003) ....................................................................46

*Avid Technology, Inc. v. Harmonic, Inc.*,
812 F.3d 1040 (Fed. Cir. 2016) ............................................4, 23, 27, 43, 44, 45

*Axonics, Inc. v. Medtronic, Inc.*,
75 F.4th 1374 (Fed. Cir. 2023) ....................................................................36

*Burns v. Gadsden St. Community College*,
908 F.2d 1512 (11th Cir. 1990) ....................................................................36

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)............................................................................26, 28, 33

*ECB USA Inc. v. Chubb Ins. Co. of N.J.*,
113 F.4th 1312 (11th Cir. 2024) ...................................................................34

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ....................................................................29

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) ................................. 2, 3, 17, 21, 28, 29, 30, 33

*Genuine Enabling Tech. LLC v. Nintendo Co., Ltd.*,
29 F.4th 1365 (Fed. Cir. 2022) ...........................................................26, 27, 43

*Guidotti v. Legal Helpers Debt Resolution, LLC*,
716 F.3d 764 (3d Cir. 2013) ....................................................................26, 33

*Intel Corp. v. ITC*,
946 F.2d 821 (Fed. Cir. 1991) .......................................................17, 28, 29, 30

*Intel Corp. v. PACT XPP Schweiz AG*,
No. 2023-1537, 2024 WL 5068112 (Fed. Cir. Dec. 11, 2024) .....................1, 11

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 801 (Fed. Cir. 2021) .......................................................................26

*Jaffal v. Dir. Newark N.J. Field Off. Immigr. & Customs Enforcement*,
23 F.4th 275 (3d Cir. 2022) ....................26

*K-fee Sys. GmbH v. Nespresso USA, Inc.*,
89 F.4th 915 (Fed. Cir. 2023) ....................39

*O2 Micro International Ltd. v. Beyond Innovation Technology Company*,
521 F.3d 1351 (Fed. Cir. 2008) ....................34, 40

*Oatey Co. v. IPS Corp.*,
514 F.3d 1271 (Fed. Cir. 2008) ....................39

*Omegaflex, Inc. v. Parker-Hannifin Corp.*,
243 F. App'x 592 (Fed. Cir. 2007) ....................31

*PACT XPP Schweiz AG v. Intel Corporation*,
No. 2025-1003, ECF 17 (Dec. 20, 2024)....................6

*Parkervision, Inc. v. Vidal*,
88 F.4th 969 (Fed. Cir. 2023) ....................36

*Salazar v. Procter & Gamble Co.*,
414 F.3d 1342 (Fed. Cir. 2005) ....................46

*Sarif Biomedical LLC v. Brainlab Inc.*,
725 F. App'x 996 (Fed. Cir. 2018) ....................47

*Valeant Pharms. Int'l, Inc. v. Mylan Pharms. Inc.*,
955 F.3d 25 (Fed. Cir. 2020) ....................25

*Walden v. Gen. Elec. Int'l, Inc.*,
119 F.4th 1049 (6th Cir. 2024) ....................34

*World Class Technology Corp. v. Ormco Corp.*,
769 F.3d 1120 (Fed. Cir. 2014) ....................39

*Yuba Goldfields, Inc. v. United States*,
723 F.2d 884 (1983)....................31

**Statutes**

28 U.S.C. § 1295(a)(1)....................7

28 U.S.C. § 1331 ........................................................................................................ 6
28 U.S.C. § 1338 ........................................................................................................ 6

## STATEMENT OF RELATED CASES

This case was before this Court as *PACT XPP Schweiz AG v. Intel Corporation*, No. 2025-1003. On January 30, 2025, this Court dismissed that appeal, subject to a new appeal being filed after resolution of a jurisdictional issue (disposition of pending counterclaims) by the district court. Appx35714-35715. The instant appeal is that new appeal.

There are no currently pending cases in this Court or any other court that will directly affect or be affected by this Court's decision in the instant appeal.

## INTRODUCTION

The district court[1] erred in granting summary judgment to Defendant-Appellee Intel Corporation on Plaintiff-Appellant PACT XPP Schweiz AG's causes of action for infringement of PACT's U.S. Patent Nos. 8,312,301 ("'301 Patent") and 8,471,593 ("'593 Patent"). On the '301 Patent, the court erroneously declined to apply the rule that infringement of a device claim requires only that the accused device be capable of performing the functionality recited by the claim, not that it actually performs that functionality. On the '593 Patent, the court erroneously construed the claim and disregarded a genuine factual dispute that the court's own prior order had held required denial of summary judgment.

**The '301 Patent** describes a computer chip with multiple processors, whose clock frequencies can be changed to manage power consumption. This Court recently affirmed the Patent Trial and Appeal Board's rejection of Intel's challenge to certain claims of this patent, including claim 8 at issue in the instant appeal. *Intel Corp. v. PACT XPP Schweiz AG*, No. 2023-1537, 2024 WL 5068112 (Fed. Cir. Dec. 11, 2024).

In PACT's infringement action in the district court below, the parties agreed that the claim term "programmably processing sequences" means processing

[1] Hon. Joshua D. Wolson (E.D. Pa.), sitting by designation in the U.S. District Court for the District of Delaware.

sequences of data (as opposed to just sequences of instructions), but the parties disputed whether Intel's products infringe because they are capable of processing not just instruction sequences but also data sequences. The district court, in granting summary judgment to Intel, erroneously ignored PACT's evidence that Intel's products were capable of processing data sequences, *e.g.*, Appx14685, Appx24308-24316, and stated that "[t]he Parties don't dispute that Intel's chips only process sequences of instructions," Appx8. When PACT moved for reconsideration to highlight the evidence it had presented, the court held that PACT needed to show "those chips *actually* process data," Appx23 (emphasis added), not that they are merely capable of processing data. That was error because, "to infringe a claim that recites capability and not actual operation, an accused device need only be capable of operating in the described mode." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) (internal quotation marks and citation omitted). When PACT cited this case law in its second motion for reconsideration, the district court improperly faulted PACT for not having done so earlier, disregarding, *inter alia*, that this was PACT's first opportunity to respond after Intel first argued that "capable of" evidence is insufficient.

**The '593 Patent** claims a "processing cor[e]" that has "a physically dedicated connection to at least one … memory uni[t]," and communicates with other memory units "via a secondary bus path." Appx152 (12:38-44). A key issue is whether "***a***

physically dedicated connection," *id.* (emphasis added), means that ***all segments*** of the end-to-end path between a processing core and its paired memory unit must be uniquely devoted to communications between the pair. In other words: Is a device (such as Intel's products) where at least one segment of the path is uniquely devoted to a processing core-memory unit pair, but other alleged segments of the path are shared with additional elements, outside the scope of the patent? The following image illustrates such a device by analogy to local roads, a highway, and overpasses:




For example, the first overpass is uniquely devoted to the Processing Core A-Memory Unit A pair, but the last segment of local road leading to Memory Unit A is shared with the ramp to the highway and thus with other elements such as Processing Core B.

On the eve of trial, after having previously denied Intel's motion for summary judgment on this patent, the district court construed "a physically dedicated connection" to mean that ***all segments*** of the end-to-end path between a processing core and its paired memory unit are uniquely devoted to communications between those two units. Appx36. But that was error: "a physically dedicated connection" instead should be construed to mean only that at least one segment is uniquely devoted to communications between a processing core-memory unit pair. The plain meaning of "***a*** physically dedicated connection" is at least one segment, not ***all*** segments. Appx152 (12:39) (emphasis added). And PACT did not disclaim the "at least one" construction during an *ex parte* reexamination proceeding. PACT's statement to the examiner focused on the distinction between a "direct" and a "specifically devoted" "connection," Appx33956, not on whether "connection" means one segment or all. And there was no reason to address the latter issue because PACT was distinguishing a prior-art reference (Fu) in which all segments were shared. Accordingly, PACT's statement does not meet the "demanding standard" for finding disclaimer. *Avid Technology, Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016).[2]

---

[2] Even if the district court's construction of "a physically dedicated connection" were correct, reasonable jurors could find that, in Intel's products, all segments of the path between a processing core and its co-located memory unit are uniquely devoted to that pair because any shared lines constitute an interface of the memory

The district court also erred in holding that there is no genuine factual dispute that all segments in Intel's products are shared (*i.e.*, no segment is uniquely devoted to a processing core-memory unit pair), which if accurate would mean Intel's products do not infringe even under the "at least one segment" construction. Appx44-45 ("Any processor can communicate with any memory, but it must go through the ring structure. … All connective structures in this chain directly interconnect a particular device to a particular memory, as the claim language requires, but ***no structure does so while excluding other devices and memories***." (emphasis added)). The court disregarded that it had previously and correctly held the opposite in denying Intel's first motion for summary judgment: "If … there are separate bus paths within [Intel's C-Bo] for co-located [paired] and non-co-located cores, it's possible that it infringes. … The Parties have provided expert testimony and other evidence to support their positions. Therefore, a jury must hear these facts and decide infringement." Appx9. The existence of a genuine factual dispute is demonstrated by Intel's own documents, *e.g.*, Appx34182, indicating that a segment along the path between a processing core and its co-located memory unit, which

---

unit or processing core, and an interface should be considered part of the memory unit or processing core rather than part of the path between a processing core and its paired memory unit. *See* Argument Point II.D, *infra*.

[redacted] a shared path, is uniquely devoted to that processing core-memory unit pair.

This Court should vacate the district court's judgment and remand the case for trial.

## **JURISDICTION**

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1338. After the court issued orders granting Intel's motions for summary judgment of non-infringement on PACT's claims for infringement of the '301 and '593 Patents, the court entered judgment in favor of Intel on August 27, 2024. Appx48. That judgment paper did not explicitly dispose of Intel's counterclaims for declarations of invalidity of the '301 and '593 Patents.

PACT filed a notice of appeal concerning the August 27, 2024 judgment. Appx34397. Subsequently, to resolve any potential concern about this Court's jurisdiction, the parties joined in a motion to dismiss that appeal, *PACT XPP Schweiz AG v. Intel Corporation*, No. 2025-1003, ECF 17 (Dec. 20, 2024), so that the district court could enter an order explicitly disposing of Intel's counterclaims, thus assuring finality, after which PACT would be able to file a new notice of appeal. On January 30, 2024, this Court dismissed the appeal pursuant to that motion. Appx35714-35715. Later that day, the district court entered an order explicitly disposing of Intel's counterclaims. Appx49. The following day, PACT filed a notice of appeal

of that order together with the August 27, 2024 judgment. Appx35716. This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## ISSUES PRESENTED

1. Whether, in the case of a patent (like the '301 Patent) that claims a device rather than a method, a plaintiff can establish infringement by proving that the accused product is capable of performing the claimed functionality.

    a. Whether PACT's opposition to summary judgment adduced evidence from which reasonable jurors could find that Intel's products are capable of processing data sequences.

    b. Whether PACT could cite case law in support of the "capable of" argument following Intel's first assertion that "capable of" evidence is insufficient.

2. Whether, in the '593 Patent, "a physically dedicated connection" should be construed to mean that at least one segment along the path between a processing core and its paired memory unit is uniquely devoted to the pair (as opposed to all segments along the path being uniquely devoted), and whether PACT did not disclaim such a construction during *ex parte* reexamination.

    a. Whether PACT adduced evidence from which reasonable jurors could find that Intel's products contain at least one segment uniquely devoted

to a processing core-memory unit pair, as the district court itself had concluded in its first summary-judgment order.

b. Whether, even if the claim is construed to mean that all segments along the path between a processing core and its paired memory unit are uniquely devoted to that pair, PACT adduced evidence from which reasonable jurors could find that, in Intel's products, any lines shared with other elements are not segments of the path between a processing core and its paired memory unit but instead are "interfaces" that should be considered part of the memory unit or processing core rather than the path between them.

## STATEMENT OF THE CASE

### A. PACT's '301 And '593 Patents

Founded in 1996, PACT designed multi-core systems that could process large amounts of data involving multiple processors on a single chip. Appx208-209. PACT encountered unique challenges, and PACT's novel solutions to those challenges garnered over 70 U.S. patents, including the '301 and '593 Patents. Appx209.

**The '301 Patent** describes a device for managing power consumption of a chip. Appx111 (2:20-30). In a chip consisting of multiple data processing elements adapted for programmably processing sequences of data, each of the data processing elements can operate at a different clock frequency. *Id.* (2:49-59). This enables

better management of the chip's power consumption and temperature based on operating conditions, such as temperature and/or the power reserve of a battery falling below a threshold. Appx114 (7:7-15, 7:47-53).

**The '593 Patent** improved upon prior-art buses, which were not well-suited for systems with multiple processing cores. Appx147 (2:31-34). The '593 Patent claims a data processor with multiple processing cores and multiple memory units, a "physically dedicated connection" between a specific processing core and a specific memory unit with which it is paired, and a "secondary bus path" connecting that processing core with other memory units. Appx152 (12:19-44).

### B. Intel's Accused Products

Intel's chips contain multiple processing cores, each of which can handle computations such as arithmetic calculations that are performed on data stored in memories. Appx25492, Appx25538. The speed at which computations are performed depends in part on how quickly the chip is run. Appx25493-25494. A key parameter to describe the speed is the clock frequency. *Id.*

A representative Intel chip depicts four processing cores next to a last level cache ("LLC"). Appx33736. The LLC is divided into "slices," each containing a memory unit, and each processing core is paired with its "co-located" (*i.e.*, adjacent) memory unit. *Id.* Each processing core has direct and unique access to its co-located

memory unit via a segment analogous to the overpass in the Introduction figure, *supra*.

Specifically, the connection between a processing core and its co-located memory unit/LLC slice is achieved through a "CBo." Appx33754-33755. The CBo includes a [redacted] that is the interface to the processing core, a [redacted] that is the interface to that processing core's co-located memory unit, and a [redacted] that connects the processing core to the ring to allow communications between the processing core and non-co-located memory units through the ring. Appx33738-33739. PACT presented evidence, including Intel documents, that communications between a processing core and its co-located memory unit flow exclusively from the processing core to the co-located memory unit/LLC slice (and vice versa), [redacted] the [redacted] and [redacted] (which is akin to the highway in the figure in the Introduction, *supra*), such that the central segment of the communication path is uniquely devoted to that processing core and its co-located memory unit. Appx34187 (Intel document disclosing that for communications between a co-located pair, the "[redacted] is [redacted]"), Appx33755-33756 (PACT's expert opining similarly). This can be seen in an Intel figure showing a semi-circular line [redacted] the vertical line that represents the [redacted]:

Technical Schematic of Intel's Product

[redacted]

Appx34182 (red oval annotation added). By contrast, communications between a processing core and a non-co-located memory unit flow from the processing core onto the ring to arrive at the non-co-located memory unit. Appx33762, Appx33755-33756.

### C. U.S. Patent And Trademark Office Proceedings

#### 1. *Inter Partes* Review Of The '301 Patent

On February 7, 2020, Intel filed an *inter partes* review petition challenging the validity of the '301 Patent. On August 11, 2020, the Patent Trial and Appeal Board instituted review. The parties filed briefs and deposed experts. Ultimately, the Board found some claims unpatentable, but others (including claim 8 and claims 16 and 17 that depend on it) patentable. Intel appealed, and this Court affirmed. *Intel Corp. v. PACT XPP Schweiz AG*, No. 2023-1537, 2024 WL 5068112 (Fed. Cir. Dec. 11, 2024).

2. *Inter Partes* Review Of The '593 Patent

Intel filed an *inter partes* review petition challenging the '593 Patent, including representative claim 1 that recites in relevant part that "each of at least some of the data processing cores includes a physically dedicated connection to at least one physically assigned one of the plurality of memory units, the assigned one of the plurality of memory units being accessible by another of the data processing cores via a secondary bus path of the bus system." Appx152.[3] In response, PACT proffered dictionary definitions to show that the plain meaning of "dedicated" is "'assigned exclusively' to a particular task or purpose." Appx12099-12100, Appx12357. The Board denied institution. Appx12119.

3. *Ex Parte* Reexamination Of The '593 Patent

After the Board denied the just-described *inter partes* review petition, Intel filed a request for *ex parte* reexamination. The USPTO granted the reexamination request, and the examiner issued a first office action rejecting the '593 Patent's claims as obvious over U.S. Patent 6,457,087 ("Fu") in combination with other prior art. Appx33850-33854, Appx33894-33905. As shown in Figures 2 and 13 of Fu reproduced below, Fu uses a shared flow-control unit ("FCU") 212 that

[3] Claim 1 of the '593 Patent recites a "*physically* dedicated connection," Appx152 (12:39) (emphasis added), while claim 16 recites a "dedicated connection" not preceded by "physically," Appx153 (13:46). The parties and district court equated these phrases for claim-construction purposes.

interconnects all processors 202A-202N (top of Figure 2) to multiple memory units 214A-214N (right side of Figure 2). Appx30520-30536, Appx30667-30676. There is no processing core with its own paired or co-located memory unit. As depicted in Figure 13 (a detail of the FCU's interior), the FCU is a shared bus that uses shared vertical paths 318E to 318K+N and shared horizontal paths 364A to 364D to make a shared connection between multiple processing cores and multiple memory units:




FIG. 2




FIG. 13

Appx30523, Appx30536. For example, multiple memory units 214A to 214N share the vertical data path 318E to access the same processor, while multiple processors 202A to 202N share the horizontal path 364A to access the same memory.

In response to the examiner's rejection, PACT argued that Fu's FCU was not a "dedicated connection" because the paths between the various processors and memory units in Fu are shared rather than uniquely devoted to any processor-memory unit pair. Appx30744-30745.

The examiner issued a second office action adhering to his rejection of the ’593 Patent’s claims. Appx33912, Appx33929-33941. The examiner stated: “No definition of physically dedicated has been proffered in this case. The Examiner notes that claims does not say that the physically dedicated connection is ***exclusive*** to any one core. All that is required of the claim is that there be a … ***direct***, uninterrupted connection, between a core and a memory unit.” Appx33940 (emphasis added).

PACT responded by proffering dictionary definitions showing that “dedicated” meant “devoted to,” “made or designed to interconnect exclusively,” and “made, built, or designed for a particular purpose or thing.” Appx33955-33956, *see also* Appx12099-12100. In view of these definitions, PACT stated that “[a] mere direct connection between two units is not a dedicated connection unless that connection is specifically devoted to connecting those two units, and thus not to other units. Hence, a communication line(s) that is *shared* by a multitude of different devices cannot be a ‘dedicated’ connection.” Appx33956 (emphasis in original).

PACT made clear that all segments of the end-to-end path in Fu are shared and indicated (using “for example” and “includes”) that a few exemplary segments were only illustrative:

> In Fu, a processor 202N is able to connect to a memory 214A, over a line 216A, via a memory controller 260A of MCU 208A, accessed over channel 210A, by connecting thereto over vertical signal path 318K+N of the FCU 212 and horizontal signal path 364A of the FCU 212. This

> connection between processor 202N and memory 214A … is certainly not a dedicated connection … because, ***for example***, processor 202A, like processor 202N, also connects to the same memory 214A ***via a connection path that also includes*** horizontal signal path 364A, channel 210A, memory controller 260A of MCU 208A, and line 216A.

Appx33956-33957 (emphasis added) (internal references to Fu's figures omitted). The examiner subsequently reversed himself and confirmed the patentability of the challenged claims. Appx33970-33971.

### D. District Court Proceedings

#### 1. The '301 Patent

Intel moved for summary judgment of non-infringement of claims 8, 16, and 17 of the '301 Patent, arguing that "[t]he '301 claims all require 'a plurality of data processing elements adapted for *programmably processing sequences*,'" Appx11225 (quoting '301 Patent (Appx118 (15:60-61) (emphasis in original)), and that "no disputed issue of material fact exists that the accused Intel processors are instruction processors, and therefore process instructions, not data," *id.*

PACT opposed Intel's motion, arguing that Intel had failed to demonstrate the absence of a genuine issue of material fact on the question of processing sequences of data. PACT cited its expert Dr. Conte's showing that Intel's products are capable of processing not just instruction sequences but also data sequences, Appx14685 (citing Appx24308-24316 (¶¶ 286-292)), including Dr. Conte's evaluation of an Intel document demonstrating that Intel's "TBBs [threading building blocks] can be

used to 'express pipelining,' which is a sequential processing of data among cores forming a pipeline," Appx24315-24316.

On March 24, 2023, the district court granted summary judgment to Intel. After discussing a PACT disclaimer that narrowed the '301 Patent's claims to processing sequences of data (and not only processing sequences of instructions), Appx5-6, the court asserted that "[t]he Parties don't dispute that Intel's chips only process sequences of instructions. Because PACT disclaimed sequences of instructions and limited its claims to data sequences, Intel's products can't infringe." Appx8. But in holding that PACT "do[es]n't dispute that Intel's chips only process sequences of instructions," *id.*, the court did not confront PACT's evidence that Intel's chips are also capable of processing sequences of data.

PACT moved for reconsideration, highlighting the evidence the district court had overlooked. Appx27481-27486. PACT also pointed to its response to Intel's statement of material facts as to which there is (allegedly) no dispute, in which PACT stated, "[t]o the extent material fact 13 contends the Accused Products are 'instruction processors' and thus necessarily cannot process data, PACT disputes material fact 13. Nothing in the materials cited in material fact 13 indicates that Accused Products cannot sequentially process data …." Appx14720 (¶ 13).

Intel's opposition to the motion for reconsideration argued, for the first time, that "PACT cannot survive summary judgment merely by asserting that it is ***possible***

for a processor to perform both functions—it must come forward with specific evidence that Intel's processors do so." Appx27502 (emphasis in original).

The district court denied PACT's motion for reconsideration based on Intel's new argument, holding that "Dr. Thomas Conte's expert report did not opine that Intel's processors process sequences of data; it only says that they 'can' process sequences of data. But ability is not the same as performance. Disputing whether Intel's processors can sequentially process data is not the same as arguing that they do." Appx22 (internal citation omitted); *see also* Appx23 (similar).

PACT filed a second motion for reconsideration, explaining that "the law is clear that an accused device can be infringing as long as it is *capable* of infringing." Appx27797 (citing, *inter alia*, *Intel Corp. v. ITC*, 946 F.2d 821, 832 (Fed. Cir. 1991); *Finjan*, 626 F.3d at 1204) (emphasis in original)).

The district court again denied reconsideration. The court did not dispute that this Court's precedent holds that, when a device claim is at issue, an accused device can infringe as long as it is capable of performing the claimed functionality. And the court did not deny that PACT had proffered evidence (relying on Dr. Conte) that Intel's products were capable of processing sequences of data. But the court declined to apply this case law to this evidence because, according to the court, PACT had cited the case law too late. Appx27936. The court did not acknowledge that (1) only in Intel's opposition to PACT's first motion for reconsideration had

Intel first argued that PACT's evidence was deficient because it went only to capability of use rather than actual use, and (2) PACT's second motion for reconsideration was its first opportunity to respond to Intel's new argument.

2. The '593 Patent

Intel moved for summary judgment of non-infringement of the '593 Patent, arguing that Intel's accused products do not infringe because, from the perspective of a single memory unit, both the co-located processing core and other processing cores use one shared line leading to that memory unit. Appx11233-11234.

PACT responded that the plain meaning of "dedicated" as "assigned exclusively" did not prohibit overlap/sharing on a final line leading to the memory unit so long as there was at least one segment along the path that was uniquely devoted to that memory unit and its co-located processing core. Appx14691-14692. *See also* Appx14688-14690.

The district court agreed with PACT and denied Intel's motion, explaining:

> There is a dispute of fact as to whether the C-Bo constitutes an access point or acts as a combined path to the LLC slice, and whether there is a secondary bus path in the C-Bo for non-co-located cores. If the C-Bo acts only as an interface, but there are separate bus paths within it for co-located and non-co-located cores, it's possible that it infringes. But if the signals overlap in the C-Bo, then it might not infringe. The Parties have provided expert testimony and other evidence to support their positions. Therefore, a jury must hear these facts and decide infringement.

Appx8-9.

After Intel lost its *ex parte* reexamination (*see supra*, at 15), Intel requested and the district court granted leave to file a renewed motion for summary judgment. Appx33613-33615. In that motion, Intel argued that PACT's statements in the *ex parte* reexamination constituted a disclaimer that narrowed the claim term "dedicated connection" to require that ***all segments*** on the path between a processing core and its paired memory unit must be uniquely devoted to that pair and not shared with any other elements. Appx33641 ("PACT[] … effected a disclaimer of ***any*** shared communication lines.") (emphasis original). *See also* Appx33639 ("***no*** portion" can be shared (emphasis in original)).

Intel alleged that the communication path between Intel's products' processing core accessing its co-located memory unit, and another path used by other non-co-located processing cores to access the same memory unit, [redacted] and remain [redacted] on the final line leading to that memory unit. Appx33635. Intel argued that, "[u]nder PACT's disclaimer, these overlapping portions of the path … precludes [*sic.*] the existence of a 'dedicated connection'" between the processing core and its co-located memory unit. Appx33642.

The district court granted summary judgment to Intel. The court's analysis section did not explicitly address the "all segments" versus "at least one segment" issue and relied on an alleged disclaimer by PACT during the *ex parte* reexamination proceeding that does not specifically address that issue. Based on the alleged

disclaimer, the court "construe[d] the term 'dedicated connection' to mean 'a connection designed to directly interconnect a particular device to a particular memory via a link inaccessible to other devices and memories.'" Appx43. In the background section of the court's order, the court had quoted the examiner's statement that, "'since ***part of*** the connection between the memory and the [core] is shared [in Fu], there is no dedicated connection.'" Appx36 (quoting Appx33970) (emphasis in original).[4]

Under the district court's claim construction that "a physically dedicated connection" means that all segments between a processing core and its paired memory unit must be uniquely devoted to communications between that pair (*i.e.*, no segment is shared), the court's infringement analysis could have focused on whether there is even one shared segment in Intel's products. The court, however, held that there is no genuine factual dispute that all segments are shared in Intel's products. Appx44-45 ("All connective structures in this chain directly interconnect a particular device to a particular memory, as the claim language requires, but no structure does so while excluding other devices and memories."), Appx44 (a communication "must go through the ring structure" "[e]ven if the processor is communicating with its co-located LLC"). In so ruling, the court did not confront

---

[4] In fact, ***all*** segments of the end-to-end paths between the processing cores and memory units in Fu are shared. *See supra*, at 12-15; *infra*, at 45, 47.

its own prior holding, in denying Intel's first motion for summary judgment, that a "dispute of fact" exists on that issue, as reasonable jurors might find that "there are separate bus paths … for co-located and non-co-located cores" with the separate path for the co-located core uniquely devoted to communications between the memory unit and its co-located core, Appx8-9, or PACT's evidence that would support such a finding.

This appeal followed.

## SUMMARY OF ARGUMENT

### I

In numerous cases, including *Finjan*, 626 F.3d at 1204, this Court has held that, to infringe a device claim that recites capability and not actual operation, the accused device need only be capable of performing the claimed functionality, and the plaintiff need not show that the accused device actually performs that functionality. Here, the '301 Patent's claim 8 is such a claim, reciting "[a] processor ***device***, comprising a plurality of data processing elements ***adapted for*** programmably processing sequences …." Appx118 (15:59-61) (emphasis added). Thus, what is claimed is the adaptation of the device to allow for a functionality (programmably processing sequences, *i.e.*, processing sequences of data), not actual performance of the functionality.

In opposing summary judgment, PACT proffered evidence from which reasonable jurors could find that Intel's accused products are capable of processing sequences of data. For example, Intel's own document admits that "TBBs [threading building blocks in Intel's chips] ***can be used*** to 'express pipelining,' which is a sequential processing of data among cores forming a pipeline." Appx24315 (emphasis added). The district court thus erred in granting Intel's motion for summary judgment; vacatur and remand for trial is required.

The district court offered a series of unpersuasive rationales for not relying on this precedent and evidence to deny summary judgment. First, in its order denying summary judgment, the court asserted that "[t]he Parties don't dispute that Intel's chips only process sequences of instructions" and therefore "Intel's product can't infringe." Appx8. But that disregards the just-described evidence that PACT timely presented in opposing summary judgment. Second, when PACT pointed out this error in a motion for reconsideration, the court shifted to rely on a supposed principle that "ability is not the same as performance. Disputing whether Intel's processors can sequentially process data is not the same as arguing that they do." Appx22. But that principle is the exact opposite of this Court's precedents including *Finjan*. Finally, when PACT pointed to that case law in its second motion for reconsideration, the district court held that PACT waived its ability to rely on it by failing to cite it earlier in the case. But there is no authority for such a waiver rule

(indeed, parties are allowed to cite additional legal authority on appeal), and there is no dispute that PACT timely presented its evidence of capability of use in opposing summary judgment.

## II

Relying only on an alleged prosecution disclaimer by PACT, the district court construed "a physically dedicated connection" in the '593 Patent to mean that ***all segments*** of the end-to-end path between a processing core and its paired memory unit are uniquely devoted to communications between those two elements. Appx36.

That was error. The plain language "***a*** physically dedicated connection," Appx152 (12:39) (emphasis added), conveys that only at least one segment, not all segments on the end-to-end path between a processing core and its paired memory unit, is uniquely devoted to communications between those two elements. The embodiments further support this construction because they contain shared segments at the termini of the end-to-end path (and uniquely-devoted segments in the middle), and hence would not practice the claim if the district court's construction were correct.

Contrary to the district court's holding, PACT did not disclaim such a construction during an *ex parte* reexamination proceeding, especially in view of this Court's "demanding standard" to find such a disclaimer. *Avid Tech.*, 812 F.3d at 1045. The PACT statement upon which the district court relied, Appx41—"A mere

direct connection between two units is not a dedicated connection unless that connection is specifically devoted to connecting those two units, and thus not to other units. Hence, a communication line(s) that is shared by a multitude of different devices cannot be a 'dedicated' connection," Appx33956—did not explicitly address whether a "connection" or a "communication line" means the entire end-to-end path between a processing core and its paired unit, as opposed to a segment on that path. Rather, PACT's statement focused on a distinction between a "direct" connection and a "dedicated" connection by emphasizing that the latter is uniquely devoted to connecting two units. That is understandable because all segments in the prior art (Fu) that PACT was trying to distinguish are shared segments, and thus PACT had no reason to address a scenario where at least one segment is uniquely devoted to a processing core-memory unit pair but others are shared.

Applying the correct construction that only at least one segment is uniquely devoted to a processing core-memory unit pair to the facts, the district court erred in granting summary judgment of non-infringement to Intel. Appx44-45. That order directly conflicts with the court's own first summary-judgment order, which held that reasonable jurors could find that Intel's products contain at least one uniquely-devoted segment, Appx9. The court was correct the first time: for example, PACT presented an Intel document stating, "Where the core communicates with the co-

located [adjacent] C-Bo the [redacted] [a shared segment] is [redacted] ….” Appx34187 (emphasis added).

Finally, even assuming *arguendo* that "a physically dedicated connection" should be construed to require that ***all segments*** are uniquely devoted to communications between a processing core and its paired memory unit (or, put another way, that no segment along that end-to-end path is shared), reasonable jurors could still find that Intel's products infringe because any shared lines should not be considered part of the path, but rather are interfaces of the memory unit or processing core or memory unit, and thus are part of those elements rather than segments of the path between them.

Accordingly, the district court erred in granting Intel summary judgment of non-infringement on the '593 Patent, and this Court should vacate and remand for trial.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment "under the law of the regional circuit, [here] the Third Circuit." *Valeant Pharms. Int'l, Inc. v. Mylan Pharms. Inc.*, 955 F.3d 25, 28 (Fed. Cir. 2020) (citation omitted). The Third Circuit "review[s] a district court's grant of summary judgment de novo" and "will affirm a grant of summary judgment only if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party, it

concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." *Jaffal v. Dir. Newark N.J. Field Off. Immigr. & Customs Enforcement*, 23 F.4th 275, 281 (3d Cir. 2022) (citations and quotations omitted). The summary-judgment movant (here, Intel) bears the "initial responsibility of … demonstrat[ing] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), after which the non-movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial," *id.* at 324 (internal quotation marks omitted). *See also, e.g.*, *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 773 (3d Cir. 2013) (same, citing *Celotex*).

The district court's summary-judgment ruling on the '593 Patent was impacted in part by the court's claim construction, and that construction rested entirely on the court's determination that PACT had disclaimed a particular construction during *ex parte* reexamination. In these respects as well, this Court's review is de novo. *See, e.g.*, *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 808 (Fed. Cir. 2021) ("Claim construction is ultimately a question of law, decided de novo on review, as are the intrinsic-evidence aspects of a claim-construction analysis."); *Genuine Enabling Tech. LLC v. Nintendo Co., Ltd.*, 29 F.4th 1365, 1372 (Fed. Cir.

2022) (“We review the application of prosecution disclaimer de novo”) (citation omitted).

Intel, as “[t]he party seeking to invoke prosecution history disclaimer[,] bears the burden of proving the existence of a clear and unmistakable disclaimer that would have been evident to one skilled in the art,” *Genuine Enabling Tech.*, 29 F.4th at 1374 (quotation marks and citation omitted). *See also, e.g.*, *Avid Tech.*, 812 F.3d at 1045 (“When the prosecution history is used solely to support a conclusion of patentee disclaimer, the standard for justifying the conclusion is a high one.”).

## ARGUMENT

### I. PACT PRESENTED EVIDENCE FROM WHICH REASONABLE JURORS COULD FIND THAT INTEL’S PRODUCTS INFRINGE THE ’301 PATENT

In opposing summary judgment, PACT adduced evidence from its expert that Intel’s chips are capable of processing sequences of data. The district court disregarded that evidence, and then deemed it irrelevant, holding that only actual use, not capability of use, matters. But as this Court has repeatedly held, for a device claim, it suffices for an infringement plaintiff to demonstrate that the accused product is capable of performing the functionality recited in the patent claim. Once PACT cited this case law, the district court did not dispute it (and also did not dispute that PACT had offered evidence of capability of use), but rather held that PACT had cited the case law too late. That too is error: a party cannot waive controlling case

law, PACT bore the burden only of "designat[ing] specific ***facts*** showing that there is a genuine issue for trial," *Celotex*, 477 U.S. at 324 (emphasis added)—not case law—and in any event PACT cited the case law at the first possible opportunity after Intel had criticized PACT's evidence as going only to capability of use.

### A. For A Patent Such As The '301 Patent That Claims A Device, To Prove Infringement, A Plaintiff Need Show Only That The Accused Product Is Capable Of Performing The Claimed Functionality, And Here PACT Adduced Evidence From Which Reasonable Jurors Could So Find

"[T]o infringe a claim that recites capability and not actual operation, an accused device 'need only be capable of operating' in the described mode." *Finjan*, 626 F.3d at 1204 (quoting *Intel*, 946 F.2d at 832). Put another way, unlike a "method" claim that "require[s] performance of each claimed step," a device or apparatus claim "do[es] not require the performance of any method steps." *Finjan*, 626 F.3d at 1204. Thus, one of the device claims in *Finjan* recited a "computer-readable storage medium storing program code for causing a server that serves as a gateway to a client to perform the steps of: receiving ...; comparing ...; and preventing execution...." *Id.* at 1205 (quotation marks omitted). This Court held that "[t]his language does not require that the program code be 'active,' only that it be written 'for causing' a server … or a computer … to perform certain steps." *Id.* (internal quotation marks omitted). Accordingly, the plaintiff needed only to show that the accused device was "'capable of operating' in the described mode," and this

Court affirmed the jury's verdict of infringement because it had heard evidence that would support such a finding. *Id.* at 1204.

Similarly, in *Intel*, this Court, accepting an argument Intel made there that is effectively the opposite of the one Intel advanced here, held that, "[b]ecause the language of claim 1 refers to 'programm*able* selection means' and states 'whereby *when* said alternate addressing mode is selected' ..., the accused device, to be infringing, need only be capable of operating in the page mode. Contrary to GI/M's argument, actual page mode operation in the accused device is not required." 946 F.2d at 832 (emphasis in original). *See also, e.g.*, *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1217 (Fed. Cir. 2014) ("the jury could properly base its infringement finding on the reasonable capability of the unmodified accused devices.").

This rule plainly applies here. Claim 8 of the '301 Patent recites "[a] processor ***device***, comprising a plurality of data processing elements adapted for programmably processing sequences …." Appx118 (15:59-61) (emphasis added).[5] As in *Finjan*, this claim concerns a "device" or "apparatus," rather than a method. Moreover, also as in *Finjan*, claim 8 here concerns a device "for" doing something, specifically a device that is "adapted ***for*** programmably processing sequences," Appx118 (emphasis added). In other words, what is claimed is the adaptation of the

[5] Claims 16 and 17 depend on claim 8, and thus rely on the claim 8 language quoted in text. Appx118 (16:64-65), Appx119 (17:1-2).

device to allow for a functionality (programmably processing sequences, *i.e.*, processing sequences of data), not actual performance of the functionality. Accordingly, to withstand summary judgment, PACT needed "only" to adduce sufficient evidence from which reasonable jurors could find that Intel's chips are "'capable of operating' in the described mode," not that they actually have so operated. *Finjan*, 626 F.3d at 1204 (quoting *Intel*, 946 F.2d at 832).

PACT met that burden. In responding to Intel's statement of material undisputed facts, PACT stated:

> To the extent material fact 13 contends the Accused Products are "instruction processors" and thus necessarily cannot process data, PACT disputes material fact 13. Nothing in the materials cited in material fact 13 indicates that Accused Products cannot sequentially process data, and nothing in the Court's claim construction excluded processors that are capable of executing instructions from the Court's definition of sequential data processors.

Appx14720 (¶ 13). PACT supported its assertion with evidence from its expert, Dr. Conte. *See* Appx24308-24316. For example, Dr. Conte explained, relying on a document Intel produced in discovery, that "TBBs [threading building blocks in Intel's chips] ***can be used*** to 'express pipelining,' which is a sequential processing of data among cores forming a pipeline." Appx24315 (emphasis added). *See also* Appx14685 (PACT's summary-judgment opposition) (citing this and other evidence).

### B. The District Court Erroneously Refused To Apply The Rule That A Device Claim Is Infringed If The Accused Product Is Capable Of Performing The Claimed Functionality

The district court relied on several rationales to grant summary judgment to Intel, first disregarding PACT's evidence, then deeming it legally irrelevant, and finally accepting it as relevant but insisting that PACT had cited the relevant case law too late. All of these rationales are erroneous.

**1.** In its initial order granting Intel summary judgment, the district court held without elaboration that "[t]he Parties don't dispute that Intel's chips only process sequences of instructions" and therefore "Intel's product can't infringe." Appx8. This order failed to confront the evidence discussed above, in plain violation of the principle that summary judgment must be denied if the non-movant adduces evidence from which reasonable jurors could find in its favor. *E.g.*, Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact …."); *Omegaflex, Inc. v. Parker-Hannifin Corp.*, 243 F. App'x 592, 597 (Fed. Cir. 2007) ("the district court erroneously disregarded the non-movant's evidence in the summary judgment context"); *Yuba Goldfields, Inc. v. United States*, 723 F.2d 884, 889 (1983) ("evidence disregarded by the trial court … would point in a direction of determinations distinct from those reached by the trial court").

**2.** PACT moved for reconsideration, citing the evidence discussed above, including Dr. Conte's demonstration that Intel's products "can be used [for] … sequential processing of data" (Appx24315). *See* Appx27483-27485. In opposing PACT's motion for reconsideration, Intel argued for the first time that "PACT cannot survive summary judgment merely by asserting that it is possible for a processor to perform both functions [*i.e.*, processing of sequences of instructions and sequences of data]—it must come forward with specific evidence that Intel's processors do so." Appx27502.

The district court's order on the motion for reconsideration, unlike its original order on summary judgment, confronted the evidence, but erroneously deemed it irrelevant by accepting Intel's argument that actual use (not simply capability of use) is required:

> Dr. Thomas Conte's expert report did not opine that Intel's processors process sequences of data; it only says that they "can" process sequences of data. (D.I. 318-1 at ¶¶ 290-91 [Appx24314-24316].) But ability is not the same as performance. Disputing whether Intel's processors can sequentially process data is not the same as arguing that they do. Many products can technically execute an infringing function without doing so, but that capability doesn't mean the product infringes. Therefore, a dispute of fact about whether the accused products can sequentially process data is not material ….

Appx22-23 (order on PACT's first motion for reconsideration). In so holding, the district court accepted Intel's argument, made for the first time in the case in its opposition to PACT's first motion for reconsideration.

That ruling is erroneous as a matter of law. As shown above, this Court has repeatedly held that, "to infringe a claim that recites capability and not actual operation, an accused device 'need only be capable of operating' in the described mode." *Finjan*, 626 F.3d at 1204; *see also supra*, at 28-29. PACT thus filed a second motion for reconsideration explaining this point. Appx27797-27798.

**3.** The district court did not contest that legal principle (or that PACT had adduced evidence from which reasonable jurors could find that Intel's products are capable of processing sequences of data). Instead, the court adhered to its original grant of summary judgment on the ground that PACT had supposedly invoked the legal principle too late. Appx27936 ("The problem for PACT is that it didn't make that argument during summary judgment briefing. It raised its legal argument regarding apparatus claims for the first time in its Motion For Reconsideration. Notably, of the six cases PACT cites for this argument, none—not one—appears in its Opposition to Intel's summary judgment motion.").

This ruling again is error. In opposing summary judgment, PACT bore the burden only of "designat[ing] specific ***facts*** showing that there is a genuine issue for trial," *Celotex*, 477 U.S. at 324 (emphasis added); *Guidotti*, 716 F.3d 764, 773 (3d Cir. 2013) (same, citing *Celotex*). PACT plainly did so by responding to Intel's statement of allegedly undisputed facts, Appx14720 (¶13), and by filing an opposition brief referencing Dr. Conte's report, Appx14685, which in turn

demonstrated that Intel's products are capable of processing data sequences, *e.g.*, Appx24315 ("TBBs [threading building blocks in Intel's chips] can be used to 'express pipelining,' which is a sequential processing of data among cores forming a pipeline.").

The district court cited no authority supporting its holding that PACT waived this rule by neglecting to cite the ample case law in its summary-judgment opposition. Indeed, authority is to the contrary. In *O2 Micro International Ltd. v. Beyond Innovation Technology Company*, 521 F.3d 1351 (Fed. Cir. 2008), for example, appellants ***on appeal*** "propose[d] the same construction on appeal as was presented to the district court. While Defendants–Appellants employ different arguments in support, these new arguments simply incorporate an understanding of the parties' dispute that has developed through the course of litigation," *id.* at 1360. Accordingly, this Court held that "no waiver has occurred." *Id.* at 1359. Numerous other cases hold similarly. *E.g.*, *ECB USA Inc. v. Chubb Ins. Co. of N.J.*, 113 F.4th 1312, 1321 (11th Cir. 2024) (while "an issue … can be waived or forfeited," "an argument … cannot be"); *Walden v. Gen. Elec. Int'l, Inc.*, 119 F.4th 1049, 1057 n.3 (6th Cir. 2024) ("There is no rule prohibiting a party from [citing new authorities], and new citations to relevant authorities are as welcome on appeal as in the court below." (internal quotation marks and citation omitted; brackets in original)). Indeed, even the district court below recognized that "PACT will have a chance to

appeal when there is a final judgment in this case, and maybe it will persuade the Federal Circuit that it did enough to preserve the issue." Appx29. If it is permissible for an appellant to raise a new argument or authority for the first time on appeal, it follows *a fortiori* that it is permissible to do so in a later pleading in the district court ***before*** appeal.[6]

For another reason as well, PACT did not waive its ability to rely on *Finjan* and the other cases cited above by neglecting to do so in its summary-judgment opposition brief. Intel was the first to argue, in opposing PACT's motion for reconsideration of the district court's original summary-judgment order, that it is insufficient as a matter of law for an infringement plaintiff to show that an accused product is "capable of" performing the claimed functionality. *See* Appx27502. Under the district court's own local rules, no reply is allowed in support of a motion for reconsideration. Policies and Procedures of the Hon. Joshua D. Wolson at II.B.8.[7] Accordingly, PACT's first opportunity to respond to Intel's assertion was in PACT's second motion for reconsideration. In such circumstances, as a matter of

[6] Moreover, PACT's failure to cite this case law in its summary-judgment opposition is understandable because this is hardly a gray area in the law. As discussed in text above, this Court has repeatedly held that, in the case of a device or apparatus claim, an infringement plaintiff need only show that the accused product is capable of performing the functionality recited by the claim, not that it actually does so.

[7] https://www.paed.uscourts.gov/sites/paed/files/documents/procedures/wolpol.pdf

due process and procedural fairness, this Court and others have allowed the party to make that response and have not considered it waived. *E.g.*, *Parkervision, Inc. v. Vidal*, 88 F.4th 969 (Fed. Cir. 2023) ("ParkerVision's patent owner response, for example, asserted that 'storage element' includes a particular storage requirement by proposing the term means 'an element of an energy transfer system that *stores non-negligible amounts of energy from an input electromagnetic signal*.' The Board was obligated under *Axonics* to afford Intel the opportunity to respond to this construction and, in particular, to the new storage requirement that emerged in ParkerVision's response." (citing *Axonics, Inc. v. Medtronic, Inc.*, 75 F.4th 1374, 1384 (Fed. Cir. 2023) (internal citation omitted; emphasis in original)). *See generally Burns v. Gadsden St. Community College*, 908 F.2d 1512, 1517 (11th Cir. 1990) ("the rules of procedure are intended to provide the nonmovant with a reasonable and meaningful opportunity to respond to the legal theories and facts as asserted by the party moving for summary judgment").

In short, the timing of PACT's citation of *Finjan* and similar cases did not warrant the district court, and certainly does not warrant this Court, to disregard those controlling authorities. Once they are applied to the evidence PACT timely put forward in opposition to summary judgment, it is clear that PACT raised a genuine dispute of fact, and that the district court's grant of summary judgment to Intel must be vacated.

## II. PACT PRESENTED EVIDENCE FROM WHICH REASONABLE JURORS COULD FIND THAT INTEL'S PRODUCTS INFRINGE THE '593 PATENT

The district court construed "a physically dedicated connection" in the '593 Patent to mean that ***all segments*** of the end-to-end path between a processing core and its paired memory unit are uniquely devoted to communications between those two elements. Appx36. To the contrary, this language should be construed to mean that at least one segment of the end-to-end path is uniquely devoted to communications between the paired elements. Contrary to the district court's holding, PACT did not disclaim such a construction.

Turning to infringement analysis and the facts of Intel's products, the district court erred in holding, in conflict with its first summary-judgment order, that no segment of the communication path between a processing core and its co-located memory unit in Intel's products is uniquely devoted to that processing core and memory unit (or, put another way, that all segments are shared).[8] PACT adduced

[8] *Compare* Appx9 (first summary-judgment order) ("If the C-Bo acts only as an interface, but there are separate bus paths within it for co-located and non-co-located cores, it's possible that it infringes. But if the signals overlap in the C-Bo, then it might not infringe. The Parties have provided expert testimony and other evidence to support their positions. Therefore, a jury must hear these facts and decide infringement."), *with* Appx44-45 (second summary-judgment order) ("All connective structures in this chain directly interconnect a particular device to a particular memory, … but ***no structure does so while excluding other devices and memories***. No reasonable juror could find that the Accused Devices practice all of the '593 Patent's limitations, so summary judgment is appropriate." (emphasis added)).

sufficient evidence from which reasonable jurors could find that at least one segment is uniquely devoted to a processing core and its co-located memory unit.

Finally, even assuming *arguendo* that "a physically dedicated connection" should be construed to require that ***all segments*** are uniquely devoted to communications between a processing core and its paired memory unit (or, put another way, that no segment along that end-to-end path is shared), reasonable jurors could still find that Intel's products infringe because any shared lines should not be considered part of the path, but rather are interfaces of the memory unit or processing core or memory unit, and thus are part of those elements rather than segments of the path between them. As PACT's expert put it, "a [skilled artisan] would understand that different paths can be used to reach Rome by different travelers even if those travelers are forced to walk up the same final steps to reach the gates of the city." Appx33984. Intel's own documents confirmed that the final lines leading to the memory unit and processing core are merely "interfaces." Appx33818, *see also, e.g.*, Appx34183, Appx34055.

### A. "A Physically Dedicated Connection" Should Be Construed To Mean That Only At Least One Segment Of The Path Between A Processing Core And Its Paired Memory Unit Is Uniquely Devoted To Communications Between Those Elements, And PACT Did Not Disclaim Such A Construction

This Court "'generally give[s] words of a claim their ordinary meaning in the context of the claim and the whole patent document; [and] the specification

particularly, but also the prosecution history, informs the determination of claim meaning in context, including by resolving ambiguities'; but 'even if the meaning is plain on the face of the claim language, the patentee can, by acting with sufficient clarity, disclaim such a plain meaning or prescribe a special definition.'" *K-fee Sys. GmbH v. Nespresso USA, Inc.*, 89 F.4th 915, 919 (Fed. Cir. 2023) (quoting *World Class Technology Corp. v. Ormco Corp.*, 769 F.3d 1120, 1123 (Fed. Cir. 2014)). Although the district court relied entirely on (alleged) prosecution history disclaimer, *see* Appx41-43, we begin with the plain language of the claim.

Claim 1 of the '593 Patent recites in relevant part that

> each of at least some of the data processing cores includes ***a*** physically dedicated connection to at least one physically assigned one of the plurality of memory units, the assigned one of the plurality of memory units being accessible by another of the data processing cores via a secondary bus path of the bus system.

Appx152 (12:38-44) (emphasis added). This language requires only "a" physically dedicated connection, not that all segments along the end-to-end path between a processing core and its paired memory unit be physically dedicated to the pair.

The specification confirms this construction: This Court "normally do[es] not interpret claim terms in a way that excludes embodiments disclosed in the specification," *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008), and here those embodiments depict one input segment into a memory unit and one output segment out from a memory unit for each type of data, which means that these

segments inevitably must be shared both for communications with the paired processing core and with other processing cores without removing the embodiments from the claim's scope.[9]

Figure 7 below depicts the memory unit as having a single input interface and a single output interface for each type of data. For write operations, the input interface is a 32-bit Write Data Input that receives data to be written, and a 12-bit Write Address Input that receives the address of the memory where data is to be written. For read operations, a 12-bit Read Address Input receives the memory address of data to be read, and a 32-bit Read Data Output provides the read data.[10]

---

[9] PACT acknowledges that it did not rely on the embodiments below. But they provide further support for the same claim construction PACT advanced, and therefore may be considered by this Court. *O2 Micro International Ltd.*, 521 F.3d at 1359-60.

[10] "Event Output" refers to trigger signals, not data. *See, e.g.*, Appx152 (11:57-63).



FIG. 7

Appx143.

Similarly, the processing cores in the embodiments have a single data input segment and a single data output segment for each type of data, as shown in Figure 6A below. These single input and output segments must therefore be shared for that processing core's communications with its paired memory unit and its communications with non-paired memory units.



FIG. 6A

Appx141.

### B. PACT Did Not Disclaim A Construction Of "A Physically Dedicated Connection" To Mean That Only At Least One Segment Of The End-To-End Path Between A Processing Core And Its Paired Memory Unit Is Uniquely Devoted To That Pair

The district court's claim construction relied entirely on an alleged disclaimer by PACT during *ex parte* reexamination. Specifically, PACT had asserted during the reexamination:

> A mere direct connection between two units is not a dedicated connection unless that connection is specifically devoted to connecting those two units, and thus not to other units. Hence, a communication line(s) that is *shared* by a multitude of different devices cannot be a "dedicated" connection.

Appx33956 (emphasis in original). Quoting part of this statement, the district court concluded that, "[i]n PACT's view, [a dedicated connection] **is** a connection that is devoted to connecting two units while excluding connection any and all other units, and it is **not** 'a communication line(s) that is *shared* by a multitude of different devices.'" Appx41 (quoting Appx33956 (emphasis in original)). Based on this alleged disclaimer, the court construed a "dedicated connection" as "a connection designed to directly interconnect a particular device to a particular memory via a link inaccessible to other devices and memories." Appx43.

In this statement, PACT did not explicitly address whether a "connection" or a "communication line" means the entire end-to-end path between a processing core and its paired unit, as opposed to a segment on that path. PACT's statement instead focused on a distinction between a "direct" connection and a "dedicated" connection by emphasizing that the latter is uniquely devoted to connecting two units. Accordingly, PACT's statement does not satisfy the "demanding standard" for holding that PACT disclaimed a situation where at least one but not all segments on the path is uniquely devoted to communications between a processing core and its paired memory unit. *Avid Tech.*, 812 F.3d at 1045 ("Where the alleged disavowal is ambiguous, or even amenable to multiple reasonable interpretations, we have declined to find prosecution disclaimer." (internal quotation marks and citation omitted)); *see also Genuine Enabling Tech.*, 29 F.4th at 1374 (disclaimer will be

found only where patentee's statement is "clear and unmistakable" (quotation marks and citation omitted)).

The sentences that surround the statement on which the district court relied are reasonably interpreted to confirm that PACT was distinguishing from its patent only a situation where all segments in the end-to-end path between a processor and its paired memory unit are shared with other elements. In this respect, *Avid Technology* is instructive. The patent there claimed "[a] distributed data storage system for allowing one or more client systems to access data, comprising: a plurality of *independent storage units* for storing the data." 812 F.3d at 1043 (emphasis in original). The district court ruled that the patentee had disclaimed systems that "use a central controller that identifies the storage unit on which data is stored in response to client requests." *Id.* at 1045 (emphasis omitted). This Court reversed, disagreeing with the district court's interpretation of the patentee's statement during prosecution that "*[c]lients do not issue requests to a central controller unit that in turn identifies storage units that store the data* ***and*** *issues requests to storage units*." *Id.* at 1046 (italics in original; bold added). This Court explained:

> What that [statement] says, by its terms, is that a central controller is excluded if it performs both of two functions: it "identifies storage units that store the data *and* issues requests to storage units." The language on its face does not exclude a central controller that performs only one or the other of the two stated functions—which would have been the meaning if the phrase had used "or" rather than "and." In any event, it

> does not do so clearly, as would be required to find a disclaimer of a central controller that merely identifies the storage units.

*Id.* (internal citation omitted; emphasis in original). Accordingly, this Court held that the patentee's statement would not prevent reasonable jurors from finding that the defendant's product, which used a central controller to identify the storage units but not to issue requests to those storage units, infringed. *Id.* at 1047.

Similarly here, PACT's prosecution statement can reasonably be read to disclaim only a device in which ***all segments*** along the end-to-end path between a processing core and its paired memory unit are shared with other processing cores and memory units. As in *Avid Technology*, PACT's prosecution statement used "and" (not "or") to link the shared segments in the prior-art reference (Fu) being distinguished, thus conveying that the presence of just one shared segment would not differentiate Fu from the '593 Patent:

> This connection between processor 202N and memory 214A … is certainly not a dedicated connection … because, for example, processor 202A, like processor 202N, also connects to the same memory 214A via a connection path that also includes horizontal signal path 364A, channel 210A, memory controller 260A of MCU 208A, ***and*** line 216A.

Appx33956-33957 (emphasis added). *See also supra*, at 12-13 (reproducing and describing Fu's figure showing that all segments, including vertical paths 318 and horizontal paths 364, are shared).

To be sure, the examiner's decision sustaining the '593 Patent, which came after PACT's prosecution statement discussed above, arguably suggests that a device

with even one shared segment along the end-to-end path from a processing core to its paired memory unit would be outside the scope of the '593 Patent. *See* Appx33971 ("However, a portion of the connection between the core and the memory is a shared connection. Hence, the connection is not a dedicated connection, as defined above."). But a patentee's "silence regarding statements made by the examiner during prosecution, without more, cannot amount to a 'clear and unmistakable disavowal' of claim scope." *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005); *see also 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373-74 (Fed. Cir. 2003) ("Prosecution history … cannot be used to limit the scope of a claim unless the *applicant* took a position before the PTO." (emphasis in original; internal quotations and citations omitted)).

In *Salazar*, the examiner issued a notice of allowance that unilaterally construed the term "elastic" to exclude nylon even though the applicant had not represented that it excluded nylon. *Id.* at 1343-45. The district court found the examiner's remarks removed nylon from the scope of "elastic." *Id.* at 1345. This Court reversed, finding that the examiner's unilateral statements did not give rise to a clear disavowal of claim scope as "the applicant disavowed nothing," *id.* at 1345-47, nor was the applicant under any obligation to respond to the examiner's unilateral statements in the notice of allowance, *id.* at 1345.

Similarly here, as explained above, PACT never argued during prosecution that the existence of even one shared segment along the end-to-end path from a processing core to a memory unit would negate a "dedicated connection." As in *Salazar*, the examiner's unilateral interpretation and PACT's subsequent silence should not rise to a clear and unmistakable disavowal.

Moreover, the examiner's statement here was at most *dicta* because, as explained earlier, the entire end-to-end path in Fu is shared. *See Sarif Biomedical LLC v. Brainlab Inc.*, 725 F. App'x 996, 1000 (Fed. Cir. 2018) (declining to give weight to Patent Trial and Appeal Board's statement regarding indefiniteness because it was *dicta*). Neither PACT nor the examiner had occasion to confront a situation, like the one presented by Intel's products, where at least one segment of the path is uniquely devoted to a processing core-memory unit pair even if other segments of the path may not be.

### C. Under The Correct Claim Construction That "A Physically Dedicated Connection" Means That Only At Least One Segment Of The End-To-End Path Between A Processing Core And Its Paired Memory Unit Is Uniquely Devoted To That Pair, Reasonable Jurors Could Find That Intel's Products Infringe

Reasonable jurors could find that at least one segment in the end-to-end path in Intel's products between a processing core and its co-located memory unit is uniquely devoted to communications between those two elements (hence not shared

with additional processing cores and memory units), and therefore that Intel's products infringe.

The district court correctly so held in its first summary-judgment order, which denied Intel's motion regarding the '593 Patent:

> There is a dispute of fact as to whether the C-Bo constitutes an access point or acts as a combined path to the LLC slice, and whether there is a secondary bus path in the C-Bo for non-co-located cores. ***If*** the C-Bo acts only as an interface, but ***there are separate bus paths within it for co-located and non-co-located cores, it's possible that it infringes.*** But if the signals overlap in the C-Bo, then it might not infringe. The Parties have provided expert testimony and other evidence to support their positions. Therefore, a jury must hear these facts and decide infringement.

Appx8-9 (emphasis added).

Without confronting or distinguishing the district court's own holding in that order, the court's second summary-judgment order reached the opposite conclusion:

> The ring structure is thus akin to a closed-loop rail system: a passenger can get from any station to another, but even if she travels to an adjacent stop she must use the shared train infrastructure. Any processor can communicate with any memory, but it must go through the ring structure. Even if the processor is communicating with its co-located LLC, a communication must pass from processor to CoreBo to RingBo to CacheBo to memory. All connective structures in this chain directly interconnect a particular device to a particular memory, as the claim language requires, but ***no structure does so while excluding other devices and memories***. No reasonable juror could find that the Accused Devices practice all of the '593 Patent's limitations, so summary judgment is appropriate.

Appx44-45 (emphasis added).

Not only does this disregard the court's prior holding, but also evidence (discussed next) from Intel's own document and PACT's expert. Reasonable jurors could find that the ring is ***not*** "a closed-loop rail system: a passenger can get from any station to another, but even if she travels to an adjacent stop she must use the shared train infrastructure." Instead, reasonable jurors could find that there is an overpass (or bypass) for each processing core and co-located memory unit pair that does not use the rail system—or to use the analogy in the Introduction, the highway.

According to Intel's own document, this [redacted] segment is part of the path between a processing core and its co-located memory unit, and it is not shared with other processing cores and memory units. Appx34187 (Intel document stating: "Where the core communicates with the co-located [adjacent] C-Bo the [redacted] is [redacted] and the communication is done [redacted] in [redacted].").[11] Similarly, an Intel figure shows:

[11] In this litigation, Intel has disagreed, asserting that communications between a processing core and its adjacent LLC slice use the [redacted] and [redacted]. Appx33802-33803 (Intel's expert opining that there is no path from the [redacted] to the [redacted] that avoids the [redacted]), Appx33669-33670 (Intel arguing messages from [redacted] to [redacted] must go through [redacted]). It is for a jury to determine whether Intel's litigation position can be reconciled with its own documents and PACT's expert's testimony.

Technical Schematic of Intel's Product

[redacted]

Appx34182 (red oval annotation added). As PACT's expert Dr. Conte explained, interpreting this figure, "each core has … a separate path to a co-located LLC slice that [redacted] the [redacted]." Appx33755. *See also* Appx33740 (Dr. Conte: "Each [processing] core in the CPU also has a physically dedicated connection to their assigned, co-located LLC such that information can be transmitted to a co-located LLC without using the [redacted]."), Appx33762 (Dr. Conte: There is a "dedicated path from the [redacted] to the [redacted] that [redacted] the [redacted].").

Again, the district court's second summary-judgment order failed to confront this evidence or the court's first summary-judgment order that found a genuine dispute of fact. The second order should therefore be vacated.

### D. Even Under A Claim Construction That "A Physically Dedicated Connection" Is Absent If Any Segment Of The Path Is Shared, Reasonable Jurors Could Find That Intel's Products Infringe

This Court need not reach this sub-Point if it agrees with PACT's arguments in Points II.A-C, *supra*. But if this Court holds that "a physically dedicated connection" should be construed to require that ***all segments*** of the path between a processing core and its paired memory unit are uniquely devoted to the pair, reasonable jurors could still find that Intel's products infringe. That is because there is a genuine dispute of fact concerning where the path begins and ends. PACT adduced evidence that would allow reasonable jurors to find that any shared segments are part of the so-called interface of the processing core or memory unit and thus should be considered to be part of those elements rather than segments of the path between them.

PACT's expert, Dr. Conte, explained that the CBo is an interface to the LLC slice and "serves as the port of ***access*** to the LLC slice for all non-collocated CPU cores that wish to access the LLC slice." Appx33981 (emphasis in original). *See also* Appx33818 ("[T]he Technical Design Feature [redacted] and Technical Design Feature [redacted] are ***interfaces*** between the ring and the core and between the ring and the LLC slice." (emphasis added)), Appx33635 (Intel admitting that "[a]ll ***access*** to the LLC slice is performed by the Technical Design Feature [redacted]." (emphasis added)). Similarly, Intel's own document admits that "[e]ach Technical De [redacted] Technical Design Feature [redacted] slices of shared Last Level Cache." Appx34183 (emphasis added). *See*

*also* Appx34055 ("Each [redacted] slice of the LLC." (emphasis added)). The same logic applies to the processing core side since both parties agree that the [redacted] is an interface between the ring and processing core. Appx33738, Appx33818. As an interface, the [redacted] serves as a port of access to the processing core and, thus, the relevant path between the core and memory unit terminates at the interface to the processing core, *i.e.*, the [redacted]. Since the [redacted] is also part of the CBo and it provides the interface to a processing core, reasonable jurors could likewise find that any shared lines in the [redacted] should be considered to be part of the [redacted] and thus not part of the end-to-end path between a processing core and its co-located memory unit.

Accordingly, reasonable jurors could find that any shared lines in Intel's products are not part of the end-to-end path between a processing core and its co-located memory unit, but instead are part of either the processing core or the memory unit. That would leave the path between the processing core and its co-located memory unit uniquely devoted to communications between those two elements, meaning that it infringes the '593 Patent.

## CONCLUSION

The district court's judgment should be vacated and the case remanded for trial.

Dated: February 12, 2025

Respectfully submitted,

*/s/ Sanford I. Weisburst*
Sanford I. Weisburst
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7000
sandyweisburst@quinnemanuel.com

Frederick Lorig
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
fredericklorig@quinnemanuel.com

Mark Tung
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Drive #560
Redwood City, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
marktung@quinnemanuel.com

*Attorneys for Appellant*

# ADDENDUM

# INDEX TO ADDENDUM



| Description | Page(s) |
|---|---|
| Memorandum in support of order granting summary judgment of non-infringement of the ’301 Patent and denying summary judgment of non-infringement of the ’593 Patent | Appx1-18 |
| Order granting summary judgment of non-infringement of the ’301 Patent and denying summary judgment of non-infringement of the ’593 Patent | Appx19-20 |
| Order denying PACT’s first motion for reconsideration of summary judgment for non-infringement of the ’301 Patent | Appx21-23 |
| Memorandum in support of order denying PACT’s second motion for reconsideration of summary judgment for non-infringement of the ’301 Patent | Appx24-29 |
| Order denying PACT’s second motion for reconsideration of summary judgment for non-infringement of the ’301 Patent | Appx30 |
| Memorandum in support of order granting summary judgment of non-infringement of the ’593 Patent. | Appx31-45 |
| Order granting summary judgment of non-infringement of the ’593 Patent. | Appx46-47 |
| Final Judgment | Appx48 |
| Order of dismissal of certain claims and counterclaims | Appx49 |
| U.S. Patent No. 8,312,301 | Appx89-120 |
| U.S. Patent No. 8,471,593 | Appx121-154 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **PACT XPP SCHWEIZ AG,**<br><br>***Plaintiff,***<br>**v.**<br><br>**INTEL CORPORATION,**<br><br>***Defendant.*** | **Case No. 1:19-cv-01006-JDW** |

**MEMORANDUM**

This patent litigation between PACT XPP Schweiz AG ("PACT") and Intel Corporation ("Intel") concerns patents for the data processing architecture in computer chips. Intel has moved for summary judgment of noninfringement, while PACT seeks summary judgment on Intel's affirmative defenses.

## I. BACKGROUND

### A. Facts

Modern computers need to store, access, and move information and data at high speeds. Both PACT and Intel developed multi-processor computer chips that increase processing speeds and expand memory storage. The chips' efficacy depends on their internal architecture, through which they move information between, and access memory from, multiple processors and memory caches. The Parties have developed chip architecture for many years.

PACT and Intel have a long history. In relevant part, PACT met with Intel in the early 2000s to discuss PACT's multi-processor technology. There is no evidence that anyone from Intel's engineering team attended those meetings or received information from those meetings. At the time, PACT didn't hold patents to any of the relevant technology. No working relationship, partnership, or license agreement resulted from those meetings.

In 2012, PACT shared a list of its patents and patent applications with Intel and asked if Intel would like to license any of its technology. There's no evidence that Intel knew the patents in suit existed, or that PACT was prosecuting those applications. Ultimately, Intel didn't seek a license.

Intel started marketing multi-core processor technology in 2011. It is undisputed that Intel's chips execute series of instructions, which are passed along from processor to processor, and which allow the cores to access and store memory in multiple memory caches. PACT claims Intel's system infringes its patents for multi-processor systems, which claim multi-processor chips that execute sequences of data functions. This suit followed.

**B. Procedural History**

On May 30, 2019, PACT filed a complaint asserting that Intel infringed 12 of its patents, including U.S. Patent No. 8,312,301 (the "'301 Patent"), U.S. Patent No. 8,471,593 (the "'593 Patent), and U.S. Patent No. 9,250,908 (the "'908 Patent"). Intel answered and asserted counterclaims on June 4, 2019. By motion and with the Court's permission, Intel Amended its answer on September 10, 2020. The Parties have participated in multiple

rounds of *inter partes review* ("IPR"), as well as appeals of those petitions to the Federal Circuit, which have invalidated a significant number of claims and patents. Litigation regarding two additional patents remains stayed pending the outcome of such proceedings. The Parties filed Motions For Summary Judgment on June 21, 2022.

Since the Parties filed their summary judgment motions, several developments have changed the scope of the case. *First*, the Federal Circuit invalidated claim 17 of the '301 Patent. *Second*, the Federal Circuit reversed the PTAB and invalidated U.S. Patent No. 9,552,047 (the "'047 Patent") and U.S. Patent No. 9,436,631 (the "'631 Patent"). *Third*, following a ruling in the Federal Circuit about the '908 Patent, PACT dismissed its claims about that patent. These developments render moot all of Intel's arguments about those patents or patent claims. It also renders moot Intel's Motion To Strike Portions Of PACT's Expert's Reports (D.I. 274), which relates to expert opinions about the '631 Patent. (It's possible, of course, that PACT will seek and obtain rehearing, rehearing *en banc*, or certiorari concerning the '047 and '631 Patents. If so, I can revisit the mootness determination.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely

disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence ... of a genuine dispute ...." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a

verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See *Celotex Corp.*, 477 U.S. at 322.

## III. DISCUSSION

### A. Intel's Motion

#### 1. The '301 Patent

The surviving claims of the '301 patent require "a plurality of data processing elements adapted for programmably processing sequences." ('301 Patent at 15:60-61.) During claim construction, I gave this language its plain and ordinary meaning. Later, to distinguish the '301 Patent over prior art during IPR, PACT argued that the term "sequences" is limited to data processors and does not include instruction processors. The PTAB neither adopted nor rejected that construction. Instead, the PTAB cited my construction and gave the term its plain and ordinary meaning. Intel asserts that PACT's argument before the PTAB constitutes a disclaimer of scope, meaning that Intel can't infringe because its chips only process instructions.

Statements made during IPR can constitute prosecution disclaimer. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361 (Fed. Cir. 2017). For this doctrine to apply, the disclaimer must be "both clear and unmistakable to one of ordinary skill in the art." *Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1357 (Fed. Cir. 2017) (citations

omitted). If the challenged statements are ambiguous or amenable to multiple reasonable interpretations, prosecution disclaimer is not established." *Id.* at 1358 (same). This rule ensures that claims aren't argued one way to maintain patentability and another against an accused infringer. *See CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376, 1383 (Fed. Cir, 2022). An argument made in IPR may lead to disclaimer even when the PTAB doesn't adopt it, because the statements "still inform the proper construction of the term." *Am. Piledriving Equipment, Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011).

During oral argument at IPR, PACT stated that the term "sequences" is limited to processing sequences of data:

> Petitioner says that they can interpret this phrase in two ways, as sequences of instructions or sequences of data. Now, they claim that if you interpret this as sequences of instructions, then any processing element will read on it, but that would essentially read out the term from the phrase because the phrase is a plurality of data processing elements adopted for programmably processing sequences. If any processing element processes instructions, which any DRAM processor will do, that doesn't give any meaning to the term. You know, ***we focus on the sequences of data***, and this is where, you know, we say that data is passed from one PE to another, the results of one PE is passed on another PE.

(D.I. 318-4 (emphasis added).) PACT later reiterated its disclaimer when it attempted to distinguish the Nicol prior art:

> I wanted to respond to Petitioner Slide 37. **This is about sequences of instructions**. They point to Dr. Mangione-Smith's deposition transcript, and they say this is admissions that meets the claim language. Nothing in this passage points to the claim language. Again**, this is consistent with our point that if you interpret sequences – programmably processing sequences to be**

> **sequences of instructions, then, sure, it's a very broad term**. We're not disputing the general processing elements of Nicol on due process instructions, and our expert does not dispute that. That's not saying it meets the claim language argument. **We're saying, if you interpret that way, it's superfluous as far as the claim language is concerned**.

(D.I. 284-12 at 5 (emphasis added).) PACT's arguments during IPR constitute a "clear and unmistakable" disclaimer of processing sequences of instructions.

PACT is wrong that its arguments can't constitute disclaimer because the PTAB rejected its proposed construction. There is unreported Federal Circuit caselaw that, because a "skilled artisan" would look to a patent's entire history to determine claim scope, arguments that the PTAB rejects can't constitute disclaimer. *See Galderma Lab'ys, L.P. v. Amneal Pharms. LLC*, 806 Fed. Appx. 1007, 1010-11 (Fed. Cir, 2020). But I don't have to decide if that decision is persuasive because the PTAB didn't reject PACT's construction limiting the claims to processing sequences of data. Instead, it rejected PACT's construction that "require[d] data output from one [processor] to another [processor]." (D.I. 318-5 at 3.) The two arguments are not the same. The PTAB found that no construction was necessary because the parties agreed that the plain and ordinary meaning should apply in the IPR, and because I already ruled that the plain and ordinary meaning applies. That is not a rejection of PACT's argument. *See Galderma*, 806 Fed. Appx. at 1011 (distinguishing *American Piledriving* because in *Galderma* there was a clear rejection of the proposed construction). Because the PTAB, standing in the Examiner's shoes as a neutral interpreter of the '301 Patent, did not reject PACT's argument that the

term "sequences" is limited to data sequences, that argument informs how PTAB understood the term's plain and ordinary meaning. *See Am. Piledriving*, 637 F.3d at 1336. Therefore, prosecution disclaimer applies.

The Parties don't dispute that Intel's chips only process sequences of instructions. Because PACT disclaimed sequences of instructions and limited its claims to data sequences, Intel's product can't infringe.

**2. The '593 Patent**

The '593 Patent requires a "bus system [that] includes a first structure dedicated for data transfer in a first direction and a second structure dedicated for data transfer in a second direction; and each of at least some of the data processing cores includes a physically dedicated connection to at least one physically assigned one of the plurality of memory units" or a "dedicated connection to at least one assigned one of the plurality of memory units." ('593 Patent at 12:35-44, 13:42-54.) In other words, the '593 Patent incorporates two main limitations: (1) a system with two dedicated connections transferring data in different directions, and (2) processors with exclusive connections to corresponding memory units. The Parties dispute whether Intel's chips meet these limitations.

PACT claims that Intel's processors ("cores") are directly connected to physically adjacent ("co-located") memory units ("LLC slices") via bus segments in a device called a "C-Bo." There is a dispute of fact as to whether the C-Bo constitutes an access point or

acts as a combined path to the LLC slice, and whether there is a secondary bus path in the C-Bo for non-co-located cores. If the C-Bo acts only as an interface, but there are separate bus paths within it for co-located and non-co-located cores, it's possible that it infringes. But if the signals overlap in the C-Bo, then it might not infringe. The Parties have provided expert testimony and other evidence to support their positions. Therefore, a jury must hear these facts and decide infringement.

### 3. Willful infringement

Willful infringement means "deliberate or intentional" infringement. *SRI Int'l, Inc. v. Cisco Systems, Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021). Culpability for willful infringement "is generally measured against the knowledge of the actor at the time of the challenged conduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016). "Knowledge of the asserted patent[s] and evidence of infringement is necessary, but not sufficient, for a finding of willfulness." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). "[T]he patentee must show the accused infringer had a specific intent to infringe at the time of the challenged conduct." *Id.* at 987.

The undisputed facts in this case don't rise to the level of deliberate infringement. PACT offers three facts for support: (1) PACT's presentations to Intel regarding its technology between 2005-2007; (2) a 2012 email from PACT to Intel containing a spreadsheet of patents and patent applications and an offer to license those patents; and (3) PACT's original complaint, which it filed in February of 2019 and then voluntarily

dismissed, all in Case No. 19-cv-00267 (the "Original Complaint"). None of these are sufficient to prevail on a willful infringement claim.

*First*, there's no evidence suggesting Intel knew about the existence of PACT's patents prior to February 2019, or that it knew that it was infringing those patents. PACT admits that the patents didn't exist when it presented its technology to Intel between 2005 and 2007. PACT points out that the patents in suit claim a priority date of 2005, but that's irrelevant for purposes of willful infringement because it doesn't mean that Intel had the requisite knowledge of those patents (or patent applications) at that time. Even if Intel knew about the patents once they issued, it says nothing of Intel's knowledge or intent between 2005 and the issue date. Additionally, PACT provides no evidence that Intel copied its technology based on those presentations. That's not enough to support a copying allegation.

*Second*, there's no evidence that Intel knew the '593 Patent existed after PACT's 2012 email, and that correspondence did not reference any of the other patents in suit. The spreadsheets that PACT attached to the email included the '593 Patent's application number, not the patent itself. The PTO often rejects patent applications, so a pending application doesn't signal Intel's knowledge that a patent existed. Additionally, Intel responded that it might be interested in licensing patents and requested more information, but PACT doesn't point to any evidence that it responded with details regarding its patents or technology.

PACT also attempts to infer Intel's state of mind regarding the 2012 email by pointing to contemporaneous internal emails on Intel's privilege logs. But none of those emails indicates that Intel knew of the '593 Patent, or that it even discussed the '593 Patent internally. The log indicates there were conversations surrounding patent analysis, which could be relevant to any of the dozens, if not hundreds, of patents referenced in the spreadsheets that PACT sent. (*See* D.I. 318-29.) It would be a logical leap, not just a reasonable inference, to assume that any of those analyses relates to the '593 Patent, and PACT is only entitled to reasonable inferences, not logical leaps, in opposing summary judgment.

*Third*, and finally, although the Original Complaint informed Intel of PACT's patents and infringement contentions, it doesn't create a claim for willful infringement. Other judges in this district have found that "where the defendant's alleged knowledge of the asserted patents is based solely on the content of that complaint or a prior version of the complaint filed in the same lawsuit," there is no claim for willful infringement. *See, e.g., Boston Sci. Corp. v. Nevro Corp.*, 560 F. Supp. 3d 837, 845 (D. Del. 2021) (citation omitted). I agree with Judge Connelly's conclusion in that case. There are many reasons why a complaint can't constitute the basis willful infringement, among them that a complaint can't constitute an element of a claim that it purports to raise, and that it would mean all infringement suits involve willful infringement. *See Id.*; *Wrinkl, Inc. v. Facebook, Inc.*, No. 20-cv-1345-RGA, 2021 4477022 at *8 (D. Del. Sept. 30, 2021). It would also undermine a

defendant's ability to put forward a good faith defense.

PACT argues that because the Original Complaint is not the same complaint in this case, the logic underpinning *Boston Scientific* and *Wrinkl* doesn't apply. That argument is unpersuasive. The Complaint in this case is based on the same alleged infringement as the Original Complaint. A rule allowing a plaintiff to file a complaint, withdraw it, and then file again to take advantage of enhanced damages would create an incentive to abuse the court system and avoid settlement at the outset. Additionally, Intel could read the fact that PACT voluntarily dismissed its suit as a sign that it thought its infringement contentions were weak and that Intel wasn't infringing. As such, it undermines the deliberate and intentional state of mind required for willful infringement.

PACT also suggests that the communications it had with Intel in 2005 and 2012 can inform the willfulness inquiry when it filed and withdrew the Original Complaint in 2019. It's true that courts will look at the totality of circumstances in considering an infringer's state of mind. *See WCM Indus., Inc. v. IPS Corp.*, 721 Fed. Appx. 959, 970 (Fed. Cir. 2018) (noting willfulness analysis considers the totality of the circumstances of the case). But that doesn't help PACT here. There's no indication that pre-suit communications between PACT and Intel contributed to Intel's knowledge of the patents or the possibility that it was infringing those patents beyond what it learned once it received the Original Complaint. Even if anyone at Intel happened to remember conversations with PACT dating back 7-15 years, there's no evidence that Intel thought it was infringing PACT's patents

when it decided to defend itself rather than surrender. The totality of the circumstances don't change the analysis in this case.

### B. PACT's Motion

#### 1. IPR estoppel

"The petitioner in an *inter partes review* of a claim in a patent under this chapter that results in a final written decision under section 318(a) . . . may not assert either in a civil action arising in whole or in part under section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during the *inter partes review*." 35 U.S.C. § 315(e)(2). The words "reasonably could have raised" refer to all grounds that a petitioner could have included in an IPR petition. *See Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 991 (Fed. Cir. 2022). The raisable bases for invalidity during IPR are limited to "prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). On its face, this rule exempts from IPR estoppel prior art references based on physical devices.

Although PACT asks me to disregard Intel's invalidity arguments based on physical products, it hasn't shown that any of the physical prior art references that it challenges match the printed publications that Intel raised in IPR proceedings. PACT tries to string together printed references that it claims are "cumulative" of the physical products. But PACT hasn't pointed me to any legal basis to parse Intel's legal contentions to decide whether the physical device portion is "cumulative." PACT cites several cases in which

courts applied IPR estoppel despite the inclusion of physical device prior art in a reference. But those cases are distinguishable because, in each case, the court determined there was a corresponding printed publication matching the physical device. For example, in *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 454 (D. Del. 2020), Judge Stark noted that the parties didn't dispute that each the physical product references were fully disclosed in a publication, and that the only difference from the IPR proceeding was the inclusion of the physical device. Similarly, in *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990, 1032 (E.D. Wis. 2017), the court drew a distinction between the printed materials associated with a physical specimen and the specimen itself. It allowed the latter, even if they fell within the scope of the IPR. Other cases PACT cites come to the same conclusion. *See Cal. Inst. Of Tech. v. Broadcom Ltd.*, No. CV 16-3714-GW(AGRx), 2019 WL 8192255 at *7 (C.D. Cal. Aug. 9, 2019).

PACT asks me to "dig into the substance of [Intel's] references and determine that the physical devices do not add anything beyond the written references," but I won't. *See Microchip Tech. Inc. v. Aptiv Servs. US LLC*, No. 1:17-cv-01194, 2020 WL 4335519 at *4 (D. Del. Jul. 28, 2020). Intel disputes whether the documents PACT cites were either available to it or include all the relevant features of the physical product, and its expert will testify that the combination of the physical and printed prior art is significant. I have no basis to disregard such testimony and those references.

**2. Inequitable conduct**

The inequitable conduct defense bars enforcement of a patent if, during the prosecution of that patent, the patentee misrepresented or omitted material information with the specific intent to deceive the Patent and Trademark Office ("PTO"). *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1272 (Fed. Cir. 2018) (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285-87 (Fed. Cir. 2011) (en banc)). Intent and materiality are separate elements. *Id.* Materiality means but-for materiality. *Therasense*, 649 F.3d at 1291. "Prior art is but-for material if the PTO would have denied a claim had it known of the undisclosed prior art." *Cal. Inst. Of Tech.*, 25 F.4th at 991. (Fed. Cir. 2021). Intent to deceive must be the single most reasonable inference drawn from the evidence if there are other possible reasons for the patentee's actions. *Therasense*, 649 F.3d at 1290.

Intel points to four actions it says are grounds for inequitable conduct. The first is that PACT intentionally buried prior art references in its patent applications. Intel argues that the PTO would have denied the '593 and '908 Patents based on that prior art. There are disputes of material fact regarding the materiality of those prior art references and whether PACT intentionally buried them to deceive the PTO. For example, Intel's expert will testify that the reference was not cumulative of others provided to the PTO, and that it would have been material. Intel also cites evidence that despite the PTO's repeated objections to PACT's "voluminous" information disclosure statements containing only marginally relevant or irrelevant citations, and PACTs awareness of the importance of the

prior art in question, PACT continued to dump documents. This testimony suffices. Therefore, I won't grant summary judgment on the inequitable conduct defense.

PACT argues that the Federal Circuit's holding in *Fiskars, Inc. v. Hung Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000) precludes basing an inequitable conduct defense on burying. I rejected that argument in a prior order (*See* D.I. 151 at 3 ("The Federal Circuit has recognized burying as a cognizable claim in *Molins*. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995). Nothing in *Fiskars* suggests the Federal Circuit overturned that precedent.").) PACT doesn't cite anything in its brief that changes my mind.

The remainder of Intel's inequitable conduct contentions are irrelevant because burying is a sufficient ground, so this defense will remain in the case. I won't parse each basis for inequitable conduct to decide how Intel may assert the defense. PACT may object to evidence of that conduct *in limine* or at a later stage of proceedings.

**3. Marking**

PACT seeks summary judgment of Intel's marking defense. The defense was relevant only to the '301 and '047 Patents. I'm granting summary judgment on the former patent, and the Federal Circuit invalidated the latter, so the Motion on this defense is moot.

**4. Intel's Fifth, Sixth, and Seventh Affirmative Defenses, And Intel's First Counterclaim**

PACT moved for summary judgment on Intel's Fifth, Sixth, and Seventh Affirmative Defenses, as well as Intel's First counterclaim. Intel doesn't contest it, so I'll grant summary

judgment.

## IV. CONCLUSION

The Court will grant summary judgment on the '301 Patent, as well as Intel's Fifth, Sixth, and Seventh Affirmative defenses, and Intel's First Counterclaim. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

March 24, 2023

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **PACT XPP SCHWEIZ AG,**<br>*Plaintiff,*<br>v.<br>**INTEL CORPORATION,**<br>*Defendant.* | Case No. 1:19-cv-01006-JDW |

**ORDER**

**AND NOW**, this 24th day of March, 2023, upon consideration of Plaintiff PACT XPP Schweiz AG's ("PACT") Motion For Summary Judgment (D.I 281), and Defendant Intel Corporation's ("Intel") Motion For Summary Judgment (D.I. 270), it is **ORDERED** as follows:

1. Intel's Motion is **GRANTED IN PART** and **DENIED IN PART**:

a. Intel's motion for summary judgment of noninfringement of the remaining claims of U.S. Patent No. 8,312,301 is **GRANTED**;

b. Intel's motion for summary judgment on PACT's willful infringement claims is **GRANTED**;

c. Intel's motion for summary judgment of noninfringement of U.S. Patent No. 8,471,593 is **DENIED**;

d. To the extent Intel's Motion seeks summary judgment on claims or patents that are no longer part of this case, it is **DENIED AS MOOT**;

2. PACT's Motion is **GRANTED IN PART** and **DENIED IN PART**:

a. PACT's motion for summary judgment on Intel's Fifth, Sixth, and Seventh Affirmative Defenses, and Intel's First Counterclaim, is **GRANTED**;

b. PACT's motion for summary judgment on Intel's *inter partes review* estoppel and inequitable conduct defenses is **DENIED**;

c. PACT's motion for summary judgment on Intel's marking defense is **DENIED AS MOOT**.

Additionally, because Intel's Motion To Strike Portions Of PACT's Expert's Report (D.I. 273) relates to opinions regarding a patent that is no longer in this case, it is **FURTHER ORDERED** that the Motion To Strike is **DENIED AS MOOT**.

**BY THE COURT:**

*/s/ Joshua D. Wolson*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **PACT XPP SCHWEIZ AG,**<br>*Plaintiff,*<br>**v.**<br>**INTEL CORPORATION,**<br>*Defendant.* | **Case No. 1:19-cv-01006-JDW** |

**ORDER**

AND NOW, this 17th day of April, 2023, upon consideration of Plaintiff PACT XPP Schweiz AG's Motion For Reconsideration Of Opinion On Motion For Summary Judgment For Non-Infringement Of '301 (D.I. 402), I note as follows.

1. A court may reconsider a prior ruling if the moving party shows: "(1) an intervening change in the controlling law, (2) the availability of new evidence that was not available when the court issued its order, or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *U.S. ex rel Schumann v. Astrazeneca Pharmaceuticals L.P.*, 769 F.3d 837, 848-49 (3d Cir. 2014). Courts should grant reconsideration "sparingly." *United States v. Cephalon, Inc.*, 159 F. Supp. 3d 550, 555 (E.D. Pa. 2016). A litigant may not use a motion for reconsideration to get a "second bite at the apple." *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995).

2. PACT does not suggest that there has been an intervening change in the controlling law or that new evidence is available. It argues that I misunderstood the

parties' arguments, which it presumably thinks constitutes either an error of fact or a manifest injustice. It doesn't. I understood the arguments and just resolved them in a way that PACT doesn't like. But even if I go back and take another look, there's no basis for me to reconsider my decision.

3. *First*, during summary judgment briefing, PACT did not dispute whether the accused Intel products are sequential data processors. It did not offer any evidence that shows that the accused Intel processors process data sequences. Instead, it danced around the issue. For example, in the statements of facts, Intel stated that its accused processors only process sequences of instructions. In its response, PACT disputed that Intel's processors are "instruction processors [that] cannot process data" (D.I. 312 at ¶ 13), but it did not offer any evidence to support its position. PACT was not free just to deny Intel's assertion without facts of its own. The whole point of the statements is to determine whether there is a factual dispute that requires a trial. PACT's failure to muster facts demonstrates that there wasn't such a dispute.

4. *Second*, even the evidence that PACT now says was in its opposition brief was not enough to defeat summary judgment. Dr. Thomas Conte's expert report did not opine that Intel's processors process sequences of data; it only says that they "can" process sequences of data. (D.I. 318-1 at ¶¶ 290-91.) But ability is not the same as performance. Disputing whether Intel's processors can sequentially process data is not the same as arguing that they do. Many products can technically execute an infringing

function without doing so, but that capability doesn't mean the product infringes. Therefore, a dispute of fact about whether the accused products can sequentially process data is not material, and I won't let PACT take a "second bite at the apple" now by claiming that it really meant to argue that Intel's products do process sequences of data. *Bhatnagar*, 52 F.3d at 1231.

5. *Third*, and finally, PACT argues that Intel's chips infringe because they process sequences of data and instructions. Again, though, PACT has not mustered facts to create a triable issue of fact on that issue. PACT offered evidence, in the form of Dr. Conte's opinion, that suggests that it *possible* for Intel's chips to be sequential data processors. But PACT offered no evidence that those chips actually process data, such that they are sequential data processors.

Therefore, for the foregoing reasons, as well as the reasons stated in my original summary judgment memorandum (D.I. 399), it is **ORDERED** that Plaintiff PACT XPP Schweiz AG's Motion For Reconsideration Of Opinion On Motion For Summary Judgment For Non-Infringement Of '301 (D.I. 402) is **DENIED**.

**BY THE COURT:**

*<u>/s/ Joshua D. Wolson</u>*
JOSHUA D. WOLSON, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **PACT XPP SCHWEIZ AG,**<br><br>*Plaintiff,*<br>**v.**<br><br>**INTEL CORPORATION,**<br><br>*Defendant.* | **Case No. 1:19-cv-01006-JDW** |

**MEMORANDUM**

In litigation, lawyers argue, and judges decide. Oftentimes, the lawyers (and their clients) are unhappy with the way that a judge decides an issue. But when lawyers disagree with a judge, the remedy is not to tell the judge how "strenuously" they feel about their position. That approach didn't work for Lt. Cdr. JoAnne Galloway because that's not "how it's done."[1] Unfortunately, the lawyers representing PACT XPP Schwiez AG must not like courtroom dramas because they have not learned that lesson. They are unhappy with my summary judgment decision, and they want me to know it. So, for the third time, they have asked me to revisit the ruling. This try fairs no better than the last two.

If anything, this latest attempt is worse because PACT's effort has become dilatory. It's time to stop. If PACT wants to appeal my ruling, it will have an opportunity to do so at the end of the case. It cannot keep fighting a rearguard action to revisit decisions I've

[1] A Few Good Men (Castle Rock Entertainment 1992).

made, particularly when its constant attempts to do so ignore everything I've said about the reason I granted summary judgment in the first place.

## I. PROCEDRAL HISTORY

On May 30, 2019, PACT filed a complaint asserting that Intel Corp. infringed 12 of its patents, including the '301 Patent. I issued a summary judgment opinion on March 24, 2023, which granted Intel summary judgment of non-infringement of the '301 Patent. On March 29, 2023, PACT filed a Motion For Reconsideration of my summary judgment opinion regarding the '301 Patent. In its Motion, PACT argued that its expert Dr. Conte offered evidence that "Intel's accused chips … perform sequential data processing." (D.I. 402 at 2.) I denied the reconsideration motion on April 17, 2023. In my ruling, I explained that PACT didn't cite Dr. Conte's report or any other evidence in response to Intel's statement of facts to create a factual dispute about whether Intel's chips process data or only sequences of instructions. I also explained that Dr. Conte's report doesn't say that Intel's chips process data, only that they are capable of processing data, and that was not how PACT described Dr. Conte's report to me. That is, I found PACT's description of Dr. Conte's report misleading (a fact that I now suspect was intentional).

On April 26, 2023, Intel moved to stay this case pending *ex parte* review of the only remaining patent. In response, on May 10, 2023, PACT filed a Conditional Cross-Motion For Entry Of Final Judgment Of Noninfringement. In that Cross-Motion, PACT asked for leave to submit a second motion for reconsideration. PACT explained that it wanted to

seek reconsideration to address my holding that PACT had to show that Intel's chips process data. (D.I. 410 at 11-12.) On May 15, 2023, I denied both Intel's Motion To Stay and PACT's Cross-Motion. In my ruling, I explained that (a) in rejecting PACT's first reconsideration motion, I considered the evidence that PACT had put forward in response to Intel's summary judgment motion and (b) if PACT had other evidence available to it (or even in the record), but did not cite it in response to Intel's statement of facts, then I did not have to consider it in ruling on summary judgment. (D.I. 414 at ¶ 4 (citing Fed. R. Civ. P. 56(c)(1)(A)).) I also explained that "PACT should not think I will allow it to rewrite history in the future." (*Id.*)

On June 2, 2023, PACT filed this second Motion For Reconsideration. As it did with its first Motion For Reconsideration, PACT argues that Dr. Conte's report creates a genuine issue of fact. Incredibly, there's nothing in PACT's Motion to explain how this Motion is different from the first.

## II. LEGAL STANDARD

PACT invokes Federal Rule of Civil Procedure 59 in its Motion, but that rule only applies to a motion to alter or amend a judgment. Because I have only granted partial summary judgment tin this case, I have not entered judgment, and Rule 59 does not apply. Instead, I treat PACT's Motion like any other motion to reconsider an interlocutory order. A court may reconsider a prior ruling if the moving party shows: "(1) an intervening change in the controlling law, (2) the availability of new evidence that was not available when the

court issued its order, or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *U.S. ex rel Schumann v. Astrazeneca Pharmaceuticals L.P.*, 769 F.3d 837, 848-49 (3d Cir. 2014). Courts should grant reconsideration "sparingly." *United States v. Cephalon, Inc.*, 159 F. Supp. 3d 550, 555 (E.D. Pa. 2016). A litigant may not use a motion for reconsideration to get a "second bite at the apple." *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995).

## III. DISCUSSION

I did not invite PACT to file a second motion for reconsideration. PACT alluded to the fact it might do so in its Conditional Cross-Motion For Entry Of Final Judgment, and I warned PACT against rehashing its arguments. I noted that I based my decision, both for summary judgment and PACT's first Motion For Reconsideration, on the arguments PACT made during its briefing for summary judgment.

Despite that warning, PACT takes up the pen once again. In this Motion PACT repeats its attempt to persuade me that I made a mistake based on arguments it didn't raise at summary judgment. Although this time PACT tries to stick to evidence it included in its Opposition to Intel's summary judgment motion, it still doesn't overcome the basic flaws in its original argument.

Every piece of evidence to which PACT points in Dr. Thomas Conte's expert report says that Intel's cores have the "capability" to process data, not that they do so. It's irrelevant that PACT framed the report as "evidence that The Accused Products

sequentially process data," because it didn't say that. When I ruled on summary judgment, I read every portion of Dr. Conte's report that PACT cited at summary judgment. No part of it claims that Intel's cores process data. Dr. Conte only said they *can*. PACT never offered facts to show that Intel's chips are sequential data processors, so there was no dispute on that issue.

PACT now suggests that Dr. Conte's report raises an issue of fact concerning an apparatus claim. The problem for PACT is that it didn't make that argument during summary judgment briefing. It raised its legal argument regarding apparatus claims for the first time in its Motion For Reconsideration. Notably, of the six cases PACT cites for this argument, none—**not one**—appears in its Opposition to Intel's summary judgment motion. As I wrote when I denied PACT's Cross-Motion, I didn't reject arguments about apparatus claims in my summary judgment ruling. Instead, I assessed the evidence and arguments that PACT put forward and concluded that that evidence didn't create a genuine factual dispute about certain parts of Intel's statement of facts. If PACT wanted to argue about apparatus claims at summary judgment, it could have done so. It chose not to do so. Allowing PACT to make new legal arguments regarding apparatus claims at the reconsideration stage would be the definition of allowing it a "second bite at the apple." I won't let it do so.

## IV. CONCLUSION

PACT made its bed with the arguments it made at summary judgment and the way that it presented its evidence. It wasn't my job to ferret out every argument that PACT might have made. Now, PACT must sleep in the bed that it made. Repeated motions for reconsideration that attempt to undo its mistakes are improper, futile, and dilatory. PACT will have a chance to appeal when there is a final judgment in this case, and maybe it will persuade the Federal Circuit that it did enough to preserve the issue. It's far past time that it stops trying to persuade me of that fact. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

June 9, 2023

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **PACT XPP SCHWEIZ AG,**<br>*Plaintiff,*<br>v.<br>**INTEL CORPORATION,**<br>*Defendant.* | Case No. 1:19-cv-01006-JDW |

**ORDER**

**AND NOW**, this 9th day of June, 2023, upon consideration of Plaintiff PACT XPP Schweiz AG's Second Motion For Reconsideration Under Rule 59(e) (D.I. 416), and for the reasons stated in the accompanying memorandum, it is **ORDERED** that the Motion is **DENIED**.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **PACT XPP SCHWEIZ AG,**<br>*Plaintiff*,<br>v.<br>**INTEL CORPORATION,**<br>*Defendant*. | **Case No. 1:19-cv-01006-JDW** |

**MEMORANDUM**

In law, one thing is paramount above all others: words matter. Lawyers and judges use different techniques to interpret the words depending on the context in which someone uses them. But they always matter. In this case, PACT XPP Schweiz AG made assertions to the U.S. Patent and Trademark Office to prevent the PTO from determining that its patent was obvious. The PTO accepted what PACT said and let the patent survive. Now, though, PACT wants to avoid the impact of what it told the PTO. It can't do so. Having made specific assertions to the PTO about the scope of its invention, PACT is bound by the words it used. When I consider those words, I conclude that the remaining patent claims at issue in this case should be construed more narrowly than PACT suggests. And that narrow construction means that no reasonable juror could conclude that the accused devices that Intel Corp. makes infringe on PACT's patent. I will therefore grant summary judgment on the remaining claims in this case.

# I. BACKGROUND

## A. Factual Background

PACT owns U.S. Patent No. 8,471,593 ("the '593 Patent"), which is directed to enabling efficient data processing by improving the data rate for transmissions within a logical cell array and bus system. In its most basic terms, the technology intends to improve the internal architecture of microprocessor chips to increase processing speeds and expand memory storage. The Patent sets forth two independent claims and twenty-eight dependent claims. Independent claim 1 recites, in relevant part:

> a bus system flexibly interconnecting the plurality of processing cores, the plurality of memory units, and the at least one interface;
>
> wherein:
>
>> the bus system includes a first structure dedicated for data transfer in a first direction and a second structure dedicated for data transfer in a second direction; and
>>
>> each of at least some of the data processing cores includes a **physically dedicated connection** to at least one physically assigned one of the plurality of memory units, the assigned one of the plurality of memory units being accessible by another of the data processing cores via a secondary bus path of the bus system.

'593 Patent, 12:31-44 (emphasis added to highlight disputed limitation). Independent claim 16 includes a substantially similar limitation. It recites, in relevant part:

> a bus system flexibly interconnecting the plurality of processing cores, the plurality of memory units, and the at least one interface;
>
> wherein:

> the bus system includes a first structure dedicated for data transfer in a first direction and a second structure dedicated for data transfer in a second direction; and
>
> each of at least some of the data processing cores includes a **dedicated connection** to at least one assigned one of the plurality of memory units each situated such that no other data processing core and no other memory unit is positioned between the respective data processing core and the respective assigned memory unit, the assigned one of the plurality of memory units being accessible by another of the data processing cores via a secondary bus path of the bus system.

*Id.* at 13:38-55 (emphasis added to highlight disputed limitation).

Intel manufactures a range of microprocessors that are "capable of executing instructions, performing computations on data, and reading from and writing to memory." (ECF No. 591 at 4.) This includes the Sandy Bridge, Ivy Bridge, Haswell, Broadwell, Skylake, Coffee Lake, Ice Lake, Kaby Lake, Amber Lake, Whiskey Lake, Cascade Lake, Cannon Lake, and Lakefield Processors, all of which PACT alleges infringe certain claims of the '593 Patent.

### B. Procedural History

On May 30, 2019, PACT filed a complaint asserting that Intel infringed 423 claims from twelve of its patents, including the '593 Patent. The scope of the dispute has narrowed significantly since. Through *inter partes* review, *ex parte* reexamination, summary judgment, and PACT's voluntary dismissal of some claims with prejudice, only claims 1, 2, 4, 5, 10, 11, 14, 15, 16, 17, 21, and 22 of the '593 Patent remain in issue. During the claim construction proceedings in this case, I did not construe the term "dedicated

connection" because the Parties did not request it. Intel raised the possibility of a need for construction after the *Markman* hearing, but I denied that request while leaving open the possibility of alternative construction in a future motion.

On June 21, 2022, the Parties filed cross-motions for summary judgment. In an Order dated March 24, 2023, I granted in part and denied in part both. I denied Intel's Motion as it pertained to the '593 Patent because a genuine dispute of material fact existed as to whether Intel's accused devices practiced two of the patent's limitations: namely, "(1) a system with two dedicated connections transferring data in different directions, and (2) processors with exclusive connections to corresponding memory units." (D.I. 399 at 8.)

On June 10, 2021, Intel requested EPR of the '593 Patent. It argued that prior art, including U.S. Patent No. 6,457,087 to Fu, rendered the '593 Patent's claims obvious. The USPTO instituted re-examination on August 13, 2021, and issued non-final rejections on October 4, 2022, and March 30, 2023. In the first rejection, the Examiner rejected the claims at issue for the '593 Patent as obvious because Fu recites a structure wherein devices, such as processors, connect to memories via a chain including a flow control unit (FCU), memory control unit (MCU), memory path, memory bus, and node switch. Because this internal transit grid creates a pathway between all memories and processors within the structure, and because the switches could be configured to allow for a processor to access the MCU to the exclusion of other devices, this structure constitutes the "dedicated

connection" that the '593 Patent contemplates. In reaching that conclusion, the Examiner rejected PACT's argument that if multiple processors can connect to the memory line, then there is no dedicated connection. Instead, the Examiner concluded that "all that is required . . . is that there be a physically dedicated connection, i.e. a direct, uninterrupted connection, between a core and a memory unit." (D.I. 598-9 at 27.)

In response, PACT argued that Fu fails to disclose a "dedicated connection" because it recites a structure in which "the memories to which one of the processors is connectable via the FCU is also available to connection by another of the processors over a same line of the FCU." (D.I. 598-10 at 10 (numbered identifiers omitted).) Under PACT's reading, the Examiner's interpretation of "dedicated" as synonymous with "direct" and "uninterrupted" was overbroad. Instead, citing lay dictionary definitions and the claim language, PACT insisted that a person of ordinary skill in the art would understand that a direct connection is a dedicated connection *only* when that connection is devoted to connecting two units while excluding connection to any and all other units. Therefore, "a communication line(s) that is *shared* by a multitude of different devices cannot be a 'dedicated' connection." (*Id.* at 11 (emphasis in original).) As PACT argued, it is not enough for a processor to connect to the memory via an uninterrupted, direct route. To fall within the '593 Patent's "dedicated connection" limitation, that connection must connect *only* one processor to one memory.

Upon consideration of PACT's proposed constructions for "dedicated" as "devoted to a particular purpose or designed to interconnect exclusively," the Examiner adopted the latter as the term's plain and ordinary meaning. (D.I. 598-11, 4-5.) He reasoned that "since ***part of*** the connection between the memory and the [core] is shared [in Fu], there is no dedicated connection." (*Id.* at 4 (emphasis added).) The USPTO withdrew its rejections and confirmed the patentability of the '593 Patent's claims.

On September 15, 2023, Intel sought leave to file a renewed summary judgment motion based on a disclaimer that it argues PACT made during the EPR proceedings. I permitted Intel to renew its motion, and Intel moved for summary judgment (or, in the alternative, construction of the disputed term). The issue is now ripe.

## II. LEGAL STANDARD

### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New*

*Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the nonmovant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A nonmoving party that asserts a genuine dispute about a fact must support its assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). When determining whether a genuine issue of material fact exists, a judge must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

In a patent case, the determination of the scope of the patent claims is a question of law, and a dispute about that legal issue does not preclude summary judgment. *See Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1464 (Fed. Cir. 1998). When the parties present a dispute about the scope of a claim term, the court must resolve that dispute. *See O2 Micro Intern. v. Beyond Innov.*, 521 1351, 1362 (Fed. Cir. 2008).

**B. Claim Construction And Prosecution Disclaimer**

"Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). It is a question of law for a judge to decide. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 387-91 (1996).

When construing a claim, words "are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*)). A judge may depart from a word's ordinary and customary meaning only when a patentee (1) sets out a definition and acts as his own lexicographer, or (2) disavows the full scope of a claim term either in the specification or during prosecution. *See id.* "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. If the meaning isn't readily apparent, "the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history."

*Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). Then, a judge may review extrinsic evidence, cognizant of its potential unreliability and bias. *See Phillips*, 415 F.3d at 1318. The prosecution history, which "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent," is part of the intrinsic evidence. *Id.* at 1316. Reexaminations "are part of the prosecution history." *Northpeak Wireless, LLC v. 3COM Corp.*, 674 F. App'x 982, 986 n.1 (Fed. Cir. 2016). The judge must interpret the claim "with an eye toward giving effect to all terms in the claim." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1257 (Fed. Cir. 2010) (citation omitted). Readings that render claim language "superfluous" or "meaningless" are disfavored. *Id.* (collecting cases).

"Where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003). The doctrine of prosecution disclaimer . . . preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Mass. Inst. of Tech. v. Shire Pharm., Inc.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016) (quote omitted). "[T]hrough statements made during prosecution or reexamination . . . a patent owner . . . may commit to a particular meaning for a patent term, which meaning is then binding in litigation." *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1158 (Fed. Cir. 1997). An argument advanced during EPR can lead

to disclaimer even if the examiner did not rely on that argument; the patentee's statements "still inform the proper construction of the term." *American Piledriving Equipment, Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011) (cite omitted). The Federal Circuit has declined to find a prosecution disclaimer "[w]here the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable interpretations.'" *Mass. Inst. of Tech.*, 839 F.3d at 1119 (quote omitted). "The party seeking to invoke prosecution history disclaimer bears the burden of proving the existence of a 'clear and unmistakable' disclaimer that would have been evident to one skilled in the art." *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063–64 (Fed. Cir. 2016) (quote omitted).

### C. Infringement

Infringement occurs when a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent . . . ." 35 U.S.C. § 271(a). "Determining infringement requires two steps: construing the claims and comparing the properly construed claims to the accused product." *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1316–17 (Fed. Cir. 2015). Still, "a good faith dispute about the meaning and scope of asserted claims does not, in and of itself, create a genuine dispute to preclude summary judgment in patent cases[.]" *Phonometrics*, 133 F.3d at 1464 (Fed. Cir. 1998).

Infringement is a question of fact. *See Thorner*, 669 F.3d at 1317. Accordingly, summary judgment of noninfringement "is proper when no reasonable jury could find that every limitation recited in a properly construed claim is found in the accused device either literally or under the doctrine of equivalents." *Id.* (citation omitted). The patentee has the burden of proving infringement by a preponderance of the evidence. *See Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019). For literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." *Id.* Literal infringement is a question of fact. *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1130 (Fed. Cir. 2011). As such, it is amenable to summary judgment when no reasonable factfinder could find that the accused product contains every claim limitation. *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1339 (Fed. Cir. 2016).

## III. ANALYSIS

### A. Claim Construction

PACT and Intel offer differing interpretations of the term "dedicated connection," and I must construe the term to resolve that dispute. *See O2 Micro Int'l*, 521 F.3d 1351, 1360-62. During EPR, PACT made assertions about what a dedicated connection is and what it isn't. In PACT's view, it **is** a connection that is devoted to connecting two units while excluding connection to any and all other units, and it is **not** "a communication line(s) that is *shared* by a multitude of different devices." ((D.I. 598-10 at 11 (emphasis in

original).) These assertions demonstrate a clear intent to exclude a particular interpretation to obtain claim allowance against Fu and therefore constitute a prosecution disclaimer. That disclaimer now binds PACT with respect to alleged infringement by Intel. *See Omega Eng'g*, 334 F.3d at 1324 (citing *Standard Oil Co. v. Am. Cyanamid Co.,* 774 F.2d 448, 452, 227 USPQ 293, 296 (Fed.Cir.1985)).

I am not persuaded by PACT's arguments against applying the doctrine of prosecution disclaimer. PACT suggests that I have to consider other statements in the prosecution history that render this assertion ambiguous. PACT is correct, of course, that I can't view its statements in isolation. *See Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1342 (Fed. Cir. 2009). But that doesn't mean that I have to credit arguments that PACT advanced but then abandoned in the prosecution history. Rather, I have to view the statements that PACT made in light of the context of the prosecution history as a whole to understand what, exactly, PACT was telling the examiner. To hold otherwise, as PACT seems to urge, would give an applicant an incentive to make a broad spectrum of potentially contradictory assertions to an examiner during a prosecution to make sure that none of those statements could be controlling at a later date. That's not the law.

With that concept in mind, I can read, and reject the significance of, the statements that PACT identifies as a basis to avoid prosecution disclaimer. In particular, PACT now notes that it argued to the Examiner that "the 'dedicated connection' to the assigned memory unit is different from, and requires more than, the mere shared bus system that

interconnects the components" (D.I. 598-10 at 11.) But the context of that statement matters. PACT made this statement to refute the Examiner's construction of "dedicated" as "direct." PACT was not arguing that there needed to be more connective elements, as it suggests now, but instead that a mere direct route from device to memory unit—without exclusivity of purpose or connectivity—was insufficient to satisfy the "dedicated" limitation. PACT can't now take that assertion and invert it for purposes of creating an ambiguity because the context doesn't allow it. It's also significant that the Examiner did not rely on this distinction. Nor does it follow logically from the plain language of the claims.

Considering the prosecution record in its entirety, PACT made an explicit disclaimer of the '593 patent's scope which limits its construction now. PACT has not shown ambiguity or that another reasonable interpretation exists with respect to this term. Given this, I construe the term "dedicated connection" to mean "a connection designed to directly interconnect a particular device to a particular memory via a link inaccessible to other devices and memories."

**B. Infringement**

Having construed this term, no reasonable juror could find that the Accused Devices practice every limitation of the '593 Patent, so I will grant summary judgment for Intel. The Accused Products each include multiple processor cores and on-chip, high-speed memory caches that store portions of data in memory. The memory caches are

layered, denoting a cache's physical distance from the processor core. The outermost layer (the "LLC") is partitioned into an equal number of slices as the microchip has cores. A core can communicate with both its collocated slice, which is physically adjacent to it, and non-collocated slices, which are not. To enable communication between a core and the non-collocated slices, the Accused Products contain a ring interconnect that functions as a transit loop between the components. The processor cores and LLC slices are joined to the ring interconnect using a C-Bo, which is itself composed of a CoreBo, RingBo, and CacheBo.

The C-Bo acts as a bridge between a processing core and an LLC. Within the C-Bo, the CoreBos are assigned to a particular core and connect that core to the ring structure via a RingBo. A RingBo facilitates communication along the bus's circuitous route by interfacing with the CoreBos and transmitting information to adjacent RingBos. (¶ 22–25.) The CacheBos function as the inverse of the CoreBos by receiving communications from a RingBo and delivering it to a collocated memory.

The ring structure is thus akin to a closed-loop rail system: a passenger can get from any station to another, but even if she travels to an adjacent stop she must use the shared train infrastructure. Any processor can communicate with any memory, but it must go through the ring structure. Even if the processor is communicating with its co-located LLC, a communication must pass from processor to CoreBo to RingBo to CacheBo to memory. All connective structures in this chain directly interconnect a particular device to

a particular memory, as the claim language requires, but no structure does so while excluding other devices and memories. No reasonable juror could find that the Accused Devices practice all of the '593 Patent's limitations, so summary judgment is appropriate.

**IV. CONCLUSION**

In many instances, the law permits a party to take contradictory positions on a particular issue at different times and in different courts. But patent prosecution and subsequent litigation isn't one of them; a patentee cannot have his claim and eat it, too. I will grant summary judgment for Intel and deny the Parties' motions *in limine* and *Daubert* motions as moot. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

July 26, 2024

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **PACT XPP SCHWEIZ AG,**<br><br>*Plaintiff*,<br><br>v.<br><br>**INTEL CORPORATION,**<br><br>*Defendant*. | **Case No. 1:19-cv-01006-JDW** |

**ORDER**

**AND NOW**, this 26th day of July, 2024, upon consideration of Defendant Intel Corporation's Renewed Motion For Summary Judgment Of Non-Infringement Of The '593 Patent (ECF No. 589) and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that I construe the term "dedicated connection" from Claim 1 and Claim 16 of U.S. Patent No. 8,471,593 to mean "a connection designed to interconnect a particular device to a particular memory directly via a link inaccessible to other devices and memories."

It is **FURTHER ORDERED** that Defendant Intel Corporation's Renewed Motion For Summary Judgment Of Non-Infringement Of The '593 Patent (ECF No. 589) is **GRANTED**.

It is **FURTHER ORDERED** that Intel's Motions *In Limine* (D.I. 429), *Daubert* Motion To Exclude The Expert Opinions Of Mark Chandler (D.I. 434), *Daubert* Motion To Exclude Dr. Thomas Conte's Testing Opinions (D.I. 439), and *Daubert* Motion To Exclude Dr.

Thomas Conte's Testing Opinions (D.I. 448) and Plaintiff PACT XPP Schweiz AG's Motions *In Limine* (D.I. 441; 445; 446; 447; 449), *Daubert* Motion To Exclude Intel's Expert Opinions Offering Improper Claim Construction Opinions (D.I. 451), and *Daubert* Motion To Exclude Opinions Of Mr. Malackowski And Dr. Mowry Regarding Non-Infringing Alternatives (D.I. 453) are **DENIED AS MOOT.**

The Clerk of Court shall mark this case closed for statistical purposes.

**BY THE COURT:**

*/s/ Joshua D. Wolson*

**JOSHUA D. WOLSON, J.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **PACT XPP SCHWEIZ AG,**<br><br>*Plaintiff,*<br>**v.**<br><br>**INTEL CORPORATION,**<br><br>*Defendant.* | **Case No. 1:19-cv-01006-JDW** |

**FINAL JUDGMENT**

AND NOW, this 27th day of August, 2024, for the reasons set forth in the Court's Memorandum Opinion and Order dated July 26, 2024 (D.I. 615 and D.I. 616) which resolved all remaining claims in the case, it is **ORDERED AND ADJUDGED** that Judgment is entered in favor of Defendant Intel Corporation as to the Non-Infringement of '593 Patent and against Plaintiff PACT XPP Schweiz AG**.**

**BY THE COURT:**

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PACT XPP SCHWEIZ AG<br><br>Plaintiff,<br><br>v.<br><br>INTEL CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 19-1006 (JDW) |

**ORDER OF DISMISSAL OF CERTAIN CLAIMS AND COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 41(a)(2)**

Having considered the parties' joint motion (D.I. 623), **IT IS HEREBY ORDERED** this 30th day of January, 2025 that:

The parties' claims and counterclaims related to the '631 Patent and '047 Patent are dismissed with prejudice, with each party to bear its own associated attorneys' fees and costs related to the '631 Patent and '047 Patent; and

Intel's counterclaims for declaratory judgment of non-infringement and invalidity related to the '301 Patent and '593 Patent are dismissed without prejudice, subject to automatic revival in the event of a remand from the Federal Circuit disturbing one or more judgments dated and entered March 24, 2023 (D.I. 400), July 26, 2024 (D.I. 616), or August 27, 2024 (D.I. 620).

This Order, coupled with the judgment dated and entered August 27, 2024 (D.I. 620), leaves no remaining claims or counterclaims pending before this Court.

*/s/ Joshua D. Wolson*
The Honorable Joshua D. Wolson
United States District Judge

US008312301B2

(12) **United States Patent**
**Vorbach et al.**

(10) **Patent No.: US 8,312,301 B2**
(45) **Date of Patent: Nov. 13, 2012**

(54) **METHODS AND DEVICES FOR TREATING AND PROCESSING DATA**

(76) Inventors: **Martin Vorbach**, München (DE); **Volker Baumgarte**, München (DE)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 292 days.

(21) Appl. No.: **12/570,984**

(22) Filed: **Sep. 30, 2009**

(65) **Prior Publication Data**

US 2010/0023796 A1 Jan. 28, 2010

**Related U.S. Application Data**

(60) Continuation of application No. 12/257,075, filed on Oct. 23, 2008, now Pat. No. 8,099,618, which is a division of application No. 10/469,909, filed as application No. PCT/EP02/02402 on Mar. 5, 2002, now Pat. No. 7,444,531.

(30) **Foreign Application Priority Data**

| | | |
|---|---|---|
| Mar. 5, 2001 | (DE) | 101 10 530 |
| Mar. 7, 2001 | (DE) | 101 11 014 |
| Jun. 20, 2001 | (DE) | 101 29 237 |
| Jul. 24, 2001 | (DE) | 101 35 210 |
| Jul. 24, 2001 | (DE) | 101 35 211 |
| Aug. 16, 2001 | (DE) | 101 39 170 |
| Aug. 29, 2001 | (DE) | 101 42 231 |
| Sep. 3, 2001 | (DE) | 101 42 894 |
| Sep. 3, 2001 | (DE) | 101 42 903 |
| Sep. 3, 2001 | (DE) | 101 42 904 |
| Sep. 11, 2001 | (DE) | 101 44 732 |
| Sep. 11, 2001 | (DE) | 101 44 733 |
| Sep. 17, 2001 | (DE) | 101 45 792 |
| Sep. 17, 2001 | (DE) | 101 45 795 |
| Sep. 19, 2001 | (DE) | 101 46 132 |
| Nov. 5, 2001 | (DE) | 101 54 259 |
| Nov. 5, 2001 | (DE) | 101 54 260 |
| Jan. 19, 2002 | (DE) | 102 02 044 |
| Jan. 20, 2002 | (DE) | 102 02 175 |
| Feb. 15, 2002 | (DE) | 102 06 653 |

(51) **Int. Cl.**
*G06F 1/32* (2006.01)

(52) **U.S. Cl.** ........ **713/300**; 713/310; 713/320; 713/321; 713/322; 713/324; 713/330; 713/340

(58) **Field of Classification Search** .................. 713/300, 713/310, 320–324, 330, 340
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

3,564,506 A 2/1971 Bee et al.

(Continued)

FOREIGN PATENT DOCUMENTS

DE 42 21 278 1/1994

(Continued)

OTHER PUBLICATIONS

Microsoft Press Computer Dictionary, Third Edition, Redmond, WA, 1997, 3 pages.

(Continued)

*Primary Examiner* — M Elamin
(74) *Attorney, Agent, or Firm* — Kenyon & Kenyon LLP

(57) **ABSTRACT**

A data processing unit having a field of clocked logic cells (PAEs) which is operable in different configuration states and a clock preselecting means for preselecting logic cell clocking. The clock preselecting means is designed in such a way that, depending on the state, a first clock is preselected at least at a first cell (PAE) and an additional clock is preselected at least at an additional cell.

**44 Claims, 7 Drawing Sheets**



U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,681,578 A | | 8/1972 | Stevens |
| 3,753,008 A | | 8/1973 | Guarnaschelli |
| 3,754,211 A | | 8/1973 | Rocher et al. |
| 3,855,577 A | | 12/1974 | Vandierendonck |
| 3,956,589 A | | 5/1976 | Weathers et al. |
| 4,151,611 A | | 4/1979 | Sugawara et al. |
| 4,233,667 A | | 11/1980 | Devine et al. |
| 4,414,547 A | | 11/1983 | Knapp et al. |
| 4,498,134 A | | 2/1985 | Hansen et al. |
| 4,498,172 A | | 2/1985 | Bhavsar |
| 4,566,102 A | | 1/1986 | Hefner |
| 4,571,736 A | | 2/1986 | Agrawal et al. |
| 4,590,583 A | | 5/1986 | Miller |
| 4,591,979 A | | 5/1986 | Iwashita |
| 4,594,682 A | | 6/1986 | Drimak |
| 4,623,997 A | | 11/1986 | Tulpule |
| 4,646,300 A | | 2/1987 | Goodman et al. |
| 4,663,706 A | | 5/1987 | Allen et al. |
| 4,667,190 A | | 5/1987 | Fant et al. |
| 4,682,284 A | | 7/1987 | Schrofer |
| 4,686,386 A | | 8/1987 | Tadao |
| 4,706,216 A | | 11/1987 | Carter |
| 4,720,778 A | | 1/1988 | Hall et al. |
| 4,720,780 A | | 1/1988 | Dolecek |
| 4,739,474 A | | 4/1988 | Holsztynski |
| 4,760,525 A | | 7/1988 | Webb |
| 4,761,755 A | | 8/1988 | Ardini et al. |
| 4,791,603 A | | 12/1988 | Henry |
| 4,811,214 A | | 3/1989 | Nosenchuck et al. |
| 4,852,043 A | | 7/1989 | Guest |
| 4,852,048 A | | 7/1989 | Morton |
| 4,860,201 A | | 8/1989 | Stolfo et al. |
| 4,870,302 A | | 9/1989 | Freeman |
| 4,873,666 A | | 10/1989 | Lefebvre et al. |
| 4,882,687 A | | 11/1989 | Gordon |
| 4,884,231 A | | 11/1989 | Mor et al. |
| 4,891,810 A | | 1/1990 | de Corlieu et al. |
| 4,901,268 A | | 2/1990 | Judd |
| 4,910,665 A | | 3/1990 | Mattheyses et al. |
| 4,918,440 A | | 4/1990 | Furtek et al. |
| 4,939,641 A | | 7/1990 | Schwartz et al. |
| 4,959,781 A | | 9/1990 | Rubinstein et al. |
| 4,967,340 A | | 10/1990 | Dawes |
| 4,972,314 A | | 11/1990 | Getzinger et al. |
| 4,992,933 A | | 2/1991 | Taylor |
| 5,010,401 A | | 4/1991 | Murakami et al. |
| 5,014,193 A | | 5/1991 | Garner et al. |
| 5,015,884 A | | 5/1991 | Agrawal et al. |
| 5,021,947 A | | 6/1991 | Campbell et al. |
| 5,023,775 A | | 6/1991 | Poret |
| 5,031,179 A | | 7/1991 | Yoshida et al. |
| 5,034,914 A | | 7/1991 | Osterlund |
| 5,036,473 A | | 7/1991 | Butts et al. |
| 5,036,493 A | | 7/1991 | Nielsen |
| 5,041,924 A | | 8/1991 | Blackborow et al. |
| 5,043,978 A | | 8/1991 | Nagler et al. |
| 5,047,924 A | | 9/1991 | Fujioka et al. |
| 5,055,997 A | | 10/1991 | Sluijter et al. |
| 5,065,308 A | | 11/1991 | Evans |
| 5,072,178 A | | 12/1991 | Matsumoto |
| 5,081,375 A | | 1/1992 | Pickett et al. |
| 5,099,447 A | | 3/1992 | Myszewski |
| 5,103,311 A | | 4/1992 | Sluijter et al. |
| 5,109,503 A | | 4/1992 | Cruickshank et al. |
| 5,113,498 A | | 5/1992 | Evan et al. |
| 5,115,510 A | | 5/1992 | Okamoto et al. |
| 5,119,290 A | | 6/1992 | Loo et al. |
| 5,123,109 A | | 6/1992 | Hillis |
| 5,128,559 A | | 7/1992 | Steele |
| 5,142,469 A | | 8/1992 | Weisenborn |
| 5,144,166 A | | 9/1992 | Camarota et al. |
| 5,193,202 A | | 3/1993 | Jackson et al. |
| 5,203,005 A | | 4/1993 | Horst |
| 5,204,935 A | | 4/1993 | Mihara et al. |
| 5,208,491 A | | 5/1993 | Ebeling et al. |
| 5,212,716 A | | 5/1993 | Ferraiolo et al. |
| 5,212,777 A | | 5/1993 | Gove et al. |
| 5,218,302 A | | 6/1993 | Loewe et al. |
| 5,226,122 A | | 7/1993 | Thayer et al. |
| RE34,363 E | | 8/1993 | Freeman |
| 5,233,539 A | | 8/1993 | Agrawal et al. |
| 5,237,686 A | | 8/1993 | Asano et al. |
| 5,243,238 A | | 9/1993 | Kean |
| 5,245,616 A | | 9/1993 | Olson |
| 5,247,689 A | | 9/1993 | Ewert |
| RE34,444 E | | 11/1993 | Kaplinsky |
| 5,274,593 A | | 12/1993 | Proebsting |
| 5,276,836 A | | 1/1994 | Fukumaru et al. |
| 5,287,472 A | | 2/1994 | Horst |
| 5,287,511 A | | 2/1994 | Robinson et al. |
| 5,287,532 A | | 2/1994 | Hunt |
| 5,301,284 A | | 4/1994 | Estes et al. |
| 5,301,344 A | | 4/1994 | Kolchinsky |
| 5,303,172 A | | 4/1994 | Magar et al. |
| 5,311,079 A | | 5/1994 | Ditlow et al. |
| 5,327,125 A | | 7/1994 | Iwase et al. |
| 5,336,950 A | | 8/1994 | Popli et al. |
| 5,343,406 A | | 8/1994 | Freeman et al. |
| 5,347,639 A | | 9/1994 | Rechtschaffen et al. |
| 5,349,193 A | | 9/1994 | Mott et al. |
| 5,353,432 A | | 10/1994 | Richek et al. |
| 5,355,508 A | | 10/1994 | Kan |
| 5,361,373 A | | 11/1994 | Gilson |
| 5,365,125 A | | 11/1994 | Goetting et al. |
| 5,379,444 A | | 1/1995 | Mumme |
| 5,386,154 A | | 1/1995 | Goetting et al. |
| 5,386,518 A | | 1/1995 | Reagle et al. |
| 5,392,437 A | | 2/1995 | Matter et al. |
| 5,410,723 A | | 4/1995 | Schmidt et al. |
| 5,412,795 A | | 5/1995 | Larson |
| 5,418,952 A | | 5/1995 | Morley et al. |
| 5,418,953 A | | 5/1995 | Hunt et al. |
| 5,421,019 A | | 5/1995 | Holsztynski et al. |
| 5,422,823 A | | 6/1995 | Agrawal et al. |
| 5,425,036 A | | 6/1995 | Liu et al. |
| 5,426,378 A | | 6/1995 | Ong |
| 5,428,526 A | | 6/1995 | Flood et al. |
| 5,430,687 A | | 7/1995 | Hung et al. |
| 5,435,000 A | | 7/1995 | Boothroyd et al. |
| 5,440,245 A | | 8/1995 | Galbraith et al. |
| 5,440,538 A | | 8/1995 | Olsen |
| 5,442,790 A | | 8/1995 | Nosenchuck |
| 5,444,394 A | | 8/1995 | Watson et al. |
| 5,448,186 A | | 9/1995 | Kawata |
| 5,450,022 A | | 9/1995 | New |
| 5,455,525 A | | 10/1995 | Ho et al. |
| 5,457,644 A | | 10/1995 | McCollum |
| 5,465,375 A | | 11/1995 | Thepaut et al. |
| 5,469,003 A | | 11/1995 | Kean |
| 5,473,266 A | | 12/1995 | Ahanin et al. |
| 5,473,267 A | | 12/1995 | Stansfield |
| 5,475,583 A | | 12/1995 | Bock et al. |
| 5,475,803 A | | 12/1995 | Stearns et al. |
| 5,475,856 A | | 12/1995 | Kogge |
| 5,477,525 A | | 12/1995 | Okabe |
| 5,483,620 A | | 1/1996 | Pechanek et al. |
| 5,485,103 A | | 1/1996 | Pedersen et al. |
| 5,485,104 A | | 1/1996 | Agrawal et al. |
| 5,489,857 A | | 2/1996 | Agrawal et al. |
| 5,491,353 A | | 2/1996 | Kean |
| 5,493,239 A | | 2/1996 | Zlotnick |
| 5,493,663 A | | 2/1996 | Parikh |
| 5,497,498 A | | 3/1996 | Taylor |
| 5,502,838 A | * | 3/1996 | Kikinis ......................... 713/501 |
| 5,504,439 A | | 4/1996 | Tavana |
| 5,506,998 A | | 4/1996 | Kato et al. |
| 5,510,730 A | | 4/1996 | El Gamal et al. |
| 5,511,173 A | | 4/1996 | Yamaura et al. |
| 5,513,366 A | | 4/1996 | Agarwal et al. |
| 5,521,837 A | | 5/1996 | Frankle et al. |
| 5,522,083 A | | 5/1996 | Gove et al. |
| 5,525,971 A | | 6/1996 | Flynn |
| 5,530,873 A | | 6/1996 | Takano |
| 5,530,946 A | | 6/1996 | Bouvier et al. |
| 5,532,693 A | | 7/1996 | Winters et al. |
| 5,532,957 A | | 7/1996 | Malhi |
| 5,535,406 A | | 7/1996 | Kolchinsky |

| | | | |
|---|---|---|---|
| 5,537,057 | A | 7/1996 | Leong et al. |
| 5,537,580 | A | 7/1996 | Giomi et al. |
| 5,537,601 | A | 7/1996 | Kimura et al. |
| 5,541,530 | A | 7/1996 | Cliff et al. |
| 5,544,336 | A | 8/1996 | Kato et al. |
| 5,548,773 | A | 8/1996 | Kemeny et al. |
| 5,550,782 | A | 8/1996 | Cliff et al. |
| 5,555,434 | A | 9/1996 | Carlstedt |
| 5,559,450 | A | 9/1996 | Ngai et al. |
| 5,561,738 | A | 10/1996 | Kinerk et al. |
| 5,568,624 | A | 10/1996 | Sites et al. |
| 5,570,040 | A | 10/1996 | Lytle et al. |
| 5,572,710 | A | 11/1996 | Asano et al. |
| 5,574,927 | A | 11/1996 | Scantlin |
| 5,574,930 | A | 11/1996 | Halverson, Jr. et al. |
| 5,581,731 | A | 12/1996 | King et al. |
| 5,581,734 | A | 12/1996 | DiBrino et al. |
| 5,583,450 | A | 12/1996 | Trimberger et al. |
| 5,584,013 | A | 12/1996 | Cheong et al. |
| 5,586,044 | A | 12/1996 | Agrawal et al. |
| 5,587,921 | A | 12/1996 | Agrawal et al. |
| 5,588,152 | A | 12/1996 | Dapp et al. |
| 5,590,345 | A | 12/1996 | Barker et al. |
| 5,590,348 | A | 12/1996 | Phillips et al. |
| 5,596,742 | A | 1/1997 | Agarwal et al. |
| 5,600,265 | A | 2/1997 | El Gamal et al. |
| 5,600,597 | A | 2/1997 | Kean et al. |
| 5,600,845 | A | 2/1997 | Gilson |
| 5,602,999 | A | 2/1997 | Hyatt |
| 5,603,005 | A | 2/1997 | Bauman et al. |
| 5,606,698 | A | 2/1997 | Powell |
| 5,608,342 | A | 3/1997 | Trimberger |
| 5,611,049 | A | 3/1997 | Pitts |
| 5,617,547 | A | 4/1997 | Feeney et al. |
| 5,617,577 | A | 4/1997 | Barker et al. |
| 5,619,720 | A | 4/1997 | Garde et al. |
| 5,625,806 | A | 4/1997 | Kromer |
| 5,625,836 | A | 4/1997 | Barker et al. |
| 5,627,992 | A | 5/1997 | Baror |
| 5,634,131 | A | 5/1997 | Matter et al. |
| 5,635,851 | A | 6/1997 | Tavana |
| 5,642,058 | A | 6/1997 | Trimberger et al. |
| 5,646,544 | A | 7/1997 | Iadanza |
| 5,646,545 | A | 7/1997 | Trimberger et al. |
| 5,649,176 | A | 7/1997 | Selvidge et al. |
| 5,649,179 | A | 7/1997 | Steenstra et al. |
| 5,652,529 | A | 7/1997 | Gould et al. |
| 5,652,894 | A | 7/1997 | Hu et al. |
| 5,655,069 | A | 8/1997 | Ogawara et al. |
| 5,655,124 | A | 8/1997 | Lin |
| 5,656,950 | A | 8/1997 | Duong et al. |
| 5,657,330 | A | 8/1997 | Matsumoto |
| 5,659,785 | A | 8/1997 | Pechanek et al. |
| 5,659,797 | A | 8/1997 | Zandveld et al. |
| 5,675,262 | A | 10/1997 | Duong et al. |
| 5,675,743 | A | 10/1997 | Mavity |
| 5,675,757 | A | 10/1997 | Davidson et al. |
| 5,675,777 | A | 10/1997 | Glickman |
| 5,677,909 | A | 10/1997 | Heide |
| 5,680,583 | A | 10/1997 | Kuijsten |
| 5,682,491 | A | 10/1997 | Pechanek et al. |
| 5,682,544 | A | 10/1997 | Pechanek et al. |
| 5,687,325 | A | 11/1997 | Chang |
| 5,694,602 | A | 12/1997 | Smith |
| 5,696,791 | A | 12/1997 | Yeung |
| 5,696,976 | A | 12/1997 | Nizar et al. |
| 5,701,091 | A | 12/1997 | Kean |
| 5,705,938 | A | 1/1998 | Kean |
| 5,706,482 | A | 1/1998 | Matsushima et al. |
| 5,713,037 | A | 1/1998 | Wilkinson et al. |
| 5,717,890 | A | 2/1998 | Ichida et al. |
| 5,717,943 | A | 2/1998 | Barker et al. |
| 5,727,229 | A | 3/1998 | Kan et al. |
| 5,732,209 | A | 3/1998 | Vigil et al. |
| 5,734,869 | A | 3/1998 | Chen |
| 5,734,921 | A | 3/1998 | Dapp et al. |
| 5,737,516 | A | 4/1998 | Circello et al. |
| 5,737,565 | A | 4/1998 | Mayfield |
| 5,742,180 | A | 4/1998 | DeHon et al. |
| 5,745,734 | A | 4/1998 | Craft et al. |
| 5,748,872 | A | 5/1998 | Norman |
| 5,748,979 | A | 5/1998 | Trimberger |
| 5,752,035 | A | 5/1998 | Trimberger |
| 5,754,459 | A | 5/1998 | Telikepalli |
| 5,754,820 | A | 5/1998 | Yamagami |
| 5,754,827 | A | 5/1998 | Barbier et al. |
| 5,754,871 | A | 5/1998 | Wilkinson et al. |
| 5,754,876 | A | 5/1998 | Tamaki et al. |
| 5,760,602 | A | 6/1998 | Tan |
| 5,761,484 | A | 6/1998 | Agarwal et al. |
| 5,768,629 | A | 6/1998 | Wise et al. |
| 5,773,994 | A | 6/1998 | Jones |
| 5,778,237 | A | 7/1998 | Yamamoto et al. |
| 5,778,439 | A | 7/1998 | Trimberger et al. |
| 5,781,756 | A | 7/1998 | Hung |
| 5,784,313 | A | 7/1998 | Trimberger et al. |
| 5,784,630 | A | 7/1998 | Saito et al. |
| 5,784,636 | A | 7/1998 | Rupp |
| 5,794,059 | A | 8/1998 | Barker et al. |
| 5,794,062 | A | 8/1998 | Baxter |
| 5,801,547 | A | 9/1998 | Kean |
| 5,801,715 | A | 9/1998 | Norman |
| 5,801,958 | A | 9/1998 | Dangelo et al. |
| 5,802,290 | A | 9/1998 | Casselman |
| 5,804,986 | A | 9/1998 | Jones |
| 5,815,004 | A | 9/1998 | Trimberger et al. |
| 5,815,715 | A | 9/1998 | Kucukcakar |
| 5,815,726 | A | 9/1998 | Cliff |
| 5,821,774 | A | 10/1998 | Veytsman et al. |
| 5,828,229 | A | 10/1998 | Cliff et al. |
| 5,828,858 | A | 10/1998 | Athanas et al. |
| 5,831,448 | A | 11/1998 | Kean |
| 5,832,288 | A | 11/1998 | Wong |
| 5,838,165 | A | 11/1998 | Chatter |
| 5,838,988 | A | 11/1998 | Panwar et al. |
| 5,841,973 | A | 11/1998 | Kessler et al. |
| 5,844,422 | A | 12/1998 | Trimberger et al. |
| 5,844,888 | A | 12/1998 | Markkula, Jr. et al. |
| 5,848,238 | A | 12/1998 | Shimomura et al. |
| 5,854,918 | A | 12/1998 | Baxter |
| 5,857,097 | A | 1/1999 | Henzinger et al. |
| 5,857,109 | A | 1/1999 | Taylor |
| 5,859,544 | A | 1/1999 | Norman |
| 5,860,119 | A | 1/1999 | Dockser |
| 5,862,403 | A | 1/1999 | Kanai et al. |
| 5,867,691 | A | 2/1999 | Shiraishi |
| 5,867,723 | A | 2/1999 | Peters et al. |
| 5,870,620 | A | 2/1999 | Kadosumi et al. |
| 5,884,075 | A | 3/1999 | Hester et al. |
| 5,887,162 | A | 3/1999 | Williams et al. |
| 5,887,165 | A | 3/1999 | Martel et al. |
| 5,889,533 | A | 3/1999 | Lee |
| 5,889,982 | A | 3/1999 | Rodgers et al. |
| 5,892,370 | A | 4/1999 | Eaton et al. |
| 5,892,961 | A | 4/1999 | Trimberger |
| 5,892,962 | A | 4/1999 | Cloutier |
| 5,894,565 | A | 4/1999 | Furtek et al. |
| 5,895,487 | A | 4/1999 | Boyd et al. |
| 5,898,602 | A | 4/1999 | Rothman et al. |
| 5,901,279 | A | 5/1999 | Davis, III |
| 5,915,099 | A | 6/1999 | Takata et al. |
| 5,915,123 | A | 6/1999 | Mirsky et al. |
| 5,924,119 | A | 7/1999 | Sindhu et al. |
| 5,926,638 | A | 7/1999 | Inoue |
| 5,933,023 | A | 8/1999 | Young |
| 5,933,642 | A | 8/1999 | Greenbaum et al. |
| 5,936,424 | A | 8/1999 | Young et al. |
| 5,943,242 | A | 8/1999 | Vorbach et al. |
| 5,956,518 | A | 9/1999 | DeHon et al. |
| 5,960,193 | A | 9/1999 | Guttag et al. |
| 5,960,200 | A | 9/1999 | Eager et al. |
| 5,966,143 | A | 10/1999 | Breternitz, Jr. |
| 5,966,534 | A | 10/1999 | Cooke et al. |
| 5,970,254 | A | 10/1999 | Cooke et al. |
| 5,978,260 | A | 11/1999 | Trimberger et al. |
| 5,978,583 | A | 11/1999 | Ekanadham et al. |
| 5,996,048 | A | 11/1999 | Cherabuddi et al. |
| 5,996,083 | A | 11/1999 | Gupta et al. |

| | | | |
|---|---|---|---|
| 5,999,990 | A | 12/1999 | Sharrit et al. |
| 6,003,143 | A | 12/1999 | Kim et al. |
| 6,011,407 | A | 1/2000 | New |
| 6,014,509 | A | 1/2000 | Furtek et al. |
| 6,020,758 | A | 2/2000 | Patel et al. |
| 6,020,760 | A | 2/2000 | Sample et al. |
| 6,021,490 | A | 2/2000 | Vorbach et al. |
| 6,023,564 | A | 2/2000 | Trimberger |
| 6,023,742 | A | 2/2000 | Ebeling et al. |
| 6,026,478 | A | 2/2000 | Dowling |
| 6,026,481 | A | 2/2000 | New et al. |
| 6,034,538 | A | 3/2000 | Abramovici |
| 6,035,371 | A | 3/2000 | Magloire |
| 6,038,650 | A | 3/2000 | Vorbach et al. |
| 6,038,656 | A | 3/2000 | Martin et al. |
| 6,044,030 | A | 3/2000 | Zheng et al. |
| 6,045,585 | A | 4/2000 | Blainey |
| 6,047,115 | A | 4/2000 | Mohan et al. |
| 6,049,222 | A | 4/2000 | Lawman |
| 6,049,866 | A | 4/2000 | Earl |
| 6,052,524 | A | 4/2000 | Pauna |
| 6,052,773 | A | 4/2000 | DeHon et al. |
| 6,054,873 | A | 4/2000 | Laramie |
| 6,055,619 | A | 4/2000 | North et al. |
| 6,058,266 | A | 5/2000 | Megiddo et al. |
| 6,058,469 | A | 5/2000 | Baxter |
| 6,064,819 | A | 5/2000 | Franssen et al. |
| 6,072,348 | A | 6/2000 | New et al. |
| 6,076,157 | A | 6/2000 | Borkenhagen et al. |
| 6,077,315 | A | 6/2000 | Greenbaum et al. |
| 6,078,736 | A | 6/2000 | Guccione |
| 6,081,903 | A | 6/2000 | Vorbach et al. |
| 6,084,429 | A | 7/2000 | Trimberger |
| 6,085,317 | A | 7/2000 | Smith |
| 6,086,628 | A | 7/2000 | Dave et al. |
| 6,088,795 | A | 7/2000 | Vorbach et al. |
| 6,092,174 | A | 7/2000 | Roussakov |
| RE36,839 | E | 8/2000 | Simmons et al. |
| 6,096,091 | A | 8/2000 | Hartmann |
| 6,105,105 | A | 8/2000 | Trimberger |
| 6,105,106 | A | 8/2000 | Manning |
| 6,108,760 | A | 8/2000 | Mirsky et al. |
| 6,118,724 | A | 9/2000 | Higginbottom |
| 6,119,181 | A | 9/2000 | Vorbach et al. |
| 6,122,719 | A | 9/2000 | Mirsky et al. |
| 6,125,072 | A | 9/2000 | Wu |
| 6,125,408 | A | 9/2000 | McGee et al. |
| 6,127,908 | A | 10/2000 | Bozler et al. |
| 6,128,720 | A | 10/2000 | Pechanek et al. |
| 6,134,166 | A | 10/2000 | Lytle et al. |
| 6,137,307 | A | 10/2000 | Iwanczuk et al. |
| 6,145,072 | A | 11/2000 | Shams et al. |
| 6,150,837 | A | 11/2000 | Beal et al. |
| 6,150,839 | A | 11/2000 | New et al. |
| 6,154,048 | A | 11/2000 | Iwanczuk et al. |
| 6,154,049 | A | 11/2000 | New |
| 6,154,826 | A | 11/2000 | Wulf et al. |
| 6,157,214 | A | 12/2000 | Marshall |
| 6,170,051 | B1 | 1/2001 | Dowling |
| 6,172,520 | B1 | 1/2001 | Lawman et al. |
| 6,173,419 | B1 | 1/2001 | Barnett |
| 6,173,434 | B1 | 1/2001 | Wirthlin et al. |
| 6,178,494 | B1 | 1/2001 | Casselman |
| 6,185,256 | B1 | 2/2001 | Saito et al. |
| 6,185,731 | B1 | 2/2001 | Maeda et al. |
| 6,188,240 | B1 | 2/2001 | Nakaya |
| 6,188,650 | B1 | 2/2001 | Hamada et al. |
| 6,198,304 | B1 | 3/2001 | Sasaki |
| 6,201,406 | B1 | 3/2001 | Iwanczuk et al. |
| 6,202,163 | B1 | 3/2001 | Gabzdyl et al. |
| 6,202,182 | B1 | 3/2001 | Abramovici et al. |
| 6,204,687 | B1 | 3/2001 | Schultz et al. |
| 6,211,697 | B1 | 4/2001 | Lien et al. |
| 6,212,544 | B1 | 4/2001 | Borkenhagen et al. |
| 6,212,650 | B1 | 4/2001 | Guccione |
| 6,215,326 | B1 | 4/2001 | Jefferson et al. |
| 6,216,223 | B1 | 4/2001 | Revilla et al. |
| 6,219,833 | B1 | 4/2001 | Solomon et al. |
| RE37,195 | E | 5/2001 | Kean |

| | | | |
|---|---|---|---|
| 6,230,307 | B1 | 5/2001 | Davis et al. |
| 6,240,502 | B1 | 5/2001 | Panwar et al. |
| 6,243,808 | B1 | 6/2001 | Wang |
| 6,247,147 | B1 | 6/2001 | Beenstra et al. |
| 6,249,756 | B1 | 6/2001 | Bunton et al. |
| 6,252,792 | B1 | 6/2001 | Marshall et al. |
| 6,256,724 | B1 | 7/2001 | Hocevar et al. |
| 6,260,114 | B1 | 7/2001 | Schug |
| 6,260,179 | B1 | 7/2001 | Ohsawa et al. |
| 6,262,908 | B1 | 7/2001 | Marshall et al. |
| 6,263,430 | B1 | 7/2001 | Trimberger et al. |
| 6,266,760 | B1 | 7/2001 | DeHon et al. |
| 6,279,077 | B1 | 8/2001 | Nasserbakht et al. |
| 6,282,627 | B1 | 8/2001 | Wong et al. |
| 6,282,701 | B1 | 8/2001 | Wygodny et al. |
| 6,285,624 | B1 | 9/2001 | Chen |
| 6,286,134 | B1 | 9/2001 | Click, Jr. et al. |
| 6,288,566 | B1 | 9/2001 | Hanrahan et al. |
| 6,289,440 | B1 | 9/2001 | Casselman |
| 6,298,043 | B1 | 10/2001 | Mauger et al. |
| 6,298,396 | B1 | 10/2001 | Loyer et al. |
| 6,298,472 | B1 | 10/2001 | Phillips et al. |
| 6,301,706 | B1 | 10/2001 | Maslennikov et al. |
| 6,311,200 | B1 | 10/2001 | Hanrahan et al. |
| 6,311,265 | B1 | 10/2001 | Beckerle et al. |
| 6,321,298 | B1 | 11/2001 | Hubis |
| 6,321,366 | B1 | 11/2001 | Tseng et al. |
| 6,321,373 | B1 | 11/2001 | Ekanadham et al. |
| 6,338,106 | B1 | 1/2002 | Vorbach et al. |
| 6,339,424 | B1 | 1/2002 | Ishikawa et al. |
| 6,339,840 | B1 | 1/2002 | Kothari et al. |
| 6,341,318 | B1 | 1/2002 | Dakhil |
| 6,347,346 | B1 | 2/2002 | Taylor |
| 6,349,346 | B1 | 2/2002 | Hanrahan et al. |
| 6,353,841 | B1 | 3/2002 | Marshall et al. |
| 6,362,650 | B1 | 3/2002 | New et al. |
| 6,370,596 | B1 | 4/2002 | Dakhil |
| 6,373,779 | B1 | 4/2002 | Pang et al. |
| 6,374,286 | B1 | 4/2002 | Gee |
| 6,378,068 | B1 | 4/2002 | Foster et al. |
| 6,381,624 | B1 | 4/2002 | Colon-Bonet et al. |
| 6,389,379 | B1 | 5/2002 | Lin et al. |
| 6,389,579 | B1 | 5/2002 | Phillips et al. |
| 6,392,912 | B1 | 5/2002 | Hanrahan et al. |
| 6,400,601 | B1 | 6/2002 | Sudo et al. |
| 6,404,224 | B1 | 6/2002 | Azegami et al. |
| 6,405,185 | B1 | 6/2002 | Pechanek et al. |
| 6,405,299 | B1 | 6/2002 | Vorbach et al. |
| 6,421,808 | B1 | 7/2002 | McGeer |
| 6,421,809 | B1 | 7/2002 | Wuytack et al. |
| 6,421,817 | B1 | 7/2002 | Mohan et al. |
| 6,425,054 | B1 | 7/2002 | Nguyen |
| 6,425,068 | B1 | 7/2002 | Vorbach |
| 6,426,649 | B1 | 7/2002 | Fu et al. |
| 6,427,156 | B1 | 7/2002 | Chapman et al. |
| 6,430,309 | B1 | 8/2002 | Pressman et al. |
| 6,434,642 | B1 | 8/2002 | Camilleri et al. |
| 6,434,672 | B1 | 8/2002 | Gaither |
| 6,434,695 | B1 | 8/2002 | Esfahani et al. |
| 6,434,699 | B1 | 8/2002 | Jones et al. |
| 6,437,441 | B1 | 8/2002 | Yamamoto |
| 6,438,747 | B1 | 8/2002 | Schreiber et al. |
| 6,449,283 | B1 | 9/2002 | Chao et al. |
| 6,456,628 | B1 | 9/2002 | Greim et al. |
| 6,457,116 | B1 | 9/2002 | Mirsky et al. |
| 6,476,634 | B1 | 11/2002 | Bilski |
| 6,477,643 | B1 | 11/2002 | Vorbach et al. |
| 6,480,937 | B1 | 11/2002 | Vorbach et al. |
| 6,480,954 | B2 | 11/2002 | Trimberger et al. |
| 6,483,343 | B1 | 11/2002 | Faith et al. |
| 6,487,709 | B1 | 11/2002 | Keller et al. |
| 6,490,695 | B1 | 12/2002 | Zagorski et al. |
| 6,496,740 | B1 | 12/2002 | Robertson et al. |
| 6,496,902 | B1 | 12/2002 | Faanes et al. |
| 6,496,971 | B1 | 12/2002 | Lesea et al. |
| 6,504,398 | B1 | 1/2003 | Lien et al. |
| 6,507,898 | B1 | 1/2003 | Gibson et al. |
| 6,507,947 | B1 | 1/2003 | Schreiber et al. |
| 6,512,804 | B1 | 1/2003 | Johnson et al. |

| | | | | |
|---|---|---|---|---|
| 6,513,077 | B2 | 1/2003 | Vorbach et al. | |
| 6,516,382 | B2 | 2/2003 | Manning | |
| 6,518,787 | B1 | 2/2003 | Allegrucci et al. | |
| 6,519,674 | B1 | 2/2003 | Lam et al. | |
| 6,523,107 | B1 | 2/2003 | Stansfield et al. | |
| 6,525,678 | B1 | 2/2003 | Veenstra et al. | |
| 6,526,520 | B1 | 2/2003 | Vorbach et al. | |
| 6,538,468 | B1 | 3/2003 | Moore | |
| 6,538,470 | B1 | 3/2003 | Langhammer et al. | |
| 6,539,415 | B1 | 3/2003 | Mercs | |
| 6,539,438 | B1 | 3/2003 | Ledzius et al. | |
| 6,539,477 | B1 | 3/2003 | Seawright | |
| 6,542,394 | B2 | 4/2003 | Marshall et al. | |
| 6,542,844 | B1 | 4/2003 | Hanna | |
| 6,542,998 | B1 | 4/2003 | Vorbach | |
| 6,553,395 | B2 | 4/2003 | Marshall et al. | |
| 6,553,479 | B2 | 4/2003 | Mirsky et al. | |
| 6,567,834 | B1 | 5/2003 | Marshall et al. | |
| 6,571,381 | B1 | 5/2003 | Vorbach et al. | |
| 6,587,939 | B1 | 7/2003 | Takano | |
| 6,598,128 | B1 | 7/2003 | Yoshioka et al. | |
| 6,606,704 | B1 | 8/2003 | Adiletta et al. | |
| 6,624,819 | B1 | 9/2003 | Lewis | |
| 6,625,631 | B2 | 9/2003 | Ruehle | |
| 6,631,487 | B1 | 10/2003 | Abramovici et al. | |
| 6,633,181 | B1 | 10/2003 | Rupp | |
| 6,657,457 | B1 | 12/2003 | Hanrahan et al. | |
| 6,658,564 | B1 | 12/2003 | Smith et al. | |
| 6,665,758 | B1 | 12/2003 | Frazier et al. | |
| 6,668,237 | B1 | 12/2003 | Guccione et al. | |
| 6,681,388 | B1 | 1/2004 | Sato et al. | |
| 6,687,788 | B2 | 2/2004 | Vorbach et al. | |
| 6,697,979 | B1 | 2/2004 | Vorbach et al. | |
| 6,704,816 | B1 | 3/2004 | Burke | |
| 6,708,223 | B1 | 3/2004 | Wang et al. | |
| 6,708,325 | B2 | 3/2004 | Cooke et al. | |
| 6,717,436 | B2 | 4/2004 | Kress et al. | |
| 6,721,830 | B2 | 4/2004 | Vorbach et al. | |
| 6,725,334 | B2 | 4/2004 | Barroso et al. | |
| 6,728,871 | B1 | 4/2004 | Vorbach et al. | |
| 6,745,317 | B1 | 6/2004 | Mirsky et al. | |
| 6,748,440 | B1 | 6/2004 | Lisitsa et al. | |
| 6,751,722 | B2 | 6/2004 | Mirsky et al. | |
| 6,754,805 | B1 | 6/2004 | Juan | |
| 6,757,847 | B1 | 6/2004 | Farkash et al. | |
| 6,757,892 | B1 | 6/2004 | Gokhale et al. | |
| 6,782,445 | B1 | 8/2004 | Olgiati et al. | |
| 6,785,826 | B1 | 8/2004 | Durham et al. | |
| 6,802,026 | B1 | 10/2004 | Patterson et al. | |
| 6,803,787 | B1 | 10/2004 | Wicker, Jr. | |
| 6,820,188 | B2 | 11/2004 | Stansfield et al. | |
| 6,829,697 | B1 | 12/2004 | Davis et al. | |
| 6,836,842 | B1 | 12/2004 | Guccione et al. | |
| 6,847,370 | B2 | 1/2005 | Baldwin et al. | |
| 6,859,869 | B1 | 2/2005 | Vorbach | |
| 6,868,476 | B2 | 3/2005 | Rosenbluth et al. | |
| 6,871,341 | B1 | 3/2005 | Shyr | |
| 6,874,108 | B1 | 3/2005 | Abramovici et al. | |
| 6,886,092 | B1 | 4/2005 | Douglass et al. | |
| 6,901,502 | B2 | 5/2005 | Yano et al. | |
| 6,928,523 | B2 | 8/2005 | Yamada | |
| 6,957,306 | B2 | 10/2005 | So et al. | |
| 6,961,924 | B2 | 11/2005 | Bates et al. | |
| 6,975,138 | B2 | 12/2005 | Pani et al. | |
| 6,977,649 | B1 | 12/2005 | Baldwin et al. | |
| 7,000,161 | B1 | 2/2006 | Allen et al. | |
| 7,007,096 | B1 | 2/2006 | Lisitsa et al. | |
| 7,010,687 | B2 | 3/2006 | Ichimura | |
| 7,028,107 | B2 | 4/2006 | Vorbach et al. | |
| 7,036,114 | B2 | 4/2006 | McWilliams et al. | |
| 7,038,952 | B1 | 5/2006 | Zack et al. | |
| 7,144,152 | B2 * | 12/2006 | Rusu et al. | 374/141 |
| 7,155,708 | B2 | 12/2006 | Hammes et al. | |
| 7,164,422 | B1 | 1/2007 | Wholey et al. | |
| 7,210,129 | B2 | 4/2007 | May et al. | |
| 7,216,204 | B2 | 5/2007 | Rosenbluth | |
| 7,237,087 | B2 | 6/2007 | Vorbach et al. | |
| 7,249,351 | B1 | 7/2007 | Songer et al. | |
| 7,254,649 | B2 | 8/2007 | Subramanian et al. | |
| 7,340,596 | B1 | 3/2008 | Crosland et al. | |
| 7,346,644 | B1 | 3/2008 | Langhammer et al. | |
| 7,350,178 | B1 | 3/2008 | Crosland et al. | |
| 7,382,156 | B2 | 6/2008 | Pani et al. | |
| 7,455,450 | B2 * | 11/2008 | Liu et al. | 374/111 |
| 7,595,659 | B2 | 9/2009 | Vorbach et al. | |
| 7,650,448 | B2 | 1/2010 | Vorbach et al. | |
| 7,657,877 | B2 | 2/2010 | Vorbach et al. | |
| 7,759,968 | B1 | 7/2010 | Hussein et al. | |
| 7,873,811 | B1 | 1/2011 | Wolinski et al. | |
| 2001/0001860 | A1 | 5/2001 | Beiu | |
| 2001/0003834 | A1 | 6/2001 | Shimonishi | |
| 2001/0010074 | A1 | 7/2001 | Nishihara et al. | |
| 2001/0018733 | A1 | 8/2001 | Fujii et al. | |
| 2001/0032305 | A1 | 10/2001 | Barry | |
| 2002/0010853 | A1 | 1/2002 | Trimberger et al. | |
| 2002/0013861 | A1 | 1/2002 | Adiletta et al. | |
| 2002/0038414 | A1 | 3/2002 | Taylor | |
| 2002/0045952 | A1 | 4/2002 | Blemel | |
| 2002/0051482 | A1 | 5/2002 | Lomp | |
| 2002/0073282 | A1 | 6/2002 | Chauvel et al. | |
| 2002/0083308 | A1 | 6/2002 | Pereira et al. | |
| 2002/0099759 | A1 | 7/2002 | Gootherts | |
| 2002/0103839 | A1 | 8/2002 | Ozawa | |
| 2002/0124238 | A1 | 9/2002 | Metzgen | |
| 2002/0138716 | A1 | 9/2002 | Master et al. | |
| 2002/0143505 | A1 | 10/2002 | Drusinsky | |
| 2002/0144229 | A1 | 10/2002 | Hanrahan | |
| 2002/0147932 | A1 * | 10/2002 | Brock et al. | 713/300 |
| 2002/0152060 | A1 | 10/2002 | Tseng | |
| 2002/0156962 | A1 | 10/2002 | Chopra et al. | |
| 2002/0162097 | A1 | 10/2002 | Meribout | |
| 2002/0165886 | A1 | 11/2002 | Lam | |
| 2003/0001615 | A1 | 1/2003 | Sueyoshi et al. | |
| 2003/0014743 | A1 | 1/2003 | Cooke et al. | |
| 2003/0046607 | A1 | 3/2003 | May et al. | |
| 2003/0052711 | A1 | 3/2003 | Taylor | |
| 2003/0055861 | A1 | 3/2003 | Lai et al. | |
| 2003/0056062 | A1 | 3/2003 | Prabhu | |
| 2003/0056085 | A1 | 3/2003 | Vorbach | |
| 2003/0056091 | A1 | 3/2003 | Greenberg | |
| 2003/0056202 | A1 | 3/2003 | May et al. | |
| 2003/0061542 | A1 | 3/2003 | Bates et al. | |
| 2003/0062922 | A1 | 4/2003 | Douglass et al. | |
| 2003/0070059 | A1 | 4/2003 | Dally et al. | |
| 2003/0086300 | A1 | 5/2003 | Noyes et al. | |
| 2003/0093662 | A1 | 5/2003 | Vorbach et al. | |
| 2003/0097513 | A1 | 5/2003 | Vorbach et al. | |
| 2003/0123579 | A1 | 7/2003 | Safavi et al. | |
| 2003/0135686 | A1 | 7/2003 | Vorbach et al. | |
| 2003/0154349 | A1 | 8/2003 | Berg et al. | |
| 2003/0192032 | A1 | 10/2003 | Andrade et al. | |
| 2003/0226056 | A1 | 12/2003 | Yip et al. | |
| 2004/0015899 | A1 | 1/2004 | May et al. | |
| 2004/0025005 | A1 | 2/2004 | Vorbach et al. | |
| 2004/0039880 | A1 | 2/2004 | Pentkovski et al. | |
| 2004/0078548 | A1 | 4/2004 | Claydon et al. | |
| 2004/0088689 | A1 | 5/2004 | Hammes | |
| 2004/0088691 | A1 | 5/2004 | Hammes et al. | |
| 2004/0168099 | A1 | 8/2004 | Vorbach et al. | |
| 2004/0199688 | A1 | 10/2004 | Vorbach et al. | |
| 2005/0066213 | A1 | 3/2005 | Vorbach et al. | |
| 2005/0091468 | A1 | 4/2005 | Morita et al. | |
| 2005/0144210 | A1 | 6/2005 | Simkins et al. | |
| 2005/0144212 | A1 | 6/2005 | Simkins et al. | |
| 2005/0144215 | A1 | 6/2005 | Simkins et al. | |
| 2006/0036988 | A1 | 2/2006 | Allen et al. | |
| 2006/0230094 | A1 | 10/2006 | Simkins et al. | |
| 2006/0230096 | A1 | 10/2006 | Thendean et al. | |
| 2007/0050603 | A1 | 3/2007 | Vorbach et al. | |
| 2007/0083730 | A1 | 4/2007 | Vorbach et al. | |
| 2008/0313383 | A1 | 12/2008 | Morita et al. | |
| 2009/0085603 | A1 | 4/2009 | Paul et al. | |
| 2009/0193384 | A1 | 7/2009 | Sima et al. | |
| 2010/0306602 | A1 | 12/2010 | Kamiya et al. | |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 44 16 881 | 11/1994 |
| DE | 38 55 673 | 11/1996 |

| | | |
|---|---|---|
| DE | 196 51 075 | 6/1998 |
| DE | 196 54 593 | 7/1998 |
| DE | 196 54 595 | 7/1998 |
| DE | 196 54 846 | 7/1998 |
| DE | 197 04 044 | 8/1998 |
| DE | 197 04 728 | 8/1998 |
| DE | 197 04 742 | 9/1998 |
| DE | 198 22 776 | 3/1999 |
| DE | 198 07 872 | 8/1999 |
| DE | 198 61 088 | 2/2000 |
| DE | 199 26 538 | 12/2000 |
| DE | 100 28 397 | 12/2001 |
| DE | 100 36 627 | 2/2002 |
| DE | 101 29 237 | 4/2002 |
| DE | 102 04 044 | 8/2003 |
| EP | 0 208 457 | 1/1987 |
| EP | 0 221 360 | 5/1987 |
| EP | 0 398 552 | 11/1990 |
| EP | 0 428 327 | 5/1991 |
| EP | 0 463 721 | 1/1992 |
| EP | 0 477 809 | 4/1992 |
| EP | 0 485 690 | 5/1992 |
| EP | 0 497 029 | 8/1992 |
| EP | 0 539 595 | 5/1993 |
| EP | 0 638 867 A2 | 8/1994 |
| EP | 0 628 917 | 12/1994 |
| EP | 0 678 985 | 10/1995 |
| EP | 0 686 915 | 12/1995 |
| EP | 0 696 001 | 2/1996 |
| EP | 0 707 269 | 4/1996 |
| EP | 0 726 532 | 8/1996 |
| EP | 0 735 685 | 10/1996 |
| EP | 0 746 106 | 12/1996 |
| EP | 0 748 051 | 12/1996 |
| EP | 0 926 594 | 6/1999 |
| EP | 1 061 439 | 12/2000 |
| EP | 1 115 204 | 7/2001 |
| EP | 1 146 432 | 10/2001 |
| EP | 1 669 885 | 6/2006 |
| FR | 2 752 466 | 2/1998 |
| GB | 2 304 438 | 3/1997 |
| JP | 58-058672 | 4/1983 |
| JP | 10-44571 | 2/1989 |
| JP | 1-229378 | 9/1989 |
| JP | 2-130023 | 5/1990 |
| JP | 2-226423 | 9/1990 |
| JP | 5-265705 | 10/1993 |
| JP | 5-276007 | 10/1993 |
| JP | 5-509184 | 12/1993 |
| JP | 6-266605 | 9/1994 |
| JP | 7-086921 | 3/1995 |
| JP | 7-154242 | 6/1995 |
| JP | 8-148989 | 6/1995 |
| JP | 7-182160 | 7/1995 |
| JP | 7-182167 | 7/1995 |
| JP | 8-044581 | 2/1996 |
| JP | 8-069447 | 3/1996 |
| JP | 8-101761 | 4/1996 |
| JP | 8-102492 | 4/1996 |
| JP | 8-106443 | 4/1996 |
| JP | 8-221164 | 8/1996 |
| JP | 8-250685 | 9/1996 |
| JP | 9-027745 | 1/1997 |
| JP | 9-237284 | 9/1997 |
| JP | 9-294069 | 11/1997 |
| JP | 11-046187 | 2/1999 |
| JP | 11-184718 | 7/1999 |
| JP | 11-307725 | 11/1999 |
| JP | 2000-076066 | 3/2000 |
| JP | 2000-181566 | 6/2000 |
| JP | 2000-201066 | 7/2000 |
| JP | 2000-311156 | 11/2000 |
| JP | 2001-500682 | 1/2001 |
| JP | 2001-167066 | 6/2001 |
| JP | 2001-510650 | 7/2001 |
| JP | 2001-236221 | 8/2001 |
| JP | 2002-0033457 | 1/2002 |
| JP | 3-961028 | 8/2007 |
| WO | WO90/04835 | 5/1990 |
| WO | WO90/11648 | 10/1990 |
| WO | WO92/01987 | 2/1992 |
| WO | WO93/11503 | 6/1993 |
| WO | WO94/06077 | 3/1994 |
| WO | WO94/08399 | 4/1994 |
| WO | WO95/26001 | 9/1995 |
| WO | WO98/10517 | 3/1998 |
| WO | WO98/26356 | 6/1998 |
| WO | WO98/28697 | 7/1998 |
| WO | WO98/29952 | 7/1998 |
| WO | WO98/31102 | 7/1998 |
| WO | WO98/35294 | 8/1998 |
| WO | WO98/35299 | 8/1998 |
| WO | WO99/00731 | 1/1999 |
| WO | WO99/00739 | 1/1999 |
| WO | WO99/12111 | 3/1999 |
| WO | WO99/32975 | 7/1999 |
| WO | WO99/40522 | 8/1999 |
| WO | WO99/44120 | 9/1999 |
| WO | WO99/44147 | 9/1999 |
| WO | WO00/17771 | 3/2000 |
| WO | WO00/38087 | 6/2000 |
| WO | WO00/45282 | 8/2000 |
| WO | WO00/49496 | 8/2000 |
| WO | WO00/77652 | 12/2000 |
| WO | WO01/55917 | 8/2001 |
| WO | WO02/13000 | 2/2002 |
| WO | WO02/29600 | 4/2002 |
| WO | WO02/50665 | 6/2002 |
| WO | WO02/071196 | 9/2002 |
| WO | WO02/071248 | 9/2002 |
| WO | WO02/071249 | 9/2002 |
| WO | WO02/103532 | 12/2002 |
| WO | WO03/017095 | 2/2003 |
| WO | WO03/023616 | 3/2003 |
| WO | WO03/025781 | 3/2003 |
| WO | WO03/036507 | 5/2003 |
| WO | WO03/091875 | 11/2003 |
| WO | WO2004/053718 | 6/2004 |
| WO | WO2004/114128 | 12/2004 |
| WO | WO2005/045692 | 5/2005 |
| WO | WO 2007/030395 | 3/2007 |

OTHER PUBLICATIONS

Microsoft Press Computer Dictionary, Second Edition, Redmond, WA, 1994, 3 pages.

A Dictionary of Computing, Fourth Edition, Oxford University Press, 1997, 4 pages.

Communications Standard Dictionary, Third Edition, Martin Weik (Ed.), Chapman & Hall, 1996, 3 pages.

Dictionary of Communications Technology, Terms Definitions and Abbreviations, Second Edition, Gilbert Held (Ed.), John Wiley & Sons, England, 1995, 5 pages.

The Random House College Dictionary, Revised Edition, Random House, Inc., 1984, 14 pages.

The Random House College Dictionary, Revised Edition, Random House, Inc., 1984, 7 pages.

Random House Webster's College Dictionary with CD-ROM, Random House, 2001, 7 pages.

Random House Webster's College Dictionary with CD-ROM, Random House, 2001, 4 pages.

Random House Personal Computer Dictionary, Second Edition, Philip E. Margolis (Ed.), Random House, New York, 1996, 5 pages.

The IEEE Standard Dictionary of Electrical and Electronics Terms, Sixth Edition, 1996, 36 pages.

The IEEE Standard Dictionary of Electrical and Electronics Terms, Sixth Edition, 1996, 8 pages.

McGraw-Hill Electronics Dictionary, Sixth Edition, Neil Sclater et al. (Ed.), McGraw-Hill, 1997, 3 pages.

Modern Dictionary of Electronics, Sixth Edition, Rudolf Graf (Ed.), Newnes (Butterwoth-Heinemann), 1997, 5 pages.

The American Heritage Dictionary, Fourth Edition, Dell (Houghton-Mifflin), 2001, 5 pages.

The American Heritage Dictionary, Second College Edition, Houghton Mifflin, 1982, 23 pages.

The American Heritage Dictionary, Second College Edition, Houghton Mifflin, 1982, 8 pages.
The American Heritage Dictionary, Third Edition, Dell Publishing (Bantam Doubleday Dell Publishing Group, Inc.), 1994, 4 pages.
The American Heritage Dictionary, Fourth Edition, Dell/Houghton Mifflin 2001, 5 pages.
Webster's New Collegiate Dictionary, Merriam Co., 1981, 5 pages.
Webster's New Collegiate Dictionary, Merriam Co., 1981, 4 pages.
The Oxford American Dictionary and Language Guide, Oxford University Press, 1999, 5 pages.
The Oxford Duden German Dictionary, Edited by the Dudenredaktion and the German Section of the Oxford University Press, W. Scholze-Stubenrecht et al. (Eds), Clarendon Press, Oxford, 1990, 7 pages.
Oxford Dictionary of Computing, Oxford University Press, 2008, 4 pages.
Modern Dictionary of Electronics, Sixth Edition Revised and Updated, Rudolf F. Graf (Ed.), Butterworth-Heinemann, 1997, 7 pages.
Modern Dictionary of Electronics, Sixth Edition Revised and Updated, Rudolf F. Graf (Ed.), Butterworth-Heinemann, 1997, 5 pages.
Garner's Modern American Usage, Bryan A. Garner (Ed.), Oxford University Press, 2003, 3 pages.
The New Fowler's Modern English Usage, R.W. Burchfield (Ed.) , Oxford University Press, 2000, 3 pages.
Wikipedia, the free encyclopedia, "Granularity," at http://en.wikipedia.org/wiki/Granularity, Jun. 18, 2010, 4 pages.
Wordsmyth, The Premier Educational Dictionary—Thesaurus, at http://www.wordsmyth.net, "communication," Jun. 18, 2010, 1 page.
Yahoo! Education, "affect," at http://education.yahoo.com/reference/dictionary/entry/affect, Jun. 18, 2010, 2 pages.
mPulse Living Language, "high-level," at http://www.macmillandictionary.com/dictionary/american/hiah-level, Jun. 18, 2010, 1 page.
MSN Encarta, "regroup," at http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?lextype=3&search=regroup, Jun. 17, 2010, 2 pages.
MSN Encarta, "synchronize," at http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?lextype=3&search=synchronize, Jun. 17, 2010, 2 pages.
MSN Encarta, "pattern," at http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?lextype=3&search=pattern, Jun. 17, 2010, 2 pages.
MSN Encarta, "dimension," at http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?lextype=3&search=dimension, Jun. 17, 2010, 2 pages.
MSN Encarta, "communication," at http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?lextype=3&search=communication, Jun. 17, 2010, 2 pages.
MSN Encarta, "arrangement," at http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?lextype=3&search=arrangement, Jun. 17, 2010, 2 pages.
MSN Encarta, "vector,"at http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?lextype=3&search=vector, Jul. 30, 2010, 2 pages.
Dictionary.com, "address," at http://dictionary.reference.com/browse/address, Jun. 18, 2010, 4 pages.
P.R . 4-3 Joint Claim Constructions Statement, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Jul. 19, 2010, pp. 1-50.
Order Granting Joint Motion for Leave to File an Amended Joint Claim Construction and Prehearing Statement and Joint Motion to File an Amended Joint Claim Construction and Prehearing Statement Pursuant to Local Patent Rule 4-3, and Exhibit A: P.R. 4-3 Amended Joint Claim Constructions Statement, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Aug. 2, 2010, 72 pages.
P.R. 4-3 Amended Joint Claim Constructions Statement, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Aug. 3, 2010, pp. 1-65.
Exhibit A—P.R. 4-3 Amended Joint Claim Constructions Statement, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, Ed. Texas, 2:07-cv-00563-CE, Aug. 2, 2010, pp. 1-66.
PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-55.
Declaration of Harry L. (Nick) Tredennick in Support of PACT's Claim Constructions, *PACT XPP Technologies, AG* v. *Xilinx, Inc, and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-87.
Transcript of Harry (Nick) L. Tredennick III, Ph.D., Oct. 11, 2010, vol. 1, Exhibit 16 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-3.
Agreed and Disputed Terms, Exhibit 17 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-16.
Oral Videotaped Deposition—Joseph McAlexander dated Oct. 12, 2010, vol. 1, Exhibit 18 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-17.
Expert Report of Joe McAlexander Re Claim Construction dated Sep. 27, 2010, Exhibit 19 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-112.
Documents from File History of U.S. Appl. No. 09/290,342 (filed Apr. 12, 1999), Exhibit 20 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-37.
Amendment from File History of U.S. Appl. No. 10/156,397 (filed May 28, 2002), Exhibit 25 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-12.
Documents from File History U.S. Appl. No. 09/329,132 (filed Jun. 9, 1999), Exhibit 27 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-36.
Amendment from Fife History of U.S. Appl. No. 10/791,501 (filed Mar. 1, 2004), Exhibit 39 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-9.
Amendment from File History of U.S. Appl. No. 10/265,846 (filed Oct. 7, 2002), Exhibit 40 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-12.
Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-55.
Declaration of Aaron Taggart in Support of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief (Exhibit A), *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-5.
Oral Videotaped Deposition Joseph McAlexander (Oct. 12, 2010), Exhibit 1 of of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-9.
Expert Report of Joe McAlexander re Claim Construction, Exhibit 2 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief; *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-137.
Documents from File History of U.S. Appl. No. 09/290,342 (filed Apr. 12, 1999), Exhibit 6 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief; *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-181.
Transcript of Harry (Nick) L. Tredennick III, Ph.D., Oct. 11, 2010, vol. 1, Exhibit 7 of Defendants Xilinx, Inc. and Avnet, Inc.'s Respon-

sive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al*., E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-28.

Amendment, Response from File History of U.S. Appl. No. 10/156,397 (filed May 28, 2002), Exhibit 15 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief; *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al*., E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-137.

Application from File History of U.S. Appl. No. 08/544,435 (filed Nov. 17, 1995), Exhibit 20 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al*., E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-102.

Documents from File History of U.S. Appl. No. 09/329,132 (filed Jun. 9, 1999), Exhibit 24 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief; *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al*., E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-13.

Documents from File History of U.S. Appl. No. 10/791,501 (filed Mar. 1, 2004), Exhibit 25 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief; *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al*., E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-14.

Amendment from File History of U.S. Appl. No. 11/246,617 (filed Oct. 7, 2005), Exhibit 26 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief; *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al*., E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-9.

Documents from File History of U.S. Appl. No. 08/947,254 (filed Oct. 8, 1997), Exhibit 27 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief; *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al*., E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-38.

Documents from File History of U.S. Appl. No. 08/947,254 (filed Oct. 8, 1997), specifically, German priority application specification [English translation provided], Exhibit 33 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief; *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al*., E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, 54 pages [including English translation].

Documents from File History of U.S. Appl. No. 09/335,974 (filed Jun. 18, 1999), Exhibit 28 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al*., E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-32.

Documents from File History of U.S. Patent Reexamination Control No. 90/010,450 (filed Mar. 27, 2009), Exhibit 30 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief; *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al*., E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-71.

Documents from File History of U.S. Appl. No. 10/265,846 (filed Oct. 7, 2002), Exhibit 32 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al*., E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-23.

PACT's Claim Construction Reply Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al*., E.D. Texas, 2:07-cv-00563-CE, Jan. 7, 2011, pp. 1-20.

Defendants Xilinx, Inc. and Avnet, Inc.'s Claim Construction Surreply Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al*., E.D. Texas, 2:07-cv-00563-CE, Jan. 18, 2011, 142 pages.

Markman Hearing Minutes and Attorney Sign-In Sheet, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al*., E.D. Texas, 2:07-cv-00563-CE, Feb. 22, 2011, 3 pages; and court transcript, 245 pages.

Memorandum Opinion and Order, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al*., E.D. Texas, 2:07-cv-00563-CE, Jun. 17, 2011, pp. 1-71.

Atmel Corporation, Atmel 5-K-50K Gates Coprocessor FPGA and FreeRAM, (www.atmel.com), Apr. 2002, pp. 1-68.

Glaskowsky, Peter N., "PACT Debuts Extreme Processor; Reconfigurable ALU Array is Very Powerful—and Very Complex," The Insider's Guide to Microprocessor Hardware, MicroDesign Resources—Micoprocessor Report, Oct. 9, 2000 (www.MPRonline.com), 6 pages.

Glaskowsky, Peter N., "Analysis' Choice Nominees Named; Our Picks for 2002's Most Important Products and Technologies," The Insider's Guide to Microprocessor Hardware, MicroDesign Resources—Micoprocessor Report, Dec. 9, 2002 (www.MPRonline.com), 4 pages.

Lattice Semiconductor Corporation, "ispLSI 2000E, 2000VE and 2000 VL Family Architectural Description," Oct. 2001, pp. 1-88.

Olukotun, K. et al., "Rationale, Design and Performance of the Hydra Multiprocessor," Computer Systems Laboratory, Stanford University, CA, Nov. 1994, pp. 1-19.

PACT Corporate Backgrounder, PACT company release, Oct. 2008, 4 pages.

Page, Ian., "Reconfigurable processor architectures," Oxford University Computing Laboratory, Oxford UK, Elsevier Science B.V., Microprocessors and Microsystems 20 (1996) pp. 185-196.

Singh, Hartej et al., "Morpho-Sys: A Reconfigurable Architecture for Multimedia Applications," Univ. of California, Irvine, CA and Federal University of Rio de Janiero, Brazil, IEEE Transactions on Computers, 1998 at http://www.eng.uci.edu/morphosys/docs/sbcci98.html, 10 pages.

Theodoridis, G. et al., "Chapter 2—A Survey of Coarse-Grain Reconfigurable Architectures and Cad Tools, Basic Definitions, Critical Design Issues and Existing Coarse-grain Reconfigurable Systems," from S. Vassiliadis, and D. Soudris (eds.) *Fine- and Coarse-Grained Rerconfigurable Computing*, Springer 2007, pp. 89-149.

Weinhardt, Markus et al., "Using Function Folding to Improve Silicon Efficiency of Reconfigurable Arithmetic Arrays," PACT XPP Technologies AG, Munich, Germany, IEEE 2004, pp. 239-245.

Xilinx, XC6200 Field Programmable Gate Arrays, Advance Product Specification, Jun. 1, 1996 (Version 1.0), pp. 4-255 through 4-286.

Xilinx, Virtex-II Platform FPGA User Guide, UG002 (V2.1) Mar. 28, 2007, pp. 1-502 [Parts 1-3].

Xilinx, XC4000E and SC4000X Serial Field Programmable Gate Arrays, Product Specification (Version 1.6), May 14, 1999, pp. 1-107.

U.S. Appl. No. 60/109,417, filed Nov. 18, 1998, Jefferson et al.

Abnous et al., "Ultra-Low-Power Domain-Specific Multimedia Processors," U.C. Berkeley, 1996 IEEE, pp. 461-470.

Abnous, A., et al., "The Pleiades Architecture," Chapter I of *The Application of Programmable DSPs in Mobile Communications*, A. Gatherer and A. Auslander, Ed., Wiley, 2002, pp. 1-33.

Ade, et al., "Minimum Memory Buffers in DSP Applications," Electronics Letters, vol. 30, No. 6, Mar. 17, 1994, pp. 469-471.

Advanced RISC Machines, "Introduction to AMBA," Oct. 1996, Section 1, pp. 1-7.

ARM, "The Architecture for the Digital World," http://www.arm.com/products/ Mar. 18, 2009, 3 pages.

ARM, "The Architecture for the Digital World; Milestones," http://www.arm.com/aboutarm/milestones.html Mar. 18, 2009, 5 pages.

Albaharna, O.T. et al., "On the Viability of FPGA-Based Integrated Coprocessors," Dept. of Electrical and Electronic Engineering, Imperial College of Science, London, 1999 IEEE, pp. 206-215.

Alippi, et al., "Determining the Optimum Extended Instruction Set Architecture for Application Specific Reconfigurable VLIW CPUs," IEEE, 2001, pp. 50-56.

Altera, "Flex 8000 Programmable Logic Device Family," Altera Corporation product description, Jan. 2003, pp. 1-62.

Altera, "Flex 10K Embedded Programmable Logic Device Family," Altera Corporation product description, Jan. 2003, pp. 1-128.

Arabi, et al., "PLD Integrates Dedicated High-speed Data Buffering, Complex State machine, and Fast Decode Array," conference record on WESCON '93, Sep. 28, 1993, pp. 432-436.

Asari, K. et al., "FeRAM circuit technology for system on a chip," *Proceedings First NASA/DoD Workshop on Evolvable Hardware* (1999), pp. 193-197.

Athanas, "A Functional Reconfigurable Architecture and Compiler for Adoptive Computing," IEEE 1993, pp. 49-55.

Athanas, et al., "An Adaptive Hardware Machine Architecture and Compiler for Dynamic Processor Recongifugation," IEEE, Labora-

tory for Engineering man/Machine Systems Division of Engineering, Box D, Brown University, Providence, Rhode Island, 1991, pp. 397-400.
Athanas et al., "Processor Reconfiguration Through Instruction-Set Metamorphosis," 1993, IEEE Computers, pp. 11-18.
Atmel, 5-K-50K Gates Coprocessor FPGA with Free Ram, Data Sheet, Jul. 2006, 55 pages.
Atmel, FPGA-based FIR Filter Application Note, Sep. 1999, 10 pages.
Atmel, "An Introduction to DSP Applications using the AT40K FPGA," FPGA Application Engineering, San Jose, CA, Apr. 2004, 15 pages.
Atmel, Configurable Logic Design & Application Book, Atmel Corporation, 1995, pp. 2-19 through 2-25.
Atmel, Field Programmable Gate Array Configuration Guide, AT6000 Series Configuration Data Sheet, Sep. 1999, pp. 1-20.
Bacon, D. et al., "Compiler Transformations for High-Performance Computing," ACM Computing Surveys, 26(4):325-420 (1994).
Bakkes, P.J., et al., "Mixing Fixed and Reconfigurable Logic for Array Processing," Dept. of Electrical and Electronic Engineering, University of Stellenbosch, South Africa, 1996 IEEE, pp. 118-125.
Baumgarte, V. et al., PACT XPP "A Self-reconfigurable Data Processing Architecture," PACT Info. GMBH, Munchen Germany, 2001, 7 pages.
Beck et al., "From control flow to data flow," TR 89-1050, Oct. 1989, Dept. of Computer Science, Cornell University, Ithaca, NY, pp. 1-25.
Becker, J. et al., "Architecture, Memory and Interface Technology Integration of an Industrial/Academic Configurable System-on-Chip (CSoC)," IEEE Computer Society Annual Workshop on VLSI (WVLSI 2003), (Feb. 2003).
Becker, J., "Configurable Systems-on-Chip (CSoC)," (Invited Tutorial), Proc. of 9th Proc. of XV Brazilian Symposium on Integrated Circuit, Design (SBCCI 2002), (Sep. 2002).
Becker et al., "Automatic Parallelism Exploitation for FPL-Based Accelerators," 1998, Proc. 31st Annual Hawaii International Conference on System Sciences, pp. 169-178.
Becker, J. et al., "Parallelization in Co-compilation for Configurable Accelerators—a Host/accelerator Partitioning Compilation Method," Poceedings of Asia and South Pacific Design Automation Conference, Yokohama, Japan, Feb. 10-13, 1998, 11 pages.
Bittner, "Wormhole Run-time Reconfiguration: Conceptualization and VLSI Design of a High Performance Computing System," *Dissertation*, Jan. 23, 1997, pp. I-XX, 1-415.
Bratt, A, "Motorola field programmable analogue arrays, present hardware and future trends," Motorola Programmable Technology Centre, Gadbrook Business Centre, Northwich, Cheshire, 1998, The Institute of Electrical Engineers, IEE. Savoy Place, London, pp. 1-5.
Cadambi, et al., "Managing Pipeline-reconfigurable FPGAs," ACM, 1998, pp. 55-64.
Callahan, et al., "The Garp Architecture and C Compiler," Computer, Apr. 2000, pp. 62-69.
Cardoso, J.M.P., et al., "A novel algorithm combining temporal partitioning and sharing of functional units," University of Algarve, Faro, Portugal, 2001 IEEE, pp. 1-10.
Cardoso, Joao M.P., and Markus Weinhardt, "XPP-VC: A C Compiler with Temporal Partitioning for the PACT-XPP Architecture," Field-Programmable Logic and Applications. Reconfigurable Computing is Going Mainstream, 12th International Conference FPL 2002, Proceedings (Lecture Notes in Computer Science, vol. 2438) Springer-Verlag Berlin, Germany, 2002, pp. 864-874.
Cardoso, J.M.P., "Compilation of Java™ Algorithms onto Reconfigurable Computing Systems with Exploitation of Operation-Level Parallelism," Ph.D. Thesis, Universidade Tecnica de Lisboa (UTL), Lisbon, Portugal Oct. 2000 (Table of Contents and English Abstract only).
Cardoso, J.M.P., et al., "Compilation and Temporal Partitioning for a Coarse-Grain Reconfigurable Architecture," New Algorithms, Architectures and Applications for Reconfigurable Computing, Lysacht, P. & Rosentiel, W. eds., (2005) pp. 105-115.
Cardoso, J.M.P., et al., "Macro-Based Hardware Compilation of Java™ Bytecodes into a Dynamic Reconfigurable Computing System," Field-Programmable Custom Computing Machines (1999) FCCM '99. Proceedings. Seventh Annual IEEE Symposium on NAPA Valley, CA, USA, Apr. 21-23, 1999, IEEE Comput. Soc, US, (Apr. 21, 1999) pp. 2-11.
Chaudhry, G.M., et al., "Separated caches and buses for multiprocessor system," Circuits and Systems, 1993; Proceedings of the 36th Midwest Symposium on Detroit, MI, USA, Aug. 16-18, 1993, New York, NY IEEE, Aug. 16, 1993, pp. 1113-1116, XP010119918 ISBN: 0-7803-1760-2.
Chen et al., "A reconfigurable multiprocessor IC for rapid prototyping of algorithmic-specific high-speed DSP data paths," IEEE Journal of Solid-State Circuits, vol. 27, No. 12, Dec. 1992, pp. 1895-1904.
Clearspeed, CSX Processor Architecture, Whitepaper, PN-1110-0702, 2007, pp. 1-15, www.clearspeed.com.
Clearspeed, CSX Processor Architecture, Whitepaper, PN-1110-0306, 2006, pp. 1-14, www.clearspeed.com.
Compton, K., et al., "Configurable Computing: A Survey of Systems and Software," Northwestern University, Dept. of ECE, Technical Report, 1999, (XP-002315148), 39 pages.
Cook, Jeffrey J., "The Amalgam Compiler Infrastructure," Thesis at the University of Illinois at Urbana-Champaign (2004) Chapter 7 & Appendix G.
Cronquist, D., et al., Architecture Design of Reconfigurable Pipelined Datapaths, Department of Computer Science and Engineering, University of Washington, Seattle, WA, Proceedings of the 20th Anniversary Conference on Advanced Research in VSLI, 1999, pp. 1-15.
Culler, D.E; Singh, J.P., "Parallel Computer Architecture," pp. 434-437, 1999, Morgan Kaufmann, San Francisco, CA USA, XP002477559.
DeIlon, A., "DPGA Utilization and Application," MIT Artificial Intelligence Laboratory, Proceedings of the Fourth International ACM Symposium on Field-Programmable Gate Arrays (FPGA '96), IEEE Computer Society, pp. 1-7.
DeHon, Andre, "Reconfigurable Architectures for General-Purpose Computing," Massachusetts Institute of Technology, Technical Report AITR-1586, Oct. 1996, XP002445054, Cambridge, MA, pp. 1-353.
Del Corso et al., "Microcomputer Buses and Links," Academic Press Inc. Ltd., 1986, pp. 138-143, 277-285.
Diniz, P., et al., "Automatic Synthesis of Data Storage and Control Structures for FPGA-based Computing Engines," 2000, IEEE, pp. 91-100.
Diniz, P., et al., "A behavioral synthesis estimation interface for configurable computing," University of Southern California, Marina Del Rey, CA, 2001 IEEE, pp. 1-2.
Donandt, "Improving Response Time of Programmable Logic Controllers by use of a Boolean Coprocessor," AEG Research Institute Berlin, IEEE, 1989, pp. 4-167-4-169.
Dutt, et al., "If Software is King for Systems-in-Silicon, What's New in Compilers?" IEEE, 1997, pp. 322-325.
Ebeling, C., et al., "Mapping Applications to the RaPiD Configurable Architecture," Department of Computer Science and Engineering, University of Washington, Seattle, WA, *FPGAs for Custom Computing Machines, 1997. Proceedings., The 5th Annual IEEE Symposium*, Publication Date: Apr. 16-18, 1997, 10 pages.
Equator, Pixels to Packets, Enabling Multi-Format High Definition Video, Equator Technologies BSP-15 Product Brief, www.equator.com, 2001, 4 pages.
Fawcett, B.K., "Map, Place and Route: The Key to High-Density PLD Implementation," Wescon Conference, IEEE Center (Nov. 7, 1995) pp. 292-297.
Ferrante, J., et al., "The Program Dependence Graph and its Use in Optimization ACM Transactions on Programming Languages and Systems," Jul. 1987, USA, [online] Bd. 9, Nr., 3, pp. 319-349, XP002156651 ISSN: 0164-0935 ACM Digital Library.
Fineberg, S, et al., "Experimental Analysis of a Mixed-Mode Parallel Architecture Using Bitonic Sequence Sorting," Journal of Parallel and Distributed Computing, vol. 11, No. 3, Mar. 1991, pp. 239-251.
Fornaciari, et al., System-level power evaluation metrics, 1997 Proceedings of the 2nd Annual IEEE International Conference on Innovative Systems in Silicon, New York, NY, Oct. 1997, pp. 323-330.

Forstner, "Wer Zuerst Kommt, Mahlt Zuerst!: Teil 3: Einsatzgebiete and Anwendungbeispiele von FIFO-Speichern," Elektronik, Aug. 2000, pp. 104-109.
Franklin, Manoj, et al., "A Fill-Unit Approach to Multiple Instruction Issue," Proceedings of the Annual International Symposium on Microarchitecture, Nov. 1994, pp. 162-171.
Freescale Slide Presentation, An Introduction to Motorola's RCF (Reconfigurable Compute Fabric) Technology, Presented by Frank David, Launched by Freescale Semiconductor, Inc., 2004, 39 pages.
Genius, D., et al., "A Case for Array Merging in Memory Hierarchies," Proceedings of the 9th International Workshop on Compilers for Parallel Computers, CPC'01 (Jun. 2001), 10 pages.
Gokhale, M.B., et al., "Automatic Allocation of Arrays to Memories in FPGA processors with Multiple Memory Banks," Field-Programmable Custom Computing Machines, 1999, IEEE, pp. 63-69.
Hammes, Jeff, et al., "Cameron: High Level Language Compilation for Reconfigurable Systems," Department of Computer Science, Colorado State University, Conference on Parallel Architectures and Compilation Techniques, Oct. 12-16, 1999, 9 pages.
Hartenstein, R. et al., "A new FPGA architecture for word-oriented datapaths," Proc. FPL'94, Springer LNCS, Sep. 1994, pp. 144-155.
Hartenstein, R., "Coarse grain reconfigurable architectures," Design Automation Conference, 2001, Proceedings of the ASP-DAC 2001 Asia and South Pacific, Jan. 30-Feb. 2, 2001, IEEE Jan. 30, 2001, pp. 564-569.
Hastie et al., "The implementation of hardware subroutines on field programmable gate arrays," Custom Integrated Circuits Conference, 1990, Proceedings of the IEEE 1990, May 16, 1990, pp. 31.3.1-31.4.3 (3 pages).
Hauck, "The Roles of FPGAs in Reprogrammable Systems," IEEE, Apr. 1998, pp. 615-638.
Hauser, J.R., et al., "Garp: A MIPS Processor with a Reconfigurable Coprocessor," University of California, Berkeley, IEEE, 1997, pp. 24-33.
Hedge, S.J., "3D WASP Devices for On-line Signal and Data Processing," 1994, International Conference on Wafer Scale Integration, pp. 11-21.
Hendrich, N., et al., "Silicon Compilation and Rapid Prototyping of Microprogrammed VLSI-Circuits with MIMOLA and SOLO 1400," Microprocessing & Microprogramming (Sep. 1992) vol. 35(1-5), pp. 287-294.
Hwang, K., "Advanced Computer Architecture—Parallelism, Scalability, Programmability," 1993, McGraw-Hill, Inc., pp. 348-355.
Hwang, K., "Computer Architecture and Parallel Processing," Data Flow Computers and VLSI Computations, XP-002418655, 1985 McGraw-Hill, Chapter 10, pp. 732-807.
Hwang, L., et al., "Min-cut Replication in Partitioned Networks," IEEE Transactions on Computer-Aided Design of Integrated Circuits and Systems, [online] Bd. 14, Nr. 1, Jan. 1995, pp. 96-106, XP00053228 USA ISSN: 0278-0070 IEEE Xplore.
IBM Technical Disclosure Bulletin, IBM Corp., New York, XP000424878, Bd. 36, Nr. 11, Nov. 1, 1993, pp. 335-336.
"IEEE Standard Test Access Port and Boundary-Scan Architecture," IEEE Std. 1149.1-1990, 1993, pp. 1-127.
Inside DSP, "Ambric Discloses Massively Parallel Architecture," Aug. 23, 2006, http://www.insidedsp.com/ Articles/tabid/64/articleType/ArticleView/articleId/155/Default.aspx, 2 pages.
Intel, Intel MXP5800/MXP5400 Digital Media Processors, Architecture Overview, Jun. 2004, Revision 2.4, pp. 1-24.
Iseli, C., et al. "A C++ Compiler for FPGA Custom Execution Units Synthesis," IEEE, 1995, pp. 173-179.
Isshiki, Tsuyoshi, et al., "Bit-Serial Pipeline Synthesis for Multi-FPGA Systems with C++ Design Capture," 1996 IEEE, pp. 38-47.
Jacob, J., et al., "Memory Interfacing and Instruction Specification for Reconfigurable Processors," ACM 1999, pp. 145-154.
Jantsch, Axel et al., "A Case Study on Hardware/Software Partitioning," Royal Institute of Technology, Kista, Sweden, Apr. 10, 1994, IEEE, pp. 111-118.
Jantsch, Axel, et al., "Hardware/Software Partitioning and Minimizing Memory Interface Traffic," Electronic System Design Laboratory, Royal Institute of Technology, ESDLab, Electrum 229, S-16440 Kista, Sweden (Apr. 1994), pp. 226-231.
John, L., et al., "A Dynamically Reconfigurable Interconnect for Array Processors," vol. 6, No. 1, Mar. 1998, IEEE, pp. 150-157.
Kastrup, B., "Automatic Hardware Synthesis for a Hybrid Reconfigurable CPU Featuring Philips CPLDs," Proceedings of the PACT Workshop on Reconfigurable Computing, 1998, pp. 5-10.
Kaul, M., et al., "An automated temporal partitioning and loop fission approach of FPGA based reconfigurable synthesis of DSP applications," University of Cincinnati, Cincinnati, OH, ACM 1999, pp. 616-622.
Kean, T.A., "Configurable Logic: A Dynamically Programmable Cellular Architecture and its VLSI Implementation," University of Edinburgh (Dissertation) 1988, pp. 1-286.
Kean, T., et al., "A Fast Constant Coefficient Multiplier for the XC6200," Xilinx, Inc., Lecture Notes in Computer Science, vol. 1142, Proceedings of the 6th International Workshop of Field-Programmable Logic, 1996, 7 pages.
Kim et al., "A Reconfigurable Multifunction Computing Cache Architecture," IEEE Transactions on Very Large Scale Integration (VLSI) Systems vol. 9, Issue 4, Aug. 2001 pp. 509-523.
Knittel, Gunter, "A PCI-compatible FPGA-Coprocessor for 2D/3D Image Processing," University of Turgingen, Germany, 1996 IEEE, pp. 136-145.
Koch, A., et al., "Practical Experiences with the SPARXIL Co-Processor," 1998, IEEE, pp. 394-398.
Koch, Andreas et al., "High-Level-Language Compilation for Reconfigurable Computers," Proceedings of European Workshop on Reconfigurable Communication-Centric SOCS (Jun. 2005) 8 pages.
Koren et al., "A data-driven VLSI array for arbitrary algorithms," IEEE Computer Society, Long Beach, CA vol. 21, No. 10, Oct. 1, 1988, pp. 30-34.
Kung, "Deadlock Avoidance for Systolic Communication," 1988 Conference Proceedings of the 15th Annual International Symposium on Computer Architecture, May 30, 1998, pp. 252-260.
Lange, H., et al., "Memory access schemes for configurable processors," Field-Programmable Logic and Applications, International Workshop, FPL, Aug. 27, 2000, pp. 615-625, XP02283963.
Larsen, S., et al., "Increasing and Detecting Memory Address Congruence," Proceedings of the 2002 IEEE International Conference on Parallel Architectures and Compilation Techniques (PACT'02), pp. 1-12 (Sep. 2002).
Lee et al., "A new distribution network based on controlled switching elements and its applications," IEEE/ACT Trans. of Networking, vol. 3, No. 1, pp. 70-81, Feb. 1995.
Lee, Jong-eun, et al., "Reconfigurable ALU Array Architecture with Conditional Execution," International Soc. Design Conference (ISOOC) [online] Oct. 25, 2004, Seoul, Korea, 5 pages.
Lee, Ming-Hau, et al., "Designs and Implementation of the MorphoSys Reconfigurable Computing Processors," The Journal of VLSI Signal Processing, Kluwer Academic Publishers, BO, vol. 24, No. 2-3, Mar. 2, 2000, pp. 1-29.
Lee, R. B., et al., "Multimedia extensions for general-purpose processors," *IEEE Workshop on Signal Processing Systems, SIPS 97—Design and Implementation* (1997), pp. 9-23.
Ling, X., "WASMII: An MPLD with Data-Driven Control on a Virtual Hardware," Journal of Supercomputing, Kluwer Acdemic Publishers, Dordrecht, Netherlands, 1995, pp. 253-276.
Ling et al., "WASMII: A Multifunction Programmable Logic Device (MPLD) with Data Driven Control," The Transactions of the Institute of Electronics, Information and Communication Engineers, Apr. 25, 1994, vol. J77-D-1, Nr. 4, pp. 309-317.
Mano, M.M., "Digital Design," by Prentice Hall, Inc., Englewood Cliffs, New Jersey 07632, 1984, pp. 119-125, 154-161.
Margolus, N., "An FPGA architecture for DRAM-based systolic computations," Boston University Center for Computational Science and MIT Artificial Intelligence Laboratory, IEEE 1997, pp. 2-11.
Maxfield,C., "Logic that Mutates While-U-Wait," EDN (Bur. Ed) (USA), EDN (European Edition), Nov. 7, 1996, Cahners Publishing, USA, pp. 137-140, 142.
Mei, Bingfeng, "A Coarse-Grained Reconfigurable Architecture Template and Its Compilation Techniques," Katholeike Universiteit Leuven, PhD Thesis, Jan. 2005, IMEC vzw, Universitair Micro-Electronica Centrum, Belgium, pp. 1-195 (and Table of Contents).

Mei, Bingfeng et al., "Design and Optimization of Dynamically Reconfigurable Embedded Systems," IMEC vzw, 2003, Belgium, 7 pages, http://www.imec.be/reconfigurable/pdf/ICERSA_01_design.pdf.

Mei, Bingfeng, et al., "Adres: An Architecture with Tightly Coupled VLIW Processor and Coarse-Grained Reconfigurable Matrix," Proc. *Field-Programmable Logic and Applications* (FPL 03), Springer, 2003, pp. 61-70.

Miller, M.J., et al., "High-Speed FIFOs Contend with Widely Differing Data Rates: Dual-port RAM Buffer and Dual-pointer System Provide Rapid, High-density Data Storage and Reduce Overhead," Computer Design, Sep. 1, 1985, pp. 83-86.

Mirsky, E. DeHon, "MATRIX: A Reconfigurable Computing Architecture with Configurable Instruction Distribution and Deployable Resources," Proceedings of the IEEE Symposium on FPGAs for Custom Computing Machines, 1996, pp. 157-166.

Miyamori, T., et al., "REMARC: Reconfigurable Multimedia Array Coprocessor," Computer Systems Laboratory, Stanford University, IEICE Transactions on Information and Systems E Series D, 1999; (abstract): Proceedings of the 1998 ACM/SIGDA sixth international symposium on Field programmable gate arrays, p. 261, Feb. 22-25, 1998, Monterey, California, United States, pp. 1-12.

Moraes, F., et al., "A Physical Synthesis Design Flow Based on Virtual Components," XV Conference on Design of Circuits and Integrated Systems (Nov. 2000) 6 pages.

Muchnick, S., "Advanced Compiler Design and Implementation," (Morgan Kaufmann 1997), Table of Contents, 11 pages.

Murphy, C., "Virtual Hardware Using Dynamic Reconfigurable Field Programmable Gate Arrays," Engineering Development Centre, Liverpool John Moores University, UK, GERI Annual Research Symposium 2005, 8 pages.

Myers, G. "Advances in Computer Architecture," Wiley-Interscience Publication, 2nd ed., John Wiley & Sons, Inc., 1978, pp. 463-494.

Nageldinger, U., "Design-Space Exploration for Coarse Grained Reconfigurable Architectures," (Dissertation) Universitaet Kaiserslautern, 2000, Chapter 2, pp. 19-45.

Neumann, T., et al., "A Generic Library for Adaptive Computing Environments," Field Programmable Logic and Applications, 11th International Conference, FPL 2001, Proceedings (Lecture Notes in Computer Science, vol. 2147) (2001) pp. 503-512.

Nilsson, et al., "The Scalable Tree Protocol—A Cache Coherence Approaches for Large-Scale Multiprocessors," IEEE, pp. 498-506, Dec. 1992.

Norman, R.S., "Hyperchip Business Summary, The Opportunity," Jan. 31, 2000, pp. 1-3.

Olukotun, K., "The Case for a Single-Chip Microprocessor," ACM Sigplan Notices, ACM, Association for Computing Machinery, New York, vol. 31, No. 9, Sep. 1996 pp. 2-11.

Ozawa, Motokazu et al., "A Cascade ALU Architecture for Asynchronous Super-Scalar Processors," IEICE Transactions on Electronics, Electronics Society, Tokyo, Japan, vol. E84-C, No. 2, Feb. 2001, pp. 229-237.

PACT Corporation, "The XPP Communication System," Technical Report 15 (2000), pp. 1-16.

Parhami, B., "Parallel Counters for Signed Binary Signals," Signals, Systems and Computers, 1989, Twenty-Third Asilomar Conference, vol. 1, pp. 513-516.

PCI Local Bus Specification, Production Version, Revision 2.1, Jun. 1, Portland, OR, 1995, pp. 1-281.

Piotrowski, A., "IEC-BUS, Die Funktionsweise des IEC-Bus unde seine Anwendung in Geräten und Systemen," 1987, Franzis-Verlag GmbH, München, pp. 20-25.

Pirsch, P. et al., "VLSI implementations of image and video multimedia processing systems," *IEEE Transactions on Circuits and Systems for Video Technology*, vol. 8, No. 7, Nov. 1998, pp. 878-891.

Quenot, G.M., et al., "A Reconfigurable Compute Engine for Real-Time Vision Automata Prototyping," Laboratoire Systeme de Perception, DGA/Etablissement Technique Central de l'Armement, France, 1994 IEEE, pp. 91-100.

Razdan et al., A High-Performance Microarchitecture with Hardware-Programmable Functional Units, Micro-27, Proceedings of the 27th Annual International Symposium on Microarchitecture, IEEE Computer Society and Association for Computing Machinery, Nov. 30-Dec. 2, 1994, pp. 172-180.

Ryo, A., "Auszug aus Handbuch der Informationsverarbeitung," ed. Information Processing Society of Japan, *Information Processing Handbook, New Edition*, Software Information Center, Ohmsha, Dec. 1998, 4 pages. [Translation provided].

Saleeba, Z.M.G., "A Self-Reconfiguring Computer System," Department of Computer Science, Monash University (Dissertation) 1998, pp. 1-306.

Saleeba, M. "A Self-Contained Dynamically Reconfigurable Processor Architecture," Sixteenth Australian Computer Science Conference, ASCS-16, QLD, Australia, Feb. 1993, pp. 59-70.

Salefski, B. et al., "Re-configurable computing in wireless," *Annual ACM IEEE Design Automation Conference: Proceedings of the 38th conference on Design automation* (2001) pp. 178-183.

Schmidt, H. et al., "Behavioral synthesis for FGPA-based computing," Carnegie Mellon University, Pittsburgh, PA, 1994 IEEE, pp. 125-132.

Schmidt, U. et al., "Datawave: A Single-Chip Multiprocessor for Video Applications," *IEEE Micro*, vol. 11, No. 3, May/Jun. 1991, pp. 22-25, 88-94.

Schmit, et al., "Hidden Markov Modeling and Fuzzy Controllers in FPGAs, FPGAs for Custom Computing Machines," 1995; Proceedings, IEEE Symposium in Napa Valley, CA, Apr. 1995, pp. 214-221.

Schönfeld, M., et al., "The LISA Design Environment for the Synthesis of Array Processors Including Memories for the Data Transfer and Fault Tolerance by Reconfiguration and Coding Techniques," J. VLSI Signal Processing Systems for Signal, Image, and Video Technology, (Oct. 1, 1995) vol. 11(1/2), pp. 51-74.

Shin, D., et al., "C-based Interactive RTL Design Methodology," Technical Report CECS-03-42 (Dec. 2003) pp. 1-16.

Shirazi, et al., "Quantitative analysis of floating point arithmetic on FPGA based custom computing machines," IEEE Symposium on FPGAs for Custom Computing Machines, *IEEE Computer Society Press*, Apr. 19-21, 1995, pp. 155-162.

Siemers, C., "Rechenfabrik Ansaetze Fuer Extrem Parallele Prozessoren," Verlag Heinze Heise GmbH., Hannover, DE No. 15, Jul. 16, 2001, pp. 170-179.

Siemers et al., "The .>S<puter: A Novel Micoarchitecture Model for Execution inside Superscalar and VLIW Processors Using Reconfigurable Hardware," Australian Computer Science Communications, vol. 20, No. 4, Computer Architecture, Proceedings of the 3rd Australian Computer Architecture Conference, Perth, John Morris, Ed., Feb. 2-3, 1998, pp. 169-178.

Simunic, et al., Source Code Optimization and Profiling of Energy Consumation in Embedded Systems, Proceedings of the 13th International Symposium on System Synthesis, Sep. 2000, pp. 193-198.

Singh, H. et al., "MorphoSys: An Integrated Reconfigurable System for Data-Parallel Computation-Intensive Applications," University of California, Irvine, CA. and Federal University of Rio de Janeiro, Brazil, 2000, IEEE Transactions on Computers, pp. 1-35.

Skokan, Z.E., "Programmable logic machine (A programmable cell array)," IEEE Journal of Solid-State Circuits, vol. 18, Issue 5, Oct. 1983, pp. 572-578.

Sondervan, J., "Retiming and logic synthesis," Electronic Engineering (Jan. 1993) vol. 65(793), pp. 33, 35-36.

Soni, M., "VLSI Implementation of a Wormhole Run-time Reconfigurable Processor," Jun. 2001, (Masters Thesis)Virginia Polytechnic Institute and State University, 88 pages.

Sueyoshi, T, "Present Status and Problems of the Reconfigurable Computing Systems Toward the Computer Evolution," Department of Artificial Intelligence, Kyushi Institute of Technology, Fukuoka, Japan; Institute of Electronics, Information and Communication Engineers, vol. 96, No. 426, IEICE Technical Report (1996), pp. 111-119 [English Abstract Only].

Sutton et al., "A Multiprocessor DSP System Using PADDI-2," U.C. Berkeley, 1998 ACM, pp. 62-65.

Tau, E., et al., "A First Generation DPGA Implementation," *FPD'95*, pp. 138-143.

Tenca, A.F., et al., "A Variable Long-Precision Arithmetic Unit Design for Reconfigurable Coprocessor Architectures," University of California, Los Angeles, 1998, pp. 216-225.

The XPP White Paper, Release 2.1, PACT—A Technical Perspective, Mar. 27, 2002, pp. 1-27.

TMS320C54X DSP: CPU and Peripherals, Texas Instruments, 1996, 25 pages.

TMS320C54x DSP: Mnemonic Instruct on Set, Texas Instruments, 1996, 342 pages.

Tsutsui, A., et al., "Yards: FPGA/MPU Hybrid Architecture for Telecommunication Data Processing," NTT Optical Network Systems Laboratories, Japan, 1997 ACM, pp. 93-99.

Vasell et al., "The Function Processor: A Data-Driven Processor Array for Irregular Computations," Chalmers University of Technology, Sweden, 1992, pp. 1-21.

Villasenor, et al., "Configurable Computing Solutions for Automatic Target Recognition," *IEEE*, 1996 pp. 70-79.

Villasenor, et al., "Configurable Computing," *Scientific American*, vol. 276, No. 6, Jun. 1997, pp. 66-71.

Villasenor, et al., "Express Letters Video Communications Using Rapidly Reconfigurable Hardware," IEEE Transactions on Circuits and Systems for Video Technology, IEEE, Inc., NY, Dec. 1995, pp. 565-567.

Wada, et al., "A Performance Evaluation of Tree-based Coherent Distributed Shared Memory," Proceedings of the Pacific RIM Conference on Communications, Comput and Signal Processing, Victoria, May 19-21, 1993, pp. 390-393.

Waingold, E., et al., "Baring it all to software: Raw machines," IEEE Computer, Sep. 1997, at 86-93.

Weinhardt, M., "Compilation Methods for Structure-programmable Computers," dissertation, ISBN 3-89722-011-3, 1997. [Table of Contents and English Abstract Provided].

Weinhardt, Markus et al., "Pipeline Vectorization for Reconfigurable Systems," 1999, IEEE, pp. 52-62.

Weinhardt, Markus et al., "Pipeline Vectorization," IEEE Transactions on Computer-Aided Design of Integrated Circuits and Systems, vol. 20, No. 2, Feb. 2001, pp. 234-248.

Weinhardt, Markus et al., "Memory Access Optimization for Reconfigurable Systems," IEEE Proceedings Computers and Digital Techniques, 48(3) (May 2001) pp. 1-16.

Wittig, et al., "OneChip: An FPGA Processor with Reconfigurable Logic," IEEE, 1996, pp. 126-135.

Wolfe, M. et al., "High Performance Compilers for Parallel Computing," (Addison-Wesley 1996) Table of Contents, 11 pages.

Wu, et al., "A New Cache Directory Scheme," IEEE, pp. 466-472, Jun. 1996.

Xilinx, "Logic Cell Array Families: XC4000, XC4000A and XC4000H," 1994, product description, pp. 2-7, 2-9, 2-14, 2-15, 8-16, and 9-14.

Xilinx, "The Programmable Logic Data Book," 1994, Section 2, pp. 1-231, Section 8, pp. 1, 23-25, 29, 45-52, 169-172.

Xilinx, "Spartan and SpartanXL Families Field Programmable Gate Arrays," Jan. 1999, Xilinx, pp. 4-3 through 4-70.

Xilinx, "XC6200 Field Programmable Gate Arrays," Apr. 24, 1997, Xilinx product description, pp. 1-73.

Xilinx, "XC3000 Series Field Programmable Gate Arrays," Nov. 6, 1998, Xilinx product description, pp. 1-76.

Xilinx, "XC4000E and XC4000X Series Field Programmable Gate Arrays," May 14, 1999, Xilinx product description, pp. 1-68.

Xilinx, "Virtex-E 1.8 V Extended Memory Field Programmable Gate Arrays," Jul. 17, 2002, Xilinx Production Product Specification, pp. 1-118.

Xilinx, "Virtex-II and Virtex-II Pro X FPGA User Guide," Mar. 28, 2007, Xilinx user guide, pp. 1-559.

Xu, H. et al., "Parallel QR Factorization on a Block Data Flow Architecture," Conference Proceeding Article, Mar. 1, 1992, pp. 332-336 XPO10255276, p. 333, Abstract 2.2, 2.3, 2.4—p. 334.

Ye, Z.A. et al., "A C-Compiler for a Processor With a Reconfigurable Functional Unit," FPGA 2000 ACM/SIGNA International Symposium on Field Programmable Gate Arrays, Monterey, CA Feb. 9-11, 2000, pp. 95-100.

Yeung, A. et al., "A data-driven architecture for rapid prototyping of high throughput DSP algorithms," Dept. of Electrical Engineering and Computer Sciences, Univ. of California, Berkeley, USA, *Proceedings VLSI Signal Processing Workshop, IEEE Press*, pp. 225-234, Napa, Oct. 1992.

Yeung, A. et al., "A reconfigurable data-driven multiprocessor architecture for rapid prototyping of high throughput DSP algorithms," Dept. of Electrical Engineering and Computer Sciences, Univ. of California, Berkeley, USA, pp. 169-178, *IEEE* 1993.

Zhang, et al., "Architectural Evaluation of Flexible Digital Signal Processing for Wireless Receivers, Signals, Systems and Computers," 2000; Conference Record of the Thirty-Fourth Asilomar Conference, Bd. 1, Oct. 29, 2000, pp. 78-83.

Zhang, et al., "A 1-V Heterogeneous Reconfigurable DSP IC for Wireless Baseband Digital Signal Processing," IEEE Journal of Solid-State Circuits, vol. 35, No. 11, Nov. 2000, pp. 1697-1704.

Zhang et al., "Abstract: Low-Power Heterogeneous Reconfigurable Digital Signal Processors with Energy-Efficient Interconnect Network," U.C. Berkeley (2004), pp. 1-120.

Zima, H. et al., "Supercompilers for parallel and vector computers," (Addison-Wesley 1991) Table of Contents, 5 pages.

U.S. Appl. No. 90/010,979, filed May 4, 2010, Vorbach et al.

U.S. Appl. No. 90/011,087, filed Jul. 8, 2010, Vorbach et al.

Hauser, John Reid, (Dissertation) "Augmenting a Microprocessor with Reconfigurable Hardware," University of California, Berkeley, Fall 2000, 255 pages. (submitted in 3 PDFs, Parts 1-3).

Hauser, John R., "The Garp Architecture,"University of California at Berkeley, Computer Science Division, Oct. 1997, pp. 1-55.

Venkatachalam et al., "A highly flexible, distributed multiprocessor architecture for network processing," Computer Networks, The International Journal of Computer and Telecommunications Networking, vol. 41, No. 5, Apr. 5, 2003, pp. 563-568.

Xilinx, Inc.'s and Avnet, Inc.'s Disclosure Pursuant to P.R. 4-2; *PACT XPP Technologies, AG.* V. *Xilinx, Inc. and Avnet, Inc*., Case No. 2:07-cv-00563-TJW-CE, U.S. District Court for the Eastern District of Texas, Dec. 28, 2007, 4 pages.

Xilinx, Inc.'s and Avnet, Inc.'s Disclosure Pursuant to P.R. 4-1; *PACT XPP Technologies, AG.* V. *Xilinx, Inc. and Avnet, Inc*., Case No. 2:07-cv-00563-TJW-CE, U.S. District Court for the Eastern District of Texas, Dec. 28, 2007, 9 pages.

Defendant's Claim Construction Chart for P.R. 4-2 Constructions and Extrinsic Evidence for Terms Proposed by Defendants, *PACT XPP Technologies, AG.* V. *Xilinx, Inc. and Avnet, Inc*., Case No. 2:07-cv-00563-TJW-CE, U.S. District Court for the Eastern District of Texas, Dec. 28, 2007, pp. 1-19.

PACT's P.R. 4-1 List of Claim Terms for Construction, *PACT XPP Technologies, AG.* V. *Xilinx, Inc and Avnet, Inc*., Case No. 2:07-cv-00563-TJW-CE, U.S. District Court for the Eastern District of Texas, Dec. 28, 2007, pp. 1-7.

PACT's P.R. 4-2 Preliminary Claim Constructions and Extrinsic Evidence, *PACT XPP Technologies, AG.* V. *Xilinx, Inc. and Avnet, Inc*., Case No. 2:07-cv-00563-TJW-CE, U.S. District Court for the Eastern District of Texas, Dec. 28, 2007, pp. 1-16, and Exhibits re Extrinsic Evidence Parts in seven (7) separate additional PDF files (Parts 1-7).

Altera, "APEX 20K Programmable Logic Device Family," Altera Corporation Data Sheet, Mar. 2004, ver. 5.1, pp. 1-117.

IMEC, "ADRES multimedia processor & 3MF multimedia platform," Transferable IP, IMEC Technology Description, (Applicants believe the date to be Oct. 2005), 3 pages.

Kanter, David, "NVIDIA's GT200: Inside a Parallel Processor," http://www.realworldtech.com/page.cfm?ArticleID=RWT090989195242&p=1, Sep. 8, 2008, 27 pages.

Xilinx, "Virtex-E 1.8 V Extended Memory Field Programmable Gate Arrays," (v2.2) Sep. 10, 2002, Xilinx Production Product Specification, pp. 1-52.

Xilinx, "Virtex-II and Virtex-II Pro X FPGA Platform FPGAs: Complete Data Sheet," (v4.6) Mar. 5, 2007, pp. 1-302.

Xilinx, "Virtex-II Platform FPGAs: Complete Data Sheet," (v3.5) Nov. 5, 2007, pp. 1-226.

ARM Limited, "ARM Architecture Reference Manual," Dec. 6, 2000, pp. A10-6-A10-7.

Bondalapati et al., "Reconfigurable Meshes: Theory and Practice," Dept. of Electrical Engineering-Systems, Univ. of Southern California, Apr. 1997, Reconfigurable Architectures Workshop, International Parallel Processing Symposium, 15 pages.

Cherbaka, Mark F., "Verification and Configuration of a Run-time Reconfigurable Custom Computing Integrated Circuit for DSP Applications," Thesis: Virginia Polytechnic Institute and State University, Jul. 8, 1996, 106 pages.
Cong et al., "Structural Gate Decomposition for Depth-Optimal Technology Mapping in LUT-Based FPGA Designs," Univ. of California, ACM Transactions on Design Automation of Electronic Systems, vol. 5, No. 2, Apr. 2000, pp. 193-225.
FOLDOC, The Free On-Line Dictionary of Computing, "handshaking," online Jan. 13, 1995, retrieved from Internet Jan. 23, 2011 at http://foldoc.org/handshake.
Li et al., "Hardware-Software Co-Design of Embedded Reconfigurable Architectures," Los Angeles, CA, 2000, ACM, pp. 507-512.
Marshall et al., "A Reconfigurable Arithmetic Array for Multimedia Applications," FPGA '99 Proceedings of the 1999 ACM/SIGDA Seventh International Symposium on Field Programmable Gate Arrays, 10 pages.
Melvin, Stephen et al., "Hardware Support for Large Atomic Units in Dynamically Scheduled Machines," Computer Science Division, University of California, Berkeley, IEEE (1988), pp. 60-63.
Pistorius et al., "Generation of Very Large Circuits to Benchmark the Partitioning of FPGAs," Monterey, CA, 1999, ACM, pp. 67-73.
Roterberg, Eric., et al., "Trace Cache: a Low Latency Approach to High Bandwidth Instruction Fetching," Proceedings of the 29th Annual International Symposium on Michoarchitecture, Paris, France, IEEE (1996), 12 pages.
Translation of DE 101 39 170 by examiner using Google Translate, 10 pages.
U.S. Appl. No. 90/010,450, filed Mar. 27, 2009.
Culler, D.E; Singh, J.P., "Parallel Computer Architecture," p. 17, 1999, Morgan Kaufmann, San Francisco, CA USA, XP002477559.
Short, Kenneth L., *Microprocessors and Programmed Logic*, Prentice Hall, Inc., New Jersey 1981, p. 34.
Webster's Ninth New Collegiate Dictionary, Merriam-Webster, Inc., 1990, p. 332 (definition of "dedicated").
Huang, Libo et al., "A New Architecture for Multiple-Precision Floating-Point Multiply-Add Fused Unit Design," School of Computer National University of Defense Technology, China, IEEE 2007, 8 pages.
Jo, Manhwee et al., "Implementation of Floating-Point Operations for 3D Graphics on a Coarse-Grained Reconfigurable Architecture," Design Automation Laboratory, School of EE/CS, Seoul National University, Korea, IEEE 2007, pp. 127-130.
Xilinx, White Paper 370: (Virtex-6 and Spartan-6 FPGA Families) "Reducing Switching Power with Intelligent Clock Gating," Frederic Rivoallon, May 3, 2010, pp. 1-5.
Xilinx, White Paper 298: (Spartan-6 and Virtex-6 Devices) "Power Consumption at 40 and 50 nm," Matt Klein, Apr. 13, 2009, pp. 1-21.
Becker, J., "A Partitioning Compiler for Computers with Xputer-based Accelerators," 1997, Kaiserslautern University, 326 pp.
Hartenstein et al., "Parallelizing Compilation for a Novel Data-Parallel Architecture," 1995, PCAT-94, Parallel Computing: Technology and Practice, 13 pp.
Hartenstein et al., "A Two-Level Co-Design Framework for Xputer-based Data-driven Reconfigurable Accelerators," 1997, Proceedings of the Thirtieth Annual Hawaii International Conference on System Sciences, 10 pp.
Ballagh et al., "Java Debug Hardware Models Using JBits," 8th Reconfigurable Architectures Workshop, 2001, 8 pages.
Bellows et al., "Designing Run-Time Reconfigurable Systems with JHDL," Journal of VLSI Signal Processing, vol. 28, Kluwer Academic Publishers, The Netherlands, 2001, pp. 29-45.
Guccione et al., "JBits: Java based interface for reconfigurable computing," Xilinx, Inc., San Jose, CA, 1999, 9 pages.
Price et al., "Debug ofReconfigurable Systems," Xilinx, Inc., San Jose, CA, Proceedings of SPIE, 2000, pp. 181-187.
Sundararajan et al., "Testing FPGA Devices. Using JBits," Proc. MAPLD 2001, Maryland, USA, Katz (ed.), NASA, CA, 8 pages.
Altera, "Implementing High-Speed Search Applications with Altera CAM," Jul. 2001, Ver. 2.1, Application Note 119, 50 pages.
Bolsens, Ivo (CTO Xilinx), "FPGA, a history of interconnect," Xilinx slide presentation, posted on the internet Oct. 30, 2008 at http://www.docstoc.com/docs/2198008/FPGA-a-history-of-interconnect, 32 pages.
Altera, "2. TriMatrix Embedded Memory Blocks in Stratix & Stratix GX Devices," Altera Corporation, Jul. 2005, 28 pages.
Altera, "APEX II Programmable Logic Device Family," Altera Corporation Data Sheet, Aug. 2002, Ver. 3.0, 99 pages.
"BlueGene/L—Hardware Architecture Overview," BlueGene/L design team, IBM Research, Oct. 17, 2003 slide presentation, pp. 1-23.
"BlueGene/L: the next generation of scalable supercomputer," Kissel et al., Lawrence Livermore National Laboratory, Livermore, California, Nov. 18, 2002, 29 pages.
BlueGene Project Update, Jan. 2002, IBM slide presentation, 20 pages.
BlueGene/L, "An Overview of the BlueGene/L Supercomputer," The BlueGene/L Team, IBM and Lawrence Livermore National Laboratory, 2002 IEEE. pp. 1-22.
Epstein, Dave, "IBM Extends DSP Performance with Mfaxt," Microprocessor Report, vol. 9, No. 16 (MicroDesign Resources), Dec. 4, 1995, pp. 1-4 [XL0029013].
Galanis, M.D. et al., "Accelerating Applications by Mapping Critical Kernels on Coarse-Grain Reconfigurable Hardware in Hybrid Systems," Proceedings of the 13th Annual IEEE Symposium on Field-Programmable Custom Computing Machines, 2005, 2 pages.
Guo, Z. et al., "A Compiler Intermediate Representation for Reconfigurable Fabrics," University of California, Riverside, Dept. of Electrical Engineering, IEEE 2006, 4 pages.
Gwennap, Linley, "P6 Underscores Intel's Lead," Microprocessor Report, vol. 9., No. 2, Feb. 16, 1995 (MicroDesign Resources), p. 1 and pp. 6-15.
Gwennap, Linley, "Intel's P6 Bus Designed for Multiprocessing," Microprocessor Report, vol. 9, No. 7 (MicroDesign Resources), May 30, 1995, p. 1 and pp. 6-10.
Intel, "Pentium Pro Family Developer's Manual , vol. 3: Operating System Writer's Guide," Intel Corporation, Dec. 1995, [submitted in 4 PDF files: Part I, Part II, Part III and Part IV], 458 pages.
Agarwal, A., et al., "APRIL: A Processor Architecture for Multiprocessing," Laboratory for Computer Science, MIT, Cambridge, MA, IEEE 1990, pp. 104-114.
Almasi and Gottlieb, *Highly Parallel Computing*, The Benjamin/Cummings Publishing Company, Inc., Redwood City, CA, 1989, 3 pages (Fig. 4.1).
Advanced RISC Machines Ltd (ARM), "AMBA—Advanced Microcontroller Bus Architecture Specification," (Document No. ARM IHI 0001C), Sep. 1995, 72 pages.
Alfke, Peter; New, Bernie, *Xilinx Application Note*, "Additional XC3000 Data," XAPP 024.000, 1994, pp. 8-11 through 8-20.
Alfke, Peter; New, Bernie, *Xilinx Application Note*, "Adders, Subtracters and Accumulators in XC3000," XAPP 022.000, 1994, pp. 8-98 through 8-104.
Alfke, Peter, *Xilinx Application Note*, "Megabit FIFO in Two Chips: One LCA Device and One DRAM," XAPP 030.000, 1994, pp. 8-148 through 8-150.
Alfke, Peter, *Xilinx Application Note*, "Dynamic Reconfiguration," XAPP 093, Nov. 10, 1997, pp. 13-45 through 13-46.
Alfke, Peter; New, Bernie, *Xilinx Application Note*, "Implementing State Machines in LCA Devices," XAPP 027.001, 1994, pp. 8-169 through 8-172.
Algotronix, Ltd., CAL64K Preliminary Data Sheet, Apr. 1989, pp. 1-24.
Algotronix, Ltd., CAL4096 Datasheet, 1992, pp. 1-53.
Algotronix, Ltd., CHS2x4 User Manual, "CHA2x4 Custom Computer," 1991, pp. 1-38.
Allaire, Bill; Fischer, Bud, *Xilinx Application Note*, "Block Adaptive Filter," XAPP 055, Aug. 15, 1996 (Version 1.0), pp. 1-10.
Altera Application Note (73), "Implementing FIR Filters in FLEX Devices," Altera Corporation, Feb. 1998, ver. 1.01, pp. 1-23.
Athanas, P. (Thesis), "An adaptive machine architecture and compiler for dynamic processor reconfiguration," Brown University 1992, pp. 1-157.

Berkeley Design Technology, Inc., *Buyer's Guide to DSP Processors*, 1995, Fremont, CA., pp. 673-698.
Bittner, R. et al., "Colt: An Experiment in Wormhole Run-Time Reconfiguration," Bradley Department of Electrical and Computer Engineering, Blacksburg, VA, SPIE—International Society for Optical Engineering, vol. 2914/187, Nov. 1996, Boston, MA, pp. 187-194.
Camilleri, Nick; Lockhard, Chris, *Xilinx Application Note*, "Improving XC4000 Design Performance," XAPP 043.000,1994, pp. 8-21 through 8-35.
Cartier, Lois, *Xilinx Application Note*, "System Design with New XC4000EX I/O Features," Feb. 21, 1996, pp. 1-8.
Chen, D., (Thesis) "Programmable arithmetic devices for high speed digital signal processing," U. California Berkeley 1992, pp. 1-175.
Churcher, S., et al., "The XC6200 FastMap TM Processor Interface," Xilinx, Inc., Aug. 1995, pp. 1-8.
Cowie, Beth, *Xilinx Application Note*, "High Performance, Low Area, Interpolator Design for the XC6200," XAPP 081, May 7, 1997 (Version 1.0), pp. 1-10.
Duncan, Ann, *Xilinx Application Note*, "A32x16 Reconfigurable Correlator for the XC6200," XAPP 084, Jul. 25, 1997 (Version 1.0), pp. 1-14.
Ebeling, C., et al., "RaPiD—Reconfigurable Pipelined Datapath," Dept. of Computer Science and Engineering, U. Washington, 1996, pp. 126-135.
Epstein, D., "IBM Extends DSP Performance with Mfast—Powerful Chip Uses Mesh Architecture to Accelerate Graphics, Video," 1995 MicroDesign Resources, vol. 9, No. 16, Dec. 4, 1995, pp. 231-236.
Fawcett, B., "New SRAM-Based FPGA Architectures Address New Applications," Xilinx, Inc. San Jose, CA, Nov. 1995, pp. 231-236.
Goslin, G; Newgard, B, *Xilinx Application Note*, "16-Tap, 8-Bit FIR Filter Applications Guide," Nov. 21, 1994, pp. 1-5.
Iwanczuk, Roman, *Xilinx Application Note*, "Using the XC4000 RAM Capability," XAPP 031.000, 1994, pp. 8-127 through 8-138.
Knapp, Steven, "Using Programmable Logic to Accelerate DSP Functions," Xilinx, Inc., 1995, pp. 1-8.
New, Bernie, *Xilinx Application Note*, "Accelerating Loadable Counters in SC4000," XAPP 023.001, 1994, pp. 8-82 through 8-85.
New, Bernie,*Xilinx Application Note*, "Boundary Scan Emulator for XC3000," XAPP 007.001, 1994, pp. 8-53 through 8-59.
New, Bernie, *Xilinx Application Note*, "Ultra-Fast Synchronous Counters," XAPP 014.001, 1994, pp. 8-78 through 8-81.
New, Bernie, *Xilinx Application Note*, "Using the Dedicated Carry Logic in XC4000," XAPP 013.001, 1994, pp. 8-105 through 8-115.
New, Bernie, *Xilinx Application Note*, "Complex Digital Waveform Generator," XAPP 008.002, 1994, pp. 8-163 through 8-164.
New, Bernie, *Xilinx Application Note*, "Bus-Structured Serial Input-Output Device," XAPP 010.001, 1994, pp. 8-181 through 8-182.
Ridgeway, David, *Xilinx Application Note*, "Designing Complex 2-Dimensional Convolution Filters," XAPP 037.000, 1994, pp. 8-175 through 8-177.
Rowson, J., et al., "Second-generation compilers optimize semicustom circuits," Electronic Design, Feb. 19, 1987, pp. 92-96.
Schewel, J., "A Hardware/Software Co-Design System using Configurable Computing Technology," Virtual Computer Corporation, Reseda, CA, IEEE 1998, pp. 620-625.
Segers, Dennis, Xilinx Memorandum, "MIKE—Product Description and MRD," Jun. 8, 1994, pp. 1-29.
Texas Instruments, "TMS320C8x System-Level Synopsis," Sep. 1995, 75 pages.
Texas Instruments, "TMS320C80 Digital Signal Processor," Data Sheet, Digital Signal Processing Solutions 1997, 171 pages.
Texas Instruments, "TMS320C80 (MVP) Parallel Processor," User's Guide, Digital Signal Processing Products 1995, 73 pages.
Trainor, D.W., et al., "Implementation of the 2D DCT Using a Xilinx XC6264 FPGA," 1997, IEEE Workshop of Signal Processing Systems SiPS 97, pp. 541-550.
Trimberger, S, (Ed.) et al., "Field-Programmable Gate Array Technology," 1994, Kluwer Academic Press, pp. 1-258 (and the Title Page, Table of Contents, and Preface) [274 pages total].
Trimberger, S., "A Reprogrammable Gate Array and Applications," IEEE 1993, Proceedings of the IEEE, vol. 81, No. 7, Jul. 1993, pp. 1030-1041.
Trimberger, S., et al., "A Time-Multiplexed FPGA," Xilinx, Inc., 1997 IEEE, pp. 22-28.
Ujvari, Dan, *Xilinx Application Note*, "Digital Mixer in an XC7272," XAPP 035.002, 1994, p. 1.
Veendrick, H., et al., "A 1.5 GIPS video signal processor (VSP)," Philips Research Laboratories, The Netherlands, IEEE 1994 Custom Integrated Circuits Conference, pp. 95-98.
Wilkie, Bill, *Xilinx Application Note*, "Interfacing XC6200 to Microprocessors (TMS320C50 Example)," XAPP 064, Oct. 9, 1996 (Version 1.1), pp. 1-9.
Wilkie, Bill, *Xilinx Application Note*, "Interfacing XC6200 to Microprocessors (MC68020 Example)," XAPP 063, Oct. 9, 1996 (Version 1.1), pp. 1-8.
XCELL, Issue 18, Third Quarter 1995, "Introducing three new FPGA Families!"; "Introducing the XC6200 FPGA Architecture: The First FPGA Architecture Optimized for Coprocessing in Embedded System Applications," 40 pages.
*Xilinx Application Note*, Advanced Product Specification, "XC6200 Field Programmable Gate Arrays," Jun. 1, 1996 (Version 1.0), pp. 4-253-4-286.
*Xilinx Application Note*, A Fast Constant Coefficient Multiplier for the XC6200, XAPP 082, Aug. 24, 1997 (Version 1.0), pp. 1-5.
Xilinx Technical Data, "XC5200 Logic Cell Array Family," Preliminary (v1.0), Apr. 1995, pp. 1-43.
Xilinx Data Book, "The Programmable Logic Data Book," 1996, 909 pages.
Xilinx, Series 6000 User's Guide, Jun. 26, 1997, 223 pages.
Yeung, K., (Thesis) "A Data-Driven Multiprocessor Architecture for High Throughput Digital Signal Processing," Electronics Research Laboratory, U. California Berkeley, Jul. 10, 1995, pp. 1-153.
Yeung, L., et al., "A 2.4GOPS Data-Driven Reconfigurable Multiprocessor IC for DSP," Dept. of EECS, U. California Berkeley, 1995 IEEE International Solid State Circuits Conference, pp. 108-110.
ZILOG Preliminary Product Specification, "Z86C95 CMOS Z8 Digital Signal Processor," 1992, pp. 1-82.
ZILOG Preliminary Product Specification, "Z89120 Z89920 (ROM-less) 16-Bit Mixed Signal Processor," 1992, pp. 1-82.
Defendants' Invalidity Contentions in *PACT XPP Technologies, AG* v. *Xiltnx, Inc., et al*., (E.D. Texas Dec. 28, 2007) (No. 2:07cv563)., including Exhibits A through K in separate PDF files.
Coelho, F., "Compiling dynamic mappings with array copies," Jul. 1997, 12 pages, http://delivery.acm.org/10.1145/270000/263786/p168-coelho.pdf.
Janssen et al., "A Specification Invariant Technique for Regularity Improvement between Flow-Graph Clusters," Mar. 1996, 6 pages, http://delivery.acm.org/10.1145/790000/787534/74230138.pdf.
Microsoft Press Computer Dictionary, Second Edition, 1994, Microsoft Press, ISBN 1-55615-597-2, p. 10.
Newton, Harry, "Newton's Telecom Dictionary," Ninteenth Edition, 2003, CMP Books, p. 40.
Rehmouni et al., "Formulation and evaluation of scheduling techniques for control flow graphs," Dec. 1995, 6 pages, http://delivery.acm.org/10.1145/230000/224352/p386-rahmouni.pdf.
Sinha et al., "System-dependence-graph-based slicing of programs with arbitrary interprocedural control flow," May 1999, 10 pages, http://delivery.acm.org/10.1145/310000/203675/p432-sinha.pdf.
Stallings, William, "Data & Computer Communications," Sixth Edition, Jun. 2000, Prentice-Hall, Inc., ISBN 0-084370-9, pp. 195-196.
Ramanathan et al., "Reconfigurable Filter Coprocessor Architecture for DSP Applications," Journal of VLSI Signal Processing, 2000, vol. 26, pp. 333-359.
Shanley, Tom, *Pentium Pro and Pentium II System Architecture*, MindShare, Inc., Addition Wesley, 1998, Second Edition, pp. 11-17; Chapter 7; Chapter 10; pp. 209-211, and p. 394.
Shoup, Richard, "Programmable Cellular Logic Arrays," Dissertation, Computer Science Department, Carnegie-Mellon University, Mar. 1970, 193 pages.
Zucker, Daniel F., "A Comparison of Hardware Prefetching Techniques for Multimedia Benchmarks," Technical Report: CSL-TR-95-683, Dec. 1995, 26 pages.

* cited by examiner




Fig. 1


0212
0205a
0206
0205b
0207
0214
0213
0103
0103a
0209
0208
0211
0104
0104a
0210
0210a
0102

Fig. 2

| | | | | | |
|---|---|---|---|---|---|
| + | - | * | loop 16 | / | + |
| clk | clk | 2 clk | 16 clk | 32 clk | clk |
| 32 | 32 | 16 | 2 | 1 | 32 |
| 8 Mhz | 8 Mhz | 16 Mhz | 128 Mhz | 256 Mhz | 8 Mhz |
| 4 | 4 | 8 | 64 | 128 | 4 |
| 1 | 1 | 32 | 16 | 32 | 1 |

| |
|---|
| I/O |
| 8 Mhz |
| 2 |
| 1 |

**Fig. 3b**




**Fig. 3a**


0103
0102
0101
f= n/4
f= 4*n
f= 2*n
f= n/6
f= 4*n
f= 4*n
f=2.5*n
f=n
f=n
f=2*n
f= n/4
f=3*n
f= 8*n
0104

Fig. 4




Fig. 6a




Fig. 5




Fig. 6


0208
ka1
ka2
kb1
kc1
kc2
kc3
ga
gb
gc
0214
0206
0205b
oa
ob
oc
0205a
0210
0212
0104a

Fig. 7




Fig. 7a

# METHODS AND DEVICES FOR TREATING AND PROCESSING DATA

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 12/257,075, filed on Oct. 23, 2008, now U.S. Pat. No. 8,099,618, which is a divisional of U.S. patent application Ser. No. 10/469,909, filed on Sep. 21, 2004, now U.S. Pat. No. 7,444,531, which is a national phase of International Application Serial No. PCT/EP02/02402, filed on Mar. 5, 2002, which claims priority to German Patent Application Serial No. DE 101 10 530.4, filed on Mar. 5, 2001, the entire contents of each of which are expressly incorporated herein by reference thereto.

## FIELD OF THE INVENTION

The present invention relates to optimization of hardware used in data processing.

## BACKGROUND INFORMATION

Data processing requires the optimization of the available resources, as well as the power consumption of the circuits involved in data processing. This is the case in particular when reconfigurable processors are used.

Reconfigurable architecture includes modules (VPU) having a configurable function and/or interconnection, in particular integrated modules having a plurality of unidimensionally or multidimensionally positioned arithmetic and/or logic and/or analog and/or storage and/or internally/externally interconnecting modules, which are connected to one another either directly or via a bus system.

These generic modules include in particular systolic arrays, neural networks, multiprocessor systems, processors having a plurality of arithmetic units and/or logic cells and/or communication/peripheral cells (IO), interconnecting and networking modules such as crossbar switches, as well as known modules of the type FPGA, DPGA, Chameleon, XPUTER, etc. Reference is also made in particular in this context to the following patents and patent applications of the same applicant:

P 44 16 881.0-53, DE 197 81 412.3, DE 197 81 483.2, DE 196 54 846.2-53, DE 196 54 593.5-53, DE 197 04 044.6-53, DE 198 80 129.7, DE 198 61 088.2-53, DE 199 80 312.9, PCT/DE 00/01869, DE 100 36 627.9-33, DE 100 28 397.7, DE 101 10 530.4, DE 101 11 014.6, PCT/EP 00/10516, EP 01 102 674.7, PCT/DE 97/02949(PACT02/PCT), PCT/DE 97/02998 (PACT04/PCT), PCT/DE 97/02999 (PACT05/PCT), PCT/DE 98/00334 (PACT08/PCT), PCT/DE 99/00504 (PACT10b/PCT), PCT/DE 99/00505 (PACT10c/PCT), DE 101 39 170.6 (PACT11), DE 101 42 903.7 (PACT11a), DE 101 44 732.9 (PACT11b), DE 101 45 792.8, (PACT11c), DE 101 54 260.7 (PACT11d), DE 102 07 225.6 (PACT11e), PCT/DE 00/01869 (PACT13/PCT), DE 101 42 904.5 (PACT21), DE 101 44 733.7 (PACT21a), DE 101 54 259.3 (PACT21b), DE 102 07 226.4 (PACT21c), PCT/DE 00/01869 (PACT13/PCT), DE 101 10 530.4 (PACT18), DE 101 11 014.6 (PACT18a), DE 101 46 132.1 (PACT18II), DE 102 02 044.2 (PACT19), DE 102 02 175.9 (PACT19a), DE 101 35 210.7 (PACT25), DE 101 35 211.5 (PACT25a), DE 101 42 231.8 (PACT25aII), (PACT25b). The entire contents of these documents are hereby included for the purpose of disclosure.

The above-mentioned architecture is used as an example to illustrate the present invention and is referred to hereinafter as VPU. The architecture includes an arbitrary number of arithmetic, logic (including memory) and/or memory cells and/or networking cells and/or communication/peripheral (IO) cells (PAEs—Processing Array Elements) which may be positioned to form a unidimensional or multidimensional matrix (PA); the matrix may have different cells of any desired configuration. Bus systems are also understood here as cells. A configuration unit (CT) which affects the interconnection and function of the PA through configuration is assigned to the entire matrix or parts thereof. The configuration of a VPU is determined by writing configuration words into configuration registers. Each configuration word determines a subfunction. PAEs may require a plurality of configuration words for their configuration, e.g., one/or more words for the interconnection of the PAE, one/or more words for the clock determination and one/or more words for the selection of an ALU function, etc.

Generally, a processor which is operated at a higher clock frequency requires more power. Thus, the cooling requirements in modern processors increase substantially as the clock frequency increases. Moreover, additional power must be supplied which is critical in mobile applications in particular.

To determine the clock frequency for a microprocessor based on the state is known. Such technologies are known from the area of mobile computers. However, problems arise in the overall speed with which certain applications are carried out.

## SUMMARY

An object of the present invention is to provide a novel method for commercial application.

In an example embodiment of the present invention, the power consumption may be reduced and/or optimized in VPU technology. As far as different methods are addressed in the following, it should be pointed out that they provide advantages, either individually or in combination.

In a data processing unit (VPU) according to a first aspect of the present invention, by using a field of clocked logic cells (PAEs) which is operable in different configuration states and a clock preselecting means for preselecting logic cell clocking, the clock preselecting means is designed in such a way that, depending on the state, a first clock is preselected at least at a first cell (PAE) and an additional clock is preselected at least at an additional cell (PAE).

It is therefore suggested to operate different cells using different clocking. As a rule, the additional clock corresponds to the first clock; the former is thus situated in a defined phase angle to the latter. In order to achieve optimum data processing results, in particular with regard to the required data processing time, as well as the power consumption of the entire data processing unit, it is suggested that clocking takes place depending on the state, which means that no clock is preselected jointly for all cells based on a certain state, but rather an appropriate clock is assigned to each cell based on the state.

Furthermore, it is suggested that the clocking be designed to be totally configurable, so that one calibration (configuration) mutually influences the clocking of the total number of cells.

It is possible and desired that the clock preselecting means is designed in such a way that it receives the setpoint clock for at least one first cell from a unit which preselects configuration states. This makes it possible to select the clocking of the

cell based on its configuration as soon as this configuration is determined. This has the advantage that configuration may take place free of problems.

The unit preselecting configuration states may be a compiling unit, which means that required or desired clocking of the cell is already determined during the compiling of the program. If the compiling unit preselects the configuration states, then the cell configuration preselecting unit may convey clocking for cell configuration to a cell to be configured. This is advantageous since it is possible to merely add clock-determining information to the configuration word or the configuration instruction with which the configuration of a cell is determined, without additional measures being required such as the implementation of clock-assigning buses which separately transmit the clock-determining signals, or the like; it should be noted that this is possible in principle.

It may also be provided that the clock preselecting means is designed in such a way that it receives the setpoint clock or a clock-influencing signal from one of the other logic cells, in particular a configurable logic cell. This is particularly advantageous if a first logic cell awaits an input signal from an external unit and not until arrival of such signals are the cells to be activated which process subsequently arriving signals. This makes it possible to implement a logic field sleeping mode in which only one or a plurality of cells are activated, if necessary, on a very low level, i.e., very slow clocking, and the remaining field is clocked extremely slowly. The clock frequencies required in the remaining field are dependent on physically necessary clocking which is required for the preservation of memory contents or the like.

It is also advantageous to receive a clock-influencing signal from another logic cell if, using one logic cell, one or a series of a plurality of different arithmetic and/or logical operations may be executed which, at least in part, require a different number of clock cycles, but this may not be determined in advance by the compiling unit. Also in such a case, the subsequent cells do not need to be operated at a high clock frequency if they are appropriately clocked down by corresponding signals which indicate the state of the cell participating in a processing sequence.

In a preferred variant, the clock preselecting means includes a central clock preselecting unit, e.g., a central clock generator, whose clock is transmitted to the individual cells via a clock line, as well as a local clock-generating unit for generating a local clock from and/or in response to the central clock transmitted via the clock line. In a possible embodiment, clocking of the central clock preselecting unit may be set or influenced by a configuration. The local clock-generating unit is preferably implemented by using a frequency divider and/or a frequency multiplier, and the frequency divider ratio is preferably determined by the preselections of the clock preselecting means according to the clock determination based on the state.

In a preferred variant, the logic cells or at least some of the logic cells include at least one ALU and/or are formed by such. It is possible and preferred if some of the logic cells contain at least one memory unit and/or register unit which may be assigned to the remaining logic cells. In particular, this unit may be provided for data to be processed and/or for configurations of the cell.

It is possible that a plurality of logic cells are identical and are operated using different clocking corresponding to their particular configuration. It is possible in particular that all logic cells are identical.

A method is also provided for operating a field of clocked logic cells which may be set into different configuration states, a first state being determined, at least temporarily, for at least one first cell, a clock which is to be assigned to the first cell being determined dependent on the first state and the cell being operated using this clock; a second state is determined for at least one additional cell, a second clock which is to be assigned to the second cell being determined dependent on the second state and the second cell being operated using the second clock which differs from the first clock.

As mentioned above, clocking may be preselected together with the configuration. The state is then the configuration state and/or is at least determined by it.

In known and configurable logic cells, cells are typically combined in groups for executing complex operations. If individual cells execute suboperations which run in fewer clock cycles as is the case with those cells which are [engaged] in particularly drawn-out suboperations of the complex total operations executed by the group, it is preferred if these cells are operated at different clock rates, namely in such a way that the cells for less complex operations, thus operations which run in fewer clock cycles, are clocked slower than the other cells; it is preferred in particular if the cells of one group are clocked collectively in such a way that the number of blank cycles within the group is minimized. An alternative and/or an addition to this lies in the fact of temporarily changing the use of cells burdened with less complex tasks for a certain number of clock cycles, thus changing the use during a fixed number of clock cycles.

In particular, the case may occur that the maximum clock cycle rate of PAEs and/or PAE groups is limited by their function and in particular by their interconnection. The propagation time of signals via bus systems plays an increasingly frequency-limiting role, in particular in advancing semiconductor technology. Henceforth, the method allows slower clocking of such PAEs and/or PAE groups, while other PAEs and/or PAE groups operate at a different and, if needed, higher frequency. It is suggested in a simplified embodiment to make the clock rate of the entire reconfigurable module (VPU) dependent on the maximum clock rate of the slowest PAE and/or PAE group. In other words, the central clock preselecting unit may be configured in such a way that the highest mutual operating clock of all PAEs and/or PAE groups (in other words the smallest common denominator of all maximum clock rates) is globally generated for all PAEs.

The above-described method is particularly advantageous if the cells of the group process data sequentially, i.e., the result determined by one cell is passed on to one or multiple cells which are subsequently processing data.

It should be noted that in addition to prioritizing tasks within the cell field for clock preselection, the condition of a power source may also be included in cell clocking determination. Clocking may be reduced overall in the case of a drop in supply voltage, in particular in mobile applications. Clocking-down for preventing an over temperature by responding to a temperature sensor signal or the like is equally possible. It is also possible for the user to preset the clock preselection. Different parameters may jointly establish the clock-determining state.

It was mentioned above that it is possible to perform time division multiplexing for carrying out multiple configurations on the same PAE. A preferred and enhanced design makes particularly resource-saving time division multiplexing for carrying out multiple configurations on the same PAE possible; the design may have advantages independently from the different clocking of individual cells, e.g., when latencies have to be taken into account which occur in the signal transmission of digital data via a bus, such as configuration data, data to be processed, or the like. These problems are particularly serious when reconfigurable modules, having

reconfigurable units which are located in part comparatively far apart from one another, are to be operated at high clock frequencies. The problem arises here that due to the special configuration of VPUs, a plurality of arbitrary PAEs is connected via buses and considerable data transmission traffic exists via the buses. The switching frequency of transistors is expected to further increase in modern and above all in future silicon technologies, while the signal transmission via buses is to increasingly become a performance-limiting factor. It is therefore suggested to decouple the data rate or frequency on the buses vis-a-vis the operating frequency of the data-processing PAEs.

A particularly simple embodiment, preferred for simple implementations, operates in such a way that the clock rate of a VPU is only globally settable. In other words, a settable clock may be preselected for all PAEs or it may be configured by a higher-level configuration unit (CT). All parameters which have an effect on clocking determine this one global clock. Such parameters may be, for example, a temperature determination, a power reserve measurement of batteries, etc.

A determining parameter may be in particular the maximum operating frequency of the slowest configuration which results as a function of a PAE configuration or a configuration of a group of PAEs. Since different configurations may include different numbers of PAEs over stretches of bus connections of different lengths, it was realized, in particular in bus signal transmission-limiting applications, that configurations may have different maximum frequencies. Configurations may have different maximum frequencies, as is known from FPGAs, for example, which depend on the particular function of the PAEs and in particular on the lengths of bus connections. The slowest configuration then ensures that the proper operation of this configuration is also ensured, and simultaneously reduces the power demand of all other configurations which is advantageous in particular when different portions of the data processing such as through the other configurations, which would possibly run at higher clock frequencies, are not needed prior to the slowest configuration. Also in cases where it must be absolutely ensured that proper operation takes place, the possibly only negligible performance loss occurring by clocking-down other configurations, which could run faster per se, is often acceptable.

In an optimized embodiment, the frequency is adapted only to the configurations which are currently carried out on a VPU, in other words, the global frequency may be reset/reconfigured with each configuration.

In an enhanced embodiment, the clock may then be configured globally, as well as, as described above, individually for each configurable element.

It should be noted that different variants are possible, individually or in combination. In order to show a detailed example, it is assumed in the following, without this necessarily being the case, that the clock may be controlled individually in each PAE. This offers the following possibilities, for example:

a) Controlled Enabling and Disabling of the Clock

It is preferred that the processing clock of PAEs is disabled, i.e., the PAEs operate only in case of need; clock enabling, i.e., activating the PAE, may take place, for example, under at least one of the following conditions, namely

when valid data is present; when the result of the previous computation is approved; due to one or more trigger signals; due to an expected or valid timing mark, compare DE 101 10 530.4 (PACT18).

In order to cause clock enabling, each individual condition may be used either individually or in combination with other conditions, clock enabling being computed based on the logical combination of conditions. It should be noted that it is possible to put the PAEs into a power-saving operating mode while a clock is disabled, for example, through additionally partly switched-off or reduced power supply, or, should it be necessary because of other reasons, through extremely reduced sleeping clocks.



b) Different Frequencies Per PAE

Technologies for controlling sequences in VPUs are known from PCT/DE 97/02949 (PACT02/PCT), PCT/DE 97/02998 (PACT04/PCT), and PCT/DE 00/01869 (PACT13/PCT). Special sequencers (SWTs) which control a large number of PAEs and which are responsible for their (re)configuration are configured in PCT/DE 97/02998 (PACT04/PCT). The (re)configuration is controlled by using status signals which are generated by the PAEs (triggers) and passed on to the SWTs, namely in that the SWT responds to the triggers, making the particular continuation of a sequence dependent on the triggers.

A small memory for their configuration is assigned to each individual PAE in PCT/DE 97/02949 (PACT02/PCT). A sequencer passes through the memory and addresses the individual configurations. The sequencer is controlled by triggers and/or by the status of its PAE (into which it may be integrated, for example).

During data processing, it is now possible that different sequencers in different PAEs have to carry out a different number of operations per transmitted data packet (compare DE 101 39 170.6 (PACT11), DE 101 42 903.7 (PACT11a), DE 101 44 732.9 (PACT11b), DE 101 45 792.8 (PACT11c), DE 101 54 260.7 (PACT11d), DE 102 07 225.6 (PACT11e), PCT/DE 00/01869 (PACT13/PCT)). This is described using a configuration as an example in which 3 sequencers are involved in processing a data packet, requiring a different number of operations for data packet processing. Example:

Sequencer 1 (Seq1) requires 10 operations for processing a data packet,

Sequencer 2 (Seq2) requires 5 operations for processing a data packet,

Sequencer 3 (Seq3) requires 20 operations for processing a data packet.

In order to obtain an optimum operation/power consumption ratio, the individual sequencers would have to be clocked as follows:

$$F\text{max}=F_{Seq2}/4=F_{Seq1}/2=F_{Seq3}$$

or at a maximum operating frequency of, for example, 100 MHz: $F_{seq1}$=50 MHz, $F_{seq2}$=25 MHz, $F_{seq3}$=100 MHz.

It is suggested in particular to use different clock sources for each PAE and/or group of PAEs. For example, different techniques may be used for this purpose, either individually or jointly:

1) Clock dividers, individually programmable per PAE, which enable an individually configurable divider ratio based on one or more mutual base clocks.
2) Clock multipliers (PLLs), individually programmable per PAE, which enable an individually configurable divider ratio based on one or more mutual base clocks.
3) Deriving the particular PAE clock from the data stream of the particular data to be processed, e.g., by oversampling.

An exemplary embodiment having different algorithms is illustrated in FIG. **1**.

c) Configuration Clock

Optimization of the power consumption is also favored in that the circuit components, necessary for executing a configuration, are clocked selectively, i.e., it is suggested to clock each PAE addressed and/or to completely disable the clock of those circuit components necessary for executing a configu-

ration or a reconfiguration when no configuration or reconfiguration is being executed and/or to use static registers.

In particular example embodiments, the operating frequency of the PAEs or groups of PAEs may be made dependent on different and/or additional factors. The following is listed below as an example:

1. Temperature Measurement

If the operating temperature reaches certain threshold values, the operating clock is reduced correspondingly. The reduction may take place selectively by initially operating those PAEs on a lower clock which represent the most irrelevant performance loss.

In a particularly preferred embodiment, multiple temperature measurements may be performed in different regions and clocking may be adapted locally.

2. Buffer Filling Levels

IO-FIFOs (input-output-first-in-first-out-circuits) which decouple peripheral data transmissions from data processing within a VPU are described in DE 102 06 653.1 (PACT15), DE 102 07 224.8 (PACT15a), (PACT15b). One buffer for input data (input buffer) and/or one buffer for output data (output buffer) may be implemented, for example. A particularly efficient variable for determining the clock frequency may, for example, be determined from the filling level of the particular data buffers. The following effects and measures may occur, for example:

a) An input buffer is largely full and/or the filling level rises abruptly: Clocking increase to accelerate processing.
b) An input buffer is largely empty and/or the filling level drops abruptly: Clocking decrease to decelerate processing.
c) An output buffer is largely full and/or the filling level rises abruptly: Clocking decrease to decelerate processing.
d) An output buffer is largely empty and/or the filling level drops abruptly: Clocking increase to accelerate processing.

Depending on the application and the system, suitable combinations may be implemented accordingly.

It should be pointed out that such a clock frequency determination is implementable if a filling level determination means for a buffer, in particular an input and/or output buffer, alternatively also an intermediate buffer within a VPU array, is provided and if this filling level determination means is connected to a clock preselecting means for preselecting logic cell clocking so that this clock preselecting means is able to change the logic cell clocking in response to the buffer filling level.

3. Battery Charge State

It is imperative to be careful with the power supply, e.g., a battery, for mobile units. Depending on the power reserve, which may be determined based on the existing methods according to the related art, the frequency of PAEs and/or groups of PAEs is determined and is reduced in particular when the power reserve is low.

Besides or in addition to optimizing data processing clocking it is also possible to accomplish an optimization of the data transmission with respect to the relationship between data transmission and data processing.

In a particular embodiment, the clock controls of PAEs described may be enhanced in such a way that, by using a sequencer-like activation and a suitable register set, for example, multiple, preferably different, configuration words may be executed successively in multiple clocks. A sequencer, sequentially processing a number of configuration inputs, may be additionally assigned to the configuration registers and/or to a configuration memory which is possibly also decoupled and implemented separately (compare DE 102 06 653.1 (PACT15), DE 102 07 224.8 (PACT15a, PACT15b). The sequencer may be designed as a microcontroller. In particular, the sequencer may be programmable/configurable in its function such as Altera's module EPS448 (ALTERA Data Book 1993). Possible embodiments of such PAEs are described, for example, in the following patent applications which are included in their entirety for the purpose of disclosure: PCT/DE 97/02949 (PACT02/PCT), PCT/DE 97/02998 (PACT04/PCT), PCT/DE 00/01869 (PACT13/PCT), DE 101 10 530.4 (PACT18), DE 102 06 653.1 (PACT15), DE 102 07 224.8 (PACT15a, PACT 15b).



For the following, it is initially assumed that multiple configuration words are combined into one configuration (PACKEDCONF) and are configured on a PAE. The PACKEDCONF is processed in such a way that the individual configuration words are executed in chronological succession. The data exchange and/or status exchange between the individual timed configurations takes place via a suitable data feedback in the PAEs; for example by using a suitable register set and/or another data exchange and/or status/exchange means such as suitable memories and the like.

This method allows a different timing for PAEs and bus systems. While PAEs process data at very high clock rates, for example, operands and/or results are transmitted via a bus at only a fraction of the clock rate of the PAEs. The transmission time via a bus may be correspondingly longer.

It is preferred if not only the PAEs or other logic units in a configurable and/or reconfigurable module are clockable at a different rate, but also if different clocking is provided for parts of a bus system. It is possible here to provide multiple buses in parallel whose speed is clocked differently, i.e., a bus which is clocked particularly high for providing a high-performance connection, parallel to a bus which is clocked lower for providing a power-saving connection. The connection clocked high may be used when longer signal paths have to be compensated, or when PAEs, positioned close together, operate at a high frequency and therefore also have to exchange data at a high frequency in order to provide a good transmission here over short distances in which the latency plays a minor role at best. Therefore, it is suggested in a possible embodiment that a number of PAEs, positioned together locally and combined in a group, operate at a high frequency and possibly also sequentially and that local and correspondingly short bus systems are clocked high corresponding to the data processing rate of the group, while the bus systems, inputting the operands and outputting the results, have slower clock and data transmission rates. For the purpose of optimizing the power consumption, it would be alternatively possible to implement slow clocking and to supply data at a high speed, e.g., when a large quantity of inflowing data may be processed with only a minor operational effort, thus at low clock rates.

In addition to the possibility of providing bus systems which are clocked using different frequencies it is also possible to provide multiple bus systems which are operable independently from one another and to then apply the PAEs in a multiplex-like manner as required. This alone makes it possible to operate reconfigurable modules particularly efficiently in resource multiplexing, independently from the still existing possibility of differently clocking different bus systems or different bus system parts. It is possible here to assign different configurations to different resources according to different multiplexing methods.

According to PCT/DE 00/01869 (PACT13/PCT), a group of PAEs may be designed as a processor in particular.

In the following embodiments, for example, different configurations are assigned to data-processing PAEs using time-

division multiplexing, while bus systems are assigned to the different configurations using space-division multiplexing.

In the assignment of resources, i.e., the assignment of tasks to PAEs or a group of PAEs to be carried out by the compiler or a similar unit, the given field may then be considered as a field of the n-fold variable and code sections may be transferred to this field of resources, which is virtually scaled up by the factor n, without the occurrence of problems, particularly when code sections are transferred in such a way that no interdependent code sections have to be configured into a PAE which is used in a multiplex-like manner.

In the previous approach, a PACKEDCONF was composed of at least one configuration word or a bundle of configuration words for PAEs which belong to one single application. In other words, only configuration words which belong together were combined in the PACKEDCONF.

In an enhanced embodiment, at least one or more configuration words per each different configuration are entered into a PACKEDCONF in such a way that the configuration word or words which belong together in a configuration are combined in a configuration group and the configuration groups thus created are combined in the PACKEDCONF.

The individual configuration groups may be executed in chronological succession, thus in time-division multiplexing by a timeslice-like assignment. This results in time division multiplexing of different configuration groups on one PAE. As described above, the configuration word or the configuration words within a configuration group may also be executed in chronological succession.

Multiplexers which select one of the configuration groups are assigned to the configuration registers and/or to a configuration memory, which is possibly also decoupled and implemented separately (compare DE 102 06 653.1 (PACT15), DE 102 07 224.8 (PACT15a, PACT 15b)). In an enhanced embodiment, a sequencer (as described above) may be additionally assigned which makes the sequential processing of configuration words within configuration groups possible.

Using the multiplexers and the optional sequencer, a resource (PAE) may be assigned to multiple different configurations in a time-division multiplex method.

Among one another, different resources may synchronize the particular configuration group to be applied, for example by transmitting a configuration group number or a pointer.

The execution of the configuration groups may take place linearly in succession and/or cyclically, with a priority being observed. It should be noted here in particular that different sequences may be processed in a single processor element and that different bus systems may be provided at the same time so that no time is wasted in establishing a bus connection which may take some time due to the long transmission paths. If a PAE assigns its first configuration to a first bus system and, on execution of the first configuration, couples the same to the bus system, then it may, in a second configuration, couple a different or partially different bus system to the former if spacial multiplexing for the bus system is possible.

The execution of a configuration group, each configuration group being composed of one or more configuration words, may be made dependent on the reception of an execution release via data and/or triggers and/or an execution release condition.

If the execute release (condition) for a configuration group is not given, the execute release (condition) may either be awaited, or the execution of a subsequent configuration group may be continued. The PAEs preferably go into a power-saving operating mode during the wait for an execute release (condition), for example with a disabled clock (gated clock) and/or partially disabled or reduced power supply. If a configuration group cannot be activated, then, as mentioned above, the PAEs preferably also go into a power-saving mode.



The storage of the PACKEDCONF may take place by using a ring-type memory or other memory or register means, the use of a ring-type memory resulting in the fact that after the execution of the last input, the execution of the first input may be started again (compare PCT/DE 97/02998 (PACT04/PCT)). It should be noted that it is also possible to skip to a particular execution directly and/or indirectly and/or conditionally within the PACKEDCONF and/or a configuration group.

In a preferred method, PAEs may be designed for processing of configurations in a corresponding time-division multiplexing method. The number of bus systems between the PAEs is increased such that sufficient resources are available for a sufficient number of configuration groups. In other words, the data-processing PAEs operate in a time-division multiplex method, while the data-transmitting and/or data-storing resources are adequately available.

This represents a type of space division multiplexing, a first bus system being assigned to a first temporarily processed configuration, and a second bus system being assigned to an additional configuration; the second bus system runs or is routed spacially separated from the first bus system.

It is possible at the same time and/or alternatively that the bus systems are also entirely or partially operated in time-division multiplexing and that multiple configuration groups share one bus system. It may be provided here that each configuration group transmits its data as a data packet, for example, a configuration group ID being assigned to the data packet (compare APID in DE 102 06 653.1 (PACT15), DE 102 07 224.8 (PACT 15a, PACT 15b)). Subsequently it may be provided to store and sort the particular data packets transmitted based on their assigned identification data, namely between different buses if required and for coordinating the IDs.

In an enhanced method, memory sources may also be run in a time-division multiplex, e.g., by implementing multiple segments and/or, at a change of the configuration group, by writing the particular memory/memories as described in PCT/DE 97/02998 (PACT04/PCT) and/or PCT/DE 00/01869 (PACT13/PCT) into a different or even external memory or by loading from the same. In particular the methods as described in DE 102 06 653.1 (PACT15), DE 102 07 224.8 (PACT15a, PACT 15b) may be used (e.g., MMU paging and/or APID).

The adaptation of the operating voltage to the clock should be noted as a further possibility for conserving resources.

Semiconductor processes typically allow higher clock frequencies when they are operated at higher operating voltages. However, this causes substantially higher power consumption and may also reduce the service life of a semiconductor.

An optimum compromise may be achieved in that the voltage supply is made dependent on the clock frequency. Low clock frequencies may be operated at a low supply voltage, for example. With increasing clock frequencies, the supply voltage is also increased (preferably up to a defined maximum).

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** shows a reconfigurable data processing unit.

FIG. **2** shows a configuration unit feeding configuring data via a configuration line into a respective cell.

FIG. **3***a* shows a 3×3 field of configurable cells.

FIG. **3***b* shows a table indicating numbers of clock cycles and clock rates for the cells of FIG. **3***a*.

FIG. **4** shows the data processing unit (VPU) according to FIG. **1**.

FIG. **5** shows an example embodiment of the operation of a PAE according to FIG. **2**.

FIG. **6** shows an example embodiment of the operation of a PAE, including activation of a sequencer.

FIG. **6***a* shows an example of the transmission of data on a data bus.

FIG. **7** shows an example embodiment of the operation of a PAE, in which multiple configuration groups share the PAE.

FIG. **7***a* shows example bus transmission in accordance with FIG. **7**.

## DETAILED DESCRIPTION OF EXAMPLE EMBODIMENTS

The present invention, as an example, is explained in greater detail below with reference to the Figures. It should be noted that this exemplary description is not limiting and that in isolated cases and in different figures identical or similar units may be denoted using different reference numbers.

As an example, FIG. **1** shows a reconfigurable data processing unit (VPU) (**0101**). A configuration unit (CT, **0103**) for the control and execution of the configuration and reconfiguration is superordinated to an array of PAEs (**0102**) which are configurable and reconfigurable independently from one another. In this connection, particular reference is made to the various applications of the applicant and the disclosure content of the patents and technologies described above. In addition, a central clock generator (**0104**) is assigned to the data processing unit. In a possible embodiment, the clock rate of the central clock generator may be preselected by configuration unit **0103**. In a possible embodiment, the clock rate of each PAE and/or groups of PAEs and their bus connections may also be preselected by configuration unit **0103**.

According to FIG. **2**, configuration unit **0103** feeds configuring data via a configuration line **0103***a* into respective cells **0102** of which only one is illustrated as an example. Furthermore, the clock signal of central clock generator **0104** is fed to cell **0102** via a clock line **0104***a*. Via a data bus input **0205***a* and a data bus output **0205***b*, reconfigurable cell **0102** communicates with other cells and additionally has a data processing unit, e.g., an arithmetic logic unit ALU **0206**, and preferably an internal data memory **0207** and a configuration memory **0208** into which configuring instructions from configuration unit **0103** are fed via a configuration instruction extractor **0209** in order to configure the data processing unit, e.g., ALU **0206**, as a response. In addition, configuration (instruction) extractor **0209** is connected to a frequency divider/multiplier factor preselecting input **0210***a* of a frequency divider/frequency multiplier **0210** which is designed to divide or multiply the clock signal of central clock generator **0104** on clock line **0104***a* according to a clock ratio preselected via input **0210***a* and to feed the clock signal to the data processing unit, e.g., arithmetic logic unit ALU **0206**, and possibly other units of reconfigurable cell **0102** via a line **0211**. Using an optional data bus monitoring circuit **0212**, **0210** may be activated in such a way that the frequency is controlled depending on the data reception or the data transmission.

Furthermore, a multiplexer **0213** for selecting different configurations and/or configuration groups may optionally be integrated dependent on **0212**. Furthermore, the multiplexer may optionally be activated by a sequencer **0214** in order to make sequential data processing possible. In particular, intermediate results may be managed in data memory **0207**.

While the general configuration of the cell was described in part in the applicant's applications described above, the presently described clock dividing system, the associated circuit, and the optimization of its operation are at least novel and it should be pointed out that these facts may and shall be associated with the required hardware changes.

The entire system and in particular configuration unit **0103** is designed in such a way that, together with a configuring signal with which a configuration word is fed via configuration line **0103***a* via configuration word extractor **0209** to data processing unit **0206** or upstream and/or downstream and/or associated memory **0208**, a clock dividing/multiplying signal may also be transmitted which is extracted by configuration word extractor **0209** and transmitted to frequency divider/multiplier **0210**, so that, as a response, **0210** may clock data processing unit **0206** and possibly also other units. It should be pointed out that, as a response to an input signal to the cell, there are also other possibilities instead of unit **0209** to vary clocking of an individual data processing unit **0206** with reference to a central clock unit **0104**, via data bus monitoring circuit **0212**, for example.

Described only as an example with reference to FIGS. **3** and **4**, an entire field of all reconfigurable logic units **0102** may be operated using the above-described embodiment, but possibly also by implementing the units in a different way.

For example, a 3×3 field of reconfigurable cells is configured in such a way, according to FIG. **3***a*, that a first cell **0102***a* is used for analyzing an input/output signal. Cells **0102***b*, **0102***c* are presently not needed and are therefore denoted as not configured (n. c.). Cells **0102***d* through **0102***i* together form a group which executes a complex arithmetic operation; an addition takes place in cell **0102***d*, a subtraction takes place in cell **0102***e*, a multiplication takes place in cell **0102***f*, a loop is run in cell **0102***g*, a multiple addition being executed within the loop, a division takes place in cell **0102***h*, and an addition in turn takes place in cell **0102***i*. Cells **0102***d* through **0102***i* are connected to one another in group **0301**, indicated by dot and dash lines, in such a way that data is sequentially and pipeline-like processed by the cells. As is indicated in the second row of the table in FIG. **3***b*, the operations within cells **0102***d* and **0102***e* are executed in a different number of clock cycles. The number of clock cycles is denoted there and it is clear that an addition or a subtraction may be executed in one clock cycle; the division, however, requires 32 clock cycles. The third line of the table in FIG. **3***b* denotes which value is assigned to the frequency divider of each cell in order to achieve optimum power usage at a constant data throughput through the cell. Only the cell in which the division takes place is operated at the highest clock; the clock ratio here is 1. This cell requires the longest time for the operation assigned to it. Since a new result has to be delivered only every 32 clock pulses to cell **0102***h* executing the division, cells **0102***d* and **0102***e* are clocked slower by the appropriate factor of 32; the frequency divider ratio for these cells is therefore 32, as can be seen in FIG. **3***b*. The multiplication running in two clock cycles has a frequency divider ratio of 16, and the more complex loop of cell **0102***g* running in 16 clock cycles is assigned a frequency divider ratio of only 2. These clock ratios are initially known at the configuration, in which the individual cells are compiled in groups and are assigned to each cell within the group since they were determined by the compiler at program compilation and may therefore be input into the cell at its configuration. It is denoted in the fourth row from the top which clock rate results from a central clock of 256 MHz.

If the processor unit having the separately clockable reconfigurable logic cells is operated in an application where the

voltage may drop, e.g., due to exhausting voltage supply capacities, it may be provided that, at a drop in the supply voltage, the entire frequency is reduced to a critical value U**1**; all cells are subsequently clocked slower by one half so that division cell **0102***h* too runs only at 128 MHz, while cell **0102***d* is clocked at 4 MHz. Cell **0102***a*, executing a query of the mouse pointer having a lower priority, is no longer clocked at 8 MHz as previously but rather at 2 MHz, i.e., depending on the prioritization, different slowdowns according to the importance of the task are assigned to the respective groups at a voltage drop or under other circumstances.

If, for other reasons, the temperature still rises, the heat generation in the logic cell field may be further reduced by an additional clock rate reduction for the logic cells, as is indicated in the last row of FIG. **3***b*. It is understood that, for example, a particular individual sensor for determining the condition such as the supply voltage and/or the temperature may be provided whose sensor signal is fed to the cells in a conditioned manner; a corresponding sensor system may be assigned to each cell and/or the central clock is possibly modifiable.

This makes it possible to optimally operate a processor field energy-efficiently; the cooling capacity required is reduced and it is clear that, since as a rule not all cells may and/or must be permanently operated at the highest clock frequency, heat sinks and the like may be dimensioned appropriately smaller which in turn offers additional cost advantages.

It should be noted that in addition to the query regarding a supply voltage, a temperature, the prioritization of computations, and the like, other conditions may determine the clock. For example, a hardware switch or a software switch may be provided with which the user indicates that only low clocking or higher clocking is desired. This makes an even more economical and targeted handling of the available power possible. It may be provided in particular that, at the user's request or at an external request, the central clock rate in total may be reduced; the clock divider ratios within the cell array, however, are not changed in order to avoid the requirement of reconfiguring all cells, e.g., at an extreme temperature rise. Moreover, it should be pointed out that a hysteresis characteristic may be provided in determining the clock rates, when a temperature-sensitive change of the clock frequencies is to be performed, for example.

FIG. **4** shows the data processing unit (VPU) according to FIG. **1**. Different groups within the VPU are operated using different frequencies f which are derived from a frequency normal n generated by **0104**. It should be expressly noted that multiple frequency normals ($n_1 \ldots n_n$) may be generated by multiple **0104** and may be used within one VPU.

FIG. **5** shows a simple exemplary embodiment for the operation of a PAE according to FIG. **2**. A data bus (**0205***a*) delivers operands ia**1** and ia**2** to an ALU (**0206**) which in turn delivers the result of the computation oa to **0205***b*. The PAE is only activated, i.e., clocked and/or supplied with current, when data bus monitoring circuit **0212** recognizes the acceptance of the previous result oa by the receiver and the arrival of operands ia**1** and ia**2** necessary for the operation. In other words, the PAE is only activated when all working conditions and requirements are met. The clock release is carried out by **0210**, the clock source is **0104***a*.

FIG. **6** corresponds to FIG. **5** with the exception that a sequencer (**0214**) is additionally activated which controls a multicyclical configuration (e.g., a complex computation such as a matrix multiplication or the like). The sequencer extracts the operations from the configuration memory or from a section of the configuration memory. In the example shown, operations op**1**, op**2**, op**3**, op**4**, op**5** are carried out sequentially. Result oa is conveyed after completion and the PAE has to be activated again.

The data transmission occurring on data bus **0205***a/b* is illustrated in FIG. **6***a*. It should be pointed out that the data routing via the bus may take place in a conventional manner, i.e., collision and deadlock situations may be prevented for one configuration at a time in a conventional manner.

In order to execute op**1**, operands ia must be available via **0205***a* (**0601**); the data transmissions for the remaining cycles may be undefined in principle.

Thereafter, **0205***a* may preferably transmit the subsequent operands (**0602**) for which the execution time of op**2**, op**3**, op**4**, op**5** is available, thus creating a temporal decoupling, allowing the use of slower and/or, in particular, longer bus systems.

During the execution of op**2**, op**3**, op**4**, op**5**, data of other configurations may alternatively (**0603**) be transmitted via the same bus system **0205***a* using a time-division multiplex method.

Following op**5**, result oa is applied to bus **0205***b* (**0601**); the data transmissions for the remaining cycles may be undefined in principle.

The time prior to op**5**, i.e., during the execution of op**1**, op**2**, op**3**, op**4**, may be used for transmitting the previous result (**0602**). This again creates a temporal decoupling, allowing the use of slower and/or, in particular, longer bus systems.

During the execution of op**1**, op**2**, op**3**, op**4**, data of other configurations may alternatively (**0603**) be transmitted via the same bus system **0205***b* using a time-division multiplex method. For clock multiplication, **0210** may use a PLL. A PLL may be used in particular in such a way that the operating clock of the PAE for executing op**1**, op**2**, op**3**, op**4**, op**5** is five times that of the bus clock. In this case, the PAE may act as a PAE without a sequencer having only one (unicyclical) configuration and the same clock as the bus clock.

FIG. **7** corresponds to FIG. **6** plus the addition that multiple configuration groups (ga, gb, gc) share the PAE in a time-division multiplexed manner and each group has connections to a-separate (space-division multiplexed) bus system (ia/oa, ib/ob, ic/oc). A multiplexer in **0214** cyclically selects the groups ga, gb, gc. Provided the data monitoring circuit **0212** generates a valid execution release (condition) for a configuration group, the particular configuration group is executed; otherwise the execution release (condition) may be awaited or, preferably, a different subsequent configuration group may be selected. The configuration groups may be run through cyclically.

One configuration group may contain multiple configuration words (ga={ka**1**, ka**2**}, gb={kb**1**}, gc={kc**1**, kc**2**, kc**3**}). The configuration words may be executed sequentially in **0214** using a sequencer.

FIG. **7***a* shows the bus transmissions according to the example in FIG. **7**. **0701** corresponds to **0601**, **0702** corresponds to **0602**, **0703** corresponds to **0603**; a separate bus system is used thereby for each group ga, gb, gc.

In addition, a possible bus transmission using a time-division multiplex for the bus systems is illustrated in **0704**. The input data of all groups is transmitted via an input bus system and the output data of all groups is transmitted via an output bus system. The undefined intermediate cycles are either unused or are free for other data transmissions.

What is claimed is:

**1**. A method of operating a system comprising a plurality of data processing elements adapted for programmably processing sequences and to which tasks are assigned, the tasks

including at least one task having a first complexity and at least one task of less complexity than the first complexity, the method comprising:

assigning the tasks for processing in a multiplexed manner such that the tasks are independent from each other, wherein certain of said elements are operational and process data only in case of requirement;

temporarily using one or more elements, having a workload due to an assignment of one or more of the tasks of less complexity than the first complexity, in a manner other than that which is for performing the one or more of the tasks of less complexity than the first complexity, the temporarily using being by temporarily assigning to the elements one or more different tasks; and

down-clocking currently unused data processing elements, such that the currently unused data processing elements are supplied with a clock rate maximally serving the preservation of memory contents.

**2**. The method according to claim **1**, wherein the down-clocking depends on the amount of data to be processed.

**3**. A method of operating a system having a plurality of data processing elements adapted for programmably processing sequences, to which tasks are assigned, and which are operable at different clock frequencies, the method comprising:

grouping, by execution of software for managing distribution of code, a plurality of subsets of processing elements into processing element groups;

effecting a plurality of temperature measurements in different regions of the system; and

based on the temperature measurement, a control circuit modifying clock rates of the plurality of subsets of processing elements, wherein the clock rates set in the modifying step are set on a processing element group basis.

**4**. The method according to claim **3**, wherein the system is an integrated circuit.

**5**. The method according to claim **4**, wherein the integrated circuit is a processor.

**6**. A processor device, comprising:

a plurality of data processing elements adapted for programmably processing sequences and to which tasks are assigned, each of the data processing elements having at least one Arithmetic Logic Unit, and at least some of the data processing elements being adapted to operate at different clock frequencies that are adapted locally depending on a plurality of temperature measurements at different regions of the processor device;

wherein a plurality of subsets of the data processing elements are grouped, by execution of software for managing distribution of code, into processing element groups, and the clock frequencies set for the data processing elements responsive to the temperature measurements are set on a processing element group basis, so that, for each of the groups, the clock frequency of the data processing elements of the group are modified in a same manner.

**7**. The processor device according to claim any one of claims **6**, wherein the processor device is an integrated circuit.

**8**. A processor device, comprising

a plurality of data processing elements adapted for programmably processing sequences and to which tasks are assigned, each of the data processing elements having at least one Arithmetic Logic Unit; and

at least one bus system at least one of (a) interconnecting at least some of the data processing elements and (b) connecting at least some of the data processing elements with at least one of peripherals and external memory;



wherein:

each of at least some of the data processing elements is capable of operating at a clock frequency different than at least one other of the data processing elements; and

the processor device is adapted for reducing clock frequencies of the data processing elements in response to a determination that a power reserve of a battery is below a predetermined threshold.

**9**. The processor device according to claim **8**, wherein at least some of the data processing elements have at least one locally connected memory for storing processing data.

**10**. A processor device, comprising:

a plurality of data processing elements; and

a software adapted to be executed to (a) manage distribution of code sections, each code section to be executed by a respective group of a subset of the plurality of data processing elements, and (b) assign to each of the code sections a respective clock frequency, the group of data processing elements executing the respective code sections at the respective clock frequencies.

**11**. The processor device according to claim **8**, wherein the clock frequency for at least some of the data processing elements is determined by at least one other of the data processing elements.

**12**. A processor device, comprising:

a plurality of data processing elements adapted for programmably processing sequences and to which tasks are assigned, each of the data processing elements having at least one Arithmetic Logic Unit; and

at least one bus system at least one of (a) interconnecting at least some of the data processing elements and (b) connecting at least some of the data processing elements with at least one of peripherals and external memory;

wherein:

each of at least some of the data processing elements is capable of operating at a clock frequency different than at least one other of the data processing elements;

the clock frequency of each of the data processing elements is at least determinable by a state of the processing device; and

the clock frequency for at least some of the data processing elements is set in accordance with a supply voltage.

**13**. The processor device according to any one of the claims **8**, **10**, and **11**, further comprising:

an arrangement for individually defining a power supply for at least one of the data processing elements depending on the clock frequency of the at least one of the data processing elements.

**14**. The processor device according to any one of the claims **8**, **10**, and **11**, further comprising:

an arrangement for disabling a clock of at least some data processing elements at runtime; and

an arrangement for individually defining a power supply for at least one of the processing elements depending on the clock frequency of the at least one of the data processing elements.

**15**. The processor device according to claim **8**, wherein a power supply voltage of each of at least some of the data processing elements is set depending on the clock frequency of the data processing elements.

**16**. The processor device according to any one of the claims **8**, **10**, **11**, **12**, and **15**, wherein different parameters jointly establish the clock frequency of at least one of the data processing elements.

**17**. The processor device according to any one of the claims **8**, **10**, **11**, **12**, and **15**, further comprising:

an arrangement for disabling a clock of at least some data processing elements at runtime.

**18**. The processor device according to claim **8**, wherein a clock frequency of at least one of the data processing elements is reduced dynamically for preventing overheating of a chip.

**19**. The processor device according to claim **18**, wherein the clock frequency is determined in response to a temperature sensor.

**20**. The processor device according to claim **8**, wherein a frequency of the bus system is set independently from the frequency of the processor elements.

**21**. A processor device, comprising:

a plurality of data processing elements adapted such that, in response to a state in which the plurality of data processing elements are waiting for an input from an external element, at least one of the data processing elements enters a first sleep mode at a first clock frequency and the remaining data processing elements enter a second sleep mode at a second clock frequency that is slower than the first clock frequency; wherein the at least one of the data processing elements triggers the plurality of data processing elements to wake up from the sleep modes and operate at a third clock frequency that is faster than the first and second clock frequencies in response to receipt by the at least one data processing element of the input.

**22**. The processor device according to claim **21**, further comprising a power saving arrangement for reducing the power supply of least the data processing elements operating at the first and second clock frequencies.

**23**. A processor device, comprising:

a plurality of data processing elements adapted for programmably processing sequences and to which tasks are assigned, each of the data processing elements having at least one Arithmetic Logic Unit; and

at least one bus system at least one of (a) interconnecting at least some of the data processing elements and (b) connecting at least some of the data processing elements with at least one of peripherals and external memory;

wherein:

each of at least some of the data processing elements is capable of operating at a clock frequency different than at least one other of the data processing elements;

the clock frequency of each of the data processing elements is at least determinable by a state of the processing device; and

the clock frequency of at least some of the data processing elements is determined by a fill level of at least one of an input data buffer and an output data buffer.

**24**. A processor device, comprising:

a plurality of data processing elements adapted for programmably processing sequences and to which tasks are assigned, each of the data processing elements having at least one Arithmetic Logic Unit; and

at least one bus system at least one of (a) interconnecting at least some of the data processing elements and (b) connecting at least some of the data processing elements with at least one of peripherals and external memory;

wherein:

each of at least some of the data processing elements is capable of operating at a clock frequency different than at least one other of the data processing elements;

the clock frequency of each of the data processing elements is at least determinable by a state of the processing device; and

the clock frequency of at least some of the data processing elements is set based on whether data is determined to be available.

**25**. The processor device according to claim **8**, further comprising at least one central clock, wherein the clock frequency of each of at least some of the data processing elements is derived from the at least one central clock

**26**. The processor device according to claim **25**, wherein at least some of the data processing elements have at least one locally connected memory for storing processing data.

**27**. The processor device according to claim **10**, further comprising at least one central clock, wherein the clock frequency of each of at least some of the data processing elements is derived from the at least one central clock.

**28**. The processor device according to claim **11**, further comprising at least one central clock, wherein the clock frequency of each of at least some of the data processing elements is derived from the at least one central clock.

**29**. The processor device according to claim **12**, further comprising at least one central clock, wherein the clock frequency of each of at least some of the data processing elements is derived from the at least one central clock.

**30**. The processor device according to claim **13**, further comprising at least one central clock, wherein the clock frequency of each of at least some of the data processing elements is derived from the at least one central clock.

**31**. The processor device according to claim **14**, further comprising at least one central clock, wherein the clock frequency of each of at least some of the data processing elements is derived from the at least one central clock.

**32**. The processor device according to claim **25**, wherein a power supply voltage of each of at least some of the data processing elements is set depending on the clock frequency of the data processing elements.

**33**. The processor device according to claim **16**, further comprising at least one central clock, wherein the clock frequency of each of at least some of the data processing elements is derived from the at least one central clock.

**34**. The processor device according to claim **17**, further comprising at least one central clock, wherein the clock frequency of each of at least some of the data processing elements is derived from the at least one central clock.

**35**. The processor device according to claim **25**, wherein a clock frequency of at least one of the data processing elements is reduced dynamically for preventing overheating of a chip.

**36**. The processor device according to claim **35**, wherein the clock frequency is determined in response to a temperature sensor.

**37**. The processor device according to claim **25**, wherein a frequency of the bus system is set independently from the frequency of the processor elements.

**38**. The processor device according to claim **21**, further comprising at least one central clock, wherein clock frequency of each of at least some of the data processing elements is derived from the at least one central clock.

**39**. The processor device according to claim **38**, further comprising a power saving arrangement for reducing the power supply of least the data processing elements operating at the first and second clock frequencies.

**40**. The processor device according to claim **23**, further comprising at least one central clock, wherein the clock frequency of each of at least some of the data processing elements is derived from the at least one central clock.

**41**. The processor device according to claim **24**, further comprising at least one central clock, wherein the clock frequency-

quency of each of at least some of the data processing elements is derived from the at least one central clock.

**42**. A processor device comprising:

a plurality of data processing elements that are dynamically grouped into a plurality of groups of subsets of the plurality of data processing elements during runtime, such that a group to which one or more of the plurality of data processing elements is assigned changes during runtime;

a temperature measuring element; and

a clock frequency control circuit that is adapted for independently setting respective clock frequencies of the data processing elements on a group by group basis according to a grouping prevailing when the setting is performed.



**43**. The processor device according to claim **42**, wherein the data processing elements are runtime configurable data processing elements according to a plurality of configurations, wherein the configurations define the groupings of the data processing elements.

**44**. The processor device according to claim **10**, wherein the plurality of data processing elements are runtime configurable, and the code sections are configurations of respective groups of the plurality of data processing elements.

* * * * *

US008471593B2

(12) **United States Patent**
**Vorbach et al.**

(10) **Patent No.:** **US 8,471,593 B2**
(45) **Date of Patent:** **Jun. 25, 2013**

(54) **LOGIC CELL ARRAY AND BUS SYSTEM**

(76) Inventors: **Martin Vorbach**, München (DE); **Frank May**, München (DE); **Dirk Reichardt**, München (DE); **Frank Lier**, München (DE); **Gerd Ehlers**, Grasbrunn (DE); **Armin Nückel**, Neupotz (DE); **Volker Baumgarte**, München (DE); **Prashant Rao**, München (DE); **Jens Oertel**, Bad Bergazabern (DE)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **13/289,296**

(22) Filed: **Nov. 4, 2011**

(65) **Prior Publication Data**

US 2012/0072699 A1 Mar. 22, 2012

**Related U.S. Application Data**

(63) Continuation of application No. 12/371,040, filed on Feb. 13, 2009, now Pat. No. 8,058,899, which is a continuation of application No. 10/398,546, filed as application No. PCT/EP01/11593 on Oct. 8, 2001, now Pat. No. 7,595,659.

(51) **Int. Cl.**
***G06F 7/52*** (2006.01)

(52) **U.S. Cl.**
USPC ................. **326/41**; 326/38; 326/39; 708/620; 708/501

(58) **Field of Classification Search**
USPC .............. 326/38–41; 708/490, 501–505, 620, 708/650, 670
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,564,506 | A | 2/1971 | Bee et al. |
| 3,681,578 | A | 8/1972 | Stevens |
| 3,753,008 | A | 8/1973 | Guarnaschelli |
| 3,754,211 | A | 8/1973 | Rocher et al. |
| 3,855,577 | A | 12/1974 | Vandierendonck |
| 3,956,589 | A | 5/1976 | Weathers et al. |
| 3,970,993 | A | 7/1976 | Finnila |
| 4,151,611 | A | 4/1979 | Sugawara et al. |
| 4,233,667 | A | 11/1980 | Devine et al. |
| 4,414,547 | A | 11/1983 | Knapp et al. |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 42 21 278 | 1/1994 |
| DE | 44 16 881 | 11/1994 |

(Continued)

OTHER PUBLICATIONS

U.S. Reexamination Application Control No. 90/010,979, Vorbach et al., filed May 4, 2010.

(Continued)

*Primary Examiner* — Vibol Tan
(74) *Attorney, Agent, or Firm* — Bechen PLLC

(57) **ABSTRACT**

A logic cell array having a number of logic cells and a segmented bus system for logic cell communication, the bus system including different segment lines having shorter and longer segments for connecting two points in order to be able to minimize the number of bus elements traversed between separate communication start and end points.

**30 Claims, 11 Drawing Sheets**



U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,498,134 | A | 2/1985 | Hansen et al. |
| 4,498,172 | A | 2/1985 | Bhavsar |
| 4,566,102 | A | 1/1986 | Hefner |
| 4,571,736 | A | 2/1986 | Agrawal et al. |
| 4,590,583 | A | 5/1986 | Miller |
| 4,591,979 | A | 5/1986 | Iwashita |
| 4,594,682 | A | 6/1986 | Drimak |
| 4,623,997 | A | 11/1986 | Tulpule |
| 4,646,300 | A | 2/1987 | Goodman et al. |
| 4,663,706 | A | 5/1987 | Allen et al. |
| 4,667,190 | A | 5/1987 | Fant et al. |
| 4,682,284 | A | 7/1987 | Schrofer |
| 4,686,386 | A | 8/1987 | Tadao |
| 4,706,216 | A | 11/1987 | Carter |
| 4,720,778 | A | 1/1988 | Hall et al. |
| 4,720,780 | A | 1/1988 | Dolecek |
| 4,739,474 | A | 4/1988 | Holsztynski |
| 4,760,525 | A | 7/1988 | Webb |
| 4,761,755 | A | 8/1988 | Ardini et al. |
| 4,791,603 | A | 12/1988 | Henry |
| 4,811,214 | A | 3/1989 | Nosenchuck et al. |
| 4,852,043 | A | 7/1989 | Guest |
| 4,852,048 | A | 7/1989 | Morton |
| 4,860,201 | A | 8/1989 | Stolfo et al. |
| 4,870,302 | A | 9/1989 | Freeman |
| 4,873,666 | A | 10/1989 | Lefebvre et al. |
| 4,882,687 | A | 11/1989 | Gordon |
| 4,884,231 | A | 11/1989 | Mor et al. |
| 4,891,810 | A | 1/1990 | de Corlieu et al. |
| 4,901,268 | A | 2/1990 | Judd |
| 4,910,665 | A | 3/1990 | Mattheyses et al. |
| 4,918,440 | A | 4/1990 | Furtek et al. |
| 4,939,641 | A | 7/1990 | Schwartz et al. |
| 4,959,781 | A | 9/1990 | Rubinstein et al. |
| 4,967,340 | A | 10/1990 | Dawes |
| 4,972,314 | A | 11/1990 | Getzinger et al. |
| 4,992,933 | A | 2/1991 | Taylor |
| 5,010,401 | A | 4/1991 | Murakami et al. |
| 5,014,193 | A | 5/1991 | Garner et al. |
| 5,015,884 | A | 5/1991 | Agrawal et al. |
| 5,021,947 | A | 6/1991 | Campbell et al. |
| 5,023,775 | A | 6/1991 | Poret |
| 5,031,179 | A | 7/1991 | Yoshida et al. |
| 5,034,914 | A | 7/1991 | Osterlund |
| 5,036,473 | A | 7/1991 | Butts et al. |
| 5,036,493 | A | 7/1991 | Nielsen |
| 5,041,924 | A | 8/1991 | Blackborow et al. |
| 5,043,978 | A | 8/1991 | Nagler et al. |
| 5,047,924 | A | 9/1991 | Fujioka et al. |
| 5,055,997 | A | 10/1991 | Sluijter et al. |
| 5,065,308 | A | 11/1991 | Evans |
| 5,072,178 | A | 12/1991 | Matsumoto |
| 5,076,482 | A | 12/1991 | Kozyrski et al. |
| 5,081,375 | A | 1/1992 | Pickett et al. |
| 5,099,447 | A | 3/1992 | Myszewski |
| 5,103,311 | A | 4/1992 | Sluijter et al. |
| 5,109,503 | A | 4/1992 | Cruickshank et al. |
| 5,113,498 | A | 5/1992 | Evan et al. |
| 5,115,510 | A | 5/1992 | Okamoto et al. |
| 5,119,290 | A | 6/1992 | Loo et al. |
| 5,123,109 | A | 6/1992 | Hillis |
| 5,128,559 | A | 7/1992 | Steele |
| 5,142,469 | A | 8/1992 | Weisenborn |
| 5,144,166 | A | 9/1992 | Camarota et al. |
| 5,193,202 | A | 3/1993 | Jackson et al. |
| 5,203,005 | A | 4/1993 | Horst |
| 5,204,935 | A | 4/1993 | Mihara et al. |
| 5,208,491 | A | 5/1993 | Ebeling et al. |
| 5,212,716 | A | 5/1993 | Ferraiolo et al. |
| 5,212,777 | A | 5/1993 | Gove et al. |
| 5,218,302 | A | 6/1993 | Loewe et al. |
| 5,226,122 | A | 7/1993 | Thayer et al. |
| RE34,363 | E | 8/1993 | Freeman |
| 5,233,539 | A | 8/1993 | Agrawal et al. |
| 5,237,686 | A | 8/1993 | Asano et al. |
| 5,243,238 | A | 9/1993 | Kean |
| 5,245,616 | A | 9/1993 | Olson |
| 5,247,689 | A | 9/1993 | Ewert |

| | | | |
|---|---|---|---|
| RE34,444 | E | 11/1993 | Kaplinsky |
| 5,274,593 | A | 12/1993 | Proebsting |
| 5,276,836 | A | 1/1994 | Fukumaru et al. |
| 5,287,472 | A | 2/1994 | Horst |
| 5,287,511 | A | 2/1994 | Robinson et al. |
| 5,287,532 | A | 2/1994 | Hunt |
| 5,301,284 | A | 4/1994 | Estes et al. |
| 5,301,344 | A | 4/1994 | Kolchinsky |
| 5,303,172 | A | 4/1994 | Magar et al. |
| 5,311,079 | A | 5/1994 | Ditlow et al. |
| 5,327,125 | A | 7/1994 | Iwase et al. |
| 5,336,950 | A | 8/1994 | Popli et al. |
| 5,343,406 | A | 8/1994 | Freeman et al. |
| 5,347,639 | A | 9/1994 | Rechtschaffen et al. |
| 5,349,193 | A | 9/1994 | Mott et al. |
| 5,353,432 | A | 10/1994 | Richek et al. |
| 5,355,508 | A | 10/1994 | Kan |
| 5,361,373 | A | 11/1994 | Gilson |
| 5,365,125 | A | 11/1994 | Goetting et al. |
| 5,379,444 | A | 1/1995 | Mumme |
| 5,386,154 | A | 1/1995 | Goetting et al. |
| 5,386,518 | A | 1/1995 | Reagle et al. |
| 5,392,437 | A | 2/1995 | Matter et al. |
| 5,408,643 | A | 4/1995 | Katayose |
| 5,410,723 | A | 4/1995 | Schmidt et al. |
| 5,412,795 | A | 5/1995 | Larson |
| 5,418,952 | A | 5/1995 | Morley et al. |
| 5,418,953 | A | 5/1995 | Hunt et al. |
| 5,421,019 | A | 5/1995 | Holsztynski et al. |
| 5,422,823 | A | 6/1995 | Agrawal et al. |
| 5,425,036 | A | 6/1995 | Liu et al. |
| 5,426,378 | A | 6/1995 | Ong |
| 5,428,526 | A | 6/1995 | Flood et al. |
| 5,430,687 | A | 7/1995 | Hung et al. |
| 5,435,000 | A | 7/1995 | Boothroyd et al. |
| 5,440,245 | A | 8/1995 | Galbraith et al. |
| 5,440,538 | A | 8/1995 | Olsen et al. |
| 5,442,790 | A | 8/1995 | Nosenchuck |
| 5,444,394 | A | 8/1995 | Watson et al. |
| 5,448,186 | A | 9/1995 | Kawata |
| 5,450,022 | A | 9/1995 | New |
| 5,455,525 | A | 10/1995 | Ho et al. |
| 5,457,644 | A | 10/1995 | McCollum |
| 5,465,375 | A | 11/1995 | Thepaut et al. |
| 5,469,003 | A | 11/1995 | Kean |
| 5,473,266 | A | 12/1995 | Ahanin et al. |
| 5,473,267 | A | 12/1995 | Stansfield |
| 5,475,583 | A | 12/1995 | Bock et al. |
| 5,475,803 | A | 12/1995 | Stearns et al. |
| 5,475,856 | A | 12/1995 | Kogge |
| 5,477,525 | A | 12/1995 | Okabe |
| 5,483,620 | A | 1/1996 | Pechanek et al. |
| 5,485,103 | A | 1/1996 | Pedersen et al. |
| 5,485,104 | A | 1/1996 | Agrawal et al. |
| 5,489,857 | A | 2/1996 | Agrawal et al. |
| 5,491,353 | A | 2/1996 | Kean |
| 5,493,239 | A | 2/1996 | Zlotnick |
| 5,493,663 | A | 2/1996 | Parikh |
| 5,497,498 | A | 3/1996 | Taylor |
| 5,502,838 | A | 3/1996 | Kikinis |
| 5,504,439 | A | 4/1996 | Tavana |
| 5,506,998 | A | 4/1996 | Kato et al. |
| 5,510,730 | A | 4/1996 | El Gamal et al. |
| 5,511,173 | A | 4/1996 | Yamaura et al. |
| 5,513,366 | A | 4/1996 | Agarwal et al. |
| 5,521,837 | A | 5/1996 | Frankle et al. |
| 5,522,083 | A | 5/1996 | Gove et al. |
| 5,525,971 | A | 6/1996 | Flynn |
| 5,530,873 | A | 6/1996 | Takano |
| 5,530,946 | A | 6/1996 | Bouvier et al. |
| 5,532,693 | A | 7/1996 | Winters et al. |
| 5,532,957 | A | 7/1996 | Malhi |
| 5,535,406 | A | 7/1996 | Kolchinsky |
| 5,537,057 | A | 7/1996 | Leong et al. |
| 5,537,580 | A | 7/1996 | Giomi et al. |
| 5,537,601 | A | 7/1996 | Kimura et al. |
| 5,541,530 | A | 7/1996 | Cliff et al. |
| 5,544,336 | A | 8/1996 | Kato et al. |
| 5,548,773 | A | 8/1996 | Kemeny et al. |

| | | | |
|---|---|---|---|
| 5,550,782 | A | 8/1996 | Cliff et al. |
| 5,555,434 | A | 9/1996 | Carlstedt |
| 5,559,450 | A | 9/1996 | Ngai et al. |
| 5,561,738 | A | 10/1996 | Kinerk et al. |
| 5,568,624 | A | 10/1996 | Sites et al. |
| 5,570,040 | A | 10/1996 | Lytle et al. |
| 5,572,710 | A | 11/1996 | Asano et al. |
| 5,574,927 | A | 11/1996 | Scantlin |
| 5,574,930 | A | 11/1996 | Halverson, Jr. et al. |
| 5,581,731 | A | 12/1996 | King et al. |
| 5,581,734 | A | 12/1996 | DiBrino et al. |
| 5,583,450 | A | 12/1996 | Trimberger et al. |
| 5,584,013 | A | 12/1996 | Cheong et al. |
| 5,586,044 | A | 12/1996 | Agrawal et al. |
| 5,587,921 | A | 12/1996 | Agrawal et al. |
| 5,588,152 | A | 12/1996 | Dapp et al. |
| 5,590,345 | A | 12/1996 | Barker et al. |
| 5,590,348 | A | 12/1996 | Phillips et al. |
| 5,596,742 | A | 1/1997 | Agarwal et al. |
| 5,600,265 | A | 2/1997 | El Gamal et al. |
| 5,600,597 | A | 2/1997 | Kean et al. |
| 5,600,845 | A | 2/1997 | Gilson |
| 5,603,005 | A | 2/1997 | Bauman et al. |
| 5,606,698 | A | 2/1997 | Powell |
| 5,608,342 | A | 3/1997 | Trimberger |
| 5,611,049 | A | 3/1997 | Pitts |
| 5,617,547 | A | 4/1997 | Feeney et al. |
| 5,617,577 | A | 4/1997 | Barker et al. |
| 5,619,720 | A | 4/1997 | Garde et al. |
| 5,625,806 | A | 4/1997 | Kromer |
| 5,625,836 | A | 4/1997 | Barker et al. |
| 5,627,992 | A | 5/1997 | Baror |
| 5,632,029 | A | 5/1997 | Bruce et al. |
| 5,634,131 | A | 5/1997 | Matter et al. |
| 5,635,851 | A | 6/1997 | Tavana |
| 5,642,058 | A | 6/1997 | Trimberger et al. |
| 5,646,544 | A | 7/1997 | Iadanza |
| 5,646,545 | A | 7/1997 | Trimberger et al. |
| 5,649,176 | A | 7/1997 | Selvidge et al. |
| 5,649,179 | A | 7/1997 | Steenstra et al. |
| 5,652,529 | A | 7/1997 | Gould et al. |
| 5,652,894 | A | 7/1997 | Hu et al. |
| 5,655,069 | A | 8/1997 | Ogawara et al. |
| 5,655,124 | A | 8/1997 | Lin |
| 5,656,950 | A | 8/1997 | Duong et al. |
| 5,657,330 | A | 8/1997 | Matsumoto |
| 5,659,785 | A | 8/1997 | Pechanek et al. |
| 5,659,797 | A | 8/1997 | Zandveld et al. |
| 5,675,262 | A | 10/1997 | Doung et al. |
| 5,675,743 | A | 10/1997 | Mavity |
| 5,675,757 | A | 10/1997 | Davidson et al. |
| 5,675,777 | A | 10/1997 | Glickman |
| 5,677,909 | A | 10/1997 | Heide |
| 5,680,583 | A | 10/1997 | Kuijsten |
| 5,682,491 | A | 10/1997 | Pechanek et al. |
| 5,682,544 | A | 10/1997 | Pechanek et al. |
| 5,687,325 | A | 11/1997 | Chang |
| 5,694,602 | A | 12/1997 | Smith |
| 5,696,791 | A | 12/1997 | Yeung |
| 5,696,976 | A | 12/1997 | Nizar et al. |
| 5,701,091 | A | 12/1997 | Kean |
| 5,705,938 | A | 1/1998 | Kean |
| 5,706,482 | A | 1/1998 | Matsushima et al. |
| 5,713,037 | A | 1/1998 | Wilkinson et al. |
| 5,717,890 | A | 2/1998 | Ichida et al. |
| 5,717,943 | A | 2/1998 | Barker et al. |
| 5,732,209 | A | 3/1998 | Vigil et al. |
| 5,734,869 | A | 3/1998 | Chen |
| 5,734,921 | A | 3/1998 | Dapp et al. |
| 5,737,516 | A | 4/1998 | Circello et al. |
| 5,737,565 | A | 4/1998 | Mayfield |
| 5,742,180 | A | 4/1998 | DeHon et al. |
| 5,745,734 | A | 4/1998 | Craft et al. |
| 5,748,872 | A | 5/1998 | Norman |
| 5,748,979 | A | 5/1998 | Trimberger |
| 5,752,035 | A | 5/1998 | Trimberger |
| 5,754,459 | A | 5/1998 | Telikepalli |
| 5,754,820 | A | 5/1998 | Yamagami |
| 5,754,827 | A | 5/1998 | Barbier et al. |
| 5,754,871 | A | 5/1998 | Wilkinson et al. |
| 5,760,602 | A | 6/1998 | Tan |
| 5,761,484 | A | 6/1998 | Agarwal et al. |
| 5,773,994 | A | 6/1998 | Jones |
| 5,774,704 | A | 6/1998 | Williams |
| 5,778,237 | A | 7/1998 | Yamamoto et al. |
| 5,778,439 | A | 7/1998 | Timberger et al. |
| 5,781,756 | A | 7/1998 | Hung |
| 5,784,313 | A | 7/1998 | Trimberger et al. |
| 5,784,630 | A | 7/1998 | Saito et al. |
| 5,784,636 | A | 7/1998 | Rupp |
| 5,794,059 | A | 8/1998 | Barker et al. |
| 5,794,062 | A | 8/1998 | Baxter |
| 5,801,547 | A | 9/1998 | Kean |
| 5,801,715 | A | 9/1998 | Norman |
| 5,801,958 | A | 9/1998 | Dangelo et al. |
| 5,802,290 | A | 9/1998 | Casselman |
| 5,804,986 | A | 9/1998 | Jones |
| 5,815,004 | A | 9/1998 | Trimberger et al. |
| 5,815,715 | A | 9/1998 | Ku.cedilla.uk.cedilla.akar |
| 5,815,726 | A | 9/1998 | Cliff |
| 5,821,774 | A | 10/1998 | Veytsman et al. |
| 5,828,229 | A | 10/1998 | Cliff et al. |
| 5,828,858 | A | 10/1998 | Athanas et al. |
| 5,831,448 | A | 11/1998 | Kean |
| 5,832,288 | A | 11/1998 | Wong |
| 5,838,165 | A | 11/1998 | Chatter |
| 5,838,988 | A | 11/1998 | Panwar et al. |
| 5,841,973 | A | 11/1998 | Kessler et al. |
| 5,844,422 | A | 12/1998 | Trimberger et al. |
| 5,844,888 | A | 12/1998 | Markkula, Jr. et al. |
| 5,848,238 | A | 12/1998 | Shimomura et al. |
| 5,854,918 | A | 12/1998 | Baxter |
| 5,857,097 | A | 1/1999 | Henzinger et al. |
| 5,857,109 | A | 1/1999 | Taylor |
| 5,859,544 | A | 1/1999 | Norman |
| 5,860,119 | A | 1/1999 | Dockser |
| 5,862,403 | A | 1/1999 | Kanai et al. |
| 5,867,691 | A | 2/1999 | Shiraishi |
| 5,867,723 | A | 2/1999 | Chin et al. |
| 5,870,620 | A | 2/1999 | Kadosumi et al. |
| 5,884,075 | A | 3/1999 | Hester et al. |
| 5,887,162 | A | 3/1999 | Williams et al. |
| 5,887,165 | A | 3/1999 | Martel et al. |
| 5,889,533 | A | 3/1999 | Lee |
| 5,889,982 | A | 3/1999 | Rodgers et al. |
| 5,892,370 | A | 4/1999 | Eaton et al. |
| 5,892,961 | A | 4/1999 | Trimberger |
| 5,892,962 | A | 4/1999 | Cloutier |
| 5,894,565 | A | 4/1999 | Furtek et al. |
| 5,895,487 | A | 4/1999 | Boyd et al. |
| 5,898,602 | A | 4/1999 | Rothman et al. |
| 5,901,279 | A | 5/1999 | Davis, III |
| 5,913,925 | A | 6/1999 | Kahle et al. |
| 5,915,099 | A | 6/1999 | Takata et al. |
| 5,915,123 | A | 6/1999 | Mirsky et al. |
| 5,924,119 | A | 7/1999 | Sindhu et al. |
| 5,926,638 | A | 7/1999 | Inoue |
| 5,933,023 | A | 8/1999 | Young |
| 5,933,642 | A | 8/1999 | Greenbaum et al. |
| 5,936,424 | A | 8/1999 | Young et al. |
| 5,943,242 | A | 8/1999 | Vorbach et al. |
| 5,956,518 | A | 9/1999 | DeHon et al. |
| 5,960,193 | A | 9/1999 | Guttag et al. |
| 5,960,200 | A | 9/1999 | Eager et al. |
| 5,966,143 | A | 10/1999 | Breternitz, Jr. |
| 5,966,534 | A | 10/1999 | Cooke et al. |
| 5,970,254 | A | 10/1999 | Cooke et al. |
| 5,978,260 | A | 11/1999 | Trimberger et al. |
| 5,978,583 | A | 11/1999 | Ekanadham et al. |
| 5,996,048 | A | 11/1999 | Cherabuddi et al. |
| 5,996,083 | A | 11/1999 | Gupta et al. |
| 5,999,990 | A | 12/1999 | Sharrit et al. |
| 6,003,143 | A | 12/1999 | Kim et al. |
| 6,011,407 | A | 1/2000 | New |
| 6,014,509 | A | 1/2000 | Furtek et al. |
| 6,020,758 | A | 2/2000 | Patel et al. |
| 6,020,760 | A | 2/2000 | Sample et al. |
| 6,021,490 | A | 2/2000 | Vorbach et al. |

| | | | |
|---|---|---|---|
| 6,023,564 A | 2/2000 | Trimberger | |
| 6,023,742 A | 2/2000 | Ebeling et al. | |
| 6,026,481 A | 2/2000 | New et al. | |
| 6,034,538 A | 3/2000 | Abramovici | |
| 6,035,371 A | 3/2000 | Magloire | |
| 6,038,650 A | 3/2000 | Vorbach et al. | |
| 6,038,656 A | 3/2000 | Martin et al. | |
| 6,044,030 A | 3/2000 | Zheng et al. | |
| 6,045,585 A | 4/2000 | Blainey | |
| 6,047,115 A | 4/2000 | Mohan et al. | |
| 6,049,222 A | 4/2000 | Lawman | |
| 6,049,866 A | 4/2000 | Earl | |
| 6,052,524 A | 4/2000 | Pauna | |
| 6,052,773 A | 4/2000 | DeHon et al. | |
| 6,054,873 A | 4/2000 | Laramie | |
| 6,055,619 A | 4/2000 | North et al. | |
| 6,058,266 A | 5/2000 | Megiddo et al. | |
| 6,058,469 A | 5/2000 | Baxter | |
| 6,064,819 A | 5/2000 | Franssen et al. | |
| 6,072,348 A | 6/2000 | New et al. | |
| 6,075,935 A | 6/2000 | Ussery et al. | |
| 6,076,157 A | 6/2000 | Borkenhagen et al. | |
| 6,077,315 A | 6/2000 | Greenbaum et al. | |
| 6,078,736 A | 6/2000 | Guccione | |
| 6,081,903 A | 6/2000 | Vorbach et al. | |
| 6,084,429 A | 7/2000 | Trimberger | |
| 6,085,317 A | 7/2000 | Smith | |
| 6,086,628 A | 7/2000 | Dave et al. | |
| 6,088,795 A | 7/2000 | Vorbach et al. | |
| 6,092,174 A | 7/2000 | Roussakov | |
| RE36,839 E | 8/2000 | Simmons et al. | |
| 6,096,091 A | 8/2000 | Hartmann | |
| 6,105,105 A | 8/2000 | Trimberger et al. | |
| 6,105,106 A | 8/2000 | Manning | |
| 6,108,760 A | 8/2000 | Mirsky et al. | |
| 6,118,724 A | 9/2000 | Higginbottom | |
| 6,119,181 A | 9/2000 | Vorbach et al. | |
| 6,122,719 A | 9/2000 | Mirsky et al. | |
| 6,125,072 A | 9/2000 | Wu | |
| 6,125,408 A | 9/2000 | McGee et al. | |
| 6,127,908 A | 10/2000 | Bozler et al. | |
| 6,128,720 A | 10/2000 | Pechanek et al. | |
| 6,134,166 A | 10/2000 | Lytle et al. | |
| 6,137,307 A | 10/2000 | Iwanczuk et al. | |
| 6,145,072 A | 11/2000 | Shams et al. | |
| 6,150,837 A | 11/2000 | Beal et al. | |
| 6,150,839 A | 11/2000 | New et al. | |
| 6,154,048 A | 11/2000 | Iwanczuk et al. | |
| 6,154,049 A | 11/2000 | New | |
| 6,154,826 A | 11/2000 | Wulf et al. | |
| 6,157,214 A | 12/2000 | Marshall | |
| 6,170,051 B1 | 1/2001 | Dowling | |
| 6,172,520 B1 | 1/2001 | Lawman et al. | |
| 6,173,419 B1 | 1/2001 | Barnett | |
| 6,173,434 B1 | 1/2001 | Wirthlin et al. | |
| 6,178,494 B1 | 1/2001 | Casselman | |
| 6,185,256 B1 | 2/2001 | Saito et al. | |
| 6,185,731 B1 | 2/2001 | Maeda et al. | |
| 6,188,240 B1 | 2/2001 | Nakaya | |
| 6,188,650 B1 | 2/2001 | Hamada et al. | |
| 6,191,614 B1 | 2/2001 | Schultz et al. | |
| 6,198,304 B1 | 3/2001 | Sasaki | |
| 6,201,406 B1 | 3/2001 | Iwanczuk et al. | |
| 6,202,163 B1 | 3/2001 | Gabzdyl et al. | |
| 6,202,182 B1 | 3/2001 | Abramovici et al. | |
| 6,204,687 B1 | 3/2001 | Schultz et al. | |
| 6,211,697 B1 | 4/2001 | Lien et al. | |
| 6,212,544 B1 | 4/2001 | Borkenhagen et al. | |
| 6,212,650 B1 | 4/2001 | Guccione | |
| 6,215,326 B1 | 4/2001 | Jefferson et al. | |
| 6,216,223 B1 | 4/2001 | Revilla et al. | |
| 6,219,833 B1 | 4/2001 | Solomon et al. | |
| RE37,195 E | 5/2001 | Kean | |
| 6,230,307 B1 | 5/2001 | Davis et al. | |
| 6,240,502 B1 | 5/2001 | Panwar et al. | |
| 6,243,808 B1 | 6/2001 | Wang | |
| 6,247,147 B1 | 6/2001 | Beenstra et al. | |
| 6,249,756 B1 | 6/2001 | Bunton et al. | |
| 6,252,792 B1 | 6/2001 | Marshall et al. | |
| 6,256,724 B1 | 7/2001 | Hocevar et al. | |
| 6,260,114 B1 | 7/2001 | Schug | |
| 6,260,179 B1 | 7/2001 | Ohsawa et al. | |
| 6,262,908 B1 | 7/2001 | Marshall et al. | |
| 6,263,430 B1 | 7/2001 | Trimberger et al. | |
| 6,266,760 B1 | 7/2001 | DeHon et al. | |
| 6,279,077 B1 | 8/2001 | Nasserbakht et al. | |
| 6,282,627 B1 | 8/2001 | Wong et al. | |
| 6,282,701 B1 | 8/2001 | Wygodny et al. | |
| 6,285,624 B1 | 9/2001 | Chen | |
| 6,286,134 B1 | 9/2001 | Click, Jr. et al. | |
| 6,288,566 B1 | 9/2001 | Hanrahan et al. | |
| 6,289,369 B1 | 9/2001 | Sundaresan | |
| 6,289,440 B1 | 9/2001 | Casselman | |
| 6,298,043 B1 | 10/2001 | Mauger et al. | |
| 6,298,396 B1 | 10/2001 | Loyer et al. | |
| 6,298,472 B1 | 10/2001 | Phillips et al. | |
| 6,301,706 B1 | 10/2001 | Maslennikov et al. | |
| 6,311,200 B1 | 10/2001 | Hanrahan et al. | |
| 6,311,265 B1 | 10/2001 | Beckerle et al. | |
| 6,317,819 B1 | 11/2001 | Morton | |
| 6,321,298 B1 | 11/2001 | Hubis | |
| 6,321,366 B1 | 11/2001 | Tseng et al. | |
| 6,321,373 B1 | 11/2001 | Ekanadham et al. | |
| 6,338,106 B1 | 1/2002 | Vorbach et al. | |
| 6,339,424 B1 | 1/2002 | Ishikawa et al. | |
| 6,339,840 B1 | 1/2002 | Kothari et al. | |
| 6,341,318 B1 | 1/2002 | Dakhil | |
| 6,347,346 B1 | 2/2002 | Taylor | |
| 6,349,346 B1 | 2/2002 | Hanrahan et al. | |
| 6,353,841 B1 | 3/2002 | Marshall et al. | |
| 6,362,650 B1 | 3/2002 | New et al. | |
| 6,370,596 B1 | 4/2002 | Dakhil | |
| 6,373,779 B1 | 4/2002 | Pang et al. | |
| 6,374,286 B1 | 4/2002 | Gee | |
| 6,378,068 B1 | 4/2002 | Foster et al. | |
| 6,381,624 B1 | 4/2002 | Colon-Bonet et al. | |
| 6,389,379 B1 | 5/2002 | Lin et al. | |
| 6,389,579 B1 | 5/2002 | Phillips et al. | |
| 6,392,912 B1 | 5/2002 | Hanrahan et al. | |
| 6,400,601 B1 | 6/2002 | Sudo et al. | |
| 6,404,224 B1 | 6/2002 | Azegami et al. | |
| 6,405,185 B1 | 6/2002 | Pechanek et al. | |
| 6,405,299 B1 | 6/2002 | Vorbach et al. | |
| 6,421,808 B1 | 7/2002 | McGeer | |
| 6,421,809 B1 | 7/2002 | Wuytack et al. | |
| 6,421,817 B1 | 7/2002 | Mohan et al. | |
| 6,425,054 B1 | 7/2002 | Nguyen | |
| 6,425,068 B1 | 7/2002 | Vorbach | |
| 6,426,649 B1 | 7/2002 | Fu et al. | |
| 6,427,156 B1 | 7/2002 | Chapman et al. | |
| 6,430,309 B1 | 8/2002 | Pressman et al. | |
| 6,434,642 B1 | 8/2002 | Camilleri et al. | |
| 6,434,672 B1 | 8/2002 | Gaither | |
| 6,434,695 B1 | 8/2002 | Esfahani et al. | |
| 6,434,699 B1 * | 8/2002 | Jones et al. | 713/168 |
| 6,437,441 B1 | 8/2002 | Yamamoto | |
| 6,438,747 B1 | 8/2002 | Schreiber et al. | |
| 6,449,283 B1 | 9/2002 | Chao et al. | |
| 6,456,628 B1 | 9/2002 | Greim et al. | |
| 6,457,116 B1 | 9/2002 | Mirsky et al. | |
| 6,476,634 B1 | 11/2002 | Bilski | |
| 6,477,643 B1 | 11/2002 | Vorbach et al. | |
| 6,480,937 B1 | 11/2002 | Vorbach et al. | |
| 6,480,954 B2 | 11/2002 | Trimberger et al. | |
| 6,483,343 B1 | 11/2002 | Faith et al. | |
| 6,487,709 B1 | 11/2002 | Keller et al. | |
| 6,490,695 B1 | 12/2002 | Zagorski et al. | |
| 6,496,740 B1 | 12/2002 | Robertson et al. | |
| 6,496,902 B1 | 12/2002 | Faanes et al. | |
| 6,496,971 B1 | 12/2002 | Lesea et al. | |
| 6,504,398 B1 | 1/2003 | Lien et al. | |
| 6,507,898 B1 | 1/2003 | Gibson et al. | |
| 6,507,947 B1 | 1/2003 | Schreiber et al. | |
| 6,512,804 B1 | 1/2003 | Johnson et al. | |
| 6,513,077 B2 | 1/2003 | Vorbach et al. | |
| 6,516,382 B2 | 2/2003 | Manning | |
| 6,518,787 B1 | 2/2003 | Allegrucci et al. | |
| 6,519,674 B1 | 2/2003 | Lam et al. | |

| | | | |
|---|---|---|---|
| 6,523,107 | B1 | 2/2003 | Stansfield et al. |
| 6,525,678 | B1 | 2/2003 | Veenstra et al. |
| 6,526,520 | B1 | 2/2003 | Vorbach et al. |
| 6,538,468 | B1 | 3/2003 | Moore |
| 6,538,470 | B1 | 3/2003 | Langhammer et al. |
| 6,539,415 | B1 | 3/2003 | Mercs |
| 6,539,438 | B1 | 3/2003 | Ledzius et al. |
| 6,539,477 | B1 | 3/2003 | Seawright |
| 6,542,394 | B2 | 4/2003 | Marshall et al. |
| 6,542,844 | B1 | 4/2003 | Hanna |
| 6,542,998 | B1 | 4/2003 | Vorbach |
| 6,553,395 | B2 | 4/2003 | Marshall et al. |
| 6,553,479 | B2 | 4/2003 | Mirsky et al. |
| 6,567,834 | B1 | 5/2003 | Marshall et al. |
| 6,571,381 | B1 | 5/2003 | Vorbach et al. |
| 6,587,939 | B1 | 7/2003 | Takano |
| 6,598,128 | B1 | 7/2003 | Yoshioka et al. |
| 6,606,704 | B1 | 8/2003 | Adiletta et al. |
| 6,624,819 | B1 | 9/2003 | Lewis |
| 6,625,631 | B2 | 9/2003 | Ruehle |
| 6,631,487 | B1 | 10/2003 | Abramovici et al. |
| 6,633,181 | B1 | 10/2003 | Rupp |
| 6,657,457 | B1 | 12/2003 | Hanrahan et al. |
| 6,658,564 | B1 | 12/2003 | Smith et al. |
| 6,665,758 | B1 | 12/2003 | Frazier et al. |
| 6,668,237 | B1 | 12/2003 | Guccione et al. |
| 6,681,388 | B1 | 1/2004 | Sato et al. |
| 6,687,788 | B2 | 2/2004 | Vorbach et al. |
| 6,694,434 | B1 | 2/2004 | McGee et al. |
| 6,697,979 | B1 | 2/2004 | Vorbach et al. |
| 6,704,816 | B1 | 3/2004 | Burke |
| 6,708,223 | B1 | 3/2004 | Wang et al. |
| 6,708,325 | B2 | 3/2004 | Cooke et al. |
| 6,717,436 | B2 | 4/2004 | Kress et al. |
| 6,721,830 | B2 | 4/2004 | Vorbach et al. |
| 6,721,884 | B1 | 4/2004 | De Oliveira Kastrup Pereira et al. |
| 6,725,334 | B2 | 4/2004 | Barroso et al. |
| 6,728,871 | B1 | 4/2004 | Vorbach et al. |
| 6,745,317 | B1 | 6/2004 | Mirsky et al. |
| 6,748,440 | B1 | 6/2004 | Lisitsa et al. |
| 6,751,722 | B2 | 6/2004 | Mirsky et al. |
| 6,754,805 | B1 | 6/2004 | Juan |
| 6,757,847 | B1 | 6/2004 | Farkash et al. |
| 6,757,892 | B1 | 6/2004 | Gokhale et al. |
| 6,782,445 | B1 | 8/2004 | Olgiati et al. |
| 6,785,826 | B1 | 8/2004 | Durham et al. |
| 6,802,026 | B1 | 10/2004 | Patterson et al. |
| 6,803,787 | B1 | 10/2004 | Wicker, Jr. |
| 6,820,188 | B2 | 11/2004 | Stansfield et al. |
| 6,829,697 | B1 | 12/2004 | Davis et al. |
| 6,836,842 | B1 | 12/2004 | Guccione et al. |
| 6,847,370 | B2 | 1/2005 | Baldwin et al. |
| 6,859,869 | B1 | 2/2005 | Vorbach |
| 6,868,476 | B2 | 3/2005 | Rosenbluth |
| 6,871,341 | B1 | 3/2005 | Shyr |
| 6,874,108 | B1 | 3/2005 | Abramovici et al. |
| 6,886,092 | B1 | 4/2005 | Douglass et al. |
| 6,901,502 | B2 | 5/2005 | Yano et al. |
| 6,928,523 | B2 | 8/2005 | Yamada |
| 6,957,306 | B2 | 10/2005 | So et al. |
| 6,961,924 | B2 | 11/2005 | Bates et al. |
| 6,975,138 | B2 | 12/2005 | Pani et al. |
| 6,977,649 | B1 | 12/2005 | Baldwin et al. |
| 7,000,161 | B1 | 2/2006 | Allen et al. |
| 7,007,096 | B1 | 2/2006 | Lisitsa et al. |
| 7,010,667 | B2 | 3/2006 | Vorbach |
| 7,010,687 | B2 | 3/2006 | Ichimura |
| 7,028,107 | B2 | 4/2006 | Vorbach et al. |
| 7,036,114 | B2 | 4/2006 | McWilliams et al. |
| 7,038,952 | B1 | 5/2006 | Zack et al. |
| 7,043,416 | B1 | 5/2006 | Lin |
| 7,144,152 | B2 | 12/2006 | Rusu et al. |
| 7,155,708 | B2 | 12/2006 | Hammes et al. |
| 7,164,422 | B1 | 1/2007 | Wholey et al. |
| 7,188,819 | B2 | 3/2007 | Thurmann et al. |
| 7,210,129 | B2 | 4/2007 | May et al. |
| 7,216,204 | B2 | 5/2007 | Rosenbluth |
| 7,237,087 | B2 | 6/2007 | Vorbach et al. |
| 7,249,351 | B1 | 7/2007 | Songer et al. |
| 7,254,649 | B2 | 8/2007 | Subramanian et al. |
| 7,266,725 | B2 | 9/2007 | Vorbach et al. |
| 7,340,596 | B1 | 3/2008 | Crosland et al. |
| 7,346,644 | B1 | 3/2008 | Langhammer et al. |
| 7,350,178 | B1 | 3/2008 | Crosland et al. |
| 7,382,156 | B2 | 6/2008 | Pani et al. |
| 7,455,450 | B2 | 11/2008 | Liu et al. |
| 7,500,043 | B2 * | 3/2009 | Wood ............................ 710/307 |
| 7,595,659 | B2 | 9/2009 | Vorbach et al. |
| 7,650,448 | B2 | 1/2010 | Vorbach et al. |
| 7,657,877 | B2 | 2/2010 | Vorbach et al. |
| 7,759,968 | B1 | 7/2010 | Hussein et al. |
| 7,873,811 | B1 | 1/2011 | Wolinski et al. |
| 8,305,835 | B2 * | 11/2012 | Schreiber et al. ........ 365/230.06 |
| 2001/0001860 | A1 | 5/2001 | Bieu |
| 2001/0003834 | A1 | 6/2001 | Shimonishi |
| 2001/0010074 | A1 | 7/2001 | Nishihara et al. |
| 2001/0018733 | A1 | 8/2001 | Fujii et al. |
| 2001/0032305 | A1 | 10/2001 | Barry |
| 2002/0004916 | A1 | 1/2002 | Marchand et al. |
| 2002/0010853 | A1 | 1/2002 | Trimberger et al. |
| 2002/0013861 | A1 | 1/2002 | Adiletta et al. |
| 2002/0038414 | A1 | 3/2002 | Taylor |
| 2002/0045952 | A1 | 4/2002 | Blemel |
| 2002/0051482 | A1 | 5/2002 | Lomp |
| 2002/0073282 | A1 | 6/2002 | Chauvel et al. |
| 2002/0083308 | A1 | 6/2002 | De Oliveira Kastrup Pereira et al. |
| 2002/0099759 | A1 | 7/2002 | Gootherts |
| 2002/0103839 | A1 | 8/2002 | Ozawa |
| 2002/0124238 | A1 | 9/2002 | Metzgen |
| 2002/0138716 | A1 | 9/2002 | Master et al. |
| 2002/0143505 | A1 | 10/2002 | Drusinsky |
| 2002/0144229 | A1 | 10/2002 | Hanrahan |
| 2002/0147932 | A1 | 10/2002 | Brock et al. |
| 2002/0152060 | A1 | 10/2002 | Tseng |
| 2002/0156962 | A1 | 10/2002 | Chopra et al. |
| 2002/0162097 | A1 | 10/2002 | Meribout |
| 2002/0165886 | A1 | 11/2002 | Lam |
| 2003/0001615 | A1 | 1/2003 | Sueyoshi et al. |
| 2003/0014743 | A1 | 1/2003 | Cooke et al. |
| 2003/0046607 | A1 | 3/2003 | May et al. |
| 2003/0052711 | A1 | 3/2003 | Taylor |
| 2003/0055861 | A1 | 3/2003 | Lai et al. |
| 2003/0056062 | A1 | 3/2003 | Prabhu |
| 2003/0056085 | A1 | 3/2003 | Vorbach |
| 2003/0056091 | A1 | 3/2003 | Greenberg |
| 2003/0056202 | A1 | 3/2003 | May et al. |
| 2003/0061542 | A1 | 3/2003 | Bates et al. |
| 2003/0062922 | A1 | 4/2003 | Douglass et al. |
| 2003/0070059 | A1 | 4/2003 | Dally et al. |
| 2003/0086300 | A1 | 5/2003 | Noyes et al. |
| 2003/0093662 | A1 | 5/2003 | Vorbach et al. |
| 2003/0097513 | A1 | 5/2003 | Vorbach et al. |
| 2003/0123579 | A1 | 7/2003 | Safavi et al. |
| 2003/0135686 | A1 | 7/2003 | Vorbach et al. |
| 2003/0154349 | A1 | 8/2003 | Berg et al. |
| 2003/0192032 | A1 | 10/2003 | Andrade et al. |
| 2003/0226056 | A1 | 12/2003 | Yip et al. |
| 2004/0015899 | A1 | 1/2004 | May et al. |
| 2004/0025005 | A1 | 2/2004 | Vorbach et al. |
| 2004/0039880 | A1 | 2/2004 | Pentkovski et al. |
| 2004/0078548 | A1 | 4/2004 | Claydon et al. |
| 2004/0088689 | A1 | 5/2004 | Hammes |
| 2004/0088691 | A1 | 5/2004 | Hammes et al. |
| 2004/0168099 | A1 | 8/2004 | Vorbach et al. |
| 2004/0199688 | A1 | 10/2004 | Vorbach et al. |
| 2005/0066213 | A1 | 3/2005 | Vorbach et al. |
| 2005/0091468 | A1 | 4/2005 | Morita et al. |
| 2005/0144210 | A1 | 6/2005 | Simkins et al. |
| 2005/0144212 | A1 | 6/2005 | Simkins et al. |
| 2005/0144215 | A1 | 6/2005 | Simkins et al. |
| 2006/0036988 | A1 | 2/2006 | Allen et al. |
| 2006/0230094 | A1 | 10/2006 | Simkins et al. |
| 2006/0230096 | A1 | 10/2006 | Thendean et al. |
| 2007/0050603 | A1 | 3/2007 | Vorbach et al. |
| 2007/0083730 | A1 | 4/2007 | Vorbach et al. |
| 2008/0034184 | A1 | 2/2008 | Norman |
| 2008/0313383 | A1 | 12/2008 | Morita et al. |

| | | | |
|---|---|---|---|
| 2009/0085603 A1 | 4/2009 | Paul et al. |
| 2009/0193384 A1 | 7/2009 | Sima et al. |
| 2010/0306602 A1 | 12/2010 | Kamiya et al. |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 38 55 673 | 11/1996 |
| DE | 196 51 075 | 6/1998 |
| DE | 196 54 593 | 7/1998 |
| DE | 196 54 595 | 7/1998 |
| DE | 196 54 846 | 7/1998 |
| DE | 197 04 044 | 8/1998 |
| DE | 197 04 728 | 8/1998 |
| DE | 197 04 742 | 9/1998 |
| DE | 198 22 776 | 3/1999 |
| DE | 198 07 872 | 8/1999 |
| DE | 198 61 088 | 2/2000 |
| DE | 199 26 538 | 12/2000 |
| DE | 100 28 397 | 12/2001 |
| DE | 100 36 627 | 2/2002 |
| DE | 101 29 237 | 4/2002 |
| DE | 102 04 044 | 8/2003 |
| EP | 0 208 457 | 1/1987 |
| EP | 0 221 360 | 5/1987 |
| EP | 0 398 552 | 11/1990 |
| EP | 0 428 327 | 5/1991 |
| EP | 0 463 721 | 1/1992 |
| EP | 0 477 809 | 4/1992 |
| EP | 0 485 690 | 5/1992 |
| EP | 0 497 029 | 8/1992 |
| EP | 0 539 595 | 5/1993 |
| EP | 0 638 867 A2 | 8/1994 |
| EP | 0 628 917 | 12/1994 |
| EP | 0 678 985 | 10/1995 |
| EP | 0 686 915 | 12/1995 |
| EP | 0 696 001 | 2/1996 |
| EP | 0 707 269 | 4/1996 |
| EP | 0 726 532 | 8/1996 |
| EP | 0 735 685 | 10/1996 |
| EP | 0 746 106 | 12/1996 |
| EP | 0 748 051 | 12/1996 |
| EP | 0 926 594 | 6/1999 |
| EP | 1 061 439 | 12/2000 |
| EP | 1 115 204 | 7/2001 |
| EP | 1 146 432 | 10/2001 |
| EP | 1 669 885 | 6/2006 |
| FR | 2 752 466 | 2/1998 |
| GB | 2 304 438 | 3/1997 |
| JP | 58-058672 | 4/1983 |
| JP | 1044571 | 2/1989 |
| JP | 1-229378 | 9/1989 |
| JP | 2-130023 | 5/1990 |
| JP | 2-226423 | 9/1990 |
| JP | 5-265705 | 10/1993 |
| JP | 5-276007 | 10/1993 |
| JP | 5-509184 | 12/1993 |
| JP | 6-266605 | 9/1994 |
| JP | 7-086921 | 3/1995 |
| JP | 7-154242 | 6/1995 |
| JP | 8-148989 | 6/1995 |
| JP | 7-182160 | 7/1995 |
| JP | 7-182167 | 7/1995 |
| JP | 8-044581 | 2/1996 |
| JP | 8-069447 | 3/1996 |
| JP | 8-101761 | 4/1996 |
| JP | 8-102492 | 4/1996 |
| JP | 8-106443 | 4/1996 |
| JP | 8-221164 | 8/1996 |
| JP | 8-250685 | 9/1996 |
| JP | 9-027745 | 1/1997 |
| JP | 9-237284 | 9/1997 |
| JP | 9-294069 | 11/1997 |
| JP | 11-046187 | 2/1999 |
| JP | 11-184718 | 7/1999 |
| JP | 11-307725 | 11/1999 |
| JP | 2000-076066 | 3/2000 |
| JP | 2000-181566 | 6/2000 |
| JP | 2000-201066 | 7/2000 |
| JP | 2000-311156 | 11/2000 |
| JP | 2001-500682 | 1/2001 |
| JP | 2001-167066 | 6/2001 |
| JP | 2001-510650 | 7/2001 |
| JP | 2001-236221 | 8/2001 |
| JP | 2002-0033457 | 1/2002 |
| JP | 3-961028 | 8/2007 |
| WO | WO90/04835 | 5/1990 |
| WO | WO90/11648 | 10/1990 |
| WO | WO92/01987 | 2/1992 |
| WO | WO93/11503 | 6/1993 |
| WO | WO94/06077 | 3/1994 |
| WO | WO94/08399 | 4/1994 |
| WO | 9525306 A2 | 9/1995 |
| WO | WO95/26001 | 9/1995 |
| WO | WO98/10517 | 3/1998 |
| WO | WO98/26356 | 6/1998 |
| WO | WO98/28697 | 7/1998 |
| WO | WO98/29952 | 7/1998 |
| WO | WO98/31102 | 7/1998 |
| WO | WO98/35294 | 8/1998 |
| WO | WO98/35299 | 8/1998 |
| WO | WO99/00731 | 1/1999 |
| WO | WO99/00739 | 1/1999 |
| WO | WO99/12111 | 3/1999 |
| WO | WO99/32975 | 7/1999 |
| WO | WO99/40522 | 8/1999 |
| WO | WO99/44120 | 9/1999 |
| WO | WO99/44147 | 9/1999 |
| WO | WO00/17771 | 3/2000 |
| WO | WO00/38087 | 6/2000 |
| WO | WO00/45282 | 8/2000 |
| WO | WO00/49496 | 8/2000 |
| WO | WO00/77652 | 12/2000 |
| WO | WO01/55917 | 8/2001 |
| WO | WO02/13000 | 2/2002 |
| WO | WO02/29600 | 4/2002 |
| WO | WO02/50665 | 6/2002 |
| WO | WO02/071196 | 9/2002 |
| WO | WO02/071248 | 9/2002 |
| WO | WO02/071249 | 9/2002 |
| WO | WO02/103532 | 12/2002 |
| WO | WO03/017095 | 2/2003 |
| WO | WO03/023616 | 3/2003 |
| WO | WO03/025781 | 3/2003 |
| WO | WO03/036507 | 5/2003 |
| WO | WO 03/091875 | 11/2003 |
| WO | WO2004/053718 | 6/2004 |
| WO | WO2004/114128 | 12/2004 |
| WO | WO2005/045692 | 5/2005 |
| WO | WO 2007/030395 | 3/2007 |

OTHER PUBLICATIONS

U.S. Reexamination Application Control No. 90/011,087, Vorbach et al., filed Jul. 8, 2010.

U.S. Reexamination Application Control No. 90/010,450, Vorbach et al., filed Mar. 27, 2009.

U.S. Appl. No. 60/109,417, Jefferson et al., filed Nov. 18, 1998.

Abnous et al., "Ultra-Low-Power Domain-Specific Multimedia Processors," U.C. Berkeley, 1996 IEEE, pp. 461-470.

Abnous, A., et al., "The Pleiades Architecture," Chapter I of *The Application of Programmable DSPs in Mobile Communications*, A. Gatherer and A. Auslander, Ed., Wiley, 2002, pp. 1-33.

Ade, et al., "Minimum Memory Buffers in DSP Applications," Electronics Letters, vol. 30, No. 6, Mar. 17, 1994, pp. 469-471.

Advanced RISC Machines, "Introduction to AMBA," Oct. 1996, Section 1, pp. 1-7.

ARM, "The Architecture for the Digital World," http://www.arm.com/products/ Mar. 18, 2009, 3 pages.

ARM, "The Architecture for the Digital World; Milestones," http://www.arm.com/aboutarm/milestones.html Mar. 18, 2009, 5 pages.

ARM Limited, "ARM Architecture Reference Manual," Dec. 6, 2000, pp. A10-6-A10-7.

Albaharna, O.T. et al., "On the Viability of FPGA-Based Integrated Coprocessors," Dept. of Electrical and Electronic Engineering, Imperial College of Science, London, 1999 IEEE, pp. 206-215.

Alippi, et al., "Determining the Optimum Extended Instruction Set Architecture for Application Specific Reconfigurable VLIW CPUs," IEEE, 2001, pp. 50-56.

Altera, "Implementing High-Speed Search Applications with Altera CAM," Jul. 2001, Ver. 2.1, Application Note 119, 50 pages.
Altera, "Flex 8000 Programmable Logic Device Family," Altera Corporation Data Sheet, Jan. 2003, pp. 1-62.
Altera, "Flex 10K Embedded Programmable Logic Device Family," Altera Corporation Data Sheet, Jan. 2003, pp. 1-128.
Altera, "APEX 20K Programmable Logic Device Family," Altera Corporation Data Sheet, Mar. 2004, ver. 5.1, pp. 1-117.
Altera, "2. TriMatrix Embedded Memory Blocks in Stratix & Stratix GX Devices," Altera Corporation, Jul. 2005, 28 pages.
Altera, "APEX II Programmable Logic Device Family," Altera Corporation Data Sheet, Aug. 2002, Ver. 3.0, 99 pages.
Arabi, et al., "PLD Integrates Dedicated High-speed Data Buffering, Complex State machine, and Fast Decode Array," conference record on WESCON '93, Sep. 28, 1993, pp. 432-436.
Asari, K. et al., "FeRAM circuit technology for system on a chip," *Proceedings First NASA/DoD Workshop on Evolvable Hardware* (1999), pp. 193-197.
Athanas, "A Functional Reconfigurable Architecture and Compiler for Adoptive Computing," IEEE 1993, pp. 49-55.
Athanas, et al., "An Adaptive Hardware Machine Architecture and Compiler for Dynamic Processor Recongifugation," IEEE, Laboratory for Engineering man/Machine Systems Division of Engineering, Box D, Brown University, Providence, Rhode Island, 1991, pp. 397-400.
Athanas et al., "Processor Reconfiguration Through Instruction-Set Metamorphosis," 1993, IEEE Computers, pp. 11-18.
Atmel, 5-K-50K Gates Coprocessor FPGA with Free Ram, Data Sheet, Jul. 2006, 55 pages.
Atmel, FPGA-based FIR Filter Application Note, Sep. 1999, 10 pages.
Atmel, "An Introduction to DSP Applications using the AT40K FPGA," FPGA Application Engineering, San Jose, CA, Apr. 2004, 15 pages.
Atmel, Configurable Logic Design & Application Book, Atmel Corporation, 1995, pp. 2-19 through 2-25.
Atmel, Field Programmable Gate Array Configuration Guide, AT6000 Series Configuration Data Sheet, Sep. 1999, pp. 1-20.
Bacon, D. et al., "Compiler Transformations for High-Performance Computing," ACM Computing Surveys, 26(4):325-420 (1994).
Bakkes, P.J., et al., "Mixing Fixed and Reconfigurable Logic for Array Processing," Dept. of Electrical and Electronic Engineering, University of Stellenbosch, South Africa, 1996 IEEE, pp. 118-125.
Ballagh et al., "Java Debug Hardware Models Using JBits," 8th Reconfigurable Architectures Workshop, 2001, 8 pages.
Baumgarte, V. et al., "PACT XPP—A Self-reconfigurable Data Processing Architecture," PACT Info. GMBH, Munchen Germany, 2001, 7 pages.
Beck et al., "From control flow to data flow," TR 89/1050, Oct. 1989, Dept. of Computer Science, Cornell University, Ithaca, NY, pp. 1-25.
Becker, J., "A Partitioning Compiler for Computers with Xputer-based Accelerators," 1997, Kaiserslautern University, 326 pp.
Becker, J. et al., "Architecture, Memory and Interface Technology Integration of an Industrial/Academic Configurable System-on-Chip (CSoC)," IEEE Computer Society Annual Workshop on VLSI (WVLSI 2003), (Feb. 2003), 6 pages.
Becker, J., "Configurable Systems-on-Chip (CSoC)," (Invited Tutorial), Proc. of 9th Proc. of XV Brazilian Symposium on Integrated Circuit, Design (SBCCI 2002), (Sep. 2002), 6 pages.
Becker et al., "Automatic Parallelism Exploitation for FPL-Based Accelerators," 1998, Proc. 31st Annual Hawaii International Conference on System Sciences, pp. 169-178.
Becker, J. et al., "Parallelization in Co-compilation for Configurable Accelerators—a Host/accelerator Partitioning Compilation Method," Proceedings of Asia and South Pacific Design Automation Conference, Yokohama, Japan, Feb. 10-13, 1998, 11 pages.
Bellows et al., "Designing Run-Time Reconfigurable Systems with JHDL," Journal of VLSI Signal Processing 28, Kluwer Academic Publishers, The Netherlands, 2001, pp. 29-45.
Bittner, "Wormhole Run-time Reconfiguration: Conceptualization and VLSI Design of a High Performance Computing System," *Dissertation*, Jan. 23, 1997, pp. I-XX, 1-415.
"BlueGene/L—Hardware Architecture Overview," BlueGene/L design team, IBM Research, Oct. 17, 2003 slide presentation, pp. 1-23.
"BlueGene/L: the next generation of scalable supercomputer," Kissel et al., Lawrence Livermore National Laboratory, Livermore, California, Nov. 18, 2002, 29 pages.
BlueGene Project Update, Jan. 2002, IBM slide presentation, 20 pages.
BlueGene/L, "An Overview of the BlueGene/L Supercomputer," The BlueGene/L Team, IBM and Lawrence Livermore National Laboratory, 2002 IEEE. pp. 1-22.
Bolsens, Ivo (CTO Xilinx), "FPGA, a history of interconnect," Xilinx slide presentation, posted on the internet Oct. 30, 2008 at http://www.docstoc.com/docs/2198008/FPGA-a-history-of-interconnect, 32 pages.
Bondalapati et al., "Reconfigurable Meshes: Theory and Practice," Dept. of Electrical Engineering-Systems, Univ. of Southern California, Apr. 1997, Reconfigurable Architectures Workshop, International Parallel Processing Symposium, 15 pages.
Bratt, A, "Motorola field programmable analogue arrays, present hardware and future trends," Motorola Programmable Technology Centre, Gadbrook Business Centre, Northwich, Cheshire, 1998, The Institute of Electrical Engineers, IEE. Savoy Place, London, pp. 1-5.
Cadambi, et al., "Managing Pipeline-reconfigurable FPGAs," ACM, 1998, pp. 55-64.
Callahan, et al., "The Garp Architecture and C Compiler," Computer, Apr. 2000, pp. 62-69.
Cardoso, J.M.P., et al., "A novel algorithm combining temporal partitioning and sharing of functional units," University of Algarve, Faro, Portugal, 2001 IEEE, pp. 1-10.
Cardoso, Joao M.P., and Markus Weinhardt, "XPP-VC: A C Compiler with Temporal Partitioning for the PACT-XPP Architecture," Field-Programmable Logic and Applications. Reconfigurable Computing is Going Mainstream, 12th International Conference FPL 2002, Proceedings (Lecture Notes in Computer Science, vol. 2438) Springer-Verlag Berlin, Germany, 2002, pp. 864-874.
Cardoso, J.M.P., "Compilation of Java™ Algorithms onto Reconfigurable Computing Systems with Exploitation of Operation-Level Parallelism," Ph.D. Thesis, Universidade Tecnica de Lisboa (UTL), Lisbon, Portugal Oct. 2000 (Table of Contents and *English Abstract only*).
Cardoso, J.M.P., et al., "Compilation and Temporal Partitioning for a Coarse-Grain Reconfigurable Architecture," New Algorithms, Architectures and Applications for Reconfigurable Computing, Lysacht, P. & Rosentiel, W. eds., (2005) pp. 105-115.
Cardoso, J.M.P., et al., "Macro-Based Hardware Compilation of Java™ Bytecodes into a Dynamic Reconfigurable Computing System," IEEE, Apr. 21, 1999, pp. 2-11.
Chaudhry, G.M. et al., "Separated caches and buses for multiprocessor system," Circuits and Systems, 1993; Proceedings of the 36th Midwest Symposium on Detroit, MI, USA, Aug. 16-18, 1993, New York, NY IEEE, Aug. 16, 1993, pp. 1113-1116, XP010119918 ISBN: 0-7803-1760-2.
Chen et al., "A reconfigurable multiprocessor IC for rapid prototyping of algorithmic-specific high-speed DSP data paths," IEEE Journal of Solid-State Circuits, vol. 27, No. 12, Dec. 1992, pp. 1895-1904.
Cherbaka, Mark F., "Verification and Configuration of a Run-time Reconfigurable Custom Computing Integrated Circuit for DSP Applications," Thesis: Virginia Polytechnic Institute and State University, Jul. 8, 1996, 106 pages.
Clearspeed, CSX Processor Architecture, Whitepaper, PN-1110-0702, 2007, pp. 1-15, www.clearspeed.com.
Clearspeed, CSX Processor Architecture, Whitepaper, PN-1110-0306, 2006, pp. 1-14, www.clearspeed.com.
Compton, K., et al., "Configurable Computing: A Survey of Systems and Software," Northwestern University, Dept. of ECE, Technical Report, 1999, (XP-002315148), 39 pages.
Cong et al., "Structural Gate Decomposition for Depth-Optimal Technology Mapping in LUT-Based FPGA Designs," Univ. of California, ACM Transactions on Design Automation of Electronics Systems, vol. 5, No. 2, Apr. 2000, pp. 193-225.

Cook, Jeffrey J., "The Amalgam Compiler Infrastructure," Thesis at the University of Illinois at Urbana-Champaign (2004) Chapter 7 & Appendix G.
Cronquist, D., et al., "Architecture Design of Reconfigurable Pipelined Datapaths," Department of Computer Science and Engineering, University of Washington, Seattle, WA, Proceedings of the 20[th] Anniversary Conference on Advanced Research in VSLI, 1999, pp. 1-15.
Culler, D.E; Singh, J.P., "Parallel Computer Architecture," pp. 434-437, 1999, Morgan Kaufmann, San Francisco, CA USA, XP002477559.
Culler, D.E; Singh, J.P., "Parallel Computer Architecture," p. 17, 1999, Morgan Kaufmann, San Francisco, CA USA, XP002477559.
DeHon, A., "DPGA Utilization and Application," MIT Artificial Intelligence Laboratory, Proceedings of the Fourth International ACM Symposium on Field-Programmable Gate Arrays (FPGA 1996), IEEE Computer Society, pp. 1-7.
DeHon, Andre, "Reconfigurable Architectures for General-Purpose Computing," Massachusetts Institute of Technology, Technical Report AITR-1586, Oct. 1996, XP002445054, Cambridge, MA, pp. 1-353.
Del Corso et al., "Microcomputer Buses and Links," Academic Press Inc. Ltd., 1986, pp. 138-143, 277-285.
Diniz, P., et al., "Automatic Synthesis of Data Storage and Control Structures for FPGA-based Computing Engines," 2000, IEEE, pp. 91-100.
Diniz, P., et al., "A behavioral synthesis estimation interface for configurable computing," University of Southern California, Marina Del Rey, CA, 2001 IEEE, pp. 1-2.
Donandt, "Improving Response Time of Programmable Logic Controllers by use of a Boolean Coprocessor," AEG Research Institute Berlin, IEEE, 1989, pp. 4-167-4-169.
Dutt, et al., "If Software is King for Systems-in-Silicon, What's New in Compilers?" IEEE, 1997, pp. 322-325.
Ebeling, C., et al., "Mapping Applications to the RaPiD Configurable Architecture," Department of Computer Science and Engineering, University of Washington, Seattle, WA, *FPGAs for Custom Computing Machines, 1997. Proceedings., The 5th Annual IEEE Symposium*, Publication Date: Apr. 16-18, 1997, 10 pages.
Equator, Pixels to Packets, Enabling Multi-Format High Definition Video, Equator Technologies BSP-15 Product Brief, www.equator.com, 2001, 4 pages.
Fawcett, B.K., "Map, Place and Route: The Key to High-Density PLD Implementation," Wescon Conference, IEEE Center (Nov. 7, 1995) pp. 292-297.
Ferrante, J., et al., "The Program Dependence Graph and its Use in Optimization ACM Transactions on Programming Languages and Systems," Jul. 1987, USA, [online] Bd. 9, Nr., 3, pp. 319-349, XP002156651 ISSN: 0164-0935 ACM Digital Library.
Fineberg, S, et al., "Experimental Analysis of a Mixed-Mode Parallel Architecture Using Bitonic Sequence Sorting," Journal of Parallel and Distributed Computing, vol. 11, No. 3, Mar. 1991, pp. 239-251.
FOLDOC, The Free On-Line Dictionary of Computing, "handshaking," online Jan. 13, 1995, retrieved from Internet Jan. 23, 2011 at http://foldoc.org/handshake.
Fornaciari, et al., System-level power evaluation metrics, 1997 Proceedings of the 2[nd] Annual IEEE International Conference on Innovative Systems in Silicon, New York, NY, Oct. 1997, pp. 323-330.
Forstner, "Wer Zuerst Kommt, Mahlt Zuerst!: Teil 3: Einsatzgebiete und Anwendungbeispiele von FIFO-Speichern," Elektronik, Aug. 2000, pp. 104-109.
Franklin, Manoj, et al., "A Fill-Unit Approach to Multiple Instruction Issue," Proceedings of the Annual International Symposium on Microarchitecture, Nov. 1994, pp. 162-171.
Freescale Slide Presentation, An Introduction to Motorola's RCF (Reconfigurable Compute Fabric) Technology, Presented by Frank David, Launched by Freescale Semiconductor, Inc., 2004, 39 pages.
Galanis, M.D. et al., "Accelerating Applications by Mapping Critical Kernels on Coarse-Grain Reconfigurable Hardware in Hybrid Systems," Proceedings of the 13Annual IEEE Symposium on Field-Programmable Custom Computing Machines, 2005, 2 pages.
Genius, D., et al., "A Case for Array Merging in Memory Hierarchies," Proceedings of the 9th International Workshop on Compilers for Parallel Computers, CPC'01 (Jun. 2001), 10 pages.
Gokhale, M.B., et al., "Automatic Allocation of Arrays to Memories in FPGA processors with Multiple Memory Banks," Field-Programmable Custom Computing Machines, 1999, IEEE, pp. 63-69.
Guceione et al., "JBits: Java based interface for reconfigurable computing," Xilinx, Inc., San Jose, CA, 1999, 9 pages.
Guo, Z. et al., "A Compiler Intermediate Representation for Reconfigurable Fabrics," University of California, Riverside, Dept. of Electrical Engineering, IEEE 2006, 4 pages.
Gwennap, Linley, "P6 Underscores Intel's Lead," Microprocessor Report, vol. 9., No. 2, Feb. 16, 1995 (MicroDesign Resources), p. 1 and pp. 6-15.
Gwennap, Linley, "Intel's P6 Bus Designed for Multiprocessing," Microprocessor Report, vol. 9, No. 7 (MicroDesign Resources), May 30, 1995, p. 1 and pp. 6-10.
Hammes, Jeff, et al., "Cameron: High Level Language Compilation for Reconfigurable Systems," Department of Computer Science, Colorado State University, Conference on Parallel Architectures and Compilation Techniques, Oct. 12-16, 1999, 9 pages.
Hartenstein, R. et al., "A new FPGA architecture for word-oriented datapaths," Proc. FPL'94, Springer LNCS, Sep. 1994, pp. 144-155.
Hartenstein, R., "Coarse grain reconfigurable architectures," Design Automation Conference, 2001, Proceedings of the ASP-DAC 2001 Asia and South Pacific, Jan. 30-Feb. 2, 2001, IEEE Jan. 30, 2001, pp. 564-569.
Hartenstein et al., "Parallelizing Compilation for a Novel Data-Parallel Architecture," 1995, PCAT-94, Parallel Computing: Technology and Practice, 13 pp.
Hartenstein et al., "A Two-Level Co-Design Framework for Xputer-based Data-driven Reconfigurable Accelerators," 1997, Proceedings of the Thirtieth Annual Hawaii International Conference on System Sciences, 10 pp.
Hastie et al., "The implementation of hardware subroutines on field programmable gate arrays," Custom Integrated Circuits Conference, 1990, Proceedings of the IEEE 1990, May 16, 1990, pp. 31.3.1-31.4.3 (3 pages).
Hauck, "The Roles of FPGAs in Reprogrammable Systems," IEEE, Apr. 1998, pp. 615-638.
Hauser, J.R., et al., "Garp: A MIPS Processor with a Reconfigurable Coprocessor," University of California, Berkeley, IEEE, Apr. 1997, pp. 12-23.
Hauser, John Reid, (Dissertation) "Augmenting a Microprocessor with Reconfigurable Hardware," University of California, Berkeley, Fall 2000, 255 pages. (submitted in 3 PDFs, Parts 1-3).
Hauser, John R., "The Garp Architecture," University of California at Berkeley, Computer Science Division, Oct. 1997, pp. 1-55.
Hedge, S.J., "3D WASP Devices for On-line Signal and Data Processing," 1994, International Conference on Wafer Scale Integration, pp. 11-21.
Hendrich, N., et al., "Silicon Compilation and Rapid Prototyping of Microprogrammed VLSI-Circuits with MIMOLA and SOLO 1400," Microprocessing & Microprogramming (Sep. 1992) vol. 35(1-5), pp. 287-294.
Huang, Libo et al., "A New Architecture for Multiple-Precision Floating-Point Multiply-Add Fused Unit Design," School of Computer National University of Defense Technology, China, IEEE 2007, 8 pages.
Hwang, K., "Advanced Computer Architecture—Parallelism, Scalability, Programmability," 1993, McGraw-Hill, Inc., pp. 348-355.
Hwang, K., "Computer Architecture and Parallel Processing," Data Flow Computers and VLSI Computations, XP-002418655, 1985 McGraw-Hill, Chapter 10, pp. 732-807.
Hwang, L., et al., "Min-cut Replication in Partitioned Networks," IEEE Transactions on Computer-Aided Design of Integrated Circuits and Systems, [online] Bd. 14, Nr. 1, Jan. 1995, pp. 96-106, XP00053228 USA ISSN: 0278-0070 IEEE Xplore.
IBM Technical Disclosure Bulletin, IBM Corp., New York, XP000424878, Bd. 36, Nr. 11, Nov. 1, 1993, pp. 335-336.
"IEEE Standard Test Access Port and Boundary-Scan Architecture," IEEE Std. 1149.1-1990, 1993, pp. 1-127.

IMEC, "ADRES multimedia processor & 3MF multimedia platform," Transferable IP, IMEC Technology Description, (Applicants believe the date to be Oct. 2005), 3 pages.
Intel, "Pentium Pro Family Developer's Manual, vol. 3: Operating System Writer's Guide," Intel Corporation, Dec. 1995, [submitted in 4 PDF files: Part I, Part II, Part III and Part IV], 458 pages.
Intel, Intel MXP5800/MXP5400 Digital Media Processors, Architecture Overview, Jun. 2004, Revision 2.4, pp. 1-24.
Inside DSP, "Ambric Discloses Massively Parallel Architecture," Aug. 23, 2006, http://www.insidedsp.com/Articles/tabid/64/articleType/ArticleView/articleId/155/Default.aspx, 2 pages.
Iseli, C., et al. "A C++ Compiler for FPGA Custom Execution Units Synthesis," IEEE, 1995, pp. 173-179.
Isshiki, Tsuyoshi, et al., "Bit-Serial Pipeline Synthesis for Multi-FPGA Systems with C++Design Capture," 1996 IEEE, pp. 38-47.
Jacob, J., et al., "Memory Interfacing and Instruction Specification for Reconfigurable Processors," ACM Feb. 1999, pp. 145-154.
Jantsch, Axel et al., "A Case Study on Hardware/Software Partitioning," Royal Institute of Technology, Kista, Sweden, Apr. 10, 1994, IEEE, pp. 111-118.
Jantsch, Axel et al., "Hardware/Software Partitioning and Minimizing Memory Interface Traffic," Electronic System Design Laboratory, Royal Institute of Technology, ESDLab, Electrum 229, S-16440 Kista, Sweden (Apr. 1994), pp. 226-231.
Jo, Manhwee et al., "Implementation of Floating-Point Operations for 3D Graphics on a Coarse-Grained Reconfigurable Architecture," Design Automation Laboratory, School of EE/CS, Seoul National University, Korea, IEEE 2007, pp. 127-130.
John, L., et al., "A Dynamically Reconfigurable Interconnect for Array Processors," vol. 6, No. 1, Mar. 1998, IEEE, pp. 150-157.
Kanter, David, "NVIDIA's GT200: Inside a Parallel Processor," http://wwwrealworldtech.com/page.cfm?ArticleID=RWT090989195242&p=1, Sep. 8, 2008, 27 pages.
Kastrup, B., "Automatic Hardware Synthesis for a Hybrid Reconfigurable CPU Featuring Philips CPLDs," Proceedings of the PACT Workshop on Reconfigurable Computing, 1998, pp. 5-10.
Kaul, M., et al., "An automated temporal partitioning and loop fission approach of FPGA based reconfigurable synthesis of DSP applications," University of Cincinnati, Cincinnati, OH, ACM 1999, pp. 616-622.
Kean, T.A., "Configurable Logic: A Dynamically Programmable Cellular Architecture and its VLSI Implementation," University of Edinburgh (Dissertation) 1988, pp. 1-286. [in two PDFs, Pt.1 and Pt.2.].
Kean, T., et al., "A Fast Constant Coefficient Multiplier for the XC6200," Xilinx, Inc., Lecture Notes in Computer Science, vol. 1142, Proceedings of the 6th International Workshop of Field-Programmable Logic, 1996, 7 pages.
Kim et al., "A Reconfigurable Multifunction Computing Cache Architecture," IEEE Transactions on Very Large Scale Integration (VLSI) Systems vol. 9, Issue 4, Aug. 2001 pp. 509-523.
Knittel, Gunter, "A PCI-compatible FPGA-Coprocessor for 2D/3D Image Processing," University of Turgingen, Germany, 1996 IEEE, pp. 136-145.
Koch, A., et al., "Practical Experiences with the SPARXIL Co-Processor," 1998, IEEE, pp. 394-398.
Koch, Andreas et al., "High-Level-Language Compilation for Reconfigurable Computers," Proceedings of European Workshop on Reconfigurable Communication-Centric SOCS (Jun. 2005) 8 pages.
Koren et al., "A data-driven VLSI array for arbitrary algorithms," IEEE Computer Society, Long Beach, CA vol. 21, No. 10, Oct. 1, 1988, pp. 30-34.
Kung, "Deadlock Avoidance for Systolic Communication," 1988 Conference Proceedings of the 15th Annual International Symposium on Computer Architecture, May 30, 1998, pp. 252-260.
Lange, H. et al., "Memory access schemes for configurable processors," Field-Programmable Logic and Applications, International Workshop, FPL, Aug. 27, 2000, pp. 615-625, XP02283963.
Larsen, S., et al., "Increasing and Detecting Memory Address Congruence," Proceedings of the 2002 IEEE International Conference on Parallel Architectures and Compilation Techniques (PACT'02), pp. 1-12 (Sep. 2002).
Lee et al., "A new distribution network based on controlled switching elements and its applications," IEEE/ACT Trans. of Networking, vol. 3, No. 1, pp. 70-81, Feb. 1995.
Lee, Jong-eun, et al., "Reconfigurable ALU Array Architecture with Conditional Execution," International Soc. Design Conference (ISOOC) [online] Oct. 25, 2004, Seoul, Korea, 5 pages.
Lee, R. B., et al., "Multimedia extensions for general-purpose processors," *IEEE Workshop on Signal Processing Systems, SIPS 97—Design and Implementation* (1997), pp. 9-23.
Lee, Ming-Hau et al., "Design and Implementation of the MorphoSys Reconfigurable Computing Processors," The Journal of VLSI Signal Processing, Kluwer Academic Publishers, BO, vol. 24, No. 2-3, Mar. 2, 2000, pp. 1-29.
Li et al., "Hardware-Software Co-Design of Embedded Reconfigurable Architectures," Los Angeles, CA, 2000 ACM, pp. 507-512.
Li, Zhiyuan, et al., "Configuration prefetching techniques for partial reconfigurable coprocessor with relocation and defragmentation," International Symposium on Field Programmable Gate Arrays, Feb. 1, 2002, pp. 187-195.
Ling, X., "WASMII: An MPLD with Data-Driven Control on a Virtual Hardware," Journal of Supercomputing, Kluwer Acdemic Publishers, Dordrecht, Netherlands, 1995, pp. 253-276.
Ling et al., "WASMII: A Multifunction Programmable Logic Device (MPLD) with Data Driven Control," The Transactions of the Institute of Electronics, Information and Communication Engineers, Apr. 25, 1994, vol. J77-D-1, Nr. 4, pp. 309-317.
Mano, M.M., "Digital Design," by Prentice Hall, Inc., Englewood Cliffs, New Jersey 07632, 1984, pp. 119-125, 154-161.
Margolus, N., "An FPGA architecture for DRAM-based systolic computations," Boston University Center for Computational Science and MIT Artificial Intelligence Laboratory, IEEE 1997, pp. 2-11.
Marshall et al., "A Reconfigurable Arithmetic Array for Multimedia Applications," FPGA '99 Proceedings of the 1999 ACM/SIGDA Seventh International Symposium on Field Programmable Gate Arrays, 10 pages.
Maxfield,C., "Logic that Mutates While-U-Wait," EDN (Bur. Ed) (USA), EDN (European Edition), Nov. 7, 1996, Cahners Publishing, USA, pp. 137-140, 142.
Mei, Bingfeng, "A Coarse-Grained Reconfigurable Architecture Template and Its Compilation Techniques," Katholeike Universiteit Leuven, PhD Thesis, Jan. 2005, IMEC vzw, Universitair Micro-Electronica Centrum, Belgium, pp. 1-195 (and Table of Contents).
Mei, Bingfeng et al., "Design and Optimization of Dynamically Reconfigurable Embedded Systems," IMEC vzw, 2003, Belgium, 7 pages, http://www.imec.be/reconfigurable/pdf/ICERSA_01_design.pdf.
Mei, Bingfeng et al., "Adres: An Architecture with Tightly Coupled VLIW Processor and Coarse-Grained Reconfigurable Matrix," Proc. *Field-Programmable Logic and Applications* (FPL 03), Springer, 2003, pp. 61-70.
Melvin, Stephen et al., "Hardware Support for Large Atomic Units in Dynamically Scheduled Machines," Computer Science Division, University of California, Berkeley, IEEE (1988), pp. 60-63.
Miller, M.J., et al., "High-Speed FIFOs Contend with Widely Differing Data Rates: Dual-port RAM Buffer and Dual-pointer System Provide Rapid, High-density Data Storage and Reduce Overhead," Computer Design, Sep. 1, 1985, pp. 83-86.
Mirsky, E. DeHon, "Matrix: A Reconfigurable Computing Architecture with Configurable Instruction Distribution and Deployable Resources," Proceedings of the IEEE Symposium on FPGAs for Custom Computing Machines, 1996, pp. 157-166.
Miyamori, T., et al., "REMARC: Reconfigurable Multimedia Array Coprocessor," Computer Systems Laboratory, Stanford University, IEICE Transactions on Information and Systems E Series D, 1999; (abstract): Proceedings of the 1998 ACM/SIGDA sixth international symposium on Field programmable gate arrays, p. 261, Feb. 22-25, 1998, Monterey, California, United States, pp. 1-12.
Moraes, F., et al., "A Physical Synthesis Design Flow Based on Virtual Components," XV Conference on Design of Circuits and Integrated Systems (Nov. 2000) 6 pages.
Muchnick, S., "Advanced Compiler Design and Implementation," (Morgan Kaufmann 1997), Table of Contents, 11 pages.

Murphy, C., “Virtual Hardware Using Dynamic Reconfigurable Field Programmable Gate Arrays,” Engineering Development Centre, Liverpool John Moores University, UK, GERI Annual Research Symposium 2005, 8 pages.
Myers, G. “Advances in Computer Architecture,” Wiley-Interscience Publication, 2nd ed., John Wiley & Sons, Inc., 1978, pp. 463-494.
Nageldinger, U., “Design-Space Exploration for Coarse Grained Reconfigurable Architectures,” (Dissertation) Universitaet Kaiserslautern, 2000, Chapter 2, pp. 19-45.
Neumann, T., et al., “A Generic Library for Adaptive Computing Environments,” Field Programmable Logic and Applications, 11th International Conference, FPL 2001, Proceedings (Lecture Notes in Computer Science, vol. 2147) (2001) pp. 503-512.
Nilsson, et al., “The Scalable Tree Protocol—A Cache Coherence Approaches for Large-Scale Multiprocessors,” IEEE, pp. 498-506, Dec. 1992.
Norman, R.S., “Hyperchip Business Summary, The Opportunity,” Jan. 31, 2000, pp. 1-3.
Ohmsha, “Information Processing Handbook,” edited by the Information Processing Society of Japan, pp. 376, Dec. 21, 1998.
Olukotun, K., “The Case for a Single-Chip Microprocessor,” ACM Sigplan Notices, ACM, Association for Computing Machinery, New York, vol. 31, No. 9, Sep. 1996 pp. 2-11.
Ozawa, Motokazu et al., “A Cascade ALU Architecture for Asynchronous Super-Scalar Processors,” IEICE Transactions on Electronics, Electronics Society, Tokyo, Japan, vol. E84-C, No. 2, Feb. 2001, pp. 229-237.
PACT Corporation, “The XPP Communication System,” Technical Report 15 (2000), pp. 1-16.
Parhami, B., “Parallel Counters for Signed Binary Signals,” Signals, Systems and Computers, 1989, Twenty-Third Asilomar Conference, vol. 1, pp. 513-516.
PCI Local Bus Specification, Production Version, Revision 2.1, Portland, OR, Jun. 1, 1995, pp. 1-281.
Piotrowski, A., “IEC-Bus, Die Funktionsweise des IEC-BUS unde seine Anwendung in Geräten und Systemen,” 1987, Franzis-Verlag GmbH, München, pp. 20-25. [English Abstract Provided].
Pirsch, P. et al., “VLSI implementations of image and video multimedia processing systems,” *IEEE Transactions on Circuits and Systems for Video Technology*, vol. 8, No. 7, Nov. 1998, pp. 878-891.
Pistorius et al., “Generation of Very Large Circuits to Benchmark the Partitioning of FPGAs,” Monterey, CA, ACM 1999, pp. 67-73.
Price et al., “Debug of Reconfigurable Systems,” Xilinx, Inc., San Jose, CA, Proceedings of SPIE, 2000, pp. 181-187.
Quenot, G.M., et al., “A Reconfigurable Compute Engine for Real-Time Vision Automata Prototyping,” Laboratoire Systeme de Perception, DGA/Etablissement Technique Central de l’Armement, France, 1994 IEEE, pp. 91-100.
Razdan et al., A High-Performance Microarchitecture with Hardware-Programmable Functional Units, Micro-27, Proceedings of the 27th Annual International Symposium on Microarchitecture, IEEE Computer Society and Association for Computing Machinery, Nov. 30-Dec. 2, 1994, pp. 172-180.
Rotenberg, Eric., et al., “Trace Cache: a Low Latency Approach to High Bandwidth Instruction Fetching,” Proceedings of the 29th Annual International Symposium on Microarchitecture, Paris, France, IEEE (1996), 12 pages.
Ryo, A., “Auszug aus Handbuch der Informationsverarbeitung,” ed. Information Processing Society of Japan, *Information Processing Handbook, New Edition*, Software Information Center, Ohmsha, Dec. 1998, 4 pages. [Translation provided].
Saleeba, Z.M.G., “A Self-Reconfiguring Computer System,” Department of Computer Science, Monash University (Dissertation) 1998, pp. 1-306.
Saleeba, M. “A Self-Contained Dynamically Reconfigurable Processor Architecture,” Sixteenth Australian Computer Science Conference, ASCS-16, QLD, Australia, Feb. 1993, pp. 59-70.
Salefski, B. et al., “Re-configurable computing in wireless,” *Annual ACM IEEE Design Automation Conference: Proceedings of the 38th conference on Design automation* (2001) pp. 178-183.
Schmidt, H. et al., “Behavioral synthesis for FGPA-based computing,” Carnegie Mellon University, Pittsburgh, PA, 1994 IEEE, pp. 125-132.
Schmidt, U. et al., “Datawave: A Single-Chip Multiprocessor for Video Applications,” *IEEE Micro*, vol. 11, No. 3, May/Jun. 1991, pp. 22-25, 88-94.
Schmit, et al., “Hidden Markov Modeling and Fuzzy Controllers in FPGAs, FPGAs for Custom Computing Machines,” 1995; Proceedings, IEEE Symposium in Napa Valley, CA, Apr. 1995, pp. 214-221.
Schönfeld, M., et al., “The LISA Design Environment for the Synthesis of Array Processors Including Memories for the Data Transfer and Fault Tolerance by Reconfiguration and Coding Techniques,” J. VLSI Signal Processing Systems for Signal, Image, and Video Technology, (Oct. 1, 1995) vol. 11(½), pp. 51-74.
Shin, D., et al., “C-based Interactive RTL Design Methodology,” Technical Report CECS-03-42 (Dec. 2003) pp. 1-16.
Shirazi, et al., “Quantitative analysis of floating point arithmetic on FPGA based custom computing machines,” IEEE Symposium on FPGAs for Custom Computing Machines, *IEEE Computer Society Press*, Apr. 19-21, 1995, pp. 155-162.
Short, Kenneth L., *Microprocessors and Programmed Logic*, Prentice Hall, Inc., New Jersey 1981, p. 34.
Siemers, C., “Rechenfabrik Ansaetze Fuer Extrem Parallele Prozessoren,” Verlag Heinze Heise GmbH., Hannover, DE No. 15, Jul. 16, 2001, pp. 170-179.
Siemers et al., “The .>S<puter: A Novel Micoarchitecture Model for Execution inside Superscalar and VLIW Processors Using Reconfigurable Hardware,” Australian Computer Science Communications, vol. 20, No. 4, Computer Architecture, Proceedings of the 3rd Australian Computer Architecture Conference, Perth, John Morris, Ed., Feb. 2-3, 1998, pp. 169-178.
Simunic, et al., Source Code Optimization and Profiling of Energy Consumation in Embedded Systems, Proceedings of the 13th International Symposium on System Synthesis, Sep. 2000, pp. 193-198.
Singh, H. et al., “MorphoSys: An Integrated Reconfigurable System for Data-Parallel Computation-Intensive Applications,” University of California, Irvine, CA. and Federal University of Rio de Janeiro, Brazil, 2000, IEEE Transactions on Computers, pp. 1-35; also published in *IEEE Transactions on Computers*, vol. 49, No. 5, May 2000, pp. 465-481.
Skokan, Z.E., “Programmable logic machine (A programmable cell array),” IEEE Journal of Solid-State Circuits, vol. 18, Issue 5, Oct. 1983, pp. 572-578.
Sondervan, J., “Retiming and logic synthesis,” Electronic Engineering (Jan. 1993) vol. 65(793), pp. 33, 35-36.
Soni, M., “VLSI Implementation of a Wormhole Run-time Reconfigurable Processor,” Jun. 2001, (Masters Thesis)Virginia Polytechnic Institute and State University, 88 pages.
Sueyoshi, T, “Present Status and Problems of the Reconfigurable Computing Systems Toward the Computer Evolution,” Department of Artificial Intelligence, Kyushi Institute of Technology, Fukuoka, Japan; Institute of Electronics, Information and Communication Engineers, vol. 96, No. 426, IEICE Technical Report (1996), pp. 111-119 [English Abstract Only].
Sundararajan et al., “Testing FPGA Devices Using JBits,” Proc. MAPLD 2001, Maryland, USA, Katz (ed.), NASA, CA, 8 pages.
Sutton et al., “A Multiprocessor DSP System Using PADDI-2,” U.C. Berkeley, 1998 ACM, pp. 62-65.
Tau, E., et al., “A First Generation DPGA Implementation,” *FPD’95*, pp. 138-143.
Tenca, A.F., et al., “A Variable Long-Precision Arithmetic Unit Design for Reconfigurable Coprocessor Architectures,” University of California, Los Angeles, 1998, pp. 216-225.
The XPP White Paper, Release 2.1, PACT—A Technical Perspective, Mar. 27, 2002, pp. 1-27.
TMS320C54X DSP: CPU and Peripherals, Texas Instruments, 1996, 25 pages.
TMS320C54x DSP: Mnemonic Instruction Set, Texas Instruments, 1996, 342 pages.
Translation of DE 101 39 170, filed Aug. 16, 2001, in related case using Google Translate, 10 pages.
Tsutsui, A., et al., “Yards: FPGA/MPU Hybrid Architecture for Telecommunication Data Processing,” NTT Optical Network Systems Laboratories, Japan, 1997 ACM, pp. 93-99.

Vasell et al., "The Function Processor: A Data-Driven Processor Array for Irregular Computations," Chalmers University of Technology, Sweden, 1992, pp. 1-21.
Venkatachalam et al., "A highly flexible, distributed multiprocessor architecture for network processing," Computer Networks, The International Journal of Computer and Telecommunications Networking, vol. 41, No. 5, Apr. 5, 2003, pp. 563-568.
Villasenor, et al., "Configurable Computing Solutions for Automatic Target Recognition," *IEEE*, 1996 pp. 70-79.
Villasenor, ct al., "Configurable Computing," *Scientific American*, vol. 276, No. 6, Jun. 1997, pp. 66-71.
Villasenor, et al., "Express Letters Video Communications Using Rapidly Reconfigurable Hardware," IEEE Transactions on Circuits and Systems for Video Technology, IEEE, Inc., NY, Dec. 1995, pp. 565-567.
Wada, et al., "A Performance Evaluation of Tree-based Coherent Distributed Shared Memory," Proceedings of the Pacific RIM Conference on Communications, Comput and Signal Processing, Victoria, May 19-21, 1993, pp. 390-393.
Waingold, E., et al., "Baring it all to software: Raw machines," IEEE Computer, Sep. 1997, at 86-93.
Webster's Ninth New Collegiate Dictionary, Merriam-Webster, Inc., 1990, p. 332 (definition of "dedicated").
Weinhardt, M., "Compilation Methods for Structure-programmable Computers," dissertation, ISBN 3-89722-011-3, 1997. [Table of Contents and English Abstract Provided].
Weinhardt, Markus et al., "Pipeline Vectorization for Reconfigurable Systems," 1999, IEEE, pp. 52-62.
Weinhardt, Markus et al., "Pipeline Vectorization," IEEE Transactions on Computer-Aided Design of Integrated Circuits and Systems, vol. 20, No. 2, Feb. 2001, pp. 234-248.
Weinhardt, Markus et al., "Memory Access Optimization for Reconfigurable Systems," IEEE Proceedings Computers and Digital Techniques, 48(3) (May 2001) pp. 1-16.
Wittig, et al., "OneChip: An FPGA Processor with Reconfigurable Logic," IEEE, 1996, pp. 126-135.
Wolfe, M. et al., "High Performance Compilers for Parallel Computing," (Addison-Wesley 1996) Table of Contents, 11 pages.
Wu, et al., "A New Cache Directory Scheme," IEEE, pp. 466-472, Jun. 1996.
Xilinx, "Logic Cell Array Families: XC4000, XC4000A and XC4000H," 1994, product description, pp. 2-7, 2-9, 2-14, 2-15, 8-16, and 9-14.
Xilinx, "The Programmable Logic Data Book," 1994, Section 2, pp. 1-231, Section 8, pp. 1, 23-25, 29, 45-52, 169-172.
Xilinx, "Spartan and SpartanXL Families Field Programmable Gate Arrays," Jan. 1999, Xilinx, pp. 4-3 through 4-70.
Xilinx, "XC6200 Field Programmable Gate Arrays," Apr. 24, 1997, Xilinx product description, pp. 1-73.
Xilinx, "XC3000 Series Field Programmable Gate Arrays," Nov. 6, 1998, Xilinx product description, pp. 1-76.
Xilinx, "XC4000E and XC4000X Series Field Programmable Gate Arrays," May 14, 1999, Xilinx product description, pp. 1-68.
Xilinx, "Virtex-E 1.8 V Extended Memory Field Programmable Gate Arrays," (v1.5) Jul. 17, 2002, Xilinx Production Product Specification, pp. 1-118.
Xilinx, "Virtex-E 1.8 V Extended Memory Field Programmable Gate Arrays," (v2.2) Sep. 10, 2002, Xilinx Production Product Specification, pp. 1-52.
Xilinx, "Virtex-II and Virtex-II Pro X FPGA User Guide," Mar. 28, 2007, Xilinx user guide, pp. 1-559.
Xilinx, "Virtex-II and Virtex-II Pro X FPGA Platform FPGAs: Complete Data Sheet," (v4.6) Mar. 5, 2007, pp. 1-302.
Xilinx, "Virtex-II Platform FPGAs: Complete Data Sheet," (v3.5) Nov. 5, 2007, pp. 1-226.
Xilinx, White Paper 370: (Virtex-6 and Spartan-6 FPGA Families) "Reducing Switching Power with Intelligent Clock Gating," Frederic Rivoallon, May 3, 2010, pp. 1-5.
Xilinx, White Paper 298: (Spartan-6 and Virtex-6 Devices) "Power Consumption at 40 and 50 nm," Matt Klein, Apr. 13, 2009, pp. 1-21.
Xu, H. et al., "Parallel QR Factorization on a Block Data Flow Architecture," Conference Proceeding Article, Mar. 1, 1992, pp. 332-336.
Ye, Z.A. et al., "A C-Compiler for a Processor With a Reconfigurable Functional Unit," FPGA 2000 ACM/SIGNA International Symposium on Field Programmable Gate Arrays, Monterey, CA Feb. 9-11, 2000, pp. 95-100.
Yeung, A. et al., "A data-driven architecture for rapid prototyping of high throughput DSP algorithms," Dept. of Electrical Engineering and Computer Sciences, Univ. of California, Berkeley, USA, *Proceedings VLSI Signal Processing Workshop, IEEE Press*, pp. 225-234, Napa, Oct. 1992.
Yeung, A. et al., "A reconfigurable data-driven multiprocessor architecture for rapid prototyping of high throughput DSP algorithms," Dept. of Electrical Engineering and Computer Sciences, Univ. of California, Berkeley, USA, pp. 169-178, *IEEE* 1993.
Zhang, et al., "Architectural Evaluation of Flexible Digital Signal Processing for Wireless Receivers, Signals, Systems and Computers," 2000; Conference Record of the Thirty-Fourth Asilomar Conference, Bd. 1, Oct. 29, 2000, pp. 78-83.
Zhang, et al., "A 1-V Heterogeneous Reconfigurable DSP IC for Wireless Baseband Digital Signal Processing," IEEE Journal of Solid-State Circuits, vol. 35, No. 11, Nov. 2000, pp. 1697-1704.
Zhang et al., "Abstract: Low-Power Heterogeneous Reconfigurable Digital Signal Processors with Energy-Efficient Interconnect Network," U.C. Berkeley (2004), pp. 1-120.
Zima, H. et al., "Supercompilers for parallel and vector computers," (Addison-Wesley 1991) Table of Contents, 5 pages.
Xilinx, Inc.'s and Avnet, Inc.'s Disclosure Pursuant to P.R. 4-2; *PACT XPP Technologies, AG.* v. *Xilinx, Inc. and Avnet, Inc.*, Case No. 2:07-cv-00563-TJW-CE, U.S. District Court for the Eastern District of Texas, Dec. 28, 2007, 4 pages.
Xilinx, Inc.'s and Avnet, Inc.'s Disclosure Pursuant to P.R. 4-1; *PACT XPP Technologies, AG.* v. *Xilinx, Inc. and Avnet, Inc.*, Case No. 2:07-cv-00563-TJW-CE, U.S. District Court for the Eastern District of Texas, Dec. 28, 2007, 9 pages.
Defendant's Claim Construction Chart for P.R. 4-2 Constructions and Extrinsic Evidence for Terms Proposed by Defendants, *PACT XPP Technologies, AG.* v. *Xilinix, Inc. and Avnet, Inc.*, Case No. 2:08-cv-00563-TJW-CE, U.S. District Court for the Eastern District of Texas, Dec. 28, 2007, pp. 1-19.
PACT's P.R. 4-1 List of Claim Terms for Construction, *PACT XPP Technologies, AG.* v. *Xininx, Inc. and Avnet, Inc.*, Case No. 2:07-cv-00563-TJW-CE, U.S. District Court for Eastern District of Texas, Dec. 28, 2007, pp. 1-7.
PACT's P.R. 4-2 Preliminary Claim Constructions and Extrinsic Evidence, *PACT XPP Technologies, AG.* v. *Xilinx, Inc. and Avnet, Inc.*, Case No. 2:07-cv-00563-TJW-CE, U.S. District Court for the Eastern District of Texas, Dec. 28, 2007, pp. 1-16, and Exhibits re Extrinsic Evidence Parts in seven (7) separate additional PDF files (Parts 1-7).
Microsoft Press Computer Dictionary, Third Edition, Redmond, WA, 1997, 3 pages.
Microsoft Press Computer Dictionary, Second Edition, Redmond, WA, 1994, 3 pages.
A Dictionary of Computing, Fourth Edition, Oxford University Press, 1997, 4 pages.
Communications Standard Dictionary, Third Edition, Martin Weik (Ed.), Chapman & Hall, 1996, 3 pages.
Dictionary of Communications Technology, Terms Definitions and Abbreviations, Second Edition, Gilbert Held (Ed.), John Wiley & Sons, England, 1995, 5 pages.
The Random House College Dictionary, Revised Edition, Random House, Inc., 1984, 14 pages.
The Random House College Dictionary, Revised Edition, Random House, Inc., 1984, 7 pages.
Random House Webster's College Dictionary with CD-ROM, Random House, 2001, 7 pages.
Random House Webster's College Dictionary with CD-ROM, Random House, 2001, 4 pages.
Random House Personal Computer Dictionary, Second Edition, Philip E. Margolis (Ed.), Random House, New York, 1996, 5 pages.
The IEEE Standard Dictionary of Electrical and Electronics Terms, Sixth Edition, 1996, 36 pages.
The IEEE Standard Dictionary of Electrical and Electronics Terms, Sixth Edition, 1996, 8 pages.

McGraw-Hill Electronics Dictionary, Sixth Edition, Neil Sclater et al. (Ed.), McGraw-Hill, 1997, 3 pages.
Modern Dictionary of Electronics, Sixth Edition, Rudolf Graf (Ed.), Newnes (Butterwoth-Heinemann), 1997, 5 pages.
The American Heritage Dictionary, Fourth Edition, Dell (Houghton-Mifflin), 2001, 5 pages.
The American Heritage Dictionary, Second College Edition, Houghton Mifflin, 1982, 23 pages.
The American Heritage Dictionary, Second College Edition, Houghton Mifflin, 1982, 8 pages.
The American Heritage Dictionary, Third Edition, Dell Publishing (Bantam Doubleday Dell Publishing Group, Inc.), 1994, 4 pages.
The American Heritage Dictionary, Fourth Edition, Dell/Houghton Mifflin 2001, 5 pages.
Webster's New Collegiate Dictionary, Merriam Co., 1981, 5 pages.
Webster's New Collegiate Dictionary, Merriam Co., 1981, 4 pages.
The Oxford American Dictionary and Language Guide, Oxford University Press, 1999, 5 pages.
The Oxford Duden German Dictionary, Edited by the Dudenredaktion and the German Section of the Oxford University Press, W. Scholze-Stubenrecht et al. (Eds), Clarendon Press, Oxford, 1990, 7 pages.
Oxford Dictionary of Computing, Oxford University Press, 2008, 4 pages.
Modern Dictionary of Electronics, Sixth Edition Revised and Updated, Rudolf F. Graf (Ed.), Butterworth-Heinemann, 1997, 7 pages.
Modern Dictionary of Electronics, Sixth Edition Revised and Updated, Rudolf F. Graf (Ed.), Butterworth-Heinemann, 1997, 5 pages.
Garner's Modern American Usage, Bryan A. Garner (Ed.), Oxford University Press, 2003, 3 pages.
The New Fowler's Modern English Usage, R.W. Burchfield (Ed.) , Oxford University Press, 2000, 3 pages.
Wikipedia, the free encyclopedia, "Granularity", at http://en.wikipiedia.org/wiki/Granularity , Jun. 18, 2010, 4 pages.
Wordsmyth, The Premier Educational Dictionary—Thesaurus, at http://www.wordsmyth.net, "communication", Jun. 18, 2010, 1 page.
Yahoo! Education, "affect", at http://education.yahoo.com/reference/dictionary/entry/affect, Jun. 18, 2010, 2 pages.
mPulse Living Language, "high-level", at http:// www.macmillandictionary.com/dictionary/american/high-level , Jun. 18, 2010, 1 page.
MSN Encarta, "regroup", at http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?lextype=3& search=regroup , Jun. 17, 2010, 2 pages.
MSN Encarta, "synchronize", at http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?lextype=3& search=synchronize , Jun. 17, 2010, 2 pages.
MSN Encarta, "pattern", at http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?lextype=3&search=pattern , Jun. 17, 2010, 2 pages.
MSN Encarta, "dimension", at http://encarta.msn.com/encnet/features/dictionary/Dictionary Results.aspx?lextype=3& search=dimension, Jun. 17, 2010, 2 pages.
MSN Encarta, "communication", at http://enearta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?lextype=3& search=communication, Jun. 17, 2010, 2 pages.
MSN Encarta, "arrangement", at http:// encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?lextype=3& search=arrangement , Jun. 17, 2010, 2 pages.
MSN Encarta, "vector", at http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?lextype=3& search=vector , Jul. 30, 2010, 2 pages.
Dictionary.com, "address", at http://dictionary.reference.com/browse/address , Jun. 18, 2010, 4 pages.
P.R . 4-3 Joint Claim Constructions Statement, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc et al.*, E.D. Texas, 2:07-cv-00563-CE, Jul. 19, 2010, pp. 1-50.
Order Granting Joint Motion for Leave to File an Amended Joint Claim Construction and Prehearing Statement and Joint Motion to File an Amended Joint Claim Construction and Prehearing Statement Pursuant to Local Patent Rule 4-3, and Exhibit A: P.R. 4-3 Amended Joint Claim Constructions Statement, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-Ce, Aug. 2, 2010, 72 pages.
P.R. 4-3 Amended Joint Claim Constructions Statement, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-Ce, Aug. 3, 2010, pp. 1-65.
Exhibit A—P.R. 4-3 Amended Joint Claim Constructions Statement, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Aug. 2, 2010, pp. 1-66.
PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-55.
Declaration of Harry L. (Nick) Tredennick in Support of PACT's Claim Constructions, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-87.
Transcript of Harry (Nick) L. Tredennick III, Ph.D., Oct. 11, 2010, vol. 1, Exhibit 16 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-3.
Agreed and Disputed Terms, Exhibit 17 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-16.
Oral Videotaped Deposition—Joseph McAlexander dated Oct. 12, 2010, vol. 1, Exhibit 18 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-17.
Expert Report of Joe McAlexander Re Claim Construction dated Sep. 27, 2010, Exhibit 19 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-112.
Documents from File History of U.S. Appl. No. 09/290,342, filed Apr. 12, 1999, Exhibit 20 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-37.
Amendment from File History of U.S. Appl. No. 10/156,397, filed May 28, 2002, Exhibit 25 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-12.
Documents from File History U.S. Appl. No. 09/329,132, filed Jun. 9, 1999, Exhibit 27 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-36.
Amendment from File History of U.S. Appl. No. 10/791,501, filed Mar. 1, 2004, Exhibit 39 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-9.
Amendment from File History of U.S. Appl. No. 10/265,846, filed Oct. 7, 2002, Exhibit 40 of PACT's Opening Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Nov. 1, 2010, pp. 1-12.
Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-55.
Declaration of Aaron Taggart in Support of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief (Exhibit A), *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-5.
Oral Videotaped Deposition Joseph McAlexander (Oct. 12, 2010), Exhibit 1 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-9.
Expert Report of Joe McAlexander re Claim Construction, Exhibit 2 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-137.
Various Documents from File History of U.S. Appl. No. 09/290,342, filed Apr. 12, 1999, Exhibit 6 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technolo-*

*gies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-Cv-00563-CE, Dec. 6, 2010, pp. 1-181.
Transcript of Harry (Nick) L. Tredennick III, Ph.D., Oct. 11, 2010, vol. 1, Exhibit 7 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-28.
Amendment, Response from File History of U.S. Appl. No. 10/156,397, filed May 28, 2002, Exhibit 15 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-137.
Application from File History of U.S. Appl. No. 08/544,435, filed Nov. 17, 1995, Exhibit 20 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-102.
Documents from File History of U.S. Appl. No. 09/329,132, filed Jun. 9, 1999, Exhibit 24 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-13.
Documents from File History of U.S. Appl. No. 10/791,501, filed Mar. 1, 2004, Exhibit 25 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-14.
Amendment from File History of U.S. Appl. No. 11/246,617, filed Oct. 7, 2005, Exhibit 26 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-9.
Documents from File History of U.S. Appl. No. 08/947,254, filed Oct. 8, 1997, Exhibit 27 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-38.
Documents from File History of U.S. Appl. No. 08/947,254, filed Oct. 8, 1997, specifically, German priority application specification [English translation provided], Exhibit 33 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, 54 pages [including English translation].
Documents from File History of U.S. Appl. No. 09/335,974, filed Jun. 18, 1999, Exhibit 28 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-32.
Documents from File History of U.S. Patent Reexamination Control No. 90/010,450 (filed Mar. 27, 2009), Exhibit 30 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-71.
Documents from File History of U.S. Appl. No. 10/265,846, filed Oct. 7, 2002, Exhibit 32 of Defendants Xilinx, Inc. and Avnet, Inc.'s Responsive Claim Construction Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Dec. 6, 2010, pp. 1-23.
PACT's Claim Construction Reply Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Jan. 7, 2011, pp. 1-20.
Defendants Xilinx, Inc. and Avnet, Inc.'s Claim Construction Surreply Brief, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Jan. 18, 2011, 142 pages.
Markman Hearing Minutes and Attorney Sign-In Sheet, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Feb. 22, 2011, 3 pages; and court transcript, 245 pages.
Memorandum Opinion and Order, *PACT XPP Technologies, AG* v. *Xilinx, Inc. and Avnet, Inc. et al.*, E.D. Texas, 2:07-cv-00563-CE, Jun. 17, 2011, pp. 1-71.
Atmel Corporation, Atmel 5-K- 50K Gates Coprocessor FPGA and FreeRAM, (www.atmel.com), Apr. 2002 , pp. 1-68.
Glaskowsky, Peter N., "PACT Debuts Extreme Processor; Reconfigurable ALU Array Is Very Powerful—and Very Complex" Microprocessor, The Insider's Guide to Microprocessor Hardware, MicroDesign Resources—Microprocessor Report, Oct. 9, 2000 (www.MPRonline.com), 6 pages.
Glaskowsky, Peter N., "Analysis' Choice Nominees Named; Our Picks for 2002's Most Important Products and Technologies" Microprocessor, The Insider's Guide to Microprocessor Hardware, MicroDesign Resources—Microprocessor Report, Dec. 9, 2002 (www.MPRonline.com), 4 pages.
Lattice Semiconductor Corporation, ispLSI 2000E, 2000VE and 2000 VL Family Architectural Description, Oct. 2001, pp. 1-88.
Olukotun, K. et al., "Rationale, Design and Performance of the Hydra Multiprocessor," Computer Systems Laboratory, Stanford University, CA, Nov. 1994, pp. 1-19.
PACT Corporate Backgrounder, PACT company release, Oct. 2008, 4 pages.
Page, Ian., "Reconfigurable processor architectures," Oxford University Computing Laboratory, Oxford UK, Elsevier Science B.V., Microprocessors an Microsystems 20 (1996) pp. 185-196.
Singh, Hartej et al., "Morpho-Sys: A Reconfigurable Architecture for Multimedia Applications," Univ. of California, Irvine, CA and Federal University of Rio de Janiero, Brazil, at http://www.eng.uci.edu/morphosys/docs/sbcci98.html, 10 pages.
Theodoridis, G. et al., "Chapter 2—A Survey of Coarse-Grain Reconfigurable Architectures and Cad Tools, Basic Definitions, Critical Design Issues and Existing Coarse-grain Reconfigurable Systems," from S. Vassiliadis, and D. Soudris (eds.) *Fine- and Coarse-Grained Reconfigurable Computing*, Springer 2007, pp. 89-149.
Weinhardt, Markus et al., "Using Function Folding to Improve Silicon Efficiency of Reconfigurable Arithmetic Arrays," PACT XPP Technologies AG, Munich, Germany, IEEE 2004, pp. 239-245.
Xilinx, XC6200 Field Programmable Gate Arrays, Advance Product Specification, Jun. 1, 1996 (Version 1.0), pp. 4-255 through 4-286.
Xilinx, Virtex-II Platform FPGA User Guide, UG002 (V2.1) Mar. 28, 2007, pp. 1-502 [Parts 1-3].
Xilinx, XC4000E and SC4000X Serial Field Programmable Gate Arrays, Product Specification (Version 1.6), May 14, 1999, pp. 1-107.
Coelho, F., "Compiling dynamic mappings with array copies," Jul. 1997, 12 pages, http://delivery.acm.org/10.1145/270000/263786/p168-coelho.pdf.
Janssen et al., "A Specification Invariant Technique for Regularity Improvement between Flow-Graph Clusters," Mar. 1996, 6 pages, http://delivery.acm.org/10.1145/790000/787534/74230138.pdf.
Microsoft Press Computer Dictionary, Second Edition, 1994, Microsoft Press, ISBN 1-55615-597-2, p. 10.
Newton, Harry, "Newton's Telecom Dictionary," Ninteenth Edition, 2003, CMP Books, p. 40.
Rehmouni et al., "Formulation and evaluation of scheduling techniques for control flow graphs," Dec. 1995, 6 pages, http://delivery.acm.org/10.1145/230000/224352/p386-rahmouni.pdf.
Sinha et al., "System-dependence-graph-based slicing of programs with arbitrary interprocedural control flow," May 1999, 10 pages, http://delivery.acm.org/10.1145/310000/203675/p432-sinha.pdf.
Stallings, William, "Data & Computer Communications," Sixth Edition, Jun. 2000, Prentice-Hall, Inc., ISBN 0-084370-9, pp. 195-196.
Agarwal, A., et al., "APRIL: A Processor Architecture for Multiprocessing," Laboratory for Computer Science, MIT, Cambridge, MA, IEEE 1990, pp. 104-114.
Almasi and Gottlieb, *Highly Parallel Computing*, The Benjamin/Cummings Publishing Company, Inc., Redwood City, CA, 1989, 3 pages (Fig. 4.1).
Advanced RISC Machines Ltd (ARM), "AMBA—Advanced Microcontroller Bus Architecture Specification," (Document No. ARM IHI 0001C), Sep. 1995, 72 pages.
Alfke, Peter; New, Bernie, *Xilinx Application Note*, "Additional XC3000 Data," XAPP 024.000, 1994, pp. 8-11 through 8-20.
Alfke, Peter; New, Bernie, Xilinx Application Note, "Adders, Subtracters and Accumulators in XC3000," Xapp 022.000, 1994, pp. 8-98.
Alfke, Peter, *Xilinx Application Note*, "Megabit FIFO in Two Chips: One LCA Device and One DRAM," XAPP 030.000, 1994, pp. 8-148 through 8-150.

Alfke, Peter, *Xilinx Application Note*, "Dynamic Reconfiguration," XAPP 093, Nov. 10, 1997, pp. 13-45 through 13-46.
Alfke, Peter; New, Bernie, *Xilinx Application Note*, "Implementing State Machines in LCA Devices," XAPP 027.001, 1994, pp. 8-169 through 8-172.
Algotronix, Ltd., CAL64K Preliminary Data Sheet, Apr. 1989, pp. 1-24.
Algotronix, Ltd., CAL4096 Datasheet, 1992, pp. 1-53.
Algotronix, Ltd., CHS2x4 User Manual, "CHA2x4 Custom Computer," 1991, pp. 1-38.
Allaire, Bill; Fischer, Bud, *Xilinx Application Note*, "Block Adaptive Filter," XAPP 055, Aug. 15, 1996 (Version 1.0), pp. 1-10.
Altera Application Note (73), "Implementing FIR Filters in FLEX Devices," Altera Corporation, Feb. 1998, ver. 1.01, pp. 1-23.
Athanas, P. (Thesis), "An adaptive machine architecture and compiler for dynamic processor reconfiguration," Brown University 1992, pp. 1-157.
Berkeley Design Technology, Inc., *Buyer's Guide to DSP Processors*, 1995, Fremont, CA., pp. 673-698.
Bittner, R. et al., "Colt: An Experiment in Wormhole Run-Time Reconfiguration," Bradley Department of Electrical and Computer Engineering, Blacksburg, VA, SPIE—International Society for Optical Engineering, vol. 2914/187, Nov. 1996, Boston, MA, pp. 187-194.
Camilleri, Nick; Lockhard, Chris, *Xilinx Application Note* ,"Improving XC4000 Design Performance," XAPP 043.000, 1994, pp. 8-21.
Cartier, Lois, *Xilinx Application Note*, "System Design with New XC4000EX I/O Features," Feb. 21, 1996, pp. 1-8.
Chen, D., (Thesis) "Programmable arithmetic devices for high speed digital signal processing," U. California Berkeley 1992, pp. 1-175.
Churcher, S., et al., "The XC6200 FastMap TM Processor Interface," Xilinx, Inc., Aug. 1995, pp. 1-8.
Cowie, Beth, *Xilinx Application Note*, "High Performance, Low Area, Interpolator Design for the XC6200," XAPP 081, May 7, 1997 (Version 1.0), pp. 1-10.
Duncan, Ann, *Xilinx Application Note*, "A32x16 Reconfigurable Correlator for the XC6200," XAPP 084, 'Jul. 25, 1997 (Version 1.0), pp. 1-14.
Ebeling, C., et al., "RaPiD—Reconfigurable Pipelined Datapath," Dept. of Computer Science and Engineering, U. Washington, 1996, pp. 126-135.
Epstein, D., "IBM Extends DSP Performance with Mfast—Powerful Chip Uses Mesh Architecture to Accelerate Graphics, Video," 1995 MicroDesign Resources, vol. 9, No. 16, Dec. 4, 1995, pp. 231-236.
Fawcett, B., "New SRAM-Based FPGA Architectures Address New Applications," Xilinx, Inc. San Jose, CA, Nov. 1995, pp. 231-236.
Goslin, G; Newgard, B, *Xilinx Application Note*, "16-Tap, 8-Bit FIR Filter Applications Guide," Nov. 21, 1994, pp. 1-5.
Iwanczuk, Roman, *Xilinx Application Note*, "Using the XC4000 RAM Capability," XAPP 031.000, 1994, pp. 8-127 through 8-138.
Knapp, Steven, "Using Programmable Logic to Accelerate DSP Functions," Xilinx, Inc., 1995, pp. 1-8.
New, Bernie, *Xilinx Application Note* ,"Accelerating Loadable Counters in SC4000," XAPP 023.001, 1994, pp. 8-82 through 8-85.
New, Bernie, *Xilinx Application Note*, "Boundary Scan Emulator for XC3000," XAPP 007.001, 1994, pp. 8-53 through 8-59.
New, Bernie, *Xilinx Application Note*, "Ultra-Fast Synchronous Counters," XAPP 014.001, 1994, pp. 8-78 through 8-81.
New, Bernie, *Xilinx Application Note*, "Using the Dedicated Carry Logic in XC4000," XAPP 013.001, 1994, pp. 8-105 through 8-115.
New, Bernie, *Xilinx Application Note*, "Complex Digital Waveform Generator," XAPP 008.002, 1994, . 8-163 through 8-164.
New, Bernie, *Xilinx Application Note*, "Bus-Structured Serial Input-Output Device," XAPP 010.001, 1994, pp. 8-181 through 8-182.
Ridgeway, David, *Xilinx Application Note*, "Designing Complex 2-Dimensional Convolution Filters," XAPP 037.000, 1994, pp. 8-175 through 8-177.
Rowson, J., et al., "Second-generation compilers optimize semicustom circuits," Electronic Design, Feb. 19, 1987, pp. 92-96.
Schewel, J., "A Hardware/Software Co-Design System using Configurable Computing Technology," Virtual Computer Corporation, Reseda, CA, IEEE 1998, pp. 620-625.
Segers, Dennis, Xilinx Memorandum, "MIKE—Product Description and MRD," Jun. 8, 1994, pp. 1-29.
Texas Instruments, "TMS320C8x System-Level Synopsis," Sep. 1995, 75 pages.
Texas Instruments, "TMS320C80 Digital Signal Processor," Data Sheet, Digital Signal Processing Solutions 1997, 171 pages.
Texas Instruments, "TMS320C80 (MVP Parallel Processor," User's Guide, Digital Signal Processing Products 1995, 73 pages.
Trainor, D.W., et al., "Implementation of the 2D DCT Using a Xilinx XC6264 FPGA," 1997, IEEE Workshop of Signal Processing Systems SiPS 97, pp. 541-550.
Trimberger, S, (Ed.) et al., "Field-Programmable Gate Array Technology," 1994, Kluwer Academic Press, pp. 1-258 (and the Title Page, Table of Contents, and Preface) [274 pages total].
Trimberger, S., "A Reprogrammable Gate Array and Applications," IEEE 1993, Proceedings of the IEEE, vol. 81, No. 7, Jul. 1993, pp. 1030-1041.
Trimberger, S., et al., "A Time-Multiplexed FPGA," Xilinx, Inc., 1997 IEEE, pp. 22-28.
Ujvari, Dan, *Xilinx Application Note*, "Digital Mixer in an XC7272," XAPP 035.002, 1994, p. 1.
Veendrick, H., et al., "A 1.5 GIPS video signal processor (VSP)," Philips Research Laboratories, The Netherlands, IEEE 1994 Custom Integrated Circuits Conference, pp. 95-98.
Wilkie, Bill, *Xilinx Application Note*,"Interfacing XC6200 to Microprocessors (TMS320C50 Example)," XAPP 064, Oct. 9, 1996.
Wilkie, Bill, *Xilinx Application Note* ,"Interfacing XC6200 to Microprocessors (MC68020 Example)," XAPP 063, Oct. 9, 1996.
XCELL, Issue 18, Third Quarter 1995, "Introducing three new FPGA Families!"; "Introducing the XC6200 FPGA Architecture: The First FPGA Architecture Optimized for Coprocessing in Embedded System Applications," 40 pages.
*Xilinx Application Note*, Advanced Product Specification, "XC6200 Field Programmable Gate Arrays," Jun. 1, 1996 (Version 1.0), pp. 4-253-4-286.
*Xilinx Application Note*, "A Fast Constant Coefficient Multiplier for the XC6200," XAPP 082, Aug. 24, 1997 (Version 1.0), pp. 1-5.
Xilinx Technical Data, "XC5200 Logic Cell Array Family," Preliminary (v1.0), Apr. 1995, pp. 1-43.
Xilinx Data Book, "The Programmable Logic Data Book," 1996, 909 pages.
Xilinx, Series 6000 User's Guide, Jun. 26, 1997, 223 pages.
Yeung, K., (Thesis) "A Data-Driven Multiprocessor Architecture for High Throughput Digital Signal Processing," Electronics Research Laboratory, U. California Berkeley, Jul. 10, 1995, pp. 1-153.
Yeung, L., et al., "A 2.4GOPS Data-Driven Reconfigurable Multiprocessor IC for DSP," Dept. of EECS, U. California Berkeley, 1995 IEEE International Solid State Circuits Conference, pp. 108-110.
ZILOG Preliminary Product Specification, "Z86C95 CMOS Z8 Digital Signal Processor," 1992, pp. 1-82.
ZILOG Preliminary Product Specification, "Z89120 Z89920 (ROM-less) 16-Bit Mixed Signal Processor," 1992, pp. 1-82.
Defendants' Invalidity Contentions in *PACT Technologies, AG* v. *Xilinx, Inc., el al.*, (E.D. Texas Dec. 28, 2007) (No. 2:07cv563)., including Exhibits a through K in separate PDF files.
Shreekant et al., "The Internet Streaming SIMD Extensions," Intel Corp., Intel Technology Journal Q2, 1999, pp. 1-8.
Bondalapati et al., "Reconfigurable Computing: Architectures, Models, and Altorithms," Apr. 2000, Current Science, vol. 78, No. 7, pp. 828-837.
Ganesan et al., "An Integrated Temporal Partitioning and Partial Reconfiguration Technique for Design Latency Improvement," 2000, Proceedings of the Conference on Design, Automation and Test in Europe, pp. 320-325.
Hartenstein et al., "Using the KressArray for Reconfigurable Computing," Nov. 1998, SPIE Conference on Configurable Computing: Technology and Applications, pp. 150-161.
Hauck, S., "Configuration Prefetch for Single Context Reconfigurable Coprocessors," 1998, Proceedings of the 1998 ACM/SIGDA Sixth International Symposium on Field Programmable Gate Arrays, pp. 65-74.
Li et al., "Configuration Caching Management Techniques for Reconfigurable Computing," 2000, Proceedings of the 2000 IEEE Symposium on Field-Programmable Custom Computing Machines, pp. 22-36.

* cited by examiner


scm
cm
cm
cm
cm
f PAE
m SRAM
p IOAG
g PGA
cm Configuration Manager
scm Supervising Configuration Manager

FIG. 1


I/O Module
RAM-Module
PAE-Module
Data Network
CM0 Cache
CM0 (Configuration Manager)
Cluster
SCM
VPAE Connection
CM1 (Configuration Manager)
CM1 Cache
Termination

FIG. 2


CM0 Configuration Bus
CM1 Configuration Bus
CFG Logic CM0
CFG Logic CM1
Input selectors
Output selectors
T0
T2
T4
T6
T8
T10
T12
D0
D2
D4
D6
R0
R2
R4
R6
R8
R10
R12
Q0
Q2
Q4
Q6
Trigger Object 1
Trigger Object 2
Data Object 1
Data Object 2
R
L
0
1
2
3
4
5

FIG. 3


Configuaration BUS
Array
PAC 0
Trigger
15 Bit Data
34
8
15 Bit Data
Trigger
Array
PAC 1
8
34
CM0
CT
CM1
CT
16
13
13
16
CM0 RAM
6K*16
CTR
SCM
CT
CM1 RAM
6K*16
CTR
16
24
4
3
ECR Data
ECR Address
Trigger
ID Trigger

FIG. 4


CM Configuration Bus
Upper Horizontal Data Connect
Input Selectors
R
L
Bus (Pactor)
Pactor-Alu
A
B
C
Reset
Step
Stop
Go
Reload
CFG Logic
State Back Pactor
ALU
Event Logic
Pactor-Alu
ALU Block
Pactor-Trigger
Sync+ STI Unit Pactor
Sync+STI Unit Pactor
H
L
U
V
W
Lower Horizontal Data Connect
Output Selectors

FIG. 5


32 Bit Data Input
Input Register: Data Preload
Arithmetic Unit
ALU Data Output
1 Bit Event Line
Optional Event Preload
ALU Event Outputs
A
B
C
Reset
Step
Stop
Go
Reload
ALU
H
L
U
V
W

FIG. 6A


T0
T2
T4
T6
D0
D2
1 Bit Event
32 Bit Data
Input Register
Forward Register
R0
R2
R4
R6
Q0
Q2

FIG. 6B


32 Bit Data Line
Q1
Q3
R1
R3
R5
R7
1 Bit Event Line
Optional:
Q1 = D1+D3
or
Q1=D1-D3
Optional Event
LUT T1-T7 to R1
Registered or
Feed Through
Data BReg
Registered or
Feed Through
Event BReg
Input Register:
Data Value
Preload in
Registered Mode
Input Register:
Event Value
Preload in
Registered Mode
D1
D3
T1
T3
T5
T7

FIG. 6C


T0
T2
T4
T6
T8
T10
T12
D0
D2
D4
D6
Input Register:
Data Value Preload
R0
R2
R4
R6
R8
R10
R12
Q0
Q2
Q4
Q6

FIG. 6D


12 Bit Read Address Input
IN
RD
WR
32 Bit Write Data Input
12 Bit Write Address Input
256*32 Bit RAM
32 Bit Read Data Output
Event Output
OUT
EWR

FIG. 7


CM0 Configuration Bus
Upper Horizontal Routing Segment
Output Selectors
0
1
2
3
4
5
R
L
Q1
Q3
R1
R3
R5
R7
CFG Logic CM0
Data
Trigger
LUT
ALU
LUT for Boolean Functions
D0
D2
R0
R2
R4
R6
CFG Logic CM1
Upper Horizontal Routing Segment
Input Selectors
CM1 Configuration Bus

FIG. 8


I/O
I/O(0)
I/O(1)
3
4
I/O
I/O(1)
I/O(0)
3
4
FReg
PAE
BReg
PAE
FReg
BReg
Connecting Elements between Clusters
FReg
iRAm
BReg
Memory
Connection Bus

FIG. 9


I/O Module
P3
P2
P1
I/O Channel 1
P3
P2
P1
I/O Channel n

FIG. 10


I/O Unit
External Unit
Write Data
Addresses
Channel 1
Read Data
Channel n

FIG. 11

# LOGIC CELL ARRAY AND BUS SYSTEM

## CROSS REFERENCE TO RELATED APPLICATIONS

This application is continuation of and claims priority to U.S. patent application Ser. No. 12/371,040, filed on Feb. 13, 2009 now U.S. Pat. No. 8,058,899, which is a continuation of and claims priority to U.S. patent application Ser. No. 10/398,546, filed Jan. 20, 2004 (now U.S. Pat. No. 7,595,659), which is the National Stage of International Patent Application Serial No. PCT/EP01/11593, filed on Oct. 8, 2001, the entire contents of each of which are expressly incorporated herein by reference.

## FIELD OF THE INVENTION

The present invention relates to logic cell arrays.

## BACKGROUND INFORMATION

Logic cell arrays, such as, for example, reconfigurable logic cell arrays include, as particular types, systolic arrays, neuronal networks, multi-processor systems, processors having a number of arithmetic-logic units, and/or logic cells and/or communicative/peripheral cells (I/O), networking and/or network chips, such as crossbar switches, as well as FPGA, DPGA, Xputer, Chameleon chips, etc. The following patents commonly assigned to the assignee of the present application describe logic cell arrays and are incorporated by reference in their entirety: German Patent No. 44 16 881; German Patent No. 197 81 412; German Patent No. 197 81 483; German Patent No. 196 54 846, German Patent No. 196 54 593; German Patent No. 197 04 044; German Patent No. 198 80 129, German Patent No. 198 61 088, German Patent No. 199 80 312; International Patent Application No. PCT/DB 00/01869; German Patent No. 100 36 627, German Patent No. 100 28 397, German Patent No. 101 10 530, German Patent No. 101 11 014, International Patent Application No. PCT/EP 00/10516, and European Patent No. 01 102 674. According to their wide variety, logic cells are herein defined as any cells that contain logic, arithmetic, switches, memory, or peripherals.

In systems such as those previously cited, there are approaches that enable in efficient processing of data which may be implemented in hardware architectures. There nevertheless exists in practical implementations the need to optimize designs, which, in particular, can be structured in a space-saving manner on a wafer and/or can be operated in an energy-saving manner. Additionally, it is desirable to find especially advantageous kinds of operation. One of the difficulties with conventional systems is that a large number of cells have to communicate with each other. The communication may be required in order to pass the data to be processed from one cell to another. This is the case, for example, if a cell is supposed to further process the results from another cell, e.g., by linking of the result obtained there to results obtained from one or more other cells. Furthermore, communication may be required to transmit status signals.

Busses for transmitting signals to one of a number of possible receivers have been used in this context. Busses are bundles of wires, the number of wires typically being determined from the number of bits to be transmitted together, that is, typically in parallel, plus in some cases a series of status lines.

With conventional simple busses, as are used, for example, in PC's for the communication of plug-in boards with the CPU and/or with each other, the bus lines may be routed to all receivers, and then appropriate control signals transmitted along with them, that is, addressing, ensures that only those receivers respond that are supposed to receive the data. Such a system becomes problematic when a great many communicating units need access to the bus or busses. This is because the communication of data must wait, if necessary, until the bus has been released by other units and/or time-slice solutions must be implemented that grant a transmitting unit only a certain transmission time, which as a rule is independent of whether all data has been transmitted in this time, which might also make it necessary to use a number of time slices for the data transmission. For example, this approach is practiced in systems like the token ring network. In systems like logic cell arrays, in which very rapid communication is desired in order to ensure high data processing speeds, this is an undesirable solution.

It has also been proposed that the busses be segmented. If, for example, in a series of logic cells several units to be connected to each other are disposed close together in pairs, a bus line that passes along all units and consequently is long may be separated by means of switches in order to form several subbus systems. In this context, each segment, like the entire bus, comprises the required number of parallel data lines and the additionally required protocol lines; the communication of a pair of logic cells that are disposed close together does not disrupt the communication of another pair that are disposed close together. In this way, the data rate that is transmitted via the bus system may be substantially increased.

However, this system may not work well when integrated on semiconductor chips, such as in CMOS technology, where the structure is typically complex and the operation is energy inefficient.

## SUMMARY

According to example embodiments of the present invention, in a logic cell array having a number of logic cells and a segmented bus system for logic cell communication, the bus system includes different segment lines having shorter and longer segments for connecting two points in order to be able to minimize the number of bus elements traversed between separate communication start and end points.

By configuring the busses using segments of great length that are fashioned as a single line for bypassing long paths in a logic cell array, an especially simple design and an especially efficient operation result. By simultaneously providing short segment lines, it is ensured that all points are addressable as needed.

Each of the segment lines may be formed of a plurality of parallel lines whose number is determined by the bus width and/or the bus protocol. Each segment is therefore formed by a bundle of parallel lines. All lines of a segment may have the same length, so that the lines of a line bundle may all be routed to one and the same end point line, such as a data input of a logic cell, where they may be connected to the input members that are assigned to each of their bits.

According to one example embodiment, data conversion logic cells like arithmetic units have three of the line bundles that are required for the processed bit width to be supplied to them as data supply lines. This permits carrying out a linking of operands A, B, C of the A×B+C type within the cell. This operation is of particular significance in the field of digital signal processing, and the bus structure is therefore especially suitable for logic cell arrays for the construction of real-time configurable DSP arrays.

According to another example embodiment, a logic cell array can perform arithmetically multiplicative linking of operands if at least two of the line bundles for data for the bit width being processed are led out from the cells, in particular with one line bundle for high-order bits and one line bundle for low-order bits. In this way, for a data word width of 32 bits, a 64-bit-wide output is created in order to output the result of a multiplication in full width.

In reconfigurable logic cells, control inputs may be addressable in particular via the segmentable bus system and are disposed in such a manner that at least the logic cell's sequence control signals, such as the signals Reset, Step, Stop, Go and Reload, are transferable into the cell. These trigger and/or enable a reset, a reconfiguration and an activation, respectively. For this purpose a corresponding number of bit lines may be provided. In one embodiment, at least two bit-wide data lines are therefore provided for control signal inputs. Each of the control signals may have a separate signal input assigned to it. Alternatively, an input linking circuit on a several-bit-wide status line may provide for an orderly addressing of the cell. These signal inputs are control signal inputs that can carry the signals that control configuration and/or reconfiguration (flow control signals), such as trigger signals. The actual communication of the cell with the unit or a reconfiguring unit, such as a configuration manager (CT or CM) may thus be achieved by techniques, for example, via the so-called ready/ack/rej protocol, which permits a reconfiguration of the cell only under certain conditions. For the details of this protocol, reference is made to the above-listed patents and additional publicly accessible documents about XPP/VPU architecture.

In the case of rebooting. The bus structure may be designed for this accordingly.

Furthermore, the bus system may be routed to I/O interfaces and/or to external data memories. In other words, the segmentation structure may be used to advantage both inside and outside the logic cell field. I/O interfaces transmit from bus systems that are inside chips to the outside. In this context any bus systems, in some cases alternating in time, are connected for external output and/or input. In addition, the possibility may exist of combining several bus systems in such a manner that they are synchronized with each other. For example, any two output bus systems or an input bus and an output bus together may be synchronized.

In an example embodiment of the bus system, a series of interline elements is provided. Here "line" indicates in particular a first-class conductor, such as a continuous metal line within a semiconductor wafer. "Interline elements" indicate those elements that are disposed between any two lines that are assigned to each other. Interline elements may be connecting switches, in particular the control arrangements that respond to the requirements of logic cells and/or the communication thereof and/or other units; thus, the switch may, for example, open or close at the request of a configuration manager, that is, a unit that configures the logic cell field. This makes it possible to use a compiler to establish how the bus structure is to be designed. In particular the compiler or another configuring or controlling unit is able to determine whether the communication between two cells that are separated is to be accomplished via segment lines having shorter or longer segments, and moreover, if there are a number of longer segments, a preference may also be specified through which one of a multiplicity of segment lines the communication is to occur. In this way, the power loss through the switch may be minimized and/or an optimal adaptation of the data conversion and/or processing to signal propagation times may be provided along the bus lines.

The interline elements may additionally or alternatively include multiplexers in order to feed a signal from a line to one of a series of destinations, such as logic cells, and/or lines that continue further and feed the signal to a multiplicity of destinations, in particular selectable destinations, simultaneously.

Furthermore, registers may be provided as interline elements. These perform different tasks. In this manner data may at first be kept on the bus until a destination is ready to retrieve them. Furthermore, when busses are very long, data processing can be prevented from being properly completed if the long periods of time until the data arrive at the destination when paths are long and (in some cases) the return of the reception confirmation is taken into account. Buffering the data in registers increases the total amount of time (delay) until a data packet traverses the bus, but the interim time until arrival of the data (latency) in which the array or individual cells may not be used meaningfully is reduced. A tradeoff between latency and delay may be required, in which the register is switched in, for example, only under predetermined and/or established conditions, such as very long bus paths. It may then be advantageous if the switching on of the register is controlled, e.g., by a control unit or similar item, like a configuration manager, which in turn is able to operate in response to compiler-generated commands. Furthermore, it may be advantageous to provide a register in order to ensure a synchronous arrival of bits of different significance at a destination point. If busses are fed back, that is, a connection is provided from a cell output to the input of the same cell, registers may be used in such high-frequency feedback loops, to prevent damage to components by the register-imposed delay time.

In a particular implementation, registers may be designed all or in part as additive and/or multiplicative registers; specific links may be implemented without problem and with little circuitry effort, and, thus, the logic cell structure may be relieved on a net basis via shifting of simple linking tasks. In particular, a register may be designed precisely for the purpose of linking two operands algebraically; in busses for transmitting status signals that indicate the status of a logic cell or a series of logic cells and/or trigger a change thereof, that is, in busses for so-called trigger vectors, the registers may preferably be designed to implement Boolean links and/or lookup tables, such as modifiable lookup tables.

Line drivers can also be provided as interline elements.

This may be necessary in particular for multiplex systems that provide a very strong signal fanout.

In another example embodiment of the present invention, it is possible to provide a change from one segment line having longer segments to a segment line having shorter segments and/or vice-versa along a data transmission path. This permits the provision of roughly equal signal propagation times for the communication of a larger number of cells in the same direction, that is, along the same bus structure, via an appropriate combination of short and long segments, even if buffer registers are provided. The bus structure in this context is comparable to a street that has fast lanes and crawler lanes and enables a lane change at predetermined intermediate positions.

In yet another example embodiment, the bus system may include a multiplicity of parallel segment lines in which several parallel segment lines are provided with longer segments. The longer segments of the segment lines that have longer segments do not all need to be of the same length; a staggered arrangement may be provided.

When there is a greater number of parallel segment lines, the segment line ends and/or interline elements may be dis-

posed within the segment lines at an offset in relation to each other in the bus direction. Typically, interline elements, such as, switches, registers, multiplexers and drivers are provided at the segment line ends or leads. The hardware technology implementation of these elements then requires substantial space, which may be considerable compared to that of the lines to be disposed in the intermediate layers. The offset disposition of these elements then ensures that space has to be provided only for interline element arrays of, for example, two or three segment lines, but not for interline element dispositions of all available segment lines. Also it is possible not to provide drivers or registers for all interline element dispositions, but only to provide them every nth segment end. However, in this case, it is advantageous that at least three segment lines that have longer segments for at least two segment lines have segment line switching circuits, in particular multiplexers provided at predetermined positions as interline elements. In this way, the desired segment change may be configured as required. Segment changes occur at crossings and are possible among segment pairs or segment groups that vary along the bus. It is then possible that the segment line switching circuits for the change from a first to a second segment line are provided at a first position and the segment line switching circuits for the switch from a second to a third segment line at a second position.

In addition to switching by pairs, it is also possible to select, at a position or a multiplicity of positions, among several segment lines to switch to and/or to which data are simultaneously output.

In an additional aspect of the present invention, two-way communication of the cells is possible for the logic cell array. In bus systems having interline elements, such as drivers and/or registers, directions of travel are defined. In order to enable the communication of the cells in two directions, separate bus systems are provided for opposite running directions. At least in one direction, it is once again possible to provide at least two different segment lines with shorter and longer segments, in particular ones that are once again generally parallel.

If the segment lines are separate for the two directions of travel, a register may be provided for at least one direction of travel. As explained above, the register may be provided in the bus system that is routed in the reverse direction, i.e., to that bus system, with which signals may be routed back from an element output to an element input.

According to another aspect of the present invention, a first bus system may be provided for the transmission of data to be processed and a second bus system may be provided for the transmission of status and/or monitoring or control information. One or both bus systems may be formed with segment lines having short and long segments, and the respective bus systems or bus arrays may be configurable separately from each other, or definable in their circuitry and/or regarding the operations in linking registers or the output of lookup tables.

The bus system may be used in a logic cell array in which a plurality of logic cells are arranged adjacent to each other in a row. The longer segments then bypass at least one logic cell. If the logic cell array includes even more logic cells in a row, the longest segments may bypass more than one logic cell.

It should be pointed out that, in at least two-dimensional logic fields having a disposition of logic cells in rows and columns, a segmented bus system may be provided in each row and each column and have the previously described structure having long and short segments in parallel segment lines.

The described bus structure may be advantageous in arrays in which data processing units, such as logic units, are to be linked to each other. However, special advantages are offered if the logic cells are selected from, include and/or form arithmetic-logic units, DPGA's, Kress arrays, systolic processors and RAW machines, digital signal processors (DSP's) that have more than one arithmetic-logic unit, configurable (programmable) logic cells or other cores and/or PAE's, ALU, input/output (I/O) functions and/or memory management units (I/O) and memories. A successful implementation of a bus structure having segment lines that have short and long segments is the VPU/XPP processor unit produced by the applicant.

Such a processor may have a multiplicity of different communicating logic units disposed in an array, the logic units having at least memory storage and data conversion units and the memory units being disposed close to the edge of the array. This makes it possible to have data run through the array and be buffered, if necessary, at the edge in order to bring about reconfiguration as required. The flow may also occur via parallel rows or columns and/or in a meandering way, in order to thereby provide increased computing power.

Additionally, input/output units may be disposed closer to the edge than the storage units. This allows the buffering of data before processing by passing through the array. However, in any case communication of the logic units, at least from edge to edge, for at least one bus system to be provided that is, in particular, segmentable as previously described. Then, data read from a first memory that is close to the edge may be changed as required in a first data conversion unit that is close to this edge, and transferred from there into at least one other data conversion unit in order to carry out further data modifications as required. The data, after flowing through a plurality of data conversion units into a second memory close to the edge may be stored at a position distant from the first memory, and then a reconfiguration of the data conversion units may be carried out for the re-determination of the data conversion, and the data may be routed through at least one part of the data conversion units, possibly in the opposite direction of travel. It may also be provided that the outgoing run is made in a row and the return run in that row or a row situated beneath it in order to take into consideration pipeline effects.

The processor may have at least one programmable gate array (PGA) and several data modification units having ALU's. At least one PGA may be surrounded by other data conversion units, in particular ALU's, in order to be able to obtain data easily for linking purposes and/or output them.

It is possible that, in an array made up of reconfigurable units, several (sub-) arrays, particularly identical ones, are provided that may be brought into communication with each other. For this purpose, each may include a reconfiguration unit that may be designed for reconfiguration of the reconfigurable element of the array. Running inside the array are the bus structures appropriately described above. A configuration manager, which may in particular be disposed on an array side on which no memory units and/or I/O units are provided is thus assigned to each array, the reconfiguration unit may extend over the breadth of the array, which offers the advantage that an optimal chip form may be produced.

A supervising configuration manager which is common to the arrays and which extends in particular over the breadth of more than one array and which is designed for communication with at least several or all of the supervising configuration managers, may also be provided.

Alternatively or additionally, given such a processor having arrays that may be brought into communication with each other, in particular identical ones that have reconfigurable data conversion units, it is possible for the arrays to have

switching units (VPAE's) between them that are disposed among the fields for communication switching.

Using such switching units (VPAE's), data and/or control signals (monitoring signals, trigger vectors, etc.) may be transmitted.

The configuration units of at least two of the arrays may be in direct connection with each other. As a result, a supervising configuration unit may be omitted and/or a fault tolerance may be increased. For this purpose, the communication of the configuration units of the at least two arrays that are in direct connection with each other is determined via dedicated fixed lines and/or data lines that are pre-configured, that is, established during bootup.

The switching units (VPAE's) may include two configuration registers, the first configuration register being addressable by the first array and the second configuration register being addressable by the second array. Only if access to the switching units has been permitted for both arrays, is data transmitted accordingly. For this purpose, the first array may permit the insertion of data in the switching unit by appropriate configuration of the first configuration register and signal the insertion of the data to the other configuration units via the dedicated line. Afterwards, the data is retrievable, which is ascertainable by configuration of the second configuration register. A sluice-like transmission of data is enabled by the VPAE's. The separation of a larger array into sub-arrays in other respects generally allows the reduction of the configuration effort to be handled by a configuration unit and as a result may contribute to an efficient array operation that is not impaired by a bottleneck imposed by a configuration unit.

The sub-arrays may be brought into communication with each other via multiple data conversion and/or transfer units (VPAE's) so that no data rate limitation is produced in the data processing.

The geometric hardware may be configured such that the communication-enabling data conversion units are connectable on both sides via busses running along the array, the busses being designed in particular to run past the array edge and there in particular may be routed further to I/O interface units.

As explained above, the processor may include one or more data relaying rule implementation arrangements, in particular a lookup table that are designed to enable relaying of data and in particular data conversion in response to the joint fulfillment of a multiplicity of criteria, in particular event-related criteria. The data to be relayed may in particular be data or trigger vectors that are involved in the reconfiguration and/or reconfigurability of logic cells. The function or the conversion of the relevant data relaying rule implementation arrangement is configured accordingly.

The processor may also be configured using segmented bus structures so that data conversion units and data storage means are provided, at least a few of the data conversion units being locally assigned data storage arrangement and in particular, an arrangement being provided to locally read out data that is locally written into the local data storage arrangement for the further local recent data modification. In other words, interim results may be stored in a logic cell and be further processed along with other data and/or using other links.

If there is a reconfiguration of a cell array made up of logic cells that are reconfigurable while in operation, which allows in particular a reconfiguration in response to the propagation of specific pre-determined data, then one may select whether the reconfiguration occurs in response to the data propagation for all logic cells into which the data that was pre-specified and/or derived therefrom flow and/or only for a part, in particular a processing branch (e.g., an if/then branch), while at least one other branch remains unchanged, which reduces the reconfiguration effort and/or only a sub-chain of a longer row of logic cells, in particular, sequential data-processing ones, is reconfigured, such as up to a predetermined logic cell, and/or in order to permit the reconfiguration immediately or after that data processing or further data processing. This substantially increases the practical use of the wave reconfiguration. It should be mentioned that such a selective wave reconfiguration is possible using only a few commands, in particular, for example, the commands Reset, Step, Stop, Go and Reload. Consequently, the number of trigger inputs or control inputs that are routed to a reconfigurable logic cell, such as a PAE, is small.

The manner in which a logic cell reacts to a specific characteristic data packet in wave reconfiguration is capable of being pre-loadable. This may happen in particular by preloading the lookup tables that are provided in the busses. The busses in this context may in part be routed via logic cells and/or formed by and/or with them.

It is possible without any other measures to use the processor array having the bus system of the present invention in order to approximate the behavior of non-linear systems quickly and simply in calculations. This may happen by approximations being determined for one row of working ranges that are adjacent to each other at one temporary working range (n) and at the working ranges that border it below and above ((n−1), (n+1)), the parameters that enable the approximations are pre-loaded, the behavior with the central (n) working range is approximated until that working range is exceeded inside of which the approximation is suitable, then that approximation (n−1) is used for further work which belongs to the working range into which the exceeding proceeded, and the approximation at that working range (n+1) into which the exceeding did not proceed is overwritten using an approximation (n−2) that, together with the previously used approximation (n), encompasses the currently used approximation (n−1) or the accompanying working range. By overwriting that working range in which the operation value is not run, only three variants need to be pre-loaded in order to ensure a rapid further processing after the range is exceeded. Because the overwriting of the preloaded working range happens during the data processing, a constant data computation is possible during a steady transition of the operation values without greater leaps or abrupt changes. It is possible that this manner of approximation may not transferred to multidimensional cases due to operation value encompassing in more than one direction and corresponding overwriting of the intervals that no longer adjoin the current operation value interval after the overwriting of an n-dimensional operation value interval.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** shows a logic cell array configured in accordance with an example embodiment of the present invention.

FIG. **2** shows a detailed view of the logic cell array having clusters.

FIG. **3** shows an example for a forward register of a configuration bus according to the present invention.

FIG. **4** shows an example embodiment of the hierarchy of configuration managers of a logic cell array according to the present invention.

FIG. **5** shows details of a PAE including data according to an example embodiment of the present invention. The three data inputs A B C in the logic cell, the five trigger inputs for the trigger vectors Reset, Stop, Step, GO and Reload, the two

data outputs H(igh) and L(ow) as well as the status signal outputs UVW and the bus coupling are depicted.

FIG. **6***a* shows the structure of the logic cell in the block diagram according to an example embodiment of the present invention.

FIG. **6***b* shows the structure of a register according to an example embodiment of the present invention.

FIG. **6***c* shows the structure of a reverse register for event signals having the optional lookup tables according to an example embodiment of the present invention.

FIG. **6***d* shows a forward register having pre-loading capability according to an example embodiment of the present invention.

FIG. **7** shows a structure of a memory cell that has an input that is distinguishable from data conversion logic cells and has a correspondingly different required bus width according to an example embodiment of the present invention.

FIG. **8** shows another detailed view of a reverse register in the configuration bus having a lookup table for the implementation of Boolean links from trigger vector bits according to an example embodiment of the present invention.

FIG. **9** shows additional processor details, in particular of the busses according to an example embodiment of the present invention.

FIG. **10** shows an unsynchronized I/O circuit having two busses according to an example embodiment of the present invention.

FIG. **11** shows a synchronized I/O circuit having two busses according to an example embodiment of the present invention.

## DETAILED DESCRIPTION

According to FIG. **1**, a processor **1**, which may form a unit that may be characterized as an XPP (extreme processing platform), includes two fields or clusters including: a number of arithmetic logic cells (ALU-PAE's=arithmetic logic unit processing array element); memory cells (RAM-PAE's=Random Access Memory processing array element); several illustrated as four input/output cells (I/O elements, input/output processing array element); a bus system running through each field; and a configuration manager that is assigned to the field, these elements together as a cluster forming a unit, which by itself is capable of processing data and doing so as a reconfigurable unit and a higher-order configuration manager being assigned to the two configuration managers (CM) of the cluster in order to form thereby a master cluster or the XPP. It is possible using tree-like hierarchical structures to have more than two fields of processor elements cooperate. In this manner, a higher-order configuration may be placed over more than two configuration managers (CM), which on their part are each assigned to only one individual PAE cluster and/or it may be provided that a multistage configuration manager hierarchy is built up, in which a configuration manager central level is actually assigned to first configuration managers (CM) and in turn is placed under one or more hierarchical levels.

FIG. **1** thus depicts the arrangement of the cells to each other in a two-dimensional matrix and its relative size by way of approximation insofar as the individual cells are disposed very regularly and in particular the PAE's, that is, the memory storage and arithmetic logic cells have approximately the same size, which makes it possible to carry out a page addressing in the generally rectangular and/or regular cell structure having a roughly equal linking to the bus system. The depicted addressing in this context, however, is arbitrary regarding the disposition of memories and arithmetic units in relation to each other, insofar as other dispositions, also involving the I/O cells and/or using still other elements, are possible and are adaptable to a desired special computing task without any further measures. The illustration that is shown is also exemplary in that a three-dimensional disposition of individual cells within the space is also possible, provided that the manufacturing technology of the semiconductor technology that is used permits this.

An individual PAE includes a multiplicity of inputs and outputs. The individual PAE is provided, on the one hand, with data inputs and outputs (A,B,C) and, on the other hand, with control or monitoring inputs and outputs (U,V,W). As is evident from FIG. **1**, the PAE's are disposed in horizontal rows, the cells being connected among themselves via a bus system. These horizontal bus systems are connected in the center of the field to the PAE's that are situated above and below them, and to be precise with them only above and below in the depicted example. Thus, the transfer of data and status signals (i.e., control signals) upward and downward is accomplished via the PAE's and, as illustrated in FIG. **1**, involves a RAM-PAE or an ALU-PAE. Consequently, all types of PAE's may be connected in the same manner to the bus system and internally wired accordingly. It is also possible to configure the I/O cells for connection to bus lines that are situated one on top of the other, unlike what is depicted).

As a result, the PAE's are used for the relaying of data, that is, for data to be processed as well as control and monitoring data in the vertical direction. The PAE's in this context are configured in such a manner that this relaying may be carried out with or without data modification.

The data modification may at first be accomplished in the actual functional unit of the PAE, e.g., if it is equipped as an arithmetic-logic unit and the data are linked in the arithmetic logic unit. In order to ensure that data may be supplied sufficiently rapidly to be linked in the cell and bring about an optimal utilization of the cell cycling, three lines A,B,C having the bit width that is able to be processed in the cell are routed to the cell as shown in FIG. **5**. In this context, a particular additive input length is also possible that allows determining operations of the type (A+B)+C in a time-efficient and space-efficient manner using the cell results. If no data conversion is required, the data may be passed on to the functional unit. In this way, for example, data that are needed in a row further below are passed through into it without being subjected to a modification in the PAE. In the simultaneous routing of, for example, three data words corresponding to three inputs A, B, C, each may be relayed in different ways. Therefore, it is possible, for example, to relay only the data word to line C unconverted, while A and B are linked to each other in the ALU, for example, by A/B division. Alternatively, two data words may also be rerouted, while a data word in the ALU, for example, is linked to a constant or another value temporarily stored there. The convertibility to other data word amounts that are simultaneously routed to the PAE may also if desired be routed to the PAE as three data words; the individual word in this context has the processor-specific bit width, in the present case, for example, 32 bits.

Any inputs and/or outputs of PAE's may be configured using constants of the configuration unit (CT/CM). In this context, constants may remain unchanged during the entire operation of a configuration, or be overwritten during the operation, that is the execution of a configuration of new data of the configuration unit (CT/CM) and/or other sources, such as PAE's.

Instead of a linking of all or a part of the data as in the case involving PAE's having ALU's specifically in the RAM-PAE's, a complete or partial memorization and/or a complete or partial relaying may occur.

The relaying of the data, furthermore, may occur while bypassing the actual data conversion PAE core unit, like the ALU, in such a manner that a conversion of the data occurs before or during the relaying. This may occur by modifying the data while consulting the lookup tables and other linking units, for example, units that sort the relevant data words according to value. These units may be disposed between the bus coupling and the input into the PAE core unit and configurable in their function, whereupon whether the data are relayed unchanged or not is configurable. If they are not relayed unchanged, but rather changed, how the change occurs within the given possibilities is configured. For the status signal relaying in this context the provision of lookup tables is advantageous, because predetermined output signals may be generated with them in response to predetermined input signals without any additional measures.

Furthermore, the data relaying of unchanged data may be accomplished in a configurable manner immediately or delayed by register. The illustrated individual PAE for this purpose has a configurable, connectable forward register and a configurable, connectable reverse register for the data to be processed and a configurable, connectable forward register and a configurable, connectable reverse register for control data, that is, trigger vectors or status signal and/or control flow data. It is indicated that registers having increased (temporary memory) depth, in particular as FIFO registers, would be foreseeable, precisely in order to temporarily store data on a multi-cycle basis. Assigned to the register in question is a configurable multiplexer with which the register in question may be connected into the data path or removed from it, as desired. The multiplexers are also configurable such that results from the cell may be connected on the bus as desired and required. Therefore, for example, the top and bottom bit word that is obtained in a multiplication are output (H,L) and/or only a result data word (H) is output and a data word relayed and output on the bus, even a desired exchange (A<–>H) being configurable. Consequently, a PAE is characterized in the present processor model by a structure that has a central functionality lie an ALU, a RAM and/or, for example, also an FPGA and the additional data relaying functionality, possessing a forward and/or reverse register data relaying functionality comprised of three basic modules, such as FPGA, ALU, RAM and the two (forward/reverse) register data relaying functionality modules, the latter of these being able to implement additional functions. Central functionality in this context does not mean spatial central functionality, but rather functionality in the sense of assigning the central functionality and effect of the particular PAE. The additional functions, which are implemented via the register data relaying functionality modules, include in particular, in the forward register for the data flow, control operations like multiplexing or demultiplexing and copying and/or other manipulations of data. In the reverse register, an ALU functionality may be implemented for the data flow and/or a Boolean linking of event signals, i.e., trigger signals. Thus, the PAE is comprised of modules for the manipulation of data streams, for the operative linking and/or generation of data packets and the processing for the most part via logic linking and generation of event packets.

The input/output modules are likewise adapted in their structure in a particular way to the requirements of the data processing task. For this purpose, each of the input/output modules is provided with several channels, that are able to work independently of each other in the so-called PORT mode (FIG. **10**) or in synchronization with each other in the so-called RAM mode (FIG. **11**). Each I/O module may be used simultaneously by a plurality of algorithms while using a plurality of algorithms, for which sorting algorithms may also be brought in.

In other words, the input/output module (I/O interface) works in memory (RAM) mode (FIG. **11**) as an interface to the external memory. In this context, writing data and address data of any channel are synchronized, that is, an external writing operation is started only if both data packets are present. In reading mode, the I/O unit sorts from externally transmitted packets back to the internal channels. The switching between reading and writing mode may occur, for example, via configuration or, for example, via signals.

What is claimed:

**1**. A data processor on a chip comprising:

a plurality of data processing cores, each of at least some of the processing cores including:

at least one arithmetic logic unit that supports at least division and multiplication of at least 32-bit wide data; and

at least 3 registers for storing at least 32-bit wide data;

a plurality of memory units to buffer at least 32-bit wide data;

at least one interface unit for providing at least one communication channel between the data processor and external memory; and

a bus system flexibly interconnecting the plurality of processing cores, the plurality of memory units, and the at least one interface;

wherein:

the bus system includes a first structure dedicated for data transfer in a first direction and a second structure dedicated for data transfer in a second direction; and

each of at least some of the data processing cores includes a physically dedicated connection to at least one physically assigned one of the plurality of memory units, the assigned one of the plurality of memory units being accessible by another of the data processing cores via a secondary bus path of the bus system.

**2**. The data processor according to claim **1**, wherein the at least one secondary bus path includes respective dedicated structures for each of two directions of data transfer.

**3**. The data processor according to any one of claims **1** and **2**, wherein the at least one secondary bus path comprises at least one pipeline register for transferring data.

**4**. The data processor according to any one of claims **1** and **2**, wherein the at least one secondary bus path comprises at least one first-in-first-out (FIFO) buffer for transferring data.

**5**. The data processor according to any one of claims **1** and **2**, wherein the bus system supports transmission of at least 64-bit wide data.

**6**. The data processor according to any one of claims **1** and **2**, wherein the bus system transfers data using a bus protocol.

**7**. The data processor according to any one of claims **1** and **2**, wherein the bus system uses protocol signals for controlling the data transfer.

**8**. The data processor according to any one of claims **1** and **2**, further comprising at least one additional data processing core whose internal architecture is different than each of the plurality of data processing cores.

**9**. The data processor according to claim **8**, wherein the at least one additional data processing core is connectable to at

least one of the plurality of memory units only via at least one secondary bus path shared with one or more of the plurality of data processing cores.

**10**. The data processor according to any one of claims **1** and **2**, wherein the at least one interface unit includes at least two interface units, and the at least one communication channel includes a respective communication channel for each of the at least two interface units.

**11**. The data processor according to any one of claims **1** and **2**, wherein the at least one interface unit transfers data between the data processor and external memory in packets.

**12**. The data processor according to any one of claims **1**, **2** and **11**, wherein the at least one interface unit supports a plurality of data processor internal data channels.

**13**. The data processor according to claim **12**, wherein the at least one interface unit sorts data received from external memory to provide them to the internal channels.

**14**. The data processor according to any one of claims **1** and **2**, wherein each of at least some of the data processing cores includes at least 8 registers for storing at least one of (a) at least 32-bit wide data and (b) at least 32-bit wide control information.

**15**. The data processor according to any one of claims **1** and **2**, wherein each secondary bus path increases a latency of the data transmission.

**16**. A data processor on a chip comprising:

a plurality of data processing cores, each of at least some of the processing cores including:

at least one arithmetic logic unit that supports at least division and multiplication of at least 32-bit wide data; and

at least 3 registers for storing at least 32-bit wide data;

a plurality of memory units to buffer at least 32-bit wide data;

at least one interface unit for providing at least one communication channel between the data processor and external memory; and

a bus system flexibly interconnecting the plurality of processing cores, the plurality of memory units, and the at least one interface;

wherein:

the bus system includes a first structure dedicated for data transfer in a first direction and a second structure dedicated for data transfer in a second direction; and

each of at least some of the data processing cores includes a dedicated connection to at least one assigned one of the plurality of memory units each situated such that no other data processing core and no other memory unit is positioned between the respective data processing core and the respective assigned memory unit, the assigned one of the plurality of memory units being accessible by another of the data processing cores via a secondary bus path of the bus system.

**17**. The data processor according to claim **16**, wherein the at least one secondary bus path includes respective dedicated structures for each of two directions of data transfer.

**18**. The data processor according to any one of claims **16** and **17**, wherein the at least one secondary bus path comprises at least one pipeline register for transferring data.

**19**. The data processor according to any one of claims **16** and **17**, wherein the at least one secondary bus path comprises at least one first-in-first-out (FIFO) buffer for transferring data.

**20**. The data processor according to any one of claims **16** and **17**, wherein the bus system supports transmission of at least 64-bit wide data.

**21**. The data processor according to any one of claims **16** and **17**, wherein the bus system transfers data using a bus protocol.

**22**. The data processor according to any one of claims **16** and **17**, wherein the bus system uses protocol signals for controlling the data transfer.

**23**. The data processor according to any one of claims **16** and **17**, further comprising at least one additional data processing core whose internal architecture is different than each of the plurality of data processing cores.

**24**. The data processor according to claim **23**, wherein the at least one additional data processing core is connectable to at least one of the plurality of memory units only via at least one secondary bus path shared with one or more of the plurality of data processing cores.

**25**. The data processor according to any one of claims **16** and **17**, wherein the at least one interface unit includes at least two interface units, and the at least one communication channel includes a respective communication channel for each of the at least two interface units.

**26**. The data processor according to any one of claims **16** and **17**, wherein the at least one interface unit transfers data between the data processor and external memory in packets.

**27**. The data processor according to any one of claims **16**, **17**, and **26**, wherein the at least one interface unit supports a plurality of data processor internal data channels.

**28**. The data processor according to claim **27**, wherein the at least one interface unit sorts data received from external memory to provide them to the internal channels.

**29**. The data processor according to any one of claims **16** and **17**, wherein each of at least some of the data processing cores includes at least 8 registers for storing at least one of (a) at least 32-bit wide data and (b) at least 32-bit wide control information.

**30**. The data processor according to any one of claims **16** and **17**, wherein each secondary bus path increases a latency of the data transmission.

* * * * *

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

| | | |
|---|---|---|
| PATENT NO. | : 8,471,593 B2 | Page 1 of 1 |
| APPLICATION NO. | : 13/289296 | |
| DATED | : June 25, 2013 | |
| INVENTOR(S) | : Martin Vorbach et al. | |

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On the Title Page:

Under Related U.S. Application Data (63),
Add the following text at the end: --, which claims benefit of and priority to U.S. Patent Application Ser. No. 60/238,855, filed on Oct. 6, 2000.--

In the Specification:

In Column 1,
Line 12, add the following text before "the entire contents of each of which are expressly incorporated herein by reference": --, which claims benefit of and priority to U.S. Patent Application Ser. No. 60/238,855, filed on Oct. 6, 2000,--

Signed and Sealed this
First Day of March, 2016

*Michelle K. Lee*

Michelle K. Lee
*Director of the United States Patent and Trademark Office*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. Cir. R. 28.1(b)(1)(A). The brief contains 11,582 words according to the word count of the word-processing system used to prepare the brief, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). The brief has been prepared in a proportionally-spaced typeface, 14 point Times New Roman, using Microsoft Word.

Dated: February 12, 2025

*/s/ Sanford Weisburst*
Sanford I. Weisburst

*Attorney for Appellant*

## CERTIFICATE OF CONFIDENTIAL MATERIAL

The foregoing brief contains 15 unique words (including numbers) marked confidential, which does not exceed the maximum number of 15 unique words permitted by Fed. Cir. R. 25.1(d)(1)(A).

Dated: February 12, 2025

*/s/ Sanford Weisburst*
Sanford I. Weisburst

*Attorney for Appellant*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2025, I filed or caused to be filed the foregoing document with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system and thereby served or caused to be served a copy on all counsel of record by the CM/ECF system.

Dated: February 12, 2025

*/s/ Sanford Weisburst*
Sanford I. Weisburst

*Attorney for Appellant*