**No. 2025-1419**

# United States Court of Appeals for the Federal Circuit

PACT XPP SCHWEIZ AG,
*Plaintiff-Appellant,*

v.

INTEL CORPORATION,
*Defendant-Appellee.*

Appeal from the United States District Court for the District of
Delaware, Case No. 1:19-cv-01006-JDW, Judge Joshua D. Wolson

## APPELLEE'S RESPONSE BRIEF
**(Non-Confidential Version)**

Gregory S. Arovas
Todd M. Friedman
Robert A. Appleby
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800

Brandon H. Brown
KIRKLAND & ELLIS LLP
555 California St., 27th Fl.
San Francisco, CA 94104
(415) 439-1400

John C. O'Quinn
Jason M. Wilcox
William H. Burgess
Diva R. Hollis
Stephen C. DeSalvo
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000

*Counsel for Defendant-Appellee Intel Corporation*

May 7, 2025

# U.S. Patent No. 8,312,301 (Appx118)

8. A processor device, comprising

a plurality of **data processing elements adapted for programmably processing sequences** and to which tasks are assigned, each of the data processing elements having at least one Arithmetic Logic Unit; and

at least one bus system at least one of (a) interconnecting at least some of the data processing elements and (b) connecting at least some of the data processing elements with at least one of peripherals and external memory;

wherein:

each of at least some of the data processing elements is capable of operating at a clock frequency different than at least one other of the data processing elements; and

the processor device is adapted for reducing clock frequencies of the data processing elements in response to a determination that a power reserve of a battery is below a predetermined threshold.

# U.S. Patent No. 8,471,593 (Appx152)

1. A data processor on a chip comprising:

a plurality of data processing cores, each of at least some of the processing cores including:

at least one arithmetic logic unit that supports at least division and multiplication of at least 32-bit wide data; and

at least 3 registers for storing at least 32-bit wide data;

a plurality of memory units to buffer at least 32-bit wide data;

at least one interface unit for providing at least one communication channel between the data processor and external memory; and

a bus system flexibly interconnecting the plurality of processing cores, the plurality of memory units, and the at least one interface;

wherein:

the bus system includes a first structure dedicated for data transfer in a first direction and a second structure dedicated for data transfer in a second direction; and

***each of at least some of the data processing cores includes a physically dedicated connection to at least one physically assigned one of the plurality of memory units***, the assigned one of the plurality of memory units being accessible by another of the data processing cores via a secondary bus path of the bus system.

**CERTIFICATE OF INTEREST**

1. **The full name of all entities represented by undersigned counsel in this case:** Intel Corporation

2. **The full names of all real parties in interest for the entities (without listing the real parties if they are the same as the entities):** N/A

3. **The full names of all parent corporations for the entities and all publicly held companies that own 10 % or more of the stock in the entities:** N/A

4. **List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities (and who have not already entered an appearance in this court):**

   <u>Kirkland & Ellis LLP</u>: Adam R. Alper, Allison W. Buchner, Michael W. De Vries, James E. Marina, Leslie M. Schmidt, Luke L. Dauchot, Ellisen Shelton Turner, Christopher M. Lawless, Sharre Lotfollahi, Nicole Yvonne Stoddard, Lindsey Y. Shi, Sarah Mikosz, Nikhil Rama Krishnan, Yimeng Dou, Christopher DeCoro (no longer with Firm), Kevin D. Bendix (no longer with Firm), JB Schiller (no longer with Firm), Mark D. Fahey (no longer with Firm), Benjamin Yaghoubian (no longer with Firm)
   <u>Morris, Nichols, Arsht & Tunnell LLP</u>: Jack B. Blumenfeld, Brian P. Egan
   <u>Perkins Coie</u>: John Gray
   <u>WilmerHale</u>: Joseph J. Mueller

5. **Whether, other than the originating case(s) for this case, there are related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a):** Yes (*see* Intel's Notice of Related Case Information filed at Dkt. 11).

6. **Any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees), per Fed. Cir. R. 47.4(a)(6):** N/A

# TABLE OF CONTENTS

Introduction ..................................................................................................1

Statement of the Issues..............................................................................5

Statement of the Case ................................................................................6

I.   Background...........................................................................................6

     A.   Asserted Patents ..........................................................................8

     B.   Accused Products .......................................................................10

II.  Procedural History ............................................................................13

     A.   '301 Patent.................................................................................14

     B.   '593 Patent.................................................................................19

Summary of the Argument .......................................................................25

Standard of Review ..................................................................................28

Argument ..................................................................................................29

I.   The District Court Correctly Granted Summary Judgment Of
     Non-Infringement Of The '301 Patent. ...........................................29

     A.   The District Court Appropriately Denied PACT's
          Summary Judgment Motion And Its Subsequent
          Motions For Reconsideration.......................................................30

          1.   The District Court Properly Considered And
               Rejected The Arguments PACT Actually
               Made At Summary Judgment............................................31

          2.   The District Court Correctly Denied PACT's
               First Motion For Reconsideration For Two
               Independent Reasons. .......................................................34

          3.   The District Court Did Not Abuse Its
               Discretion By Precluding PACT From

i

Introducing A Capability Argument In Its Second Motion For Reconsideration. .................. 36

B. PACT Has Not Shown The Challenged Claims Encompass Mere Capability. ............................... 42

II. The District Court Correctly Granted Summary Judgment Of Non-Infringement Of The '593 Patent. ........................................ 46

A. The District Court's Construction Of "Dedicated Connection" Is Supported By PACT's Interpretation Of That Term During *Ex Parte* Reexamination, And Correct. ........................................................ 47

1. The District Court's Construction Is Supported By The Plain Language Of The Claims. ................................................. 48

2. The District Court's Construction Is Supported By The Prosecution History, Including PACT's Statements During *Ex Parte* Reexamination. ............................ 52

3. PACT's Arguments Based On The Specification Fail To Show Any Error In The District Court's Construction ....................... 66

B. Under The District Court's Correct Construction Of "Dedicated Connection," There Is No Genuine Dispute Of Material Fact That The Accused Products Do Not Infringe The Asserted Claims Of The '593 Patent. .............. 69

C. Summary Judgment Of Non-Infringement Remains Appropriate Even Under PACT's Erroneous Construction Of "Dedicated Connection." ............................. 73

Conclusion .................................................................. 78

## Note Regarding Confidential Material

Material redacted at pages 11-13 and 69-78 of the non-confidential version of this brief, and highlighted in the confidential version, concerns substantive details of the accused Intel products.  All of that information was marked confidential in proceedings below under the district court's governing protective order.

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*3M Innovative Props. Co. v. Avery Dennison Corp.,*
350 F.3d 1365 (Fed. Cir. 2003) .......................................................... 64

*Abbott Lab'ys v. Syntron Bioresearch, Inc.,*
334 F.3d 1343 (Fed. Cir. 2003) .......................................................... 36

*Advanced Steel Recovery, LLC v. X-Body Equip., Inc.,*
808 F.3d 1313 (Fed. Cir. 2015) .......................................................... 72

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.,*
672 F.3d 1335 (Fed. Cir. 2012) .......................................................... 44

*Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.,*
853 F.2d 1557 (Fed. Cir. 1988) .......................................................... 41

*Avid Tech., Inc. v. Harmonic, Inc.,*
812 F.3d 1040 (Fed. Cir. 2016) .......................................................... 63

*Axonics, Inc. v. Medtronic, Inc.,*
75 F.4th 1374 (Fed. Cir. 2023) .......................................................... 41

*Aylus Networks, Inc. v. Apple Inc.,*
856 F.3d 1353 (Fed. Cir. 2017) ............................................. 29, 53, 56

*Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.,*
555 F.3d 984 (Fed. Cir. 2009) .......................................................... 42

*Bhatnagar v. Surrendra Overseas Ltd.,*
52 F.3d 1220 (3d Cir.1995) .......................................................... 39

*Biogen Idec, Inc. v. GlaxoSmithKline LLC,*
713 F.3d 1090 (Fed. Cir. 2013) ....................................................... 56, 69

*Blystone v. Horn,*
664 F.3d 397 (3d Cir. 2011) .......................................................... 39

*Bos. Sci. Corp. v. Cordis Corp.,*
2006 WL 3782840 (N.D. Cal. Dec. 20, 2006) ....................................... 44

*Canopy Growth Corp. v. GW Pharma Ltd.*,
   2023 WL 3048243 (Fed. Cir. Apr. 24, 2023) ...................................... 66

*Cat Tech LLC v. TubeMaster, Inc.*,
   528 F.3d 871 (Fed. Cir. 2008) ........................................................ 50

*Custin v. Wirths*,
   850 F. App'x 147 (3d Cir. 2021) ..................................................... 40

*Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*,
   597 F.3d 1374 (Fed. Cir. 2010) ...................................................... 29

*DeLong v. Aetna Life Ins. Co.*,
   232 F. App'x 190 (3d Cir. 2007) ..................................................... 41

*ECB USA, Inc. v. Chubb Ins. Co. of N.J.*,
   113 F.4th 1312 (11th Cir. 2024) .............................................. 38, 40

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
   192 F.3d 973 (Fed. Cir. 1999) ........................................................ 63

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014) ...................................................... 45

*Eskridge v. Cook Cty.*,
   577 F.3d 806 (7th Cir. 2009) ......................................................... 36

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010) ...................................................... 45

*In re Giannelli*,
   739 F.3d 1375 (Fed. Cir. 2014) ...................................................... 44

*Gillispie v. RegionalCare Hosp. Partners Inc.*,
   892 F.3d 585 (3d Cir. 2018) ........................................................... 41

*Golden Bridge Tech., Inc. v. Apple Inc.*,
   758 F.3d 1362 (Fed. Cir. 2014) ............................................ 26, 29, 39

*Greenlaw v. United States*,
   554 U.S. 237 (2008) ................................................................. 33, 34

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
452 F.3d 1312 (Fed. Cir. 2006) ........................................................... 59

*IGT v. All. Gaming Corp.*,
702 F.3d 1338 (Fed. Cir. 2012) ........................................................... 33

*Infinity Comput. Prods., Inc. v. Oki Data Ams., Inc.*,
987 F.3d 1053 (Fed. Cir. 2021) ........................................................... 65

*Intel Corp. v. PACT XPP Schweiz AG*,
No. 23-1537, 2024 WL 5068112 (Fed. Cir. Dec. 11, 2024)................. 14

*Intel Corp. v. U.S.I.T.C.*,
946 F.2d 821 (Fed. Cir. 1991) ............................................................. 45

*INVT SPE LLC v. ITC*,
46 F.4th 1361 (Fed. Cir. 2022)...................................................... 40, 43

*LabMD Inc. v. Boback*,
47 F.4th 164 (3d Cir. 2022).................................................................. 36

*Lyda v. CBS Corp.*,
838 F.3d 1331 (Fed. Cir. 2016) ........................................................... 35

*In re Man Mach. Interface Techs. LLC*,
822 F.3d 1282 (Fed. Cir. 2016) ........................................................... 44

*MasterMine Software, Inc. v. Microsoft Corp.*,
874 F.3d 1307 (Fed. Cir. 2017) ..................................................... 65, 66

*Mutschler v. Corby*,
852 F. App'x 53 (3d Cir. 2021) ............................................................ 35

*N. Am. Container, Inc. v. Plastipak Packaging, Inc.*,
415 F.3d 1335 (Fed. Cir. 2005) ........................................................... 68

*NexStep, Inc. v. Comcast Cable Commc'ns, LLC*,
119 F.4th 1355 (Fed. Cir. 2024)........................................................... 28

*Nitkin v. Main Line Health*,
67 F.4th 565 (3d Cir. 2023)............................................................ 28, 29

*Northpeak Wireless, LLC v. 3COM Corp.*,
674 F. App'x 982 (Fed. Cir. 2016)........................................................65

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) ..........................................................40

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ..........................................................56

*Pandrol USA, LP v. Airboss Ry. Prods., Inc.*,
320 F.3d 1354 (Fed. Cir. 2003) ..........................................................33

*ParkerVision, Inc. v. Qualcomm Inc.*,
903 F.3d 1354 (Fed. Cir. 2018) ....................................................3, 43

*ParkerVision, Inc. v. Vidal*,
88 F.4th 969 (Fed. Cir. 2023)..............................................................41

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................................................48, 65

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
875 F.3d 1369 (Fed. Cir. 2017) ..........................................................52

*Prusky v. Prudential Ins. Co. of Am.*,
44 F. App'x 545 (3d Cir. 2002) ............................................................39

*PSN Ill., LLC v. Ivoclar Vivadent, Inc.*,
525 F.3d 1159 (Fed. Cir. 2008) ..........................................................73

*Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*,
824 F.3d 999 (Fed. Cir. 2016) ............................................................48

*Salazar v. Procter & Gamble Co.*,
414 F.3d 1342 (Fed. Cir. 2005) ..........................................................64

*Sarif Biomedical LLC v. Brainlab, Inc.*,
725 F. App'x 996 (Fed. Cir. 2018)......................................................64

*St. Clair Intell. Prop. Consultants, Inc. v. Canon Inc.*,
412 F. App'x 270 (Fed. Cir. 2011)......................................................64

*Steen v. Myers,*
   486 F.3d 1017 (7th Cir. 2007)..............................................................39

*The Fair v. Kohler Die & Specialty Co.,*
   228 U.S. 22 (1913)................................................................................33

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.,*
   529 F.3d 1364 (Fed. Cir. 2008)..........................................................67

*Traxcell Techs., LLC v. Nokia Sols. & Networks Oy,*
   15 F.4th 1136 (Fed. Cir. 2021)...........................................................65

*United States v. Schiff,*
   602 F.3d 152 (3d Cir. 2010) ................................................................36

*UShip Intell. Props., LLC v. United States,*
   714 F.3d 1311 (Fed. Cir. 2013) ...........................................................68

*ViaTech Techs. Inc. v. Microsoft Corp.,*
   733 F. App'x 542 (Fed. Cir. 2018)................................................34, 42

*Viera v. Life Ins. Co. of N. Am.,*
   642 F.3d 407 (3d Cir. 2011) ................................................................28

*Walden v. Gen. Elec. Int'l, Inc.,*
   119 F.4th 1049 (6th Cir. 2024) ....................................................38, 40

*Wi-LAN USA, Inc. v. Apple Inc.,*
   830 F.3d 1374 (Fed. Cir. 2016) ..............................................48, 68, 72

*WSOU Invs. LLC v. F5, Inc.,*
   2025 WL 1135207 (Fed. Cir. Apr. 17, 2025) .....................................40

**Rules**

Fed. R. Civ. P. 56(a)...........................................................................33, 41

**Note:  All emphasis added unless otherwise indicated.**

**STATEMENT OF RELATED CASES**

An appeal from the same proceeding was previously docketed in this Court as *PACT XPP Schweiz AG v. Intel Corporation*, No. 2025-1003. That appeal was dismissed on January 30, 2025, to permit the district court to resolve a jurisdictional issue. Counsel is not aware of any cases that may directly affect or be directly affected by this Court's decision in the pending appeal.

## INTRODUCTION

PACT has a dated portfolio of several hundred patents directed to specialized reconfigurable processors. Although PACT's co-founder wrote emails confirming that PACT's portfolio was never intended to cover general-purpose microprocessors such as Intel's products, Appx35732-35733, PACT drafted continuation patents attempting to extend the portfolio to cover that technology. PACT then sued Intel, alleging it infringed a dozen PACT patents. After most of the asserted patents were invalidated or voluntarily dismissed, only two remained: U.S. Patent Nos. 8,312,301 and 8,471,593. The district court correctly granted summary judgment that Intel does not infringe either patent.

PACT's arguments with respect to the '301 patent are revisionist history. The district court properly interpreted the asserted claims to require "data processing elements adapted for programmably processing sequences" of *data*. Intel's products, however, process sequences of *instructions*. Given that mismatch, PACT asserted Intel's microprocessors in fact *also* processed sequences of data. The district court correctly held PACT had no evidence to support this theory and granted summary judgment.

1

On appeal, PACT does not challenge the district court's claim construction, which ultimately was based on PACT's disclaimer during *inter partes* review proceedings. Nor does PACT challenge the district court's conclusion that PACT had no evidence that Intel's processors actually processed data rather than instructions. And on appeal it is further undisputed that "instructions" are not themselves "data" within the meaning of the claims.

Instead, PACT's sole theory on appeal is that the district court "ignored" evidence that Intel's products are supposedly "*capable* of processing data sequences." BlueBr.2. But PACT did not make *that* argument in opposing summary judgment. That theory of infringement appears nowhere in the section of PACT's opposition brief addressing the '301 patent, in PACT's '301 patent infringement contentions, or even in PACT's first motion for reconsideration. PACT first raised a capability theory in a *second* motion for reconsideration. The district court did not abuse its discretion by holding it was too late at that point for PACT to inject a new infringement theory into the case.

PACT's assertion that it was implicitly making a "capability" argument all along is belied by the record and rests on the fallacy that

2

every apparatus claim in any patent is always directed to capability. Although some apparatus claims recite functionality, others require an apparatus that is in fact configured in an infringing manner. *See ParkerVision, Inc. v. Qualcomm Inc.*, 903 F.3d 1354, 1362 (Fed. Cir. 2018). Whether an apparatus claim recites capability therefore turns on the claim language. When opposing summary judgment, PACT made no effort to show the asserted claims are directed to mere capability. The district court was not required to do the work for PACT, but if it had, it would have seen mere capability is not enough. The '301 patent requires processing elements that are actually adapt*ed* for processing sequences of data, not merely adapt*able* for performing that task.

PACT's arguments concerning the '593 patent are equally misguided. The district court correctly construed the claims and held that Intel's products cannot infringe under that construction. Each claim requires a processing core that "includes" a "dedicated connection to" a particular memory unit. During *ex parte* reexamination, to overcome the prior art, PACT stated this "dedicated connection" must be "*specifically devoted* to connecting those two units"—i.e., exclusively—such that a link "cannot be a 'dedicated' connection" if it is "shared by a multitude of

3

different devices" (e.g., other cores or memories). Appx33956. PACT then applied its interpretation to the prior art and argued it did not disclose "a dedicated connection" from a given core to a given memory because a "portion" of the path between them was used by other processing cores to access the same memory and thus was shared rather than exclusive.

The district court correctly construed the claimed "dedicated connection" consistent with the plain claim language and PACT's reexam statements as "a connection designed to directly interconnect a particular device to a particular memory via a link inaccessible to other devices and memories." Appx43. PACT's challenge to that construction strips the word "dedicated" of meaning while whistling past the plain statements it made to the Patent Office to avoid invalidity. Those statements disclaim the scope PACT now seeks to recapture and, regardless, support the ordinary, common sense meaning the district court adopted.

Applying that construction at summary judgment, the district court further correctly concluded no reasonable juror could find the accused Intel microprocessors infringe. A processing core in the accused products connects to its co-located memory over a path accessed by every other core. Although PACT asserts that the accused products contain an

exclusive *portion* or segment along an otherwise shared path between a processing core and its co-located memory unit, that is not enough under the claims as construed. And regardless, the undisputed *evidence* of record (Intel's wiring diagrams) defeats PACT's unsupported assertion. For that reason, even under PACT's "segment"-based approach, the undisputed evidence also compels judgment for Intel because there are no unshared segments along the alleged dedicated connection between a processing core and its co-located memory slice.

The judgment should be affirmed.

## STATEMENT OF THE ISSUES

1. Whether the district court's grant of summary judgment of non-infringement of the '301 patent should be affirmed where (a) PACT failed to offer any evidence that the accused products process sequences of *data*, as required by the asserted claims; (b) the district court held PACT could not advance a "capability" infringement theory for the first time in its second reconsideration motion; and regardless (c) the claims require a processor not merely capable of processing sequences of data, but actually adapt*ed* for doing so.

**2.** Whether the district court's grant of summary judgment of non-infringement of the '593 patent should be affirmed where it (a) correctly construed the "dedicated connection" term consistent with the plain claim language and PACT's prosecution history disclaimers and (b) found no evidence the processing cores and memories in the accused products have dedicated connections under that construction.

## STATEMENT OF THE CASE

### I.    Background

This is a case about two different types of processors. General-purpose processors—such as microprocessors—have fixed logic elements that have a defined function and are arranged in a fixed layout. Appx14844-14845(¶¶55-56); Appx29436-29438(¶¶43-44); Appx18074; Appx17900(¶2). Other, more specialized processors have reconfigurable architectures, such as field programmable gate arrays (FPGAs). Appx29433-29434(¶¶39-40). Unlike the rigid circuitry and components in general-purpose processors, reconfigurable architectures like FPGAs are typically made up of a grid of configurable logic cells. Appx29433-29434(¶40). The same logic cell may perform addition in one configuration, for example, and act as a register that provides small, high-speed storage in another configuration. *Id.*; Appx29435-29436(¶42);

6

Appx147(1:41-43); Appx3232; Appx14836-14838(¶¶36-38).  As the name implies, processors with reconfigurable architectures have a flexible layout that permits the connections between logic elements to adapt from one configuration to the next.  Appx14845-14846(¶¶57-58); Appx29435-29437(¶¶42-44).

General-purpose processors and reconfigurable processors process information differently.  *See* Appx29439-29444(¶¶46-51).  A general-purpose processor processes *instructions*, which succinctly define the operations the processor must perform on particular data identified in the instruction.  Appx14840-14841(¶46); Appx29439(¶46).  The processor sequentially fetches instructions and sends those instructions to the appropriate logic elements within the processor for execution.  *Id.*; Appx3174; Appx14716(¶9).  Although the instruction may tell the logic element where to find the data it needs, the data is not sequentially passed from one logic element to the next.  Appx29442-29444(¶¶50-51).  By contrast, because FGPAs and other specialized, reconfigurable processors are specifically configured to perform a specific task, there is no need for instructions.  Appx14844(¶55); Appx29440-29441(¶¶47-48); Appx29443(¶51); Appx3174.   These specialized processors instead

7

process *data*—the thing on which the processors actually perform operations—by sequentially passing data from logic cell to logic cell. Appx14839-14840(¶43); Appx29435-29436(¶42); Appx29440-29441(¶¶47-48); Appx29443(¶51).

## A. Asserted Patents

PACT is a non-practicing entity with a portfolio of mostly expired or invalid patents relating to reconfigurable FPGAs. Appx35808; Appx25081; Appx31958-31998; *see* Appx212(¶15); Appx32668.

<u>'301 Patent.</u> One of PACT's FPGA patents is the '301 patent. Appx90-120. The patent relates to a reconfigurable data processor containing data processing elements that can operate at different clock frequencies to conserve power. Appx90(Abstract); Appx111(1:21-29, 2:20-63); Appx118(16:2-9). Consistent with the typical operation of reconfigurable architectures (and unlike how general-purpose processors operate), the patent requires that data processing elements of the alleged invention be "adapted for programmably processing sequences" of *data*, rather than processing sequences of *instructions*. Appx112(4:43-46); Appx118(15:60-61); Appx14727-14728(¶29).

Representative claim 8 recites in relevant part "A processor device, comprising *a plurality of data processing elements adapted for programmably processing sequences* and to which tasks are assigned." Appx118(15:59-16:9). It is undisputed on appeal that the sequences processed by the claimed data processing elements must be sequences of data, not instructions. BlueBr.1-2; *see* Appx14727-14728(¶29).

'593 Patent. Another of PACT's FPGA patents is the '593 patent, Appx122-154, which relates to a reconfigurable array of logic cells flexibly interconnected with one another. Appx147(1:22-28); Appx152(12:31-33); Appx153(13:38-40). Logic cells of the alleged invention include, among other things, "data processing units" (such as those that perform "logic" or "arithmetic") and "memory" units. Appx147(1:41-43); Appx149(5:65-67, 6:11-15). The patent states these elements together form a reconfigurable unit. Appx151(9:34-48); *id.*(10:61).

The '593 patent recites only two independent claims—claims 1 and 16—from which all other claims depend. Those claims are a poor fit with what is described in the specification. Both require "data processing cores," each of which must include "a *physically dedicated connection* to at least one physically assigned one of the plurality of memory units."

9

Appx152(12:19-44); Appx153(13:26-54).[1] The terms "data processing cores," "physically dedicated connection," and "secondary bus path" appear nowhere in the '593 patent except the claims. Appx147-153. These claims represent PACT's effort, years after filing the original application, to "extend the patent portfolio" beyond FGPAs to cover ordinary "microprocessors." Appx35732-35733; *see* Appx29478(¶94); Appx35808; Appx35811.

## B.    Accused Products

The accused products are Intel general-purpose microprocessors that have multiple processing cores and multiple levels of on-chip memory. Appx33651-33654(¶¶6-9). As is typical in general-purpose processors, each processing core executes sequences of instructions. Appx14719-14722(¶¶13-17); Appx14728(¶30). In this manner, Intel's microprocessors operate by executing series of instructions directing the microprocessor to, among other things, read data from memory, perform computations on that data, and write the results back to memory. Appx33651-33652(¶6).

---

[1] PACT concedes there is no substantive difference between claim 1's "physically dedicated connection" and claim 16's "dedicated connection." BlueBr.12 n.3.

The memory level farthest from the processing cores in the accused Intel microprocessors is called the "last-level cache" or "LLC." Appx33654-33656(¶¶9-11). The LLC is split into a number of slices equal to the number of processing cores in the microprocessor. Appx33656-33657(¶12). The LLC slice that is physically adjacent to a processing core is called the "co-located" LLC memory slice. Appx33657(¶13). A processing core is not limited to accessing its co-located LLC slice. A [accused product structure] interconnect in the microprocessor *connects every processing core to every LLC memory slice*, such that every processing core has access to and can request data from every slice. Appx33657-33659(¶¶14-16); Appx33737-33738(¶69); Appx33835.

Each processing core and its co-located LLC memory slice connect to the [accused product structure] interconnect through a structure called a [accused product structure] or "C-Bo." Appx33665-33667(¶22); Appx34182. The C-Bo has three parts: (1) a [accused product structure] that connects to and communicates with the processing core; (2) a [accused product structure] that receives messages from both the [accused product structure] (and thus the nearest processing core) and also from [accused product layout] [accused product structure] along the [accused product structure] interconnect (and thus other processing cores); and (3) a [accused product structure] that receives messages from both the [accused product structure] and the [accused product structure] (and thus *any*

processing core) and accesses the LLC memory slice cache. Appx33667-33670(¶¶23-25); Appx34182.

The annotated figure below from an internal Intel design document illustrates the C-Bo structure interconnecting all processing cores and memory slices. A processing core can communicate with its co-located LLC memory slice over the green path, and other processing cores also communicate with that same LLC memory slice over the [accused product structure] via the red path, part of which *shares* portions of the green path. Appx33670-33673(¶¶26-27).

internal design of accused products

Appx34182 (annotated). Thus, like messages from every other processing core, messages from the nearest processing core to its co-located LLC memory travel through a shared [accused product structure] and [accused product structure]. Appx33802-33804(¶¶242-243). Inside the [accused product structure], the path used by a core to communicate with its co-located LLC memory slice [accused product layout] with and is *shared* by the path any other core would use to communicate with that same LLC memory slice. Appx34152; Appx33676-33680(¶31). There is no separate dedicated line inside the [accused product structure] or [accused product structure] from an LLC slice to its co-located core. Appx33822-33824(¶¶101-102); Appx33984-33986(¶¶179-181).

## II. Procedural History

In 2019, PACT sued Intel in the District of Delaware. Appx207. Although PACT knew its reconfigurable FPGA processor technology was different than Intel's general-purpose microprocessors, *e.g.*, Appx35811; Appx29478(¶94), PACT accused certain Intel microprocessors of infringing 423 claims from twelve of PACT's FPGA patents. Appx208(¶4). After most of those patents were invalidated or voluntarily dismissed, Appx33, only two remained: the '301 and '593 patents. PACT

contends Intel infringes claims 8 and 16 of the '301 patent,[2] and claims 1, 2, 4, 5, 7, 10, 11, 14-17, 21, and 22 of the '593 patent.  Appx14724(¶22); Appx33649-33650(¶2).  The district court granted summary judgment that Intel does not infringe either patent.  Appx19; Appx48.

## A. '301 Patent

Shortly after PACT filed suit, Intel sought *inter partes* review challenging the validity of the '301 patent.  To avoid the prior art, PACT told the Board the claim term "programmably processing sequences" should be limited to "sequences of data" because if one were to "interpret [the claim term] as sequences of instructions … that would essentially read out the term."  Appx14683; Appx14727-14728.  The Board ultimately found seven claims and portions of two additional claims unpatentable but did not invalidate claims 8 and 16.  Appx27362.  This Court affirmed the Board's decision in *Intel Corp. v. PACT XPP Schweiz AG*, No. 23-1537, 2024 WL 5068112 (Fed. Cir. Dec. 11, 2024).

As relevant on appeal, Intel moved for summary judgment of non-infringement of claims 8 and 16 of the '301 patent, arguing Intel's

---

[2] Claims 14 and 17 were deemed unpatentable by the Board and are not at issue.  Appx27349; Appx27362; Appx14724(¶22).

microprocessors do not have the claimed "plurality of data processing elements adapted for programmably processing sequences." Intel made two arguments: *First*, PACT had limited that term to processing sequences of data during the IPR proceedings by disclaiming programmably processing sequences of instructions. *Second*, Intel argued there is no genuine dispute that the accused microprocessors process instructions, not data.

The district court's Policies and Procedures required the parties to submit a statement of material facts. Appx35723. In its statement, Intel demonstrated the processing cores in its products "are instruction processors that execute sequences of instructions" and those cores "do not operate on data without executing instructions." Appx14719-14720(¶¶13-14). Although PACT partially disputed those facts, it cited no evidence, *id.*, despite the district court's instruction to "explain[] which *facts* are in dispute or why a fact is immaterial, *with appropriate citations to the record*," Appx35723.

In its summary judgment opposition, PACT principally disputed whether it had disclaimed processing cores that process sequences of instructions. Appx14684-14685. PACT limited its factual argument to a

single sentence asserting its expert, "Dr. Conte[,] has offered evidence that the Accused Products sequentially process[] data." Appx14685. The portion of Conte's report cited by PACT related to a different claim element from the (now-invalidated) '047 patent and made a different point. Conte offered an opinion (relevant to the '047 patent) that Intel's cores "can process data in a sequential manner via, for example, use of the Threading Building Blocks runtime." Appx24314(¶290); *see also* Appx7187 (district court distinguishing the claim language of the two patents). PACT separately cited the entirety of Conte's claim chart for the '301 patent but failed to point to any specific evidence it relied on. Appx14685 (citing Appx24384-24424). In any event, the '301 claim chart did not include the same Threading Building Blocks evidence Conte relied on for his opinion regarding the '047 patent. Appx24384-24424.

At the same time, in moving for summary judgment on Intel's affirmative defenses, PACT made "clear that the claim terms should be given the narrower meaning of 'made to' or 'configured to,' not merely 'capable of.'" Appx11681-11684 (noting the "'301 patent specification describes a processor device that *is* adapted…not merely a processor device that *can be* adapted for practicing the limitation," distinguishing

16

between whether devices "*are in fact* 'adapted for' practicing [a] claim limitation," or instead "*could be* adapted for practicing the limitation" (emphasis original)).

The district court granted Intel's non-infringement motion. The court first concluded PACT disclaimed processing sequences of instructions (a ruling PACT does not appeal). Appx5-8. It then found "[t]he Parties don't dispute that Intel's chips only process sequences of instructions" (also not appealed). Appx8. With no evidence that Intel's products actually process sequences of data, the district court concluded PACT could not prove Intel's products infringe the '301 patent. *Id.*

PACT moved for reconsideration, again pointing to Conte's expert report, asserting the district court overlooked his opinions. Appx27483. According to PACT, its one-sentence argument opposing summary judgment, coupled with Conte's opinions, showed PACT "consistently argued" that Intel's products not only process instructions but "*also* perform sequential data processing." *Id.*

The district court stood by its original decision. It found PACT's failure to cite in the statement of material facts the evidence that supposedly created a factual dispute was reason enough to deny

17

reconsideration. Appx22. Reviewing the evidence again, the court confirmed Conte's opinion "was not enough to defeat summary judgment." *Id.* That opinion "did not opine that Intel's processors process sequences of data," but at most "only says that they 'can' process sequences of data." *Id.* The possibility Intel's microprocessors *could* be used to infringe, the district court explained, is not enough to establish infringement. Appx23.

PACT then requested a Rule 54(b) judgment for the '301 patent. As part of its request, PACT asserted for the first time that the relevant claim language "is clearly drawn to capability" such that the district court supposedly erred by requiring proof that Intel's chips actually process data. Appx27738. The court denied PACT's motion, warning PACT that it "should not think I will allow it to rewrite history" about what PACT had actually argued at summary judgment. Appx27784.

Unwilling to let the issue rest, PACT filed a *second* motion for reconsideration. Relying on the same evidence, PACT asserted a new theory that the district court misapplied the law by not treating capability as sufficient to infringe the '301 patent. Appx27797.

The district court denied this motion too. Appx24-28. The court reiterated that it "read every portion of Dr. Conte's report that PACT cited" before granting summary judgment and "[n]o part of it claims that Intel's cores process data." Appx28. Turning to PACT's capability argument, the district court explained PACT "didn't make that argument during summary judgment briefing." *Id.* The court observed that, "of the six cases PACT cites for this argument" in its reconsideration motion, "none—not one—appears in its Opposition to Intel's summary judgment motion." *Id.* The court concluded it was too late for "PACT to make new legal arguments." *Id.*

**B.    '593 Patent**

Intel petitioned for *inter partes* review of the '593 patent after PACT filed suit. Appx12091-12092. PACT opposed by contending that "dedicated" means "'assigned exclusively' to a particular task or purpose," Appx12100, and that a "physically dedicated connection" is one that is "exclusively allocated (i.e., dedicated) to connecting the cores and the memory units," Appx12357. The PTAB denied institution, crediting PACT's construction of "dedicated." Appx12118-12119.

Intel then moved in the district court for summary judgment of non-infringement. Appx11228-11235. Intel explained the accused microprocessors cannot infringe the asserted '593 patent claims because its microprocessors do not have a "dedicated connection" "assigned exclusively" between any processing core and any memory unit. Appx11231-11235. Intel offered evidence that, instead, every processing core communicates with a given LLC memory slice over the same shared connection through the same C-Bo. *Id.*

The district court denied summary judgment. Appx8-9. It agreed the '593 patent requires "processors with exclusive connections to corresponding memory units," but concluded a factual dispute existed regarding how to treat the C-Bo shared among all the processing core-memory connections in the accused products. *Id.*

Intel also asked the Patent Office to institute *ex parte* reexamination of the '593 patent based on U.S. Patent No. 6,457,087 ("Fu"), which discloses a multiprocessor where each processing core connects to a memory unit through a shared interface. Appx30520-30689. The Patent Office granted reexamination. Appx33862-33864.

The examiner initially rejected the claims over Fu because Fu discloses a system in which each processing core has a "*direct* connection" to a memory unit. Appx33896-33897. In response, PACT argued Fu does not disclose a "*dedicated* connection" because every processing core can access memory 214A "over a same line" (i.e., "at least one shared line"), pointing to shared "memory path 364A" in Fu's Figure 13. Appx30744-30745 (relying on Figures 2, 8, and 13 of Fu).

The examiner maintained his rejection over Fu. Appx33932. He stated Fu disclosed a "dedicated connection" because "a direct, uninterrupted connection" can exist "between a core and a memory unit." Appx33940. In response, PACT again argued Fu did not disclose a "dedicated connection" because each processing core connected to a memory unit "over a same line," Appx33955, while further emphasizing that "'dedicated' means devoted to a particular purpose" and "made or designed to interconnect *exclusively*." Appx33955-33956.

PACT applied its definition to the "dedicated connection" term as follows:

> A mere direct connection between two units is not a dedicated connection unless that connection is *specifically devoted* to connecting those two units, and thus not to other units.

Hence, a communication *line(s) that is shared by a multitude of different devices cannot be a "dedicated" connection.*

Appx33956. In applying this definition, PACT did not contend all segments of the end-to-end path in Fu are shared. Instead, PACT stated Fu did not disclose a "dedicated connection" because there was a "*shared portion*" along the path from any processing core to memory 214A. Appx33957. It was not enough that other portions might be unshared; PACT distinguished between a "dedicated connection" and connections (such as disclosed in Fu), in which all the memories were accessible by all the cores "using *at least one* shared line," such "that the connection cannot be considered dedicated." Appx33958.

PACT submitted the following annotated compilation of Fu figures to illustrate its point, circling "the *shared portion* of the memory data path 364a and the shared line 216A." *Id.*



FIG. 2
FIG. 8
FIG. 13

*Id.* PACT argued these circled elements "show[] processor N" in the figure "is not connected to an assigned memory using a 'dedicated' connection because other processors, such as processor 1 also use the same" elements "to access memory device 214A." *Id.* Line 216A was a "shared portion" within the multi-segment, end-to-end paths connecting memory 214A to each of Fu's processing cores. Appx33957.

The examiner withdrew his rejection. Appx33970-33971. He adopted PACT's argument that Fu does not disclose a "dedicated connection" because "a *portion* of the connection between the core and the

23

memory is a shared connection" and thus the connection is not "designed to directly interconnect" the core and memory "*exclusively.*" *Id.*

Intel moved for leave in the district court to renew its summary judgment motion. The court granted that motion and subsequently entered summary judgment of non-infringement. It determined PACT's reexamination statements constituted a disclaimer and clarified the meaning of "dedicated connection." Appx41-43. The district court thus construed "dedicated connection" to mean "a connection designed to directly interconnect a particular device to a particular memory via a link inaccessible to other devices and memories." Appx43.

Applying that construction, the court held no reasonable juror could find the processing cores in Intel's accused microprocessors have a dedicated connection to any LLC memory slices. Appx43-45. The court found there was no evidence that Intel's microprocessors connect a processing core to its co-located LLC slice "while excluding other devices and memories" from all portions of that connection. Appx44-45.

The district court entered final judgment in Intel's favor and against PACT. Appx48-49. This appeal followed.

## SUMMARY OF THE ARGUMENT

The district court's independent decisions granting summary judgment of non-infringement as to the '301 and '593 patents should both be affirmed.

**'301 Patent.** The district court correctly granted summary judgment of non-infringement for the '301 patent because Intel's chips do not have the claimed "plurality of data processing elements for programmably processing sequences" of *data* but instead process sequences of *instructions*. As Intel successfully argued at summary judgment, PACT disclaimed "instruction sequences" from the term "programmably processing sequences" choosing instead to focus on "data sequences" during the IPR proceeding for the '301 patent. PACT does not dispute this construction on appeal. The district court found that PACT's disclaimer limited its claims to data sequences, and thus no reasonable jury could find Intel's products infringe.

PACT subsequently filed two unsuccessful motions for reconsideration. In its first, PACT doubled down on its previous arguments. Unsurprisingly, the district court denied that motion, explaining PACT failed to muster *facts* demonstrating a genuine dispute.

On appeal, PACT does not dispute this was proper under the district court's policies. In its second motion for reconsideration, PACT raised a *new* infringement theory arguing that Intel's products infringe because they are merely *capable* of processing sequences of data. The district court did not abuse its discretion in denying that motion too, explaining PACT raised this new argument too late.

On appeal, PACT faults the district court for not considering a legal theory that PACT never actually raised before its second motion for reconsideration, let alone at summary judgment. Because PACT failed to do procedurally what it was required to do at summary judgment, the district court did not abuse its discretion in finding PACT had forfeited this new theory. *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362 (Fed. Cir. 2014). In any event, PACT's untimely capable-of-infringement theory also fails on the merits.

**'593 Patent.** The district court correctly determined the accused products cannot infringe any asserted claim of the '593 patent because they do not contain the required "physically dedicated connection."

The district court construed that claim term as a connection "designed to directly interconnect a particular device to a particular

26

memory via a link inaccessible to other devices and memories." Appx43.

That construction is fully supported by the intrinsic record. Unlike PACT's "segment"-based interpretation that scours a multi-segment path from a processing core to a memory unit for any one segment not used by other components, the district court's construction is consistent with both the actual claim language and PACT's representations during reexamination. The claim plainly states a processing core must "include[] a *physically dedicated connection to*" a particular memory unit. Likewise, to avoid invalidation during reexamination PACT argued that the "dedicated connection" must be "specifically devoted to connecting" a specific core with a specific memory and "thus not to other units," and that a communication path with any "portion" shared by multiple cores or memories does not qualify. Appx33957-33958. Nor does the specification—drafted long before the asserted claims, which deviate substantially from that disclosure—help PACT. The figures PACT relies on are not claimed embodiments, and regardless, none of the figures contain a "dedicated connection"—even under PACT's construction.

Applying its (correct) construction, the district court properly concluded no reasonable juror could find the accused products have a

27

"dedicated connection." Every processing core in the accused products undisputedly accesses a given LLC memory slice over "at least one shared line." PACT's attempt to manufacture a factual dispute where none exists by denominating the C-Bo an "interface" is foreclosed by its reexam statements, including the overlap it circled at and beyond an "interface" (including "shared line 216A.") And even under PACT's proposed construction there is no genuine dispute of material fact that the accused products do not infringe.

## STANDARD OF REVIEW

This Court "review[s] a district court's grant of summary judgment according to the law of the regional circuit," which the Third Circuit reviews "de novo, applying the same standard the district court applied." *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, 119 F.4th 1355, 1364 (Fed. Cir. 2024); *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011). "Summary judgment is appropriate" if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Nitkin v. Main Line Health*, 67 F.4th 565, 570 n.2 (3d Cir. 2023). To avoid summary judgment a party "must point to concrete evidence in the record that supports each and every essential element of

his case." *Id*. at 571. "Bare assertions, conclusory allegations, or suspicions" are insufficient. *Id.*

Similarly, this Court reviews a district court's denial of a reconsideration motion "under the law of the pertinent regional circuit," *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1379 (Fed. Cir. 2010), which in the Third Circuit is reviewed "for an abuse of discretion." *Golden Bridge*, 758 F.3d at 1367.

The Court reviews "claim construction based on intrinsic evidence de novo and review[s] any findings of fact regarding extrinsic evidence for clear error." *Id.* Intrinsic evidence encompasses a patent's prosecution history, including the patentee's statements during reexamination. *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1358, 1360 (Fed. Cir. 2017).

## ARGUMENT

### I. The District Court Correctly Granted Summary Judgment Of Non-Infringement Of The '301 Patent.

The district court correctly held that "Intel's chips only process sequences of instructions" and therefore "can't infringe" the asserted '301 patent claims. Appx8. Those claims require "a plurality of data processing elements adapted for programmably processing sequences" of

data.  Appx118(15:60-61); Appx5-8.  PACT offered no evidence Intel's accused microprocessors process *data* sequences.  When PACT pivoted to arguing in its second motion for reconsideration that mere capability is enough to infringe the asserted claims, the district court did not abuse its discretion by finding PACT had not preserved that argument.

PACT's capability argument is wrong twice over in any event.  The asserted claims require more than capability; the data processing elements must actually be configured to process sequences of data.  There is also no evidence that Intel's products are even capable of sequentially processing data.  Either way, PACT cannot prove infringement.

### A. The District Court Appropriately Denied PACT's Summary Judgment Motion And Its Subsequent Motions For Reconsideration.

PACT's challenge to the district court's initial summary judgment order and at least the denial of PACT's first motion for reconsideration is predicated on the argument that the district court erred by disregarding PACT's evidence that the accused products are "capable" of processing data.  But that is not what PACT argued, and the district court was correct that the scintilla PACT pointed to with respect to whether the accused products process data (not just instructions) was both irrelevant

and insufficient under the court's Policies and Procedures.  When PACT belatedly introduced a "capability" theory in its *second* motion for reconsideration, the district court did not abuse its discretion by finding PACT had waited "too long" to "cite[] the relevant case law" in support of a capability-to-infringe theory.  BlueBr.31.  PACT's arguments are wrong multiple times over.

### 1. The District Court Properly Considered And Rejected The Arguments PACT Actually Made At Summary Judgment.

As an initial matter, the district court did not "fail[] to confront" PACT's evidence in its summary judgment order—much less evidence about "capability."  BlueBr.31.  Regarding infringement of the claim term at issue, PACT made a one-sentence assertion in its opposition that its expert, "Dr. Conte[,] has offered evidence that the Accused Products sequentially processing [sic] data," followed by a cite to Conte's report. Appx14685 (citing Appx24308-24316(¶¶286-292); Appx24384-24424).

The problem for PACT is that evidence did not match PACT's infringement theory.  The district court, which "read every portion of Dr. Conte's report that PACT cited" before granting summary judgment, correctly found that it said nothing relevant to infringement under the

'301 patent nor in support of PACT's only argument (that the accused products "sequentially process data"). Appx28. In the section of his report addressing the '301 patent, Conte did not discuss processing sequences of data *at all*. Appx25702-25751. Rather, he assumed processing sequence of *instructions* would satisfy the "processing sequences" limitation—despite PACT's disclaimer of "instructions." Given this mismatch between PACT's arguments and its evidence, the district court correctly held that "[t]he Parties don't dispute that Intel's chips only process sequences of instructions." Appx8. At most, in a *different section* of that report, addressing alleged infringement of an entirely different patent (the '047 patent) with different claim language, Conte asserts that Intel's microprocessors *could* sequentially process data, not that they *in fact* process*ed* data sequences—the only argument PACT had made in its opposition on the '301 patent. Appx24308-24316(¶¶286-292); *see* Appx27-28; Appx27483 (heading: "PACT also showed that Intel's chips sequentially process*ed* data").

The district court had no obligation to consider whether PACT's evidence would have supported an undeveloped and *different argument* that mere capability might be enough to infringe. Courts "rely on the

parties to frame the issues for decision," and the parties bear responsibility "for advancing the facts *and arguments* entitling them to relief." *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008). Under this well-established principle, PACT was "master to decide what law [it] will rely upon" to prove infringement. *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913). In its summary judgment opposition, PACT made no mention of capability and cited no capability-to-infringe cases—which is unsurprising given its one-sentence argument was limited to saying its expert offered "evidence that the Accused Products sequentially process[] data," not that they were capable of doing so (much less that mere capability would be enough).

For similar reasons, PACT is wrong that it had the burden only of identifying disputed facts. BlueBr.33. PACT needed to also establish those factual disputes are "material" to the disputed legal issues at summary judgment. Fed. R. Civ. P. 56(a); *IGT v. All. Gaming Corp.*, 702 F.3d 1338, 1343-44 (Fed. Cir. 2012). As part of that responsibility, PACT had the burden to explain to the district court the legal principles that precluded summary judgment if its view of the facts prevailed. *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 320 F.3d 1354, 1366 (Fed. Cir. 2003).

Judges are not supposed to be on the hunt for as-yet-undiscovered legal theories that may pair well with a plaintiff's factual claims. *See Greenlaw*, 554 U.S. at 244; *ViaTech Techs. Inc. v. Microsoft Corp.*, 733 F. App'x 542, 552 (Fed. Cir. 2018) ("There is no onus on the district court to distill any possible argument which could be made based on the materials before the court.").

### 2. The District Court Correctly Denied PACT's First Motion For Reconsideration For Two Independent Reasons.

PACT's objections to the district court's decision denying its first reconsideration motion are equally unavailing—though that decision bolsters the reasons for the court's original grant of summary judgment, demonstrating it is supported both as a matter of law and as an exercise of discretion, based on PACT's failure to follow the court's rules.

PACT did not raise a capability argument in its first reconsideration motion, but rather doubled down on the argument that Intel's chips "perform sequential processing." Appx27483 ("PACT also showed that Intel's chips sequentially process*ed* data"). Given the arguments PACT raised, the district court did not abuse its discretion— much less commit legal error—in then concluding that evidence

"suggest[ing] that it [is] *possible* for Intel's chips to be sequential data processors" failed to create a triable issue of fact. Appx23. That evidence was not sufficient to support PACT's theory that "Intel's chips also perform sequential data processing." Appx27483 ("PACT specifically disputed that Intel's chips only process sequences of instructions.").

PACT does not address the district court's second, independent reason for denying reconsideration. The district court's Policies & Procedures instructed PACT to identify in its responsive statement of facts "which facts are in dispute" with "appropriate citations to the record." Appx35723. PACT violated that procedure by offering no evidence to support its position for the two alleged key factual disputes related to the '301 patent. *See* Appx14719-14721(¶¶13-14). As the district court explained, "[t]he whole point of the statements is to determine whether there is a factual dispute that requires a trial," so "PACT's failure to muster facts demonstrates that there wasn't such a dispute." Appx22; *see* Appx26.

Enforcing its Policies and Procedures order falls within the district court's broad power to control its docket. *Mutschler v. Corby*, 852 F. App'x 53, 55 n.1 (3d Cir. 2021); *Lyda v. CBS Corp.*, 838 F.3d 1331, 1341 (Fed.

Cir. 2016).  PACT cannot challenge how the district court exercised that discretion for the first time in reply.  *See Abbott Lab'ys v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1355 (Fed. Cir. 2003).  As a result, PACT's violation of the district court's rules is an uncontested alternative ground for affirming both the district court's first reconsideration ruling and its original summary judgment decision.  *See LabMD Inc. v. Boback*, 47 F.4th 164, 191 (3d Cir. 2022).

> **3.    The District Court Did Not Abuse Its Discretion By Precluding PACT From Introducing A Capability Argument In Its Second Motion For Reconsideration.**

The district court likewise did not abuse its discretion by denying PACT's second motion for reconsideration.  Appx24-29.  That ruling deserves double deference because it involves layers of "discretion piled upon discretion." *Eskridge v. Cook Cty.*, 577 F.3d 806, 809 (7th Cir. 2009).

The court acted well within its discretion when it found PACT could not argue the '301 patent claims were directed to capability for the first time in a second motion for reconsideration.  Appx28.  The district court is best positioned to decide whether PACT fairly raised a capability argument in its summary judgment opposition.  *See United States v. Schiff*, 602 F.3d 152, 169 (3d Cir. 2010).  It is not a close call.  The word

capability again appears nowhere in the portion of PACT's opposition addressing the '301 patent (*see* Appx14685), and as the district court observed, none of the cases PACT later cited in its reconsideration motion appeared in its original brief, *see* Appx28. At the same time the district court was considering PACT's opposition, the court had before it PACT's argument that the '301 patent claims required an apparatus "designed or *configured* to accomplish the specified objective, not simply that they can be made to serve that purpose." Appx11681-11682 (must be "'made to' or 'configured to,' *not merely 'capable of'*"). The district court did not abuse its discretion in finding PACT had not made a "capability" argument in a single sentence opposing summary judgment of non-infringement on the '301 patent when it was actively arguing the opposite.[3]

PACT contends it did not need to say anything in the original motion because it "is hardly a gray area" that all apparatus claims are

---

[3] Intel opposed PACT's summary judgment motion in part on the grounds PACT seemed to be trying to read its expert's statements one way in responding to Intel's affirmative defenses, and another way for infringement (at least for the '047 patent). PACT's arguments, however, disavowed any suggestion its expert was opining that mere capability was enough to practice the '301 patent's claims. Appx11681-11684. The district court ultimately deemed PACT's motion moot.

directed to capability (BlueBr.35 n.6), but as PACT itself previously argued (Appx11681-11684), the law is not so clear-cut. *See infra* pp.42-45. Regardless, that was not PACT's argument. Indeed, in the body of its arguments and headings (at summary judgment and its first motion for reconsideration), PACT referred only to what the accused products *do* or *did*, not what they "*could be*" adapted to do. Appx14682-14685; Appx27483-27484; *see also* Appx14679.

This is not a case where PACT merely cited new cases in support of a previously-asserted argument, as in *Walden v. Gen. Elec. Int'l, Inc.*, 119 F.4th 1049, 1057 n.3 (6th Cir. 2024) and *ECB USA, Inc. v. Chubb Ins. Co. of N.J.*, 113 F.4th 1312, 1320-21 (11th Cir. 2024). PACT's second motion for reconsideration raised new arguments in support of a new infringement theory based on a newly minted reading of what the claims require. Whereas PACT previously argued that it had "showed that Intel's chips sequentially process*ed* data," Appx27483, in its second reconsideration motion it pivoted to arguing that it was enough that "an accused device can be infringing as long as it is capable of infringing," Appx27797, and that this was "what Dr. Conte showed in his report," Appx27798. But a motion for reconsideration is not "an opportunity to

relitigate the case," *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011), which is why a plaintiff cannot use reconsideration to "change[] theories and tr[y] again." *Bhatnagar v. Surrendra Overseas Ltd.,* 52 F.3d 1220, 1231 (3d Cir.1995); *Prusky v. Prudential Ins. Co. of Am.*, 44 F. App'x 545, 548 n.1 (3d Cir. 2002). That is precisely what PACT tried to do here.

*Golden Bridge* is on point. There, a patentee accused one feature in a device of satisfying a disputed claim term in its summary judgment opposition but changed to accusing a different feature in its motion for reconsideration. 758 F.3d at 1367. This Court held "[a]n argument made for the first time in a motion for reconsideration comes too late and is ordinarily deemed waived," and that it is "improper" to "present[] a new infringement theory on reconsideration." *Id.* at 1369. A party's "infringement contentions cannot be a moving target" that shifts with every adverse ruling. *Id.* Summary judgment is not a "dress rehearsal or practice run" for a party to try out some arguments before settling on its actual infringement theory in a later reconsideration request. *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007).

The appellate waiver cases that PACT relies on do not suggest otherwise. BlueBr.34-35. Those cases confirm that on appeal, like in a

39

reconsideration motion, a party "cannot … raise a new legal ground as the reason it should win." *ECB*, 113 F.4th at 1320-21; *see Walden*, 119 F.4th at 1057 n.3 (distinguishing "new authorities" from "new arguments"); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008) (a party forfeits "a new issue" it raises for the first time "on appeal"). PACT's belated capability theory is a separate legal ground that turns not only on evidence regarding the accused products but also on whether the '301 patent's claims encompass capability (as opposed to requiring actual performance). *See INVT SPE LLC v. ITC*, 46 F.4th 1361, 1371 (Fed. Cir. 2022). Asserting this new theory is not equivalent to using new arguments in support of a prior claim construction, but rather resembles advancing a new construction. *Cf. WSOU Invs. LLC v. F5, Inc.*, 2025 WL 1135207, at *4 (Fed. Cir. Apr. 17, 2025) (collecting cases).

Despite PACT's suggestion, it had no due process right to raise new arguments and issues for the first time in its second motion for reconsideration. BlueBr.35-36. Nor did PACT raise any due process objections below. PACT had "a meaningful opportunity" to respond to Intel's motion for summary judgment in its opposition brief, *Custin v.*

*Wirths*, 850 F. App'x 147, 150 (3d Cir. 2021), and every incentive to clearly articulate its infringement theories and evidence. After all, summary judgment is the "'put up or shut up' moment in a lawsuit." *Gillispie v. RegionalCare Hosp. Partners Inc.*, 892 F.3d 585, 594 n.45 (3d Cir. 2018). But PACT did not make a capability argument. PACT's litigation choices do not create a due process problem. The Rule 56 process adequately protected PACT's due process interests. *See DeLong v. Aetna Life Ins. Co.*, 232 F. App'x 190, 193 (3d Cir. 2007); *Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988).

It makes no difference that PACT apparently first decided to raise a capability argument after reading the opposition to PACT's first motion for reconsideration. BlueBr.35. By definition, any statements Intel made opposing reconsideration could have had no impact on the district court's original summary judgment ruling. That further distinguishes precedents relating to PTAB procedures governed by the Administrative Procedure Act, where the parties' arguments preceded the Board's original decision. *See ParkerVision, Inc. v. Vidal*, 88 F.4th 969, 980 (Fed. Cir. 2023); *Axonics, Inc. v. Medtronic, Inc.*, 75 F.4th 1374, 1384 (Fed. Cir. 2023). Those decisions do not remotely suggest raising new infringement

theories in a (second) motion for reconsideration is ever permissible. Moreover, PACT is wrong to suggest the district court's rules at the time did not allow replies, BlueBr.35-36; they only "discourage[d] any replies or sur-replies that repeat or rehash previous arguments." Appx35722.

Invoking "due process" does not give PACT a free pass to advance one infringement theory, and then when Intel pointed out PACT's evidence did not support its theory, try a new one. The district court had no obligation to consider a new argument raised in a second request for reconsideration, and did not abuse its discretion in declining to do so.

**B.    PACT Has Not Shown The Challenged Claims Encompass Mere Capability.**

PACT's arguments not only rewrite what occurred below, but also fundamentally misunderstand the law governing when claims cover capability. Contrary to PACT's arguments on appeal (but consistent with its arguments below), not all apparatus claims are directed to mere capability. BlueBr.35 & n.6. For example, in *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 994 (Fed. Cir. 2009) and *ViaTech*, 733 F. App'x at 551, this Court held the relevant apparatus claims required more than mere capability. "Whether infringement requires actual performance of the recited function by the accused device

42

depends on the claim language," *INVT*, 46 F.4th at 1371, yet PACT never raised any such claim construction issue. For good reason: The critical legal question is whether the claims recite "capability" or "configuration," *ParkerVision*, 903 F.3d at 1362, and these claims are directed to a configuration.

Although the Court should not reach this issue, the relevant claim language recites "a plurality of data processing elements adapted for programmably processing sequences." This claim language thus requires a device with *processing elements* that are *actually adapted for* processing sequences of data, not that the processing elements are merely capable of processing sequences of data. This conclusion not only flows directly from the claim language, but it is also supported by the specification. The '301 patent focuses on "reconfigurable data processing units," Appx111(1:28-36), which use arrays of logic cells that purchasers can reconfigure after manufacture to perform different computational tasks. Appx3596; *see* Appx115(10:62); Appx116(11:23-28); Appx111(1:26-36, 2:1-19). Consistent with this description, the claims here are directed to a specific configuration of a data processing element: one "*adapted for*" processing sequences of data.

As PACT itself previously argued (Appx11681-11684), the phrase "adapted to" "generally means … 'configured to.'" *In re Man Mach. Interface Techs. LLC*, 822 F.3d 1282, 1286 (Fed. Cir. 2016) (citing *In re Giannelli*, 739 F.3d 1375, 1379 (Fed. Cir. 2014)). In other words, the claimed devices must be "designed or *configured* to accomplish the specified objective, *not simply that they can be made to serve that purpose.*" *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012) (construing "adapted to" as meaning "configured to"); *see also Bos. Sci. Corp. v. Cordis Corp.*, 2006 WL 3782840, at *2 (N.D. Cal. Dec. 20, 2006) (noting use of the phrase "capable of" in one place supported interpreting "adapted to" to mean "configured to"). This is consistent with what PACT did (and did not) argue in opposing Intel's motion for summary judgment, Appx14685, and its first motion for reconsideration. *E.g.*, Appx27483 ("PACT also showed that Intel's chips sequentially process*ed* data"; "PACT has consistently argued Intel's chips *also perform* sequential data processing"; ""*data is* passed from one processor to another processor"); Appx27485 ("[A] chip *which performs* the claimed limitation does not escape infringement by also performing a non-infringing step …").

Although PACT cites *Finjan*, *Ericsson*, and *Intel* to argue a different conclusion, BlueBr.28-30, none of the claims in those cases required that hardware itself be "adapted for"—*i.e.*, configured for—the claimed function. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1217 (Fed. Cir. 2014) ("a processor *for arranging information*"); *Intel Corp. v. U.S.I.T.C.*, 946 F.2d 821, 831 (Fed. Cir. 1991) (claim requires an integrated circuit comprising a "programm*able* selection means"); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1205 (Fed. Cir. 2010) ("a logical engine *for preventing* execution", "a communications engine *for obtaining* a Downloadable", or "a linking engine ... *for forming* a sandbox package").

Although it is immaterial given PACT's forfeiture of the capability theory, PACT also lacks any *evidence* that the accused Intel microprocessors are even capable of processing sequences of data (rather than instructions). At most, Dr. Conte purported to suggest (solely in discussing the now-invalidated '047 patent) that one processing core outputs data and sends it to other cores for purposes of the '047 patent's "sequentially processing data" limitation. Appx24314-24316(¶¶290-291). But as the district court held (in a decision PACT does not challenge on

45

appeal), the "programmably processing sequences" term in the '301 patent is directed to *what* the cores process not their *output*. Appx7. Thus, even if PACT had preserved a capability argument, there is no genuine issue of *fact* regarding Intel's non-infringement of the '301 patent.

## II. The District Court Correctly Granted Summary Judgment Of Non-Infringement Of The '593 Patent.

The Court should likewise affirm the district court's summary judgment ruling that the accused products do not infringe the asserted claims of the '593 patent. Each of those claims requires that "at least some of the data processing cores" must "include[] a physically *dedicated connection* to at least one physically assigned one of the plurality of memory units." The district court correctly construed the "dedicated connection" claim term, and applying that construction, rightly concluded there is no genuine dispute of material fact that the accused products do not have the necessary dedicated connection. Even under PACT's construction of that term, no reasonable juror could find infringement because there simply is no dedicated connection between the processing cores and memory units in Intel's microprocessors.

**A.**  **The District Court's Construction Of "Dedicated Connection" Is Supported By PACT's Interpretation Of That Term During *Ex Parte* Reexamination, And Correct.**

The district court properly construed "dedicated connection."  To begin, PACT repeatedly mischaracterizes the district court's construction of that term as meaning "*all segments* of the end-to-end path between a processing core and its paired memory unit are uniquely devoted to communications between those two units."  BlueBr.4, 23, 37.  PACT cites Appx36, which does not contain the court's construction.

The district court's actual construction of "dedicated connection"— which appears at Appx43—is much simpler than PACT suggests and does not mention "all segments," "a segment," or "segments" at all. Rather, it holds a "dedicated connection" is "a connection designed to directly interconnect a particular device to a particular memory via a link inaccessible to other devices and memories."  Appx43.  In other words, a "dedicated connection" is defined by the devices it connects (a particular processing core and a particular memory unit), and the devices it excludes from that connection (any other cores and memories), rather than the segments it contains.  That construction, unlike PACT's

47

proposed construction, is consistent with the plain claim language and the prosecution history.

### 1. The District Court's Construction Is Supported By The Plain Language Of The Claims.

The plain claim language supports the district court's construction, not PACT. Claim terms "are generally given their ordinary and customary meaning." *Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*, 824 F.3d 999, 1002 (Fed. Cir. 2016). For that reason, claim construction begins "with the words of the claim itself as an ordinary artisan would have understood them at the time of the invention." *Wi-LAN USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1381 (Fed. Cir. 2016); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).

The claims here require that each data processing core "include[] a *physically dedicated connection to*" a particular memory unit. Appx152(12:38-44); Appx153(13:45-54). It is undisputed that "dedicated" in this context means "made or designed to interconnect exclusively." *See* Appx33955-33956; Appx33969-33971. The claim language itself further spells out that the connection is *from* the processing core *to* the memory, and that this physical connection is exclusive to that core and that memory—meaning no other core and no other memory communicate over

that connection.  Simply put, "dedicated … to" is the opposite of "shared." This plain and ordinary meaning is mirrored in the district court's construction, which emphasizes the "link" joining the two claimed devices and the "inaccessib[ility]" of that link to other devices, thereby making the connection a dedicated one.  Appx43.

By contrast, PACT's proposed construction is inconsistent with the claim language.  In PACT's view, a connection can be "dedicated" even when portions of it are "shared," because the claims merely require that "at least one segment"—as opposed to "all segments"—of the end-to-end "connection" from a processing core to a particular memory be "uniquely devoted" to that "processing core-memory unit pair."  BlueBr.24.  PACT's attempt to slice and dice the "connection" in search of any miniscule "segment" somewhere between a processing core and a particular memory unit that may be "exclusive" of other devices contradicts the claims' text requiring that the "data processing core[] *includes*" a "physically dedicated connection," which the claims further state runs "*to*" the assigned memory unit.  Yet, under PACT's approach, any supposedly exclusive segment anywhere along the connection between the processing core and assigned memory could be the claimed

"physically dedicated connection," even if it neither touched (much less was "include[d]" in) the processing core and did not itself extend "to" the corresponding memory. That makes no sense. Indeed, PACT's proposed construction on appeal conflicts with how its own technical expert interpreted the claimed "connection:" as being the *entire path* "from" a processing core "to" a given memory unit. *See* Appx14743(¶57).

PACT's sole argument as to how its construction allegedly fits with the claim language is to say the claims merely recite "a" dedicated connection. PACT contends, without much explanation, that this means any one of multiple "segments along the end-to-end path between a processing core and its paired memory unit" can serve as the claimed "dedicated connection." BlueBr.39. But "the critical issue here is not whether 'a' means one" or more, *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 886 (Fed. Cir. 2008), but rather is what "a" relates to in the claims.

As a matter of basic grammar, the article "a" modifies "dedicated connection." It indicates there must be at least one dedicated connection running from a processing core to an assigned memory unit. The article "a" does not refer to one or more "segments" or portions *within* a

"connection." Nor could it at least because the word "segment"—or even the concept of a "segment" or portion of a path—does not appear in the claim, let alone the relevant limitation (though PACT subsequently made clear the claimed "dedicated connection" excludes paths with "shared portions," *see infra*).

To the extent PACT suggests each individual segment is itself a connection, that makes no sense. An individual segment, in isolation, cannot be the claimed "dedicated connection," because it does not connect *from* a processing core *to* a memory unit. The claimed "dedicated connection" requires the entire end-to-end path. Moreover, PACT's segment-based approach (where a single connection is sliced into segments and one or more but not necessarily all segments are "dedicated") is hopelessly at odds with the ordinary understanding of a "connection" that is "dedicated" to linking two particular devices to each other as claimed. Introducing shared elements into a connection precludes it from being *dedicated* exclusively to connecting two devices.

The district court recognized this as well. Although PACT asserts that "the district court relied entirely on (alleged) prosecution history disclaimer," BlueBr.39, 42, that assertion is belied by the summary

judgment order.  The district court rejected PACT's claim construction, which focused on the supposed "connective elements" along a path between a processing core and memory unit, as not "follow[ing] logically from the plain language of the claims."  Appx43 (citing Appx34342).  The claim language instead logically compels a construction that requires connecting a particular device to a particular memory via a link inaccessible to other devices and memories.  *Id.*

### 2. The District Court's Construction Is Supported By The Prosecution History, Including PACT's Statements During *Ex Parte* Reexamination.

PACT's representations to the Patent Office during *ex parte* reexamination of the '593 patent both confirm and compel the district court's construction of "dedicated connection" in two ways.  *First*, they constitute a disclaimer.  *Second*, regardless of disclaimer, PACT's statements inform the meaning of the claim term.  Either way, the prosecution history shows a "dedicated connection" is one that physically connects a processing core to a memory via a link inaccessible to others without any "shared portions."  *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017) (concluding patentee's prosecution history statement was relevant to interpreting a

claim term, whether "viewed as a disclaimer or as evidence relevant to the proper claim construction").

**Disclaimer.** Starting with disclaimer, it is "a fundamental precept" of claim construction that patentees cannot "recaptur[e] through claim interpretation specific meanings disclaimed during prosecution," including reexamination proceedings. *Aylus*, 856 F.3d at 1359-60. Disclaimer attaches whenever a patentee makes a "clear and unmistakable" statement disavowing claim scope. *Id.* at 1359. Here, the district court correctly determined that PACT explicitly disclaimed from the scope of the claimed "dedicated connection" any path from a core to a memory unit that is accessible by another device. Appx41-43.

To overcome a rejection based on the Fu prior art reference during reexamination, PACT represented that the link between a core and a memory unit is not a "dedicated connection" merely because it is "direct" and "uninterrupted." Appx33955. Instead, PACT made clear that a "dedicated connection" must also be "specifically devoted to connecting" a particular processing core with a particular memory and "thus not to other units." Appx33956. Thus, other than the particular core-memory pair, no "other devices [can] also share that connection." *Id.* As PACT

told the examiner, "a communication line[] that is *shared* by a multitude of different devices cannot be a 'dedicated' connection" of one particular processing core to its assigned memory. *Id.*

Applying those clear statements to the Fu prior art reference, PACT represented that "the connection between processor 202N and memory 214A is not a dedicated connection" because multiple processing cores access memory 214A using a "shared portion" of the path. Appx33957. PACT clearly explained that, because *part* of the path connecting a paired processing core and memory in Fu included portions that were shared— "including the shared portion of the memory data path 364a and the shared line 216A"—that processor-to-memory connection could not constitute a "dedicated connection" within the meaning of the claims. *Id.* To illustrate the point, PACT added a black circle to the compilation of Fu figures shown below (which Intel has color-coded on appeal) and represented that this particular portion of the end-to-end path from processing core 202N (green) to memory 214A (yellow) precludes the connection between those two device units from being dedicated.



FIG. 2
FIG. 8
FIG. 13

Appx33957. Using the annotated figure as a visual aid, PACT called out "the *shared portion* of the memory data path 364a" (such as the purple portion) and "the *shared line* 216A" (blue) leading into the memory as being used by multiple processing cores. *Id.* Using PACT's parlance on appeal, these shared "segments" (and the similar shared portions for the other memories), according to PACT, meant none of "the connections between any of the processors 202 and any of the memories 214" in Fu were a "dedicated connection." *Id.* Were there any doubt, PACT further distinguished between a "dedicated connection" and a path where "all of

55

the processors" were "using *at least one* shared line," which "cannot be considered dedicated." Appx33958.

This is compelling "evidence of how the [Patent Office] and the inventor understood the ['593] patent" that clearly and unmistakably surrendered claim scope. *Aylus*, 856 F.3d at 1360, 1362; *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). Each statement "narrow[ed] the meaning of the claim," *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013), first by clarifying a dedicated connection must link one processing core to a specific memory and then by unequivocally stating a connection is not dedicated if the connection includes a "shared portion" that "other processors" also "use." Appx33957. Indeed, that is exactly how the examiner understood PACT's arguments: that Fu does not disclose a "dedicated connection" because "a *portion* of the connection between the core and the memory is a shared connection. Hence the connection is not a dedicated connection." Appx33971 (a dedicated connection is one "designed to directly interconnect exclusively").

PACT's statements to save the validity of its patent leave no room for a construction that treats any connection with "at least one segment

of the end-to-end path [] uniquely devoted to communications between the paired elements" as a dedicated connection.  BlueBr.37.  If that were enough, the connection between processing core 202A and memory 214A depicted in Fu's figures would be a dedicated connection because at least the portion of horizontal signal path 364A annotated in red above is uniquely devoted to communication between that core and that memory. *See* Appx33957; Appx30523(fig.2); Appx30532(fig.8); Appx30536(fig.13). Yet PACT told the Patent Office that "the connections between any of the processors 202 and any of the memories 214" are "*not* a dedicated connection," based merely on a "shared portion."  Appx33957.

None of PACT's attempts to explain away its disclaimer has merit. PACT first contends that it never addressed what constitutes a "connection" during the reexam but instead only defined what "dedicated" means, and thus left open the possibility that a "dedicated connection" refers to merely one segment of an end-to-end path having multiple segments.  BlueBr.43.  The prosecution history tells a different story.  In describing Fu, PACT explained "a processor 202N (Fig. 2) is able to connect to a memory 214A (Fig. 2)" by a collective series of lines, and said "*[t]his connection* between processor 202N and memory 214A" is

"not a dedicated connection *from the processor* 202N *to the memory* 214A." Appx33956-33957. Immediately after that statement, PACT identified exemplary portions of the end-to-end path that are accessible by multiple processing cores and stated, "[t]herefore, *the connection* between processor 202N and memory 214A is not a dedicated connection." Appx33957. The only reasonable conclusion from these statements is that the claimed "connection" is the full end-to-end path from the processing core to the memory.

PACT next argues the surrounding context shows PACT only meant to distinguish computer chips where "all segments" between a processing core and its paired memory "are shared." BlueBr.44-45. That cannot be right. Again, not all segments between processing core 202A and memory 214A in Fu are shared, yet PACT told the Patent Office that the path between those elements is not a dedicated connection. *See* Appx33957. If more were needed, PACT circled only a "portion" of the end-to-end path between processing core 202N and memory 214A and said this "shared portion" was enough to preclude Fu from disclosing a "dedicated connection." Appx33957 (discussing the "shared portion[s]" of Fu's end-to-end path). PACT thus represented it is enough to preclude a

"dedicated connection" that only some portions (or segments) of the end-to-end path are shared, which the public is entitled to rely on. *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006).

Other aspects of the prosecution history confirm the district court correctly understood the breadth of PACT's disclaimer. In its first reexam submission, PACT argued Fu did not disclose a "dedicated connection" because multiple cores could access memory 214A over "shared portion of the memory data path 364a," circling in red only one small segment of the end-to-end path in Fu's figures. Appx34093-34094.



Appx34094. The examiner initially found that argument insufficient

because PACT had not defined "dedicated connection" as "exclusive to any one core." Appx33940; Appx33932 ("a direct connection exists between each memory and each processor").

PACT doubled down. In its next response, PACT argued a "dedicated connection" was not merely a "direct" one, but must "*exclusively*" link one particular processing core to one assigned memory without access by "other units"—an exclusive link PACT asserted Fu does not have. Appx33955-33957 (arguing "dedicated" was synonymous with "dedicated exclusively to a purpose or use" and "is not shared"). This time, PACT still circled only a "portion" of the end-to-end path in Fu's figures to demonstrate its point, and expanded its circle to identify several examples of "shared portion[s]" along the end-to-end path. Appx33957. The examiner then accepted PACT's disclaimer and concluded Fu did not disclose a "dedicated connection" because "*a portion* of the connection between the core and the memory is a *shared* connection." Appx33971 ("Hence, the connection is not a dedicated connection ….").

This history is confirmed by PACT's own opposition to Intel's renewed summary judgment motion in the district court, in which PACT

argued it had overcome Fu by showing "a substantial *portion* of the connection in Fu" was shared with multiple processing cores. Appx34344. PACT's current construction on appeal, which encompasses any unshared "segment" or portion of the connection between a core-memory pair, therefore is inconsistent not only with its reexam disclaimer but with the position it took in the district court.[4]

Faced with its past statements, PACT resorts to playing grammatical games. It contends the word "and" in the statement below from the prosecution history "convey[s] that the presence of just one shared segment would not differentiate Fu," BlueBr.45:

> This connection between processor 202N and memory 214A … is certainly not a dedicated connection … because, for example, processor 202A, like processor 202N, also connects to the same memory 214A via a connection path that also includes horizonal signal path 364A, channel 210A, memory controller 260A of MUC 208A, and line 216A.

Appx33956-33957. But this statement merely highlights all the shared segments that each demonstrate the connection between processing core 202N and memory 214A is not "specifically devoted to connecting those

---

[4] However, "substantial[ity]" was not in fact PACT's argument to the examiner, nor a basis for the examiner's allowance. Appx34344; Appx33971.

two units, and thus not to other units." Appx33956. It does not, as PACT now contends, establish an arbitrary rule that one shared segment is permissible, but four shared segments is too much. PACT's revisionism is also inconsistent with other statements it made in reexamination. E.g., Appx33958 ("at least one shared line" means a "connection cannot be considered dedicated"); Appx34094 (referring only to "the shared portion of the memory data path 364a"). PACT's disclaimer had nothing to do with how many segments of a path are shared, but rather whether the connection *from* the core "to" the memory is exclusive to that core-memory pair.

Nor is there any significance to PACT's use of the word "and" rather than "or." BlueBr.70. The word "or" would make no sense in context: The connection path between processing core 202N and memory 214A in Fu's Figure 2 is not a choose-your-own adventure, where you choose whether a signal from the core to the memory will travel through one of the horizontal signal path, the channel, the memory controller, *or* the line. It is a defined path that includes *all those elements*. PACT merely identified multiple "shared portions" along that defined path, any one of

which was sufficient to take Fu's path outside the scope of the claimed "dedicated connection."

The prosecution history here thus looks nothing like that in *Avid Technology, Inc. v. Harmonic, Inc.*, 812 F.3d 1040 (Fed. Cir. 2016). In *Avid*, the patentee used "and" to exclude a "central controller" from the scope of the claims only if it performed both of two discrete functions. *Id.* at 1046. Here, in contrast, the statement PACT latches onto in the prosecution history is not describing required functionality a dedicated connection must perform. Instead, it merely identifies each portion of the end-to-end path in Fu that is in fact shared. And it did so to illustrate PACT's larger point that a dedicated connection must "be devoted to connecting [] two units" to the *exclusion* of all others. Appx33956.

The examiner indicated he too understood PACT carved out from the scope of the claimed "dedicated connection" any end-to-end path in which "a *portion* of the connection between the core and the memory is a shared connection." Appx33971. The examiner's statement reflects how a skilled artisan would have understood PACT's disclaimer. *See Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999) (concluding an examiner's remarks in allowing claims confirmed the patentee's

63

disavowal of claim scope); *St. Clair Intell. Prop. Consultants, Inc. v. Canon Inc.*, 412 F. App'x 270, 276 (Fed. Cir. 2011).

Although PACT discounts the examiner's statement as a "unilateral interpretation" that does not bind PACT, BlueBr.46-47, the disclaimer arises from PACT's own affirmative statements during reexamination. These facts are thus nothing like those in *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005) and *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373-74 (Fed. Cir. 2003), where the examiner statements regarding a disputed claim term were unprompted and did not arise from any statement by the patentee itself. Further, unlike in *Sarif Biomedical LLC v. Brainlab, Inc.*, where the Board made a broad statement in an *inter partes* review decision about a §112 issue that was beyond its statutory authority, the examiner's statement here is not "dicta," but rather the basis for finding Fu did not render the '593 patent claims unpatentable. 725 F. App'x 996, 1000 (Fed. Cir. 2018).

PACT also contends it had no reason to disclaim a mere portion of the path because "the entire end-to-end path in Fu is shared." BlueBr.47. But PACT did not make that argument during the reexam, and whether

64

PACT may have surrendered more claim scope than it needed to overcome Fu is irrelevant.  *See Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1144 (Fed. Cir. 2021) ("[T]he patentee is held 'to the actual arguments made, not the arguments that could have been made.'"); *Infinity Comput. Prods., Inc. v. Oki Data Ams., Inc.*, 987 F.3d 1053, 1061 (Fed. Cir. 2021) (same).  There is a good reason PACT did not make this argument until now: it is simply not true that the entire end-to-end path for every connection in Fu is shared.  *See supra* pp. 56-58 (*see* Appx33957).

**The Prosecution History Also Reinforces the Ordinary Meaning of a "Dedicated Connection."**  Disclaimer aside, PACT's statements to the examiner "inform the meaning of the claim language by demonstrating how the inventor understood the invention." *Northpeak Wireless, LLC v. 3COM Corp.*, 674 F. App'x 982, 986 (Fed. Cir. 2016) (quoting *Phillips*, 415 F.3d at 1317); *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1312 (Fed. Cir. 2017).  And PACT's statements simply confirm what the claim language says: The link from a particular processing core to an assigned memory unit must be exclusive of (and thus not shared by) any other processing cores and

memory units.  The Court thus need not find a "disclaimer" for PACT's statements to be relevant because the claim language and the prosecution history perfectly align—there is no inconsistency.  *See MasterMine*, 874 F.3d at 1312; *Canopy Growth Corp. v. GW Pharma Ltd.*, 2023 WL 3048243, at \*5 (Fed. Cir. Apr. 24, 2023).

### 3. PACT's Arguments Based On The Specification Fail To Show Any Error In The District Court's Construction.

PACT's alternative, segment-based construction ultimately depends on two figures in the specification—Figures 6a and 7 of the '593 patent—which PACT argues are excluded under the district court's construction.  BlueBr.39-42.  PACT argues these figures show only "a single input" and "single output" into a processing core and memory unit for any given type of information, and therefore require at least some shared portion of the communication path from any processing core to a given memory unit, taking them outside the scope of the claims as construed by the district court.  *Id.*

This argument does not get PACT very far.  As an initial matter, neither figure purports to be an embodiment of any claims, rather than a component within other embodiments *of the original claims* of the

66

original application.  Appx25179-25182.  Whatever way the claims are construed, Figures 6a and 7 would not be an embodiment.  More fundamentally, however, given the divergence of the claim language in this follow-on continuation from the specification it relies on for priority, the '593 patent does not include *any* example or embodiment where the end-to-end path between a processing core and memory contains *no* shared segments.  Rather, every connection in the logic cell arrays of Figures 1 and 2 incorporating the processing cores of Figures 6a and 7 includes shared segments.  *See* Appx136-137.

Given the history of this patent, that should come as no surprise.  The claims of the '593 patent are an after-the-fact attempt to capture microprocessors (which have fixed architectures) rather than the reconfigurable processors with flexible architectures described throughout the specification.  *See* Appx148(3:9-31) (emphasizing reconfigurable architectures); Appx150(7:60-8:20) (similar); Appx151(9:34-57) (similar); *see also TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008) ("Our precedent is replete with examples of subject matter that is included in the specification, but is not claimed.").  Bringing this mismatch into stark

relief, one of the named inventors, Martin Vorbach, pushed back on the idea that he "should extend the patent portfolio to" cover "microprocessor[s]," stating "the patents" were "not written" to be extended from reconfigurable FPGAs to microprocessors. Appx35732-35733; *see* Appx29478(¶94); Appx35808; Appx35811. Tellingly, the terms "data processing cores," "dedicated connection," and "secondary bus path" appear nowhere in the '593 patent other than the claims. Appx147-153. Any mismatch between the claims and specification is not a claim construction issue, but rather reflects PACT's efforts to claim what it did not invent.

Regardless, it makes no difference whether Figure 6a or Figure 7 are covered by the district court's construction. PACT disclaimed those (and other embodiments) as the price for preserving its patent and cannot now "escape [its] representations when trying to show infringement." *Wi-LAN*, 830 F.3d at 1390. "Limitations may be construed to exclude a preferred embodiment if the prosecution history compels such a result." *N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1345-46 (Fed. Cir. 2005); *see UShip Intell. Props., LLC v. United States*, 714 F.3d 1311, 1315-16 (Fed. Cir. 2013). The district court correctly enforced

PACT's disclaimer and adopted a construction "consistent with the scope of the claim surrendered." *Biogen*, 713 F.3d at 1095.

> ## B. Under The District Court's Correct Construction Of "Dedicated Connection," There Is No Genuine Dispute Of Material Fact That The Accused Products Do Not Infringe The Asserted Claims Of The '593 Patent.

Applying its construction, the district court correctly held that no reasonable juror could find the accused Intel products have the claimed dedicated connection. Appx43-45. It is undisputed that every processing core in the accused products is connected to and can access every LLC memory slice. Appx33657-33662(¶¶14-18); Appx33835; Appx34144. It is also undisputed that "[a]ll accesses to the LLC slice are performed by the [accused product structure] within the [accused product structure]." Appx33673-33674(¶28); Appx34182. Just like "shared line 216A" in the Fu prior art reference, Appx33957, there is at least a "shared portion" in the connection that every processing core must use to access the LLC memory slice through the [accused product structure] in the accused Intel products. Appx33676-33680(¶31); Appx34152; Appx33835; Appx33985-33986(¶180); Appx33822-33824(¶¶101-102); *see* Appx33670-33673(¶¶26-27); Appx33737-33741(¶¶69-70, 75); Appx34182. There is consequently no connection between any processing core and its co-

located LLC memory slice that ***excludes*** access by other processing cores. Appx33673-33682(¶¶28-32); Appx33835; Appx34152; Appx34182.

Despite that uncontroverted evidence, PACT argues that a genuine factual dispute remains "concerning where the path begins and ends" in the accused products. BlueBr.51. In PACT's view, "any shared segments" in those products "are part of the so-called interface[s] of the processing core or memory unit" that are within the core and memory. BlueBr.51-52. That argument fails for three independent reasons.

*First*, PACT's dispute over "where the path begins and ends" is foreclosed by the applicable claim construction. BlueBr.51. PACT's purported factual dispute relies on a purportedly exclusive "connection" from one alleged interface (the [accused product structure]) to another alleged interface (the [accused product structure]) in the accused products, which is situated between but falls short of both the processing core and its co-located LLC memory slice. BlueBr.51-52; *see* Appx34182. PACT's attempt to claw back an interpretation of "dedicated connection" that does not actually extend end-to-end *from* the processing core "*to*" the assigned memory unit does

not comport with the plain claim language nor with PACT's statements during reexamination.[5]  *See* §§ II.A.1–II.A.2, *supra*.

*Second*, even assuming the [accused product structure] and [accused product structure] were interfaces that serve as ports of access to the cores and memory (as PACT argues), PACT conceded during reexamination that interfaces are part of the end-to-end path, not part of the end device units.  The Fu prior art reference discloses that MCU-IFU 312 is an "interface unit" used "to access" the memory and MCU 204 is an access point that "control[s] access" to the memory.  Appx30667(2:63-65); Appx30669(5:45-48); Appx30673(14:48-50); Appx30676(19:6-15); *see* Appx30536; Appx33722-33723(¶26).  The annotations PACT made to Fu's figures in the reexam literally circled both interface MCU-IFU 312 and access point MCU 204 as part of the shared "memory data path" that precluded Fu from disclosing a "dedicated connection."  Appx33957; *see* Appx33955 (identifying "interface unit 300, 310, 312" as part of "a same line" that barred Fu from disclosing a "dedicated connection").

---

[5]  For the same reason, the claim construction also forecloses PACT's analogy to two travelers who take different paths to Rome but use the same final steps to reach the city gates.  BlueBr.38.  Under the district court's construction, which is consistent with PACT's statements during the reexam, those travelers must use different gates or separate steps.

PACT cannot take the opposite position now to try to manufacture a factual dispute. *See Wi-LAN*, 830 F.3d at 1390. That is especially true given PACT's own expert does not agree with PACT's position. In his report, Conte characterized the "CBos, including the [accused product structure] and [accused product structure]," in Intel's microprocessors as being "part of the claimed bus system" that interconnects the processing cores and LLC memory slices, not as part of the cores or memory. Appx33979(¶155). There is thus no genuine factual dispute.

*Third*, PACT's argument is self-defeating. PACT admitted the C-Bo is the structure that connects the processing cores to the LLC slices in the accused products. Appx34258-34260(¶22). If interfaces are not part of the claimed "dedicated connection" and the C-Bo "is an interface," BlueBr.51, then under PACT's theory, there is no claimed "connection" at all between the processing cores and LLC slices in the accused products. Without the claimed path, Intel's products cannot infringe. *See Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1319 (Fed. Cir. 2015) ("To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly."). PACT accordingly cannot prevail under *either* the district court's reasoning *or*

72

PACT's latest theory. Under either approach, the district court's summary judgment ruling should be affirmed.

### C. Summary Judgment Of Non-Infringement Remains Appropriate Even Under PACT's Erroneous Construction Of "Dedicated Connection."

Although the Court need not reach this issue if it affirms the district court's construction, no reasonable juror could find the accused products infringe the '593 patent claims even under PACT's construction, which permits a single exclusive "segment" to constitute the claimed "dedicated connection." *See PSN Ill., LLC v. Ivoclar Vivadent, Inc.*, 525 F.3d 1159, 1166-68 (Fed. Cir. 2008) (affirming summary judgment of non-infringement after changing claim construction). PACT fails to identify any evidence actually demonstrating a genuine dispute of material fact even under its theory. BlueBr.47-50. PACT's argument hinges on three Intel documents and its expert's testimony regarding those documents. PACT contends those documents show processing cores communicate with their co-located LLC memory slice on a path separate from the path used by other processing cores to communicate with that same LLC slice, because "the [accused product structure] is [accused product layout]." *Id.* (citing Appx34182; Appx34187; Appx33740; Appx33755; Appx33762).

But [accused product layout] the [accused product structure] does not mean the processing cores in the accused products communicate with their co-located LLC memory slice using a separate, exclusive segment of the communication path. Rather, the "segment" of the accused products that PACT identifies as a "dedicated connection" is still shared by every processing core. Again, it is undisputed that every processing core in the accused products can communicate with and access any given LLC memory slice. Appx33657-33662(¶¶14-18); Appx33835; Appx34144. As illustrated in the following figure from an Intel architectural specification relating to the accused microprocessors, for any given LLC memory slice (blue), the nearest processing core communicates with that LLC slice using a path from the [accused product structure] to the [accused product structure] (green) and other processing cores communicate with the same LLC slice using a path over the [accused product structure] (red). Appx33670-33673(¶¶26-27); Appx34182.



internal design of accused products

Appx34182 (color-coded by Intel, with PACT's annotation at BlueBr.50).

This diagram only makes sense if both communication paths share the "segment" PACT circled in red (as purportedly "dedicated" to connecting a processing core with its co-located LLC slice). PACT's red circled portion in the figure above is therefore, by definition, not an exclusive segment.

This incontestable fact is further confirmed by another Intel document, which zooms in on the  that PACT circled in red—but which PACT conspicuously omits from its argument. Appx34152; *compare* Appx34182 (labeling the "" in Fig. 2), *with* Appx34188

75

(labeling the "accused product structure" in Fig. 1). The wiring diagram in this document shows that the path inside the accused product structure from a core to its co-located LLC slice is the same path that any other core would use to communicate with that LLC slice. (The line from the co-located core is labelled "accused product structure," and the other processor cores communicate over the line labeled "accused product structure." Both are colored yellow. They ultimately accused product layout, sharing the single yellow line circled in red.)



internal design of accused products

Appx33822-33823(¶101); *see* Appx33676-33680(¶31); Appx34152. Thus, there is no separate dedicated path inside the accused product structure from an LLC

slice to its co-located core. *See* Appx33822-33824(¶¶101-102) (Intel's expert); Appx33984-33986(¶¶179-181) (PACT's expert).

Finally, despite PACT's suggestion, there is no inconsistency between the district court's first and second summary judgment decisions, much less one that would preclude affirmance. BlueBr.48. The record simply changed between the two rulings. In the first summary judgment decision, the district court concluded a factual dispute existed as to whether the C-Bo was part of the communication path to the LLC memory slice or was merely "an interface" or "access point" that potentially might be treated as part of the memory itself. Appx8-9; *see* Appx14744-14748(¶¶59-62). After that decision, PACT told the Patent Office there is nothing special about interfaces, identifying interfaces as examples of (impermissible) shared paths. *See* Appx33955-33957 (treating interface unit 312A as part of the shared path in Fu); Appx33722-33723(¶26). A shared path within an interface means a connection is not dedicated to connecting a processing core and a memory in the way the '593 patent requires. *Id.* The previous dispute over whether the [accused product structure] (and [accused product structure]) are separate elements or merely interfaces for the processing cores and LLC memory slices thus fell away,

77

given PACT's representations. Presented with that new information, the district court correctly decided no reasonable juror could find the accused products infringe because any communication must pass from the processing core through the C-Bo (including the [accused product structure] and [accused product structure]) to the LLC memory slice using the same shared infrastructure. Appx43-45.

Having taken positions during reexamination that undercut its infringement arguments, PACT cannot fault the district court for taking that new information into account. PACT must accept the consequences of the arguments it made to save the validity of the '593 patent. One of those consequences is that, under either the district court's or PACT's construction, Intel's products do not infringe as a matter of law.

## CONCLUSION

The judgment should be affirmed.

78

May 7, 2025

Respectfully submitted,

/s/ John C. O'Quinn

John C. O'Quinn
Jason M. Wilcox
William H. Burgess
Diva R. Hollis
Stephen C. DeSalvo
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000

Gregory S. Arovas
Todd M. Friedman
Robert A. Appleby
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800

Brandon H. Brown
KIRKLAND & ELLIS LLP
555 California St., 27th Fl.
San Francisco, CA 94104
(415) 439-1400

*Counsel for Defendant-Appellee
Intel Corporation*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7). According to the word processing system used to prepare this document, the brief contains 13,988 words.

/s/ John C. O'Quinn

## CERTIFICATE OF COMPLIANCE WITH RULE 25.1

The foregoing document contains twelve (12) unique words (including numbers) marked confidential, exclusive of the material previously marked confidential in Appellant's Opening Brief to which the foregoing brief responds. *See* Fed. Cir. R. 25.1(d)(1)(C). This number does not exceed the maximum of 15 unique words permitted by Fed. Cir. R. 25.1(d)(1)(A).

/s/ John C. O'Quinn

## CERTIFICATE OF SERVICE

On May 7, 2025, the non-confidential version of this brief was submitted to the Court through the CM/ECF system and thereby served on all parties. All parties consented to electronic service of the

confidential version of the brief, which was served on May 7, 2025, on the

following counsel at the email addresses below.

Sanford I. Weisburst
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 Fifth Avenue
New York, NY 10016
sandyweisburst@quinnemanuel.com

Frederick Lorig
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street
Los Angeles, CA 90017
fredericklorig@quinnemanuel.com

Quincy Lu
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
quincylu@quinnemanuel.com

Mark Y. Tung
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
marktung@quinnemanuel.com

*/s/ John C. O'Quinn*