**Docket No. 2025-1419**

*In the*

# United States Court of Appeals

*For the*

# Federal Circuit

PACT XPP SCHWEIZ AG,

*Plaintiff-Appellant,*

v.

INTEL CORPORATION,

*Defendant-Appellee.*

*Appeal from the United States District Court for the District of Delaware*
*Case No. 1:19-cv-01006-JDW · Judge Joshua D. Wolson*

# CORRECTED APPELLANT'S REPLY BRIEF [NON-CONFIDENTIAL]

Frederick Lorig
Razmig Messerian
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
fredericklorig@quinnemanuel.com
razmesserian@quinnemanuel.com

Quincy Lu
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000
quincylu@quinnemanuel.com

Sanford I. Weisburst
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
(212) 849-7000
sandyweisburst@quinnemanuel.com

Mark Y. Tung
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
(650) 801-5000
marktung@quinnemanuel.com

*Attorneys for Plaintiff-Appellant PACT XPP Schweiz AG*

COUNSEL PRESS INC. · (213) 680-2300 PRINTED ON RECYCLED PAPER

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ........................................................................................1

ARGUMENT ...............................................................................................3

I. ON THE ’301 PATENT, INTEL CANNOT PERSUASIVELY DEFEND THE DISTRICT COURT’S DISREGARD OF EVIDENCE UPON WHICH REASONABLE JURORS COULD FIND THAT INTEL’S ACCUSED PRODUCTS ARE CAPABLE OF PROCESSING DATA.........................................................................3

A. Intel Does Not Support Its Proposed Rule That A Non-Movant Must Cite Legal Authority To Demonstrate Materiality .......................4

B. Intel’s Other Procedural Arguments Were Not Adopted By The District Court And Lack Merit..........................................................10

C. Intel Incorrectly Argues That The ’301 Patent Does Not Claim A Device Capable of Processing Data ...............................................12

II. ON THE ’593 PATENT, INTEL CANNOT PERSUASIVELY DEFEND THE DISTRICT COURT’S CLAIM CONSTRUCTION OR ITS APPLICATION OF THAT CONSTRUCTION TO GRANT SUMMARY JUDGMENT OF NON-INFRINGEMENT.............................14

A. Claim Construction.........................................................................14

B. Absence Of A Clear And Unmistakable Disclaimer ..........................16

C. Under PACT’s Construction, Reasonable Jurors Could Find That Intel’s Products Infringe ..........................................................23

D. Even Under Intel’s Construction, Reasonable Jurors Could Find That Intel’s Products Infringe ..........................................................27

CONCLUSION...........................................................................................33

**Confidential Material Omitted:**

Material redacted at pages 23-29 and 31-33 of the non-confidential version of this brief, and highlighted in the confidential version, concerns substantive details of the accused Intel products. All of that information was marked confidential in proceedings below under the district court's governing protective order.

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*3M Innovative Props. Co. v. Avery Dennison Corp.*,
350 F.3d 1365 (Fed. Cir. 2003) ....................22

*Am. Mfrs. Mut. Ins. Co. v. Am. Broadcasting-Paramount Theatres, Inc.*,
388 F.2d 272 (2d Cir. 1967) ....................5

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................2, 4

*Avid Tech., Inc. v. Harmonic, Inc.*,
812 F.3d 1040 (Fed. Cir. 2016) ....................16, 20, 22

*Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*,
555 F.3d 984 (Fed. Cir. 2009) ....................12

*Bhatnagar v. Surrendra Overseas Ltd.*,
52 F.3d 1220 (3d Cir. 1995) ....................8

*Blystone v. Horn*,
664 F.3d 397 (3d Cir. 2011) ....................8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................4, 9

*ECB USA, Inc. v. Chubb Insurance Co. of New Jersey*,
113 F.4th 1312 (11th Cir. 2024) ....................7

*Ecolab, Inc. v. FMC Corp.*,
569 F.3d 1335 (Fed. Cir. 2009) ....................19

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ....................12, 13

*Eskridge v. Cook County*,
577 F.3d 806 (7th Cir. 2009) ....................4

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) ........................................................2, 3, 9, 12, 13

*Golden Bridge Tech., Inc. v. Apple Inc.*,
758 F.3d 1362 (Fed. Cir. 2014) ...............................................................................6, 7

*Greenlaw v. United States*,
554 U.S. 237 (2008)............................................................................................5

*IGT v. All Gaming Corp.*,
702 F.3d 1338 (Fed. Cir. 2012) ..........................................................................4

*Jaffal v. Director Newark New Jersey Field Office Immigration & Customs Enforcement*,
23 F.4th 275 (3d Cir. 2022) ........................................................................ 3-4

*Pandrol USA, LP v. Airboss Railway Products, Inc.*,
320 F.3d 1354 (Fed. Cir. 2003) ..........................................................................2, 5

*Salazar v. Procter & Gamble Co.*,
414 F.3d 1342 (Fed. Cir. 2005) ..........................................................................22

*The Fair v. Kohler Die & Specialty Co.*,
228 U.S. 22 (1913).............................................................................................5

*United States v. Schiff*,
602 F.3d 152 (3d Cir. 2010) ..............................................................................4

*ViaTech Technologies, Inc. v. Microsoft Corp.*,
733 F. App'x 542 (Fed. Cir. 2018) ..........................................................5, 12, 13

*Walden v. General Electric International, Inc.*,
119 F.4th 1049 (6th Cir. 2024) ..........................................................................7

## **Other Authorities**

10A Fed. Prac. & Proc. Civil § 2725.1 n.2 (4th ed. 2025) .......................................5

Fed. Cir. R. 25.1(d)(1)(A)...................................................................................35

Fed. Cir. R. 25.1(d)(1)(C) ...................................................................................35

Fed. Cir. R. 32(b)(1)...........................................................................................35

Fed. Cir. R. 32(b)(2)....................35

Fed. R. App. P. 32(f)....................35

Fed. R. Civ. P. 56(a)....................5

Fed. R. Civ. P. 56(e)....................4

# INTRODUCTION

Not content to defend PACT's appeal based only on the district court's rationales, Intel alleges that PACT's patent portfolio was "never intended to cover general-purpose microprocessors such as Intel's products." RedBr.1. But that is belied by Intel's contemporaneous conduct. Far from denigrating PACT's patents, Intel received several in-person presentations from PACT between 2005 and 2007, during which PACT disclosed its general-purpose microprocessor technology years before Intel introduced its own in 2011. *E.g.*, Appx14705, Appx25083, Appx24270-24271. And in 2012, after PACT advised Intel of PACT's first issued patent covering general-purpose microprocessors, Intel responded that "[w]e might" be interested in licensing PACT's patents, and asked, "Can you please send us information again on the patents and what you are thinking on timing on the deal[?]" Appx25120.

Concerning the district court's stated reasoning in granting summary judgment to Intel of non-infringement of PACT's '301 and '593 patents, Intel's arguments are unpersuasive.

On the '301 patent, Intel asserts that PACT, to withstand summary judgment, was required in its original summary-judgment opposition to cite ***case law*** supporting the materiality of a genuine dispute of fact on whether Intel's products are capable of processing data. To the contrary, PACT was required only to advance

an "argument," *Pandrol USA, LP v. Airboss Railway Products, Inc.*, 320 F.3d 1354, 1366 (Fed. Cir. 2003), and to identify supporting "facts," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). PACT did so, Appx14685, citing its expert's opinion, based on Intel documents, that Intel's products "can be used to 'express pipelining,' which is a sequential processing of data …." Appx24315. Later, in its second motion for reconsideration, PACT cited case law supporting the argument, including *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010). There is no bar on citing case law in support of an argument earlier advanced, and PACT had a good reason for doing so when it did—namely, that Intel's opposition to PACT's first motion for reconsideration was the first time Intel asserted that infringement could ***not*** be shown if its products were merely capable of processing data. Appx27502.

Intel's arguments on the '593 patent fare no better. For example, Intel fails persuasively to address the inconsistency between the district court's first order (denying summary judgment) and its second order (granting summary judgment). RedBr.77-78. As the district court correctly held in its first order, there was a "dispute of fact" as to whether "***there are separate bus paths within [the C-Bo] for co-located and non-co-located cores*** …." Appx8-9 (emphasis added). In its second order, however, the district court back-pedaled and made a conclusory determination that, in the entire end-to-end path from Intel's processing core to its co-located

memory unit, "***no structure [interconnects that pair] while excluding other devices and memories***." Appx44-45 (emphasis added). The district court did not address, much less seek to reconcile, its earlier order or PACT's evidence supporting the first order. *See* BlueBr.49-50 (citing, *e.g.*, Appx34182).

This Court should vacate the judgment and remand.

## ARGUMENT

### I. ON THE '301 PATENT, INTEL CANNOT PERSUASIVELY DEFEND THE DISTRICT COURT'S DISREGARD OF EVIDENCE UPON WHICH REASONABLE JURORS COULD FIND THAT INTEL'S ACCUSED PRODUCTS ARE CAPABLE OF PROCESSING DATA

PACT explained (BlueBr.27-30) that, in the case of a patent like '301 claiming a device, an infringement plaintiff need show only that the accused device is "'capable of operating' in the described mode," *Finjan*, 626 F.3d at 1204, and that reasonable jurors could find, based upon an argument and evidence PACT timely proffered in opposing summary judgment, that Intel's accused products "***can be used*** to 'express pipelining,' which is a sequential processing of data …[,]" Appx24315 (emphasis added). PACT further demonstrated (BlueBr.31-36) that the district court's rationales for not applying this rule are incorrect.

Reviewing the district court's summary judgment *de novo*, *Jaffal v. Director Newark New Jersey Field Office Immigration & Customs Enforcement*, 23 F.4th

275, 281 (3d Cir. 2022), not with "double deference" (RedBr.36),[1] this Court should vacate and remand.

### A. Intel Does Not Support Its Proposed Rule That A Non-Movant Must Cite Legal Authority To Demonstrate Materiality

"[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific ***facts*** showing that there is a ***genuine issue*** for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting former Fed. R. Civ. P. 56(e)) (emphasis added); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (similar).

To be sure, *IGT v. All Gaming Corp.*, 702 F.3d 1338, 1343-44 (Fed. Cir. 2012) (RedBr.33), additionally required the non-movant to show that the genuine dispute of fact is ***material***. But neither *IGT* nor any other precedent cited by Intel holds that, to meet that burden, the non-movant must, beyond making an argument supported by record evidence, ***cite legal authority*** to explain that a genuine dispute is material. To the contrary, the leading treatise recognizes that the nature and method of demonstrating materiality is not governed by any rigid formula. 10A Fed. Prac. &

---

[1] PACT's appeal challenges the district court's order on summary judgment. PACT does not and need not appeal the court's orders on reconsideration that, standing alone, might be reviewed with deference. *Eskridge v. Cook County*, 577 F.3d 806, 809 (7th Cir. 2009) (RedBr.36), which did not involve a summary-judgment order but a series of reconsideration requests after the plaintiffs voluntarily dismissed their case, is therefore inapposite. *United States v. Schiff*, 602 F.3d 152, 169 (3d Cir. 2010) (RedBr.36), did not involve a summary-judgment order, but a case-management order in a criminal case.

Proc. Civil § 2725.1 n.2 (4th ed. 2025) ("'[T]he law provides no magical talisman or compass that will serve as an unerring guide to determine when a material issue of fact is presented.'" (quoting *Am. Mfrs. Mut. Ins. Co. v. Am. Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967) (alterations in original)).

*Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) (RedBr.33), did not require citation of case law, and indeed did not even address a non-movant's burden in opposing summary judgment (but rather a party's burden to file a notice of cross-appeal to seek to modify the district court's judgment). *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) (RedBr.33), likewise neither involved summary judgment nor any requirement to cite case law. Federal Rule of Civil Procedure 56(a) and *IGT*, *supra* (RedBr.33), address summary judgment, but do not say that the non-movant must cite case law to demonstrate that a genuine factual dispute is material.

*Pandrol*, 320 F.3d at 1366 (RedBr.33), supports PACT, not Intel. *Pandrol* did not hold that the non-movant must cite legal authority to withstand a motion for summary judgment, but rather that the non-movant is "obligated to oppose th[e] motion with their ***arguments***." 320 F.3d at 1366 (emphasis added). Here, PACT did include an "argument," supported by evidence, in the text (not a footnote, *cf.* *ViaTech Technologies, Inc. v. Microsoft Corp.*, 733 F. App'x 542, 552 (Fed. Cir. 2018) (unpub.) (RedBr.34)) of its brief in opposition to summary judgment:

Specifically, PACT contended that Intel's "Accused Products are [capable of] sequentially processing data." Appx14685 (citing, *inter alia*, Conte Opening Report ¶¶ 286-292 (Appx24308-24316)).

The bracketed words in this quotation of PACT's summary judgment opposition brief warrant explanation. The sentence as written—"Dr. Conte has offered evidence that the Accused Products sequentially processing data[,]" Appx14685—is not grammatically complete. But the brief's citation of Dr. Conte's report—which opined, based on Intel documents, that Intel's products "***can be used*** to 'express pipelining,' which is a sequential processing of data …[,]" Appx24315 (emphasis added)—clarifies that the sentence in the brief intended to say that Intel's accused products ***can*** process data, *i.e.*, are capable of processing data. *See* "Can," *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/can (accessed May 22, 2025) ("to be physically … able to"); *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1369-70 (Fed. Cir. 2014) (considering a party's expert's report to determine whether argument was timely made). Intel ignores the definition of "can" in contending (RedBr.36-37) that PACT's brief needed to intone the word "capable."

Importantly, all of this occurred in PACT's initial opposition to summary judgment, not—as Intel incorrectly states (RedBr.38)—for the first time in PACT's second motion for reconsideration. Beyond that misstatement, Intel has no response

to PACT's reliance (BlueBr.34) on *Walden v. General Electric International, Inc.*, 119 F.4th 1049, 1057 n.3 (6th Cir. 2024), and *ECB USA, Inc. v. Chubb Insurance Co. of New Jersey*, 113 F.4th 1312, 1320-21 (11th Cir. 2024), in which courts allowed parties to "cite[] new cases in support of a ***previously-asserted*** argument" (RedBr.38 (emphasis added)).[2]

Contrary to Intel's characterization (RedBr.39), *Golden Bridge* is factually distinct, and indeed its careful review of a party's expert report in determining whether an argument was new on reconsideration supports PACT here. In *Golden Bridge*, the claim term "preamble" was construed as "a signal for communicating with the base station that is spread before transmission and that is without message data." 758 F.3d at 1365 (internal quotation marks omitted). The defendant moved for summary judgment of non-infringement, and the plaintiff's opposition argued that the preamble was the "PRACH [Physical Random Access Channel] preamble." *Id.* at 1367-68. After the district court granted summary judgment in favor of the defendant, the plaintiff moved for reconsideration, arguing that the preamble was the "signature sequence" rather than the PRACH preamble. *See id.* at 1368. The

2 Contrary to RedBr.34-35, PACT did not omit or abandon the "capable of processing data" argument in its first motion for reconsideration. That motion used a "can process data" or similar formulation, *e.g.*, Appx27482 ("'The cores can process data ….'" (quoting Appx24314)), Appx27483 ("'TBBs can be used to 'express pipelining''" (quoting Appx24315))—even if it *also* argued that Intel's products actually process data.

district court denied reconsideration, and this Court affirmed, on the ground that this was an impermissible new argument. *Id.* at 1369-71. But critical to this Court's assessment of whether the argument was new was this Court's review of the ***expert report*** the plaintiff had cited in its original opposition to summary judgment, and this Court's conclusion that "GBT's expert … did not make the alternative argument that the signature sequence of the accused device alone satisfies the preamble term." *Id.* at 1370. Here, by contrast, PACT's expert Dr. Conte clearly argued that Intel's products "***can be used*** to 'express pipelining,' which is a sequential processing of data …." Appx24315 (emphasis added).[3]

Intel contends (RedBr.37) that PACT argued against a capability theory in PACT's affirmative motion for summary judgment. To the contrary, PACT's position on that motion is fully consistent with its position in opposing Intel's motion. One issue on PACT's affirmative motion was whether PACT's licensees' products practiced the '301, such that they had to be marked for PACT to recover damages. PACT argued that the products did not practice the patent because they

---

[3] Like *Golden Bridge*, Intel's other authorities (RedBr.39) are inapposite because they addressed attempts to assert a new argument or new evidence on reconsideration, *see, e.g.*, *Blystone v. Horn*, 664 F.3d 397, 415-416 (3d Cir. 2011) (affirming denial of reconsideration because party "had possession of [allegedly new evidence] many months before the District Court denied habeas relief"); *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1230-31 (3d Cir. 1995) (similar), whereas here PACT and its expert timely argued in opposition to Intel's original motion for summary judgment that Intel's products can process data.

were not yet configured to process data and instead could later be configured to do so, Appx11682 (emphasis added). That argument is fully consistent with PACT's position here that Intel's products are ***already configured*** to process data and so are already capable of processing data (regardless whether they actually process data). Under *Finjan*, a product that is capable of performing a functionality infringes a device patent even if the product does not actually perform that functionality. 626 F.3d at 1204.

Finally, even if this Court were inclined to adopt Intel's proposed requirement that a non-movant cite legal authority to demonstrate materiality of a genuine factual dispute, it would not impact summary judgment here. Intel's motion and statement of facts below did not make the broad assertion that PACT lacked evidence that Intel's products processed data or were capable of doing so. *Cf. Celotex*, 477 U.S. at 323 (a successful summary-judgment motion may be based on an assertion that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof"). Instead, based on the contested premise that the '301 claim must be construed to cover only a processor that processes data without also processing instructions, Intel asserted that its products do not infringe. *E.g.*, Appx14719-14720 (¶ 13) (asserting that, in Intel's products, "[t]he processor cores … are instruction processors that execute sequences

of instructions”); Appx14720-14721 (¶ 14) (“The processor cores in the Accused ’047 Products do not operate on data without executing instructions.”).[4]

PACT’s burden was to dispute the specific assertion Intel had made, and PACT did so: “To the extent material fact 13 contends the Accused Products are ‘instruction processors’ and thus necessarily cannot process data, PACT disputes material fact 13.” Appx14720 (¶ 13) (citing, *inter alia*, district court docket entry #191 at p.17 (Appx7183)), Appx14721 (¶ 14) (similar). PACT went beyond what it needed to do by addressing in its brief in opposition to summary judgment the assertion (not advanced by Intel) that PACT lacked evidence that Intel’s products were capable of processing data: PACT argued, in reliance on its expert Dr. Conte and his evaluation of Intel documents, that “the Accused Products are [capable of] sequentially processing data.” Appx14685 (citing Appx24315). Because PACT was already doing more than necessary, it cannot be faulted for omitting to cite *Finjan* or similar cases.

### B. Intel’s Other Procedural Arguments Were Not Adopted By The District Court And Lack Merit

Intel unpersuasively argues (RedBr.35) that the district court’s disregard of PACT’s evidence of capability of use can be justified because PACT cited Dr.

---

[4] Paragraphs 13 and 14 of Intel’s statement made these assertions regarding the Intel products accused of infringing the ’047 patent, but Intel’s statement then incorporated those paragraphs by reference for purposes of Intel products accused of infringing ’301. Appx14728 (¶ 30).

Conte's report in PACT's summary-judgment opposition brief and not in PACT's response to Intel's statement of facts. As an initial matter, the district court did not decline to consider Dr. Conte's report on this ground. To the contrary, the court's order on the second motion for reconsideration—describing the court's deliberations on the original motion for summary judgment—made clear: "When I ruled on summary judgment, I read every portion of Dr. Conte's report that PACT cited at summary judgment," including the portion that "said [Intel's accused products] *can*" "process data." Appx28 (emphasis in original). That negated any contrary suggestion in the court's first reconsideration order that PACT should have cited the evidence in its response to Intel's statement of facts, Appx22, which in any event failed to recognize that PACT's citation of evidence of capability of data processing went beyond what PACT needed to do to respond to the specific assertion in Intel's statement, as explained above.

Intel also argues (RedBr.32, 45-46) that PACT's evidence was deficient because the cited portion of Dr. Conte's report focused on the related '047 continuation patent rather than the '301 priority patent. The argument is hypocritical, as Intel's own statement began with factual assertions on the '047 and then merely incorporated them by reference for the '301, thus recognizing that the causes of action for infringement of these patents are closely similar. Appx14728 (¶ 30) ("Intel incorporates by reference its undisputed material facts in ¶¶ 10-17.").

### C. Intel Incorrectly Argues That The ’301 Patent Does Not Claim A Device Capable of Processing Data

Finally turning to the merits, Intel unconvincingly resists *Finjan*’s holding that, in the case of a patent like ’301 claiming a device, the plaintiff need show only that the accused device is "‘capable of operating’ in the described mode" to prove infringement. 626 F.3d at 1204.

But Intel cannot escape that the key language to bring a claim within *Finjan* is that it recites a device "for [doing something]." *Finjan*’s claim recited an "engine ***for preventing execution*** …" and a "program code ***for causing*** …." 626 F.3d at 1205 (internal quotation marks omitted; emphasis added). *See also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1217 (Fed. Cir. 2014) ("a processor ***for arranging information for transmission*** …" (internal quotation marks omitted; emphasis added)). Similarly here, the claim recites "data processing elements adapted ***for programmably processing sequences*** [of data]." Appx118 (15:60-61) (emphasis added). On the other hand, the patent claims in Intel’s cited cases (RedBr.42), *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 994 (Fed. Cir. 2009), and *ViaTech*, 733 F. App’x at 551, lacked "for [doing something]" language. *See ViaTech*, 733 F. App’x at 551 (describing such words as "functional language" that were present in *Ericsson* but absent in *ViaTech*).

Intel distracts (RedBr.43) from the "for [doing something]" language in ’301 by focusing on the word "adapt*ed*" that precedes "for programmably processing …."

That does not distinguish *Finjan* or *Ericsson* because the "adapted" concept was implicit in the claims there. Whether at the manufacturing plant or an IT technician's desk, the *Finjan* engine had been adapted to be capable of performing its claimed functionality, and the *Ericsson* processor had likewise been adapted to be capable of performing its claimed functionality. The question in those cases and this case was whether the product accused of infringement needed actually to use that functionality as opposed to merely being capable of using it. The answer was no. *See Finjan*, 626 F.3d at 1204; *Ericsson*, 773 F.3d at 1217.

Put another way, Intel conflates two questions: (1) whether the product is already configured to perform a functionality; and (2) whether the product that is already configured to perform a functionality actually performs that functionality or merely must be capable of doing so. With a patent claim like in *Finjan* or *Ericsson* or the instant case, if a device is already adapted/configured to perform a functionality, it practices the patent regardless whether the device actually uses the functionality or does not actually use the functionality but is capable of doing so.

There remains Intel's contention that PACT supposedly "lacks any *evidence*" (RedBr.45 (emphasis in original)) that Intel's products are capable of processing data. To the contrary, Dr. Conte's opinion was based on admissions contained in Intel's documents. *E.g.*, Appx24315. Intel argues a supposed distinction between "*what* the cores process" and "their *output*." RedBr.46 (emphasis in original). But

reasonable jurors could agree with Dr. Conte and find that "data" is both the "what" and the "output." *E.g.*, Appx24314 ("The cores can process data …."), Appx24315 ("sequential processing of data among cores forming a pipeline").[5]

## II. ON THE '593 PATENT, INTEL CANNOT PERSUASIVELY DEFEND THE DISTRICT COURT'S CLAIM CONSTRUCTION OR ITS APPLICATION OF THAT CONSTRUCTION TO GRANT SUMMARY JUDGMENT OF NON-INFRINGEMENT

### A. Claim Construction

The plain language of the '593 patent's claim 1 requires that a particular processing core include "a physically dedicated connection" to its co-located memory unit. Appx152 (12:38-41). As PACT explained (BlueBr.38-42), "a physically dedicated connection" exists where at least one segment along the end-to-end path between that processing core and that memory unit is uniquely devoted to communications between them. Such an end-to-end path is a "dedicated connection" because, by virtue of the at least one physically dedicated segment along the end-to-end path, no other pair of units besides the particular processing core and the particular memory unit uses that same end-to-end path. Put another way, contrary to Intel's argument (RedBr.49-51, 57-58), the claim language does not specify what percentage of the end-to-end connection between a processing core and its co-located memory unit must be exclusively devoted to that pair of elements in

[5] *See also* Point I.B, *supra* (addressing Intel's criticism of this section of Dr. Conte's report as coming under the heading of '047 rather than '301).

order for that overall connection path to qualify as a "dedicated connection." Thus, even assuming that the "connection" means the end-to-end path rather than a segment within that path (*see* RedBr.49), the existence of at least one physically dedicated segment makes the entire "connection" physically dedicated. The district court did not address the claim's language apart from a single sentence asserting without explanation: "Nor does [PACT's construction] follow logically from the plain language of the claims." Appx43.

As PACT explained (BlueBr.40-41), '593's specification supports PACT's construction because the memory unit in Fig. 7 has an input segment and an output segment that are shared with components other than that memory unit's paired processing core, demonstrating that the inventors and the PTO understood that such an embodiment would meet the "physically dedicated connection" limitation. (So too for the processing core in Fig. 6A. BlueBr.41-42.) Intel does not dispute this (RedBr.66), and instead argues without record citation (RedBr.67-68) that (1) the claim supposedly lacks written-description support, and (2) PACT supposedly disclaimed its construction during prosecution. As to the former, Intel never argued it in Intel's motion for summary judgment (or for that matter at any time before its appellate brief), and the district court did not rely on it. We respond to the latter in the next sub-Point.

### B. Absence Of A Clear And Unmistakable Disclaimer

As PACT demonstrated (BlueBr.42-47), the district court erred in relying on an alleged disclaimer during prosecution, especially given the "demanding standard" for finding a disclaimer. *Avid Tech.*, *Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016). Intel's responses lack merit.

The context of the prosecution history is that PACT was attempting to distinguish the Fu prior-art reference. Because ***every segment in Fu is shared*** (*see* BlueBr.12-14, 47), PACT had no occasion during prosecution to address the situation here where at least one segment is not shared and others are shared.

Intel disputes that all segments in Fu are shared, arguing that "the portion of horizontal signal path 364A annotated in red … is uniquely devoted to communication between [processing] core [202A] and … memory [214A]." RedBr.57. Intel's annotated version of Fu's figure follows:




RedBr.55 (annotating Appx33957).

Intel misconstrues the figure. Multiple devices besides processor 202A—such as external input/output devices connected via "bus bridge units" (BBUs)) to the left of processor 202A—share the same portion of the red horizontal line to communicate with yellow memory 214A. Appx30669 (5:66-6:12), Appx30677 (21:1-11); *see also* Appx15750 (Intel's expert's annotations, coincidentally also in red, of connections between BBUs and a memory unit). Thus, neither the red portion of the horizontal signal path 364A highlighted by Intel, nor any other segment in Fu, is uniquely devoted to any particular processing core-memory unit pair.

Intel also mischaracterizes PACT's statements and figure annotations concerning Fu's flow control unit ("FCU") 212 by ignoring the context. RedBr.54-

57. Prior to discussing the shared connections within Fu's FCU, Appx33957, PACT explained that the claims require two distinct connective structures: a shared "bus system" and a "dedicated connection." Appx33956. While the bus system "interconnects the plurality of processing cores and the plurality of memory units" in a shared manner, the "dedicated connection" "is one that is not shared by other processing cores." *Id.* PACT emphasized that "the 'dedicated connection' to the assigned memory unit is different from, and requires more than, the mere shared bus system that interconnects the components." *Id.* Because the FCU's connections in Fu are entirely shared as explained above, PACT recognized that Fu's FCU was at most analogous to the '593's "bus system," and therefore could not be the '593's separately claimed "dedicated connection."

It was in this context that PACT criticized the "Office Action's improper double counting of the FCU as being both the bus system and the dedicated connection," Appx33956, and set out to show that Fu's FCU was only a shared bus system. PACT highlighted ***examples*** of shared segments of Fu's FCU. Appx33956-33957 ("This connection between processor 202N and memory 214A … is certainly not a dedicated connection … because, ***for example***, processor 202A, like processor 202N, also connects to the same memory 214A via a connection path that also includes horizontal signal path 364A, channel 210A, memory controller 260A of MCU 208A, and line 216A." (emphasis added)).

A skilled artisan would understand PACT's statements concerning these exemplary shared portions to be just that—examples of the entirely shared end-to-end connections in Fu's shared bus system (*i.e.*, FCU). Given this context, PACT's statements concerning a "shared portion" of Fu's connection, Appx33957, do not clearly and unmistakably disavow a connection that has at least one dedicated segment and other shared segments. *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1342 (Fed. Cir. 2009) ("Even if an isolated statement appears to disclaim subject matter, the prosecution history as a whole may demonstrate that the patentee committed no clear and unmistakable disclaimer.").

Intel also mischaracterizes (RedBr.55-56, 62) another PACT statement: "Fu's memories 214 are not assigned to any one of the processors 202, since the memories are equally accessible by all of the processors 202 using at least one shared line." Appx33958. But "line" can reasonably be construed to refer to the entirety of each end-to-end connection path from Fu's processors to its memory units, especially given the immediately following sentence, which used the term "data path," *id.*, to refer both to Fu's vertical data paths 318 and horizontal data paths 364 that connect processors 202 to memory units 214, Appx30536, Appx.30675-30676 (18:61-19:5). Intel's contrary interpretation is therefore not clear and unmistakable.

Intel argues that PACT's claim construction is inconsistent with its argument in the district court that Fu failed to disclose a "dedicated connection" because a

"substantial *portion* of the connection in Fu" was shared. RedBr.60-61 (quoting Appx34344 (emphasis added by Intel)). But again, PACT was citing that "portion" as an example, and other statements in that same PACT brief made clear PACT's position that "Fu has no 'dedicated connection' because the ***collective whole*** of its FCU 212 … is shared with other processors." Appx34344 (emphasis in original).

Moreover, even if this Court holds that, despite contrary reasonable inferences, PACT disclaimed a connection in which less than the entire end-to-end connection path is shared, PACT did not disclaim a connection in which the only shared segments within the path are the interfaces to the processing core and memory unit. Although PACT "literally circled" segments of Fu's connection that Intel alleges are memory interfaces (RedBr.71), the circle included additional shared segments beyond just interface 216A, such as memory data path 364A, and PACT used "and" when collectively referring to these shared segments. Appx33957. This indicates that sharing of more segments than just the interfaces is needed for the whole connection path to fall outside the scope of a "dedicated connection." *Avid Tech.*, 812 F.3d at 1045-46 (limiting disclaimer to central controllers that both identified storage units that stored data *and* issued requests to storage units because

patentee used "and" when differentiating prior art central controller performing these functions); BlueBr.44-45 (citing Appx33956-33957); *see also* BlueBr.14-15.[6]

Intel responds that "and" does not support that conclusion because "or" would not have made sense and thus PACT did not really make a meaningful choice between using "and" in place of "or." RedBr.62-63.[7] Intel's premise is wrong. Regardless whether a communication passes through all of the exemplary shared segments PACT identified in Fu, Appx33957, PACT could have used "or" if it intended to argue that sharing even one of those segments meant that Fu's connection is not a "dedicated connection." PACT did not do so.

Intel's contention that "and" merely signified that "each" segment demonstrated that the connection was not specifically devoted to connecting the processing core-memory unit pair (RedBr.61) is unsupported and ignores the plain meaning of "and", which serves to join the segments of the connection path together to show there is no exclusivity in any segment of the end-to-end connection path in Fu. Again, even if Intel's interpretation that "and" means "each" is one reasonable

---

[6] Expanding PACT's alleged disclaimer to exclude connections where the only shared segment is a device interface is especially unwarranted given that such interfaces are commonly used to provide access to devices. *See* Appx33978 ("a POSITA would recognize that it is common to have an interface that couples a memory unit, such as an LLC slice, or a processing core, such Intel's CPU core, or a memory controller to [] communication lines").

[7] Intel mistakenly cites (RedBr.62) "BlueBr.70," a page that does not exist. Intel may have intended to cite BlueBr.44-45.

option (it is not), a statement "amenable to multiple reasonable interpretations" is not a disclaimer. *Avid Tech.*, 812 F.3d at 1045.

Intel also seeks (RedBr.63) to limit *Avid Technology* to the statement at issue there, where "and" linked two "functions" as opposed to, here, two or more segments of a path. But no language in *Avid Technology*, general principle of patent law, or rule of grammar supports reading the decision so narrowly.[8]

Finally, Intel argues that PACT's statements, even if they do not amount to a disclaimer, "inform the meaning of the claim language." RedBr.65-66. For all of the reasons discussed above and in PACT's opening brief, a skilled artisan would have understood PACT's statements to the examiner to indicate that "dedicated connection" excludes a connection where all of the segments of the end-to-end path between a processing core and memory unit are shared—such that a connection path where at least one segment of the path is devoted to communications between the pair and other segments are shared ***is*** covered by the patent. *See* Point II.B, *supra*; *see also* BlueBr.42-47.

---

[8] As PACT explained (BlueBr.46-47 (citing *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005), and *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373-74 (Fed. Cir. 2003)), any unilateral statements by the examiner are not binding if the patentee did not itself make such statements. Intel's only response (RedBr.64) is that PACT did make statements that a single shared segment would distinguish Fu from the '301, which is incorrect as explained in text.

### C. Under PACT's Construction, Reasonable Jurors Could Find That Intel's Products Infringe

Reasonable jurors could find that at least one segment in the end-to-end connection path in Intel's products between a processing core and its co-located memory unit is uniquely devoted to communications between those two elements, and therefore that Intel's products infringe. *See* BlueBr.47-50. For instance, opining on Intel's figure below, PACT's expert explained that "each core has … a separate path to a co-located LLC slice that [redacted] the [redacted]," Appx33755, which is illustrated in Intel's figure with the horizontal connection including a [redacted] that [redacted] over the vertical [redacted] interconnect.

Technical Schematic of Intel's Product

[redacted]

Appx34182 (red oval annotation added).

Intel does no more than demonstrate a genuine dispute on this issue, which forecloses rather than allows a grant of summary judgment. Specifically, Intel uses a non-magnified version of the figure and adds additional annotations:

Technical Schematic of Intel's Product

[redacted]

RedBr.75 (Intel's reproduction, with Intel's annotations, of Appx34182) (purple arrow added by PACT). Not only do these annotations obscure the [redacted] that is a segment uniquely devoted to communications between a processing core (green) and its co-located memory unit (blue), but Intel also disregards that the portion of the green path prior to where it [redacted] with the red path (identified by the purple arrow) is not shared and is thus exclusively devoted to communications between the processing core and its co-located memory unit. *See* Appx33984 (¶ 179) ("separate and dedicated" connection that "extends all the way back" to processing core).

Intel's contention concerning the figure below that allegedly "zooms in on the [redacted]" suffers from the same flaw. RedBr.75-76 (citing Appx33822-33823 (¶ 101)).

Technical Schematic of Intel's Product

That is, even if the path labeled "Technical Design Feature"[9] "ultimately Technical Design Feature" with paths from other processing cores en route to the processing core's co-located memory unit (not depicted, to the right of "To Technical Design Feat") (*see* RedBr.76), at least one segment of the Technical Design Feature connection before the red annotated oval and the "Technical Design Feature" is not shared with other units. Hence, as PACT's expert explained regarding the same figure, "the collocated CPU core has a 'physically dedicated connection' with

9 Technical Design Feature stands for Technical Design Feature. *See* Appx34144, Appx34156.

the collocated LLC slice that extends all the way back to the collocated CPU core." Appx33984-33985.

Furthermore, Intel fails persuasively to address the inconsistency in the district court's first and second summary judgment orders. RedBr.77-78. Intel argues that, in the first order (which denied summary judgment), a factual dispute existed as to whether the shared [redacted] was part of the "dedicated connection" or was merely an interface that was part of the memory unit. RedBr.77. (In fact, the dispute also concerned whether, "[i]f the C-Bo acts only as an interface, [] there are separate bus paths within it for co-located and non-located cores …." Appx9.) According to Intel, this dispute "fell away" given PACT's alleged disclaimer. RedBr.77. But the district court never said that in its second order (which granted summary judgment). Instead, the court stated, as to "[a]ll connective structures in this chain directly interconnect[ing] a particular device [*i.e.*, processing core] to a particular memory, … ***no structure does so while excluding other devices and memories***." Appx44-45 (emphasis added).

The notion that reasonable jurors would be compelled to find that there are no structures (segments) uniquely devoted to communications between a processing core and its co-located memory unit simply cannot be reconciled with the district court's holding in its first order that "[t]here is a dispute of fact as to whether … there are separate bus paths within [the C-Bo] for co-located and non-co-located

cores." Appx9.[10] And it also fails to address any of PACT's evidence, including Intel's own figure above that clearly shows a processing core connected to its co-located memory unit through a horizontal connection path that [redacted] (using the [redacted]) the vertically-oriented, [redacted] interconnect. Appx34182; *see also* BlueBr.49-50 (citing Appx34187, Appx33755, Appx33740, Appx33762). Additionally, the second order's holding that "[a]ny processor can communicate with any memory, but it ***must go through the*** [redacted] ***structure***," Appx44 (emphasis added), ignores Intel's own documents explaining that "where a Core request is related to the co-located LLC slice ..., [redacted] and [redacted] are communicating directly ***without using the*** [redacted]," Appx34189 (emphasis added).

### D. Even Under Intel's Construction, Reasonable Jurors Could Find That Intel's Products Infringe

PACT explained (BlueBr.51-52) that, even if this Court adopts Intel's construction that a single shared segment means that there is no "dedicated connection" between a processing core and its co-located memory unit, reasonable jurors could find that Intel's products' end-to-end connection paths have no shared

---

[10] The district court's no-uniquely-devoted-structure holding in the second order indicates some confusion concerning what claim construction the court was applying. If the court had been applying Intel's proposed construction that the '593 does not claim a connection path in which even a single segment is shared, then the court would have stopped upon finding a single shared segment and would not have needed to address whether there are "no" shared segments (structures). The court also never disputed that, in the figure at page 25, *supra*, there is a non-shared segment before the red annotated oval.

segments because the (admittedly shared) interfaces of the processing core and the memory unit should be considered a part of the unit rather than a segment of the connection path. Intel's three responses (RedBr.69-73) lack merit.

***First***, Intel argues that the claim language forecloses defining the "connection" to commence after the processing core's interface (aka the [redacted]) and to conclude at the beginning of the memory unit's interface (aka the [redacted]). Specifically, Intel asserts that the "connection" begins at the processing core itself (before the processing core's interface) and ends at the memory unit itself (after the memory unit's interface) because the claim requires the connection to be "'*from*' the processing core '*to*' the assigned memory." RedBr.70-71 (emphasis in original). This simply rehashes an argument Intel had previously raised that its products do not infringe a different limitation in '593 claim 1—"bus system"—because the [redacted] and [redacted] prevented the [redacted] interconnect from directly coupling to the processing core and memory unit, respectively. Appx33816-33818 (¶¶ 76-78). PACT's expert rebutted this erroneous assertion with opinions and evidence demonstrating that the plain meaning of the claims do not require the bus system to be directly coupled to the processing core or memory unit, especially because a skilled artisan would understand that intervening interfaces between a bus and memory units or processing cores are "common." Appx33977-33979 (¶¶ 149-153). Intel now raises this argument for the first time in the context of the "dedicated

connection," but the same genuine factual dispute exists: whether the presence of an intervening interface, for example the [redacted] and [redacted], forms part of the connection (dedicated or otherwise) from a processing core "to" its co-located memory unit, instead of being part of the processing core or memory unit.

***Second***, Intel contends that PACT's statements to the examiner conceded that interfaces are part of the end-to-end path because PACT "literally circled" Fu's alleged interfaces. RedBr.71. As an initial matter, Intel presents only attorney argument in equating the alleged "interface" structures in Fu (*e.g.*, MCU-IFU 312 and MCU 204) to the [redacted] in Intel's products. While there is no dispute that the [redacted] and [redacted] are interfaces to Intel's processing core and memory unit, respectively, Appx33818 (¶ 78), Appx34609, Appx33981, Intel fails to proffer any expert testimony that Fu's MCU-IFU 312 and MCU 204 are interfaces equivalent to Intel's [redacted]. For instance, the MCU-IFU is an interface to a *memory control* unit, not to a memory unit. Appx30673 (14:48-50). And the record does not address whether Fu's FCU provides "access" to memory in the same or similar way that the [redacted] provides access to the memory unit in Intel's products. Hence, there is a genuine dispute of fact as to whether PACT's identification of Fu's MCU-IFU and MCU as shared is even relevant to sharing of Intel's memory unit and processing core interfaces.

In any event, PACT's inclusion of these structures in the annotated oval (shown below) is not a clear and unmistakable concession that these structures are part of the "connection" between Fu's processing core and memory unit, as opposed to being part of the processing core or memory unit. As discussed above, PACT made this annotation to show that what was depicted in Fu was only a shared bus system. *See* Point II.B, *supra*. In other words, Fu failed to disclose anything "more than[] the mere bus system that interconnects the components," Appx33956, because the entire end-to-end path in Fu, including even its alleged interface structures, was shared. Because everything in Fu's end-to-end path was shared, PACT's identification of Fu's alleged interface structures as shared in combination with exemplary shared non-interface segments of Fu's alleged connection at most demonstrated that there was nothing left in Fu's figure that conceivably could be the claimed "dedicated connection."




FIG. 2
FIG. 8
FIG. 13

Appx33957.

Even if the [redacted] and [redacted] are part of the claimed "bus system," that does not mean they are part of the "dedicated connection." These elements are still interfaces to the processing core and memory, which means they have a unique relationship granting access to these devices. *See* Appx33977-33979.

***Third***, Intel's contention that, if the CBo is an interface that does not count as part of the "connection," there would be no connection at all (RedBr.72-73), is incorrect. From the perspective of a particular processing core and its co-located memory unit (call them processing core A and memory unit A), the CBo includes three distinct components: the [redacted], [redacted], and [redacted]. BlueBr.10,

RedBr.11. The [redacted] is the interface of processing core A, and the [redacted] is the interface of memory unit A. BlueBr.10. The CBo at large is also considered an interface but only insofar as it (and its [redacted]) serves as a port of access for connections originating from ***outside*** the CBo, *e.g.*, from processing cores other than processing core A attempting to communicate with memory unit A through the [redacted] interconnect. Appx33981 (¶172) ("As an interface, … the CBo serves as a port of access … for all non-collocated CPU cores that wish to access the LLC slice." (emphasis omitted)). For connections ***within*** the CBo, however—*i.e.*, between processing core A and memory unit A—the only components logically serving as interfaces are the [redacted] and [redacted] that control access to processing core A and memory unit A, respectively. The connection between these two interfaces is the "dedicated connection." That the CBo as a whole is an interface from the perspective of ***non-***co-located processing cores attempting to access memory unit A has no bearing on the existence of a connection between processing core A and memory unit A.

Intel has also asserted that the connection from Intel's processing core to its co-located memory unit is shared not only within the [redacted] interface, but also *before* the interface (*i.e.*, within the [redacted]). *See* RedBr.75-77. But there is a genuine factual dispute as to whether the portion of the path within the red oval below is part of the [redacted] or the [redacted].

Technical Schematic of Intel's Product

[redacted]

Specifically, PACT's expert described this "insignificant" portion as "the edge of the route at the [redacted] entrance to the LLC [memory unit] slice," and not as part of the [redacted]. Appx33984-33985 (¶ 179).

## CONCLUSION

The district court's judgment should be vacated and the case remanded for trial.

Dated: June 25, 2025

Respectfully submitted,

*/s/ Sanford I. Weisburst*
Sanford I. Weisburst
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7000
sandyweisburst@quinnemanuel.com

Frederick Lorig
Razmig Messerian
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
fredericklorig@quinnemanuel.com
razmesserian@quinnemanuel.com

Mark Tung
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Drive #560
Redwood City, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
marktung@quinnemanuel.com

*Attorneys for Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1). The brief contains 6,926 words according to the word count of the word-processing system used to prepare the brief, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

Dated: June 25, 2025

*/s/ Sanford Weisburst*
Sanford I. Weisburst

*Attorney for Appellant*

## CERTIFICATE OF CONFIDENTIAL MATERIAL

The foregoing document contains five (5) unique words (including numbers) marked confidential, exclusive of the material previously marked confidential in Appellee's Response Brief to which the foregoing brief responds. *See* Fed. Cir. R. 25.1(d)(1)(C). This number does not exceed the maximum of 15 unique words permitted by Fed. Cir. R. 25.1(d)(1)(A).

Dated: June 25, 2025

*/s/ Sanford Weisburst*
Sanford I. Weisburst

*Attorney for Appellant*

## CERTIFICATE OF SERVICE

On June 25, 2025, the non-confidential version of this corrected brief was submitted to the Court through the CM/ECF system and thereby served on all parties.

Dated: June 25, 2025

*/s/ Sanford Weisburst*
Sanford I. Weisburst

*Attorney for Appellant*